## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 ([•]) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) PAY THEIR OBLIGATIONS UNDER PREPETITION INSURANCE POLICIES, (B) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (C) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE, (D) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS, AND (E) CONTINUE THE WORKERS' COMPENSATION PROGRAM, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):[2]

### RELIEF REQUESTED

1. The Debtors seek entry of an interim order and a final order (respectively, the "Proposed Interim Order" and "Proposed Final Order"), substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting, among other things, the following relief:

   i. authorizing, but not directing, the Debtors to:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Gary Richards in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the First Day Declaration.

a. pay their obligations under prepetition insurance policies, including all premiums, deductibles, administration fees, audited amounts, and other obligations related thereto;

b. continue to pay certain brokerage fees;

c. renew, supplement, modify, or purchase insurance coverage in the ordinary course of business;

d. enter into new premium financing agreements in the ordinary course of business;

e. continue paying and/or funding the Debtors' workers' compensation program (the "Workers' Compensation Program," together with the amounts related thereto, the "Workers' Compensation Obligations"), including administrative obligations to certain third parties in connection therewith during these chapter 11 cases in the ordinary course of business as such Workers' Compensation Program was in effect as of the Petition Date (as defined below) and as such may be modified, terminated, amended, or supplemented by the Debtors; and

ii. granting related relief.

2. In sum, the Debtors believe that $25,000 in prepetition amounts are owed relating to the Insurance Policies (as defined below). The Debtors seek authority, but not direction, to honor any prepetition amounts, and to continue paying amounts in the ordinary course of business, owed in connection with the Insurance Policies.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion, to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and legal bases for the relief requested in this Motion are sections 105(a), 363(b), and 364 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND OF THE DEBTORS

6.      The Debtors operate a multi-space entertainment venue complex, specializing in large-scale live entertainment—concerts, festivals, corporate functions, and multimedia events—and are known for state-of-the-art audiovisual production, including a 2022 upgrade featuring one of the world's highest-resolution video walls.  The Debtors focus on industry-leading production capabilities, immersive audiovisual experiences, and maintain a status as one of North America's largest standing-room-only entertainment venues.

7.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these cases, and no statutory committee has been appointed.

8.      Additional information regarding the Debtors' businesses, capital structures and circumstances preceding the Petition Date may be found in the First Day Declaration.

## THE INSURANCE POLICIES

### I.      Overview

9.      As of the Petition Date, the Debtors maintained approximately 17 insurance policies (collectively, the "Insurance Policies") administered by multiple third-party insurance

carriers (collectively, the "Insurance Carriers"). A schedule of the Insurance Policies is attached hereto as **Exhibit C**. The Insurance Policies vary in amounts and types of coverage in accordance with prudent business practices, and state and local laws governing the Debtors' operations and various contracts. The Insurance Policies provide coverage for, among other things, general liability, statutory disability, automobiles, workers compensation, D&O, employment practices, crime coverage, deadly weapons, commercial property, standalone terrorism, inland marine, and pollution. As of the Petition Date, the aggregate annual premium for the Insurance Policies totaled approximately $2,851,990, plus applicable taxes, audited amounts, and surcharges (collectively, the "Insurance Premiums"). All Insurance Premiums are paid in accordance with certain premium financing agreements (the "Premium Financing Agreements"). For example, an annual policy is generally paid with a downpayment between 20% and 25% followed by ten equal installments made over the course of the year. As of the Petition Date, the Debtors believe that $25,000 in prepetition amounts are owed on account of the Insurance Policies and expect the next payment to be due August 9, 2025.

10. The Insurance Policies are essential to preserve the value of the Debtors' business, property, and assets during these chapter 11 cases. Not only are some of the Insurance Policies required by the various regulations, laws, and contracts that govern the Debtors' commercial activities, but section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Moreover, the *Operating Guidelines for Chapter 11 Cases* of the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") require debtors to maintain insurance coverage throughout the pendency of chapter 11 cases.

## II.    Premium Finance Agreements

11.    It is not always economically advantageous for the Debtors to pay the premiums on their Insurance Policies on a lump-sum basis.  Accordingly, the Debtors finance the premiums for their Insurance Policies pursuant to premium financing agreements with third-party lenders.

12.    Currently, the Debtors are financing the premiums for all of their Insurance Policies through two (2) Premium Finance Agreements with AFCO Direct.  Pursuant to the Premium Finance Agreements, the Debtors paid down payments totaling $681,816 and are financing premiums and related fees totaling $2,162,760 through four to ten payments, depending on the Premium Financing Agreement.  The next payment is due August 21, 2025, and the Debtors seek authority to make that payment through the Proposed Interim Order.

13.    Because certain of the premiums for the Insurance Policies are financed pursuant to a Premium Financing Agreement as of the Petition Date, the Debtors seek authority to enter into new premium financing agreements as necessary or appropriate in the ordinary course of their business, without further Court approval.

14.    Continuation of the Insurance Policies and entry into new insurance policies and premium financing agreements, as applicable, in the ordinary course, are essential to the preservation of the value of the Debtors' properties and assets.  Moreover, in many cases, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts governing the Debtors' commercial activities, including the requirement of the U.S. Trustee that a debtor maintain adequate coverage given the circumstances of their chapter 11 cases.

15.    As of the Petition Date, the Debtors believe that $8,160 is unpaid and owing on account of the Premium Financing Agreements.

16.    By this Motion, the Debtors request authority, but not direction, to maintain their existing Insurance Policies and Premium Financing Agreements; pay any prepetition obligations

33418082.6

related thereto, including the Insurance Premiums; enter into new insurance policies and premium financing agreements, as applicable, in the ordinary course of business; supplement, amend, renew, or extend any existing Insurance Policies, as applicable, in the ordinary course of business; and continue paying Insurance Premiums on a postpetition basis in the ordinary course of business.

### III.    The Insurance Brokers

17.    HGR Group and CAC Group (the "Insurance Brokers") assist the Debtors with: (a) obtaining comprehensive insurance coverage for their operations; (b) negotiating policy terms, provisions, and premiums; (c) assisting the Debtors with claims; and (d) providing ongoing support throughout policy periods.  The Insurance Brokers are paid for their services through standard commissions that are built into the price of the insurance premiums and become due and payable simultaneously with the payment of the insurance premiums (the "Insurance Brokerage Fees").

18.    The Insurance Brokers' services are necessary to the Debtors ability to obtain Insurance Policies on advantageous terms and at competitive rates.  The Insurance Brokers' services will also facilitate the proper maintenance of the Debtors' Insurance Policies postpetition and ensure adequate protection of the Debtors' property.

19.    Additionally, the Debtors pre-funded approximately $200,000 to CAC Group (the "CAC Deposit") on account of a D&O Insurance Policy for any independent director(s) that the Debtors may appoint during the chapter 11 cases.  The Debtors request authority, but not direction, to use the CAC Deposit to fund premiums for a D&O Insurance Policy that the Debtors purchase for any independent director.

20.    As of the Petition Date, the Debtors do not believe there are any unpaid prepetition obligations in connection with the Insurance Brokerage Fees.  By this Motion, the Debtors seek authority, but not direction, to (a) honor any prepetition amounts owed in connection with the Insurance Brokerage Fees, (b) pay any Insurance Brokerage Fees that may arise on a

postpetition basis in the ordinary course of business, and (c) replace or supplement the Insurance Broker as may be necessary.

### IV.    The Workers' Compensation Program

21.    The Debtors maintain the Workers' Compensation Program for their employees at the at the level required by law for claims arising from or related to their employment with the Debtors and to satisfy the Workers' Compensation Obligations. The Debtors maintain third-party insurance for their Workers' Compensation Obligations.

22.    All of the Debtors' employees are entitled to participate in the Workers' Compensation Program.  As of the Petition Date, approximately 465 individuals are receiving benefits on account of the Workers' Compensation Program.

23.    The Debtors must continue the claim assessment, determination, adjudication, and payment process pursuant to the Workers' Compensation Program without regard to whether such liabilities are outstanding before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements during the pendency of these chapter 11 cases.

24.    As of the Petition Date, the Debtors estimate that there are no accrued but unpaid Workers' Compensation Obligations (the "Unpaid Workers' Compensation Obligations"). However, the Debtors seek authority to pay any Unpaid Workers' Compensation Obligations in the ordinary course of business and consistent with past practices, and, out of an abundance of caution, to continue paying the Workers' Compensation Obligations on a postpetition basis in the ordinary course of business.

25.    To the extent any employee asserts new claims arising under the Workers' Compensation Program, the Debtors request that the Court modify the automatic stay under section 362 of the Bankruptcy Code to permit the employes to proceed with their claims under the

Workers' Compensation Program.  This required modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

**BASIS FOR RELIEF REQUESTED**

**I.      The Bankruptcy Code and U.S. Trustee Guidelines Require the Debtors to Maintain Insurance Coverage and Satisfy Their Insurance Obligations.**

26.      As discussed above, the Debtors' existing Insurance Policies provide a comprehensive range of protection for the Debtors' business, properties, and assets.  As such, it is essential that the Debtors' Insurance Policies continue in full force and effect during the course of these chapter 11 cases.  Under section 1112(b)(4)(C) of the Bankruptcy Code, "failure [of a debtor] to maintain appropriate insurance [where such failure] poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C). In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee Guidelines").

27.      To ensure that the Debtors comply with section 1112(b)(4)(C) of the Bankruptcy Code, applicable law, and the U.S. Trustee Guidelines, the Debtors respectfully request the authority, but not direction, to: (a) pay the prepetition amounts currently due and owing under the Insurance Policies in the ordinary course of business, including any prepetition amounts due or that may come due in connection with the Insurance Premiums and Insurance Brokerage Fees; (b) continue to honor obligations arising under the Insurance Policies; and (c) to renew, supplement, modify, or purchase insurance coverage in the ordinary course.

33418082.6

## II.       Renewing, Supplementing, Entering Into New Insurance Policies, and Paying Obligations Under the Insurance Policies in the Ordinary Course of Business Are Each Warranted.

28.       Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing.  11 U.S.C. § 363(c)(1).  The Debtors submit that obligations on account of the Insurance Policies are within the ordinary course of business and thus may be continued in the Debtors' discretion under section 363(c)(1) of the Bankruptcy Code. In the alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   Under section 363(b) of the Bankruptcy Code, courts in this jurisdiction require only that the debtor provide some "articulated business justification" for the proposed use of property.   *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (requiring only that the debtor "show that a sound business purpose" justifies the proposed use of property); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring a "good business reason" for use of property under section 363(b) of the Bankruptcy Code).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

29.       Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Pursuant to section 105(a) of the Bankruptcy Code, the "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy

court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581–82 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan). Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Court may grant the relief requested herein.

30.     Here, the Debtors seek to maintain their existing Insurance Policies, and honor their obligations related thereto in the ordinary course of their prepetition business on a postpetition basis. Such obligations include, among other things, renewing the Insurance Policies and when they expire, and paying the premiums when they come due. Further, the Insurance Policies cover obligations that are required by law or regulation, as described above.

31.     The failure to pay Insurance Premiums, Insurance Brokerage Fees, and related expenses when due may harm the Debtors' estates in a number of ways. Specifically, the Insurance Carriers may refuse to renew the Debtors' Insurance Policies during the duration of these chapter 11 cases, which will require the Debtors to obtain replacement policies and possibly reconfigure their risk management program. That scenario would require the commitment of significant resources and could result in less favorable coverage or terms from the Debtors' insurers. Additionally, the Insurance Carriers could attempt to terminate the Debtors' existing policies,

which could threaten the Debtors' ability to continue operating their businesses during their winddown process given the Debtors' myriad regulatory and contractual obligations to maintain specific amounts and types of insurance coverage.

32.     The Debtors submit that it is also in the best interests of their estates to have the ability to revise, extend, supplement, or change insurance coverage, as necessary, on a postpetition basis. Indeed, the Debtors' Insurance Policies are essential to the preservation of the value of the Debtors' businesses, properties, and assets and their ability to successfully administer these chapter 11 cases. Accordingly, if any of the Insurance Policies lapse or new coverage is required or necessary, it is imperative that the Debtors are able to renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of business. The Insurance Policies protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events.

33.     Accordingly, the Debtors believe that maintenance of the Insurance Policies on a postpetition basis is in the ordinary course of business and, pursuant to section 363(c)(1) of the Bankruptcy Code, does not require notice and a hearing. Nonetheless, out of an abundance of caution, the Debtors are seeking Court approval to continue such maintenance and related obligations under sections 105(a) and 363(b) of the Bankruptcy Code. Based on the foregoing, the Debtors respectfully submit that maintaining the Insurance Policies should be authorized under sections 105(a) and 363(b) of the Bankruptcy Code to the extent such activities are deemed outside the ordinary course of the Debtors' businesses.

III.    **The Court Should Authorize, But Not Direct, the Debtors, in Their Discretion, to Make Necessary Payments Under Premium Financing Agreements and Renew and/or Enter into New Premium Finance Agreements in the Ordinary Course of Business.**

34.    Because the Debtors are currently operating under premium financing arrangements, flexibility to enter into new premium financing agreements is appropriate and should be authorized under sections 105(a) and 363(b) of the Bankruptcy Code.  Moreover, pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured postpetition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate.  In light of the Debtors' financial circumstances, insurance premium finance companies may not be willing to provide insurance premium financing to the Debtors on attractive market terms on a postpetition basis.  As a result, the Debtors request the flexibility to enter into premium financing agreements in the ordinary course of business.

35.    Generally, the Premium Finance Agreements grant AFCO Direct a security interest in the Insurance Policies, including all unearned premiums, return premiums, dividends, and loss payments thereof.  Security interests created by premium finance agreements generally are recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements.  *See TIFCO, Inc. v. U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.)*, 67 B.R. 990, 994-95 (Bankr. D. Conn. 1986); *Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.)*, 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981).  Therefore, if the Debtors fail to make the required payments under the Premium Finance Agreements, AFCO Direct could seek relief from the automatic stay, either to cancel the financed policies in accordance with the terms of the Premium Finance Agreements or to seek adequate protection of its investment.  *See Universal Motor Express*, 72 B.R. 208, 211 (Bankr. W.D.N.C. 1987) (recognizing that a default

under the financing arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay).  Accordingly, the practical solution from the Debtors' perspective is to continue making the premium financing payments required under the Premium Finance Agreements.

36.    Neither the Bankruptcy Code nor its legislative history provides a framework for analyzing whether a transaction is in the ordinary course of business.  The Third Circuit, however, has developed a two-part inquiry, including a "horizontal dimension" test and a "vertical dimension" test, for determining whether a transaction is in the ordinary course of business under section 363(c)(1).  *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992); *see, e.g.*, *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 791 (Bankr. D. Del. May 24, 2007); *Braunstein v. McCabe*, 571 F. 3d 108, 124-25 (1st Cir. 2009).  The horizontal dimension test focuses on whether, from an industry-wide perspective, the transaction is "of the sort commonly undertaken by companies in that industry."  *In re Roth Am., Inc.*, 975 F.2d 202 at 953.  The vertical dimension test (or creditor's expectation test) focuses on the vantage point of a hypothetical creditor and inquires whether the transaction subjects the creditor to economic risk of a nature different from those the creditor accepted when it decided to extend credit to the debtor.  *Id.*

37.    The Debtors believe that the renewal of the premium finance agreements and/or the execution of new premium finance agreements, to the extent necessary, satisfy the "horizontal dimension" test because maintaining insurance coverage and entering into related premium finance agreements is a common industry practice.  *See Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153, 1154 (Fed. Cir. 1986) (stating that such a premium finance agreement is a "common commercial arrangement.").  The Debtors believe that "vertical dimension" test is also similarly satisfied because the maintenance of insurance under premium finance agreements does not subject estate

creditors to any economic risk, but rather, serves to protect them from economic risk.  Accordingly, the renewal of the premium finance agreements and/or the execution of new premium finance agreements constitute "ordinary course" uses of estate property under section 363(c)(1) of the Bankruptcy Code.  *See In re Roth Am.*, 975 F.2d at 952 n.4 (citing *U.S. v. Estate of Deutscher*, 115 B.R. 592, 598–99 (M.D. Tenn. 1990), for the proposition that the "trustee's use of fund to . . . reinstate insurance was in ordinary course of business").

38.     Indeed, the Debtors submit that it may be outside the ordinary course of business for them to fail to renew the Premium Finance Agreements or enter into new premium finance agreements to obtain insurance coverage.  *See In re Lavigne*, 114 F.3d 379, 383–84 (2d Cir. 1994) (holding that the cancellation of an insurance policy was not in the ordinary course of business). Nevertheless, out of an abundance of caution, the Debtors seek entry of the Propose Interim Order and the Proposed Final Order, to the extent necessary, approving, under section 363 of the Bankruptcy Code, the Debtors' post-petition renewal of the premium finance agreements and/or the execution of new premium finance agreements, to the extent necessary.

39.     The Court may also authorize the Debtors to enter into new premium finance agreements pursuant to section 364(c)(2) of the Bankruptcy Code.  Section 364(c)(2) authorizes, after notice and a hearing, a debtor in possession to obtain debt secured by a lien on property of the estate.  *See* 11 U.S.C. § 364(c)(2).  Under any new premium finance agreement, the counterparty would likely require that the Debtors grant a security interest in the unearned premiums under the financed policies.  *See generally In re Schwinn Bicycle Co.*, 200 B.R. 980, 982 (Bankr. N.D. Ill. 1996) (describing insurance premium finance agreements).

40.     Section 364(c) authorizes a debtor, in the exercise of its business judgment, to incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the

best interests of the estates.  *See, e.g.*, *In re Gen. Growth Props., Inc.*, 412 B.R. 122, 125–26 (Bankr. S.D.N.Y., May 14, 2009) (granting motion for postpetition financing upon finding that (a) "no comparable credit [was] available on more favorable terms"; (b) that the debtors needed post-petition financing to "to preserve [their] assets and continue their operations; and (c) that the terms and conditions of the DIP Documents had been negotiated in good faith); *In re Budget Grp., Inc.*, Case No. 02-12152, 2002 Bankr. LEXIS 1050 (Bankr. D. Del. Aug. 1, 2002) (authorizing funding of acquisition of property on a secured basis where acquired property was necessary to maintain operations and debtor could not obtain such funding on an unsecured basis); *In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties").  Because a borrowing to maintain essential insurance coverage is in the best interests of the Debtors' estates, the Debtors submit that the Court should authorize them to renew the premium finance agreements and/or execute new premium finance agreements postpetition, to the extent necessary.

### IV.    The Automatic Stay Should Be Modified for Workers' Compensation Obligations

41.    Section 362(a) of the Bankruptcy Code operates to say:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . ..

11 U.S.C. § 362(a).  Section 362(a), however, permits a debtor or other party in interest to request a modification or termination of the automatic stay for "cause."

42.    To the extent the Debtors' employees hold claims under the Workers' Compensation Program, the Debtors seeks authority under section 362(d) of the Bankruptcy Code

to permit those employees to proceed with the claims related to the Workers' Compensation Program, in the appropriate judicial or administrative forum, and to receive any payments to which they are entitled under the Workers' Compensation Program.  Modification of the automatic stay as requested is consistent with the continuation of the Workers' Compensation Program and necessary for the covered employees to pursue their claims under the Workers' Compensation Program.  Accordingly, the Court should (a) modify the automatic stay as it relates to claims under the Workers' Compensation Program to allow any such claims to proceed to resolution and (b) waive corresponding notice requirements under Bankruptcy Rule 4001.  The Court should also authorize the Debtors, to the extent required by law or under the Workers' Compensation Program, to pay all or part of a claim related thereto directly to an employee, any of his or her medical providers, or any of his or her heirs or legal representatives, as set forth in the applicable law or policy.

### DEBTORS' BANKS SHOULD BE AUTHORIZED TO HONOR CHECKS AND ELECTRONIC FUNDS TRANSFERS

43.     The Debtors anticipate having sufficient funds to pay the amounts described in this Motion, including by virtue of the DIP Financing.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment pursuant to this Motion.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.  Any such financial institution may rely on the representations of such Debtors as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

44.     The Debtors assert that immediate relief is necessary to avoid immediate and irreparable harm.   Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, entry of the Proposed Interim Order is integral to the Debtors' ability to successfully transition into chapter 11 and run an orderly sale.   Specifically, the relief requested is necessary to avoid a severe disruption of the Debtors' sale process and operations at this critical juncture and, in turn, to preserve and maximize the value of the Debtors' estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

45.     The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).   As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors' ongoing operations and value-maximization process.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## RESERVATION OF RIGHTS

46.     Nothing contained herein or any action taken pursuant to relief requested is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of,

basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

## **NOTICE**

47.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the holders of the thirty (30) largest unsecured claims against the Debtors; (c) counsel to Alter Domus (US) LLC, in its capacity as administrative agent and collateral agent under the Prepetition Financing Agreement of and the DIP Facility; (d) counsel to the DIP Lenders and Prepetition Term Loan Lender; (e) counsel to LiveStyle; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the Insurance Carriers; (i) the Insurance Brokers; (j) AFCO Direct; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested herein and granting such other relief as is just and proper.

Dated:   August 4, 2025
         Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Sarah Gawrysiak*

Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Kenneth J. Enos (No. 4544)
S. Alexander Faris (No. 6278)
Sarah Gawrysiak (No. 7403)
Evan S. Saruk (No. 7452)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  sbeach@ycst.com
        emorton@ycst.com
        kenos@ycst.com
        afaris@ycst.com
        sgawrysiak@ycst.com
        esaruk@ycst.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

33418082.6

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 ([•]) |
| Debtors. | (Jointly Administered) |
| | **Ref: Docket No. [•]** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY THEIR OBLIGATIONS UNDER PREPETITION INSURANCE POLICIES, (B) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (C) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE, (D) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS, AND (E) CONTINUE THE WORKERS' COMPENSATION PROGRAM, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of AGDP Holding Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for entry of an interim order (this "<u>Interim Order</u>") (i) authorizing, but not directing, the Debtors to (a) pay their obligations under the Insurance Policies entered into prepetition, (b) continue to pay certain brokerage fees, (c) renew, supplement, modify, or purchase insurance coverage in the ordinary course of business, (d) enter into new financing agreements in the ordinary course of business, and (e) continue the Workers' Compensation Program, and (ii) granting related relief, each as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431).  The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Motion having been given; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The relief requested in the Motion is GRANTED on an interim basis as set forth herein.

2.      The final hearing on the Motion shall be held on [•], 2025, at [•] (prevailing Eastern Time) (the "Final Hearing").  Any objections or responses to entry of the proposed final order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on [•], 2025, and shall be served on (a) the Debtors, 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel; (b) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE, Attn: Sean M. Beach (sbeach@ycst.com), S. Alexander Faris (afaris@ycst.com), and Sarah Gawrysiak (sgawrysiak@ycst.com); (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jonathan W. Lipshie (Jon.Lipshie@usdoj.gov); and (d) counsel to any statutory committee appointed in these chapter 11 cases.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter a final order without need for the Final Hearing.

3.      The Debtors are authorized to continue the Insurance Policies, including, but not limited to, the Insurance Policies identified on **Exhibit C** to the Motion, and pay any prepetition

or postpetition obligations related to the Insurance Policies, Insurance Brokerage Fees, and any other related expenses, including those amounts that would come due in the ordinary course within the thirty (30) days after the Petition Date; *provided*, that such payments on prepetition amounts shall not exceed $67,251 in the aggregate on an interim basis and shall be made in accordance with the Approved Budget (the "Interim Cap").

4.      The Debtors are authorized to renew, amend, supplement, extend, or purchase existing or additional insurance policies in the ordinary course of business on a postpetition basis (including by using the CAC Deposit to bind and purchase an independent director D&O Insurance Policy), as well as replace the Insurance Broker as may be necessary; *provided that* the Debtors shall consult with any official committee appointed in these chapter 11 cases, and provide reasonable notice to the U.S. Trustee, before making any material modification, cancelation, or purchase of any insurance policy or replacing of the Insurance Broker.

5.      The Debtors are authorized to continue performing under their existing Premium Financing Agreements and enter into new premium financing agreements in the ordinary course of business in accordance with the same practices and procedures as were in effect prior to the commencement of these chapter 11 cases, to the extent that the Debtors determine such action is in the best interest of their estates; *provided that* the Debtors shall provide notice to the U.S. Trustee and any official committee appointed in these chapter 11 cases within seven (7) days of entry into a new premium finance agreement; and provided further that the Debtors shall not enter into any new premium financing agreements that are materially adverse to the Debtors' estates absent further order of this Court.

6.      Pursuant to section 362(d) of the Bankruptcy Code, to the extent any of the Debtors' employees hold claims under or in connection with the Workers' Compensation Program, the

Debtors may authorize their employees to proceed with their claims related to the Workers' Compensation Program through and including the collection or payment of any judgment or claim under the Workers' Compensation Program; *provided*, that, the prosecution of such claims is in accordance with the Workers' Compensation Program and the recoveries are limited to the proceeds available under the Workers' Compensation Program.

7.      Nothing in this Interim Order shall constitute a postpetition assumption of any obligations related to the Insurance Policies pursuant to section 365 of the Bankruptcy Code.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty to inquire otherwise and without liability for following the Debtors' instructions.

9.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of the relief set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored as a result of the commencement of these chapter 11 cases.

10.      Nothing in this Interim Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or

granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  Any payment made pursuant to this Interim Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

11.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

12.     The requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

15.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 ([•]) |
| Debtors. | (Jointly Administered) |
|  | **Ref: Docket Nos. [•]& [•]** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY THEIR OBLIGATIONS UNDER PREPETITION INSURANCE POLICIES, (B) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (C) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE, (D) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS, AND (E) CONTINUE THE WORKERS' COMPENSATION PROGRAM, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of AGDP Holding Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order") (i) authorizing, but not directing, the Debtors to (a) pay their obligations under the Insurance Policies entered into prepetition, (b) continue to pay certain brokerage fees, (c) renew, supplement, modify, or purchase insurance coverage in the ordinary course of business, (d) enter into new financing agreements in the ordinary course of business, and (e) continue the Workers' Compensation Program, and (ii) granting related relief, each as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

33418082.6

being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Motion having been given; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The relief requested in the Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized to continue the Insurance Policies, including, but not limited to, the Insurance Policies identified on **<u>Exhibit C</u>** to the Motion, and pay any prepetition or postpetition obligations related to the Insurance Policies, Insurance Brokerage Fees, and any other related expenses.

3.      The Debtors are authorized to renew, amend, supplement, extend, or purchase existing or additional insurance policies in the ordinary course of business on a postpetition basis (including by using the CAC Deposit to bind and purchase an independent director D&O Insurance Policy), as well as replace the Insurance Broker as may be necessary; *provided*, that the Debtors shall consult with any official committee appointed in these chapter 11 cases, and provide reasonable notice to the U.S. Trustee, before making any material modification, cancelation, or purchase of any insurance policy or replacing of the Insurance Broker.

4.      The Debtors are authorized to continue performing under their existing Premium Financing Agreements and enter into new premium financing agreements in the ordinary course of business in accordance with the same practices and procedures as were in effect prior to the

commencement of these chapter 11 cases, to the extent that the Debtors determine such action is in the best interest of their estates; *provided, that* the Debtors shall provide notice to the U.S. Trustee and any official committee appointed in these chapter 11 cases within seven (7) days of entry into a new premium finance agreement; and *provided further*, that the Debtors shall not enter into any new premium financing agreements that are materially adverse to the Debtors' estates absent further order of this Court.

5.      Pursuant to section 362(d) of the Bankruptcy Code, to the extent any of the Debtors' employees hold claims under or in connection with the Workers' Compensation Program, the Debtors may authorize their employees to proceed with their claims related to the Workers' Compensation Program through and including the collection or payment of any judgment or claim under the Workers' Compensation Program; *provided*, that, the prosecution of such claims is in accordance with the Workers' Compensation Program and the recoveries are limited to the proceeds available under the Workers' Compensation Program.

6.      Nothing in this Final Order shall constitute a postpetition assumption of any obligations related to the Insurance Policies pursuant to section 365 of the Bankruptcy Code.

7.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty to inquire otherwise and without liability for following the Debtors' instructions.

8.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of the relief set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored as a result of the commencement of these chapter 11 cases.

9.      Nothing in this Final Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or non-bankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  Any payment made pursuant to this Final Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

10.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

11.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

12.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Final Order.

# **EXHIBIT C**

**Insurance Policies**

## Schedules of Insurance Policies

### Insurance Policies

| Carrier | Type of Coverage | Policy Number | Effective Date | Expiration Date | Approximate Annual Premiums |
|---|---|---|---|---|---|
| Standard Security Life Insurance Co of NY | NY Statutory Disability | #R02726-402 | April 1, 2025 | Continuous | $76,228 |
| The NY State Insurance Fund | Workers Compensation Employers Liability | #K2411850-7 | March 14, 2025 | March 14, 2026 | $92,667 |
| StarStone Specialty Insurance Co | Directors & Officers Liability | #DNO00235466 P-00 | October 30, 2024 | October 30, 2025 | $33,531 |
| Republic Vanguard Insurance Co | XS Directors & Officers Liability | #RVA10668740 0 | May 30, 2025 | October 30, 2025 | $28,780 |
| StarStone Specialty Insurance Co | Employment Practices Liability | #DNO00235717 P-00 | October 30, 2024 | October 30, 2025 | $47,541 |
| Hiscox Insurance Co | Crime Coverage | #UC24380024.2 4 | October 30, 2024 | October 30, 2024 | $12,709 |
| Beazley Excess & Surplus Lines Ins Inc. | Deadly Weapons Coverage | #D33561240301 | October 1, 2024 | October 1, 2025 | $79,618 |
| Zurich American Insurance Company | Commercial Property | #ERP3219101-06 | January 21, 2025 | January 21, 2026 | $125,821 |
| Homeland Ins Co of Delaware | XS Property Over Above Zurich Policy | #795028449 | January 21, 2025 | January 21, 2026 | $103,750 |
| Underwriters at Lloyd's | Standalone Terrorism | #25PAA000282 | January 21, 2025 | January 21, 2026 | $4,311 |
| Ascot Ins Co | Inland Marine - Smaller Video Screen | #IMMA2210001 391-0 | July 23, 2025 | January 19, 2026 | $15,610 |
| Vantage Risk Assurance Co | Inland Marine - Larger Video Screen | #IMA25005497-01 | July 23, 2025 | January 23, 2026 | $67,861 |
| Zurich American Insurance Company | Pollution Policy | #ZRE 0285273 00 | May 11, 2017 | May 11, 2027 | $126,601 |
| HDI Global Specialty SE | General Liability | #HDGL0037013 65 | June 23, 2024 | August 23, 2025 | $812,794 |
| Texas Ins Co | Lead XS Policy | #BESGLXTNY 011401170401 01 | June 23, 2024 | August 23, 2025 | $801,754 |
| Axis Surplus Insurance Co | Second XS Policy | #P00100006452 1604 | June 23, 2024 | August 23, 2025 | $415,000 |
| State Farm Mutual Automobile Insurance Co. | Auto Insurance | 2301201-B18-32B | February 18, 2025 | February 18, 2026 | $7,414 |
| **Total Premiums** | | | | | **$2,851,990** |

33418082.6