## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION
### FOR ENTRY OF INTERIM AND FINAL ORDERS
### (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO
### (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER
### COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
### EMPLOYEE BENEFIT PROGRAMS AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (the "Motion"):[2]

### RELIEF REQUESTED

1.     The Debtors seek entry of an interim order and a final order (respectively,

the "Proposed Interim Order" and the "Proposed Final Order"), substantially in the forms attached

hereto as **Exhibit A** and **Exhibit B**, respectively, granting, among other things, the following

relief:

       i.     authorizing, but not directing, the Debtors to:

          a.  pay prepetition wages, salaries, other compensation, and reimbursable expenses, and

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Gary Richards in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the First Day Declaration, as applicable.

33418084.9

  b. continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto, each as set forth herein; and

 ii. granting related relief.

2. In sum, the Debtors estimate that the prepetition amount owing to Employees in the aggregate is approximately $800,000.  Of such amount, approximately $750,000 is due and payable within thirty (30) days after the Petition Date.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory and legal bases for the relief requested in this Motion are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1.

## BACKGROUND OF THE DEBTORS

6. The Debtors operate a multi-space entertainment venue complex, specializing in large-scale live entertainment—concerts, festivals, corporate functions, and multimedia events—

and are known for state-of-the-art audiovisual production, including a 2022 upgrade featuring one of the world's highest-resolution video walls.  The Debtors focus on industry-leading production capabilities, immersive audiovisual experiences, and status as one of North America's largest standing-room-only entertainment venues.

7.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these cases, and no statutory committee has been appointed.

8.      Additional information regarding the Debtors' businesses, capital structures and circumstances preceding the Petition Date may be found in the First Day Declaration.

## THE DEBTORS' WORKFORCE

9.      As of the Petition Date, the Debtors employ approximately 465 employees, working in both full- and part-time positions (collectively, the "Employees").  Of these, approximately 15 are salaried Employees, and approximately 450 Employees are paid on an hourly basis when they work.  The Employees perform a variety of functions critical to the preservation of value and the administration of the Debtors' estates.  In many instances, the Employees include personnel who are intimately familiar with the Debtors' businesses, processes, and systems, and who cannot be easily replaced.  Without the continued, uninterrupted services of the Employees, the Debtors simply could not run their business and preserve value for the benefit of the stakeholders.

10.     In addition to the Debtors' Employees, as of the Petition Date, the Debtors utilize the services of one independent contractor (the "Independent Contractor").  The Independent Contractor, along with the Debtors' Employees, is critical to the success of the Debtors' business

and is responsible for ensuring, among other things, that the Debtors' operations continue to run smoothly and effectively. The Independent Contractor performs a number of functions for the Debtors, but is primarily focused on management and executive advisory services.

## EMPLOYEE COMPENSATION AND BENEFITS

11. Like many similarly-situated companies, the Debtors maintain certain compensation and benefits programs and pay various administrative fees and insurance premiums in connection therewith (collectively, the "Employee Compensation and Benefits"), including the following (each as defined below): Employee Wages, Independent Contractor Obligations, Additional Compensation Obligations, Withholding Obligations, Payroll Processing Fees, Reimbursable Expenses, and Employee Benefit Obligations.

12. The Debtors estimate that, as of the Petition Date, they owe certain outstanding amounts in connection with the Employee Compensation and Benefits programs (the "Prepetition Employee Obligations"). The following chart summarizes the Debtors' estimates of (a) the Prepetition Employee Obligations that may come due within approximately the first thirty (30) days following the Petition Date (such amounts, the "Interim Amounts") and (b) the total Prepetition Employee Obligations that may come due during the pendency of these chapter 11 cases (the "Total Amounts"), which amounts are described in further detail below, and in each case reflect the priority claim amount cap and correspond to the monetary relief sought in the Proposed Interim Order and the Proposed Final Order:[3]

---

[3] The Debtors' Prepetition Employee Obligation do not exceed the $17,150 priority claim cap set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code for any individual.

| Employee Compensation and Benefits | Interim Amounts | Total Amounts |
|---|---|---|
| **Compensation** | **$410,000** | **$430,000** |
| Employee Wages | **$350,000** | **$350,000** |
| Independent Contractor Obligations | **$30,000** | **$30,000** |
| Additional Compensation Obligations | **$30,000** | **$50,000** |
| **Withholding Obligations** | **$150,000** | **$150,000** |
| **Payroll Processing Fees** | **$20,000** | **$20,000** |
| **Reimbursable Expenses** | **$60,000** | **$60,000** |
| **Employee Benefit Obligations** | **$94,200** | **$94,200** |
| **Total (with cushion)** | **$750,000** | **$800,000** |

13.     Many of the Employees and Independent Contractors rely on the Employee Compensation and Benefits to pay their daily living expenses.  Thus, these individuals and their families will experience significant financial hardship if the Court does not permit the Debtors to continue providing the Employee Compensation and Benefits, including the payment of Prepetition Employee Obligations, on an uninterrupted basis.  Further, the Debtors' failure to honor their prepetition and postpetition obligations in connection with the Employee Compensation and Benefits could cause attrition that would be catastrophic to the administration of these chapter 11 cases and threaten the Debtors' sale efforts.

14.     The Debtors seek to minimize the personal hardship that the Employees and the Independent Contractor will suffer (and the attrition the Debtors likely would suffer) if Employee Compensation and Benefits obligations, including the Prepetition Employee Obligations, are not timely paid or remitted during these chapter 11 cases.  The Debtors, therefore, seek authorization to continue administering their prepetition Employee Compensation and Benefits in the ordinary course of business on a postpetition basis, as applicable, consistent with the manner summarized in the chart above and described in more detail below.  Out of an abundance of caution, the Debtors further request confirmation of their right to modify, change, and/or discontinue any of their Employee Compensation and Benefits and/or to implement new programs, policies, and benefits

in the Debtors' discretion in the ordinary course during these chapter 11 cases (subject in all respects to the terms of any entered interim or final order, as applicable) without the need for further Court approval, subject to applicable law.

## I. Compensation, Withholding Obligations, Payroll Processing, and Reimbursable Expenses.

### A. Employee Wages.

15.    In the ordinary course of business, the Debtors incur obligations to their Employees for wages, overtime, on-call support, and similar obligations (the "Employee Wages"). The Debtors process payroll semi-monthly and weekly and Employees are paid current utilizing Automatic Data Processing, Inc. ("ADP") payroll management software. The majority of the Debtors' payroll is made by direct deposit through electronic transfer of funds to the Employees' bank accounts or other electronic means. Employee Wages accrue on either a salaried or hourly basis. Salaried employees are paid on a semi-monthly basis, while hourly employees are paid on a weekly basis.

16.    The average gross weekly payroll on account of Employees is approximately $200,000. The Debtors estimate that, as of the Petition Date, they owe approximately $350,000 in Employee Wages to their Employees, all of which will become due and owing within the first thirty (30) days after the Petition Date (the "Interim Period").

### B. Independent Contractor Obligations.

17.    As described above, the Debtors rely on the Independent Contractor for management and executive advisory services. The authority to continue paying their Independent Contractor is critical to maintaining the Debtors' business operations and maximizing the value of their estates.

18.     In the six-month period before the Petition Date, the Debtors incurred approximately $150,000 in payment obligations to the Independent Contractor (the "Contractor Obligations").  As of the Petition Date, the Debtors estimate that they owe approximately $30,000 in accrued but unpaid Contractor Obligations, all of which will become due and owing during the Interim Period.

### C.     Additional Compensation Obligations.

19.     The Debtors provide various forms of additional compensation (collectively, the "Additional Compensation Obligations") to certain Employees, as described below.[4]

20.     Employees earn commissions when they sell table service to a customer. Commissions are worth 5% to 10% of the value of the table. In addition, tips are earned by staff working primarily in the food and beverage operations as well as table service.

21.     As of the Petition Date, the Debtors' estimate that they owe approximately $50,000 in additional compensation obligations, $30,000 of which will become due and owing during the Interim Period.

### D.     Withholding Obligations.

22.     In the ordinary course of business, the Debtors incur obligations on account of Payroll Deductions and Payroll Taxes (each as defined below and collectively, the "Withholding Obligations").  In the month prior to the Petition Date, the Debtors incurred approximately $250,000 in total Withholding Obligations.  As of the Petition Date, the Debtors estimate that they

---

[4] The relief sought under this Motion with respect to the Additional Compensation Obligations relates only to generally applicable programs and does not include the payment of any non-ordinary course bonus or incentive obligation to any insider, as such term is defined in section 101(31) of the Bankruptcy Code (the "Insiders").  The Debtors shall not pay any non-ordinary course bonus or incentive amounts to any Insiders without further order of the Court.  For the avoidance of doubt, the Debtors reserve all rights with respect to the classification of any Employee as an Insider.

owe approximately $150,000 in total Withholding Obligations.  The Debtors respectfully request the authority, but not direction, to continue to honor their Withholding Obligations in the ordinary course; *provided*, *for the avoidance of doubt*, the Debtors are not requesting the authority, or the direction, to pay past-due Withholding Obligations.

1.     *Payroll Deductions*

23.     During each payroll period, the Debtors deduct certain amounts from Employees' paychecks, including garnishments, child support, and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of healthcare, dental and vision benefits, flexible spending account ("FSA") contributions, insurance premiums, 401(k) contributions, legally ordered deductions, and miscellaneous deductions (collectively, the "Payroll Deductions"), and forward the Payroll Deductions to various third-party recipients.  On average, the Debtors withhold and remit approximately $20,000 per month on account of the Payroll Deductions.

2.     *Payroll Taxes*

24.     In addition to the Payroll Deductions, certain federal and state laws require that the Debtors withhold amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes for remittance to the appropriate federal, state, or local taxing authorities (collectively, the "Employee Payroll Taxes").  The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (collectively, the "Employer Payroll Taxes," and together with the Employee Payroll Taxes, the "Payroll Taxes").  The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities in accordance with remittance intervals and deadlines established by those taxing authorities.   On average, the Debtors remit

approximately $230,000 per month on account of Payroll Taxes.  The Debtors believe that any amounts held by the Debtors on account of the Withholding Obligations generally are held in trust by the Debtors pursuant to federal and state law and therefore are not property of its estate.

25.     As of the Petition Date, the Debtors estimate that they owe approximately $130,000 on account of the Payroll Taxes, all of which must be remitted during the Interim Period.

### E.    Payroll Processing Fees.

26.     On a monthly basis, the Debtors pay payroll processing fees (the "Payroll Processing Fees") to ADP. These payments are initiated via a manual automated clearing house process.

27.     The Debtors estimate that they spend approximately $10,000 per month on the Payroll Processing Fees.

28.     As of the Petition Date, the Debtors estimate that they owe approximately $20,000 on account of the Payroll Processing Fees, all of which will come due during the Interim Period.

### F.    Reimbursable Expenses.

29.     In the ordinary course of business, the Debtors reimburse Employees for certain pre-approved expenses incurred on behalf of the Debtors within the scope of their employment (the "Reimbursable Expenses").  Reimbursable Expenses include, among other expenses, business travel-related expenses such as air travel, lodging, car rental / car mileage allowance, meal allowances, business-related entertainment expenses, some general operational expenses and certain mobile phone expenses.  Employees generally pay for their own Reimbursable Expenses up front (i.e., not via a company credit card) and then apply for reimbursement of such expenses by submitting an expense report to the Debtors.  Once the Debtors determine that the charges are for allowable reimbursable business expenses, the Debtors reimburse such Employees for any such expenses.

30.     The Debtors' inability to reimburse the Reimbursable Expenses could impose a hardship on the Employees where such individuals incurred obligations for the Debtors' benefit. Employees incurred the Reimbursable Expenses as business expenses on the Debtors' behalf and with the understanding that such expenses would be reimbursed.

31.     During the three-month period before the Petition Date, the Debtors incurred a monthly average of approximately $40,000 on account of Reimbursable Expenses.  Due to the timing of when Employees submit Reimbursable Expenses, it is difficult for the Debtors to precisely estimate the amount of prepetition Reimbursable Expenses outstanding as of the Petition Date.  Based on historical practice, however, the Debtors estimate that as of the Petition Date, they owe approximately $60,000 on account of Reimbursable Expenses.

32.     Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to honor their Reimbursable Expenses and to pay any prepetition claims with respect thereto in the ordinary course of business and consistent with historical practices.

33.     In addition to reimbursement of the Reimbursable Expenses, the Debtors also provide certain Employees or company departments with corporate cards (the "Corporate Cards") for business expenses.  The Company Cards are PEX cards used on a debit system.  The Debtors wire funds from their bank account to the PEX card account and, if there is an active balance in the PEX card account, the administrator of the PEX card account allocates funds to the applicable Corporate Card.  As of the Petition Date, the Debtors estimate that the outstanding balance for the Company Cards is no more than $5,000.  By this Motion, the Debtors seek authority, but not direction, to pay any prepetition obligations that may have accrued but have not yet been paid on account of the Corporate Cards.

## II.    Employee Benefit Obligations.

34.    In the ordinary course of business, the Debtors maintain various employee benefit plans and policies, including, but not limited to, medical plans, dental plans, vision plans, FSA, life insurance and AD&D plans, short-term, long-term, and supplemental disability plans, long-term care, other paid time off, and a 401(k) plan (collectively, the "Employee Benefit Obligations").  The Employee Benefit Obligations are, in each case, available to all Employees who work the requisite hours per week for a given benefit or who otherwise satisfy the eligibility requirements for any of the Employee Benefit Obligations (the "Eligible Employees," and with respect to each plan or program in which they participate, the "Plan Participants").

35.    The Debtors seek authority, in their discretion, to pay prepetition claims (if applicable) to honor obligations, and to continue programs in the ordinary course of business and consistent with prior practice relating to the Employee Benefit Obligations subject to the Debtors' ability to modify or discontinue any of the Employee Benefit Obligations in their discretion or to adjust applicable costs, the scope of benefits provided, or reporting periods permitted thereunder.

36.    Failure to continue the Employee Benefit Obligations could cause Employees to experience severe hardship or leave the Debtors' workforce.  Accordingly, the Debtors respectfully request that the Court authorize, but not direct, the Debtors to continue to honor their Employee Benefit Obligations and to pay any prepetition claims with respect thereto in the ordinary course of business.  The Employee Benefit Obligations include the following.

### A.    Medical Coverage.

37.    The Debtors provide Eligible Employees with fully insured medical and prescription coverage programs through third-party administrator Corporate Synergies Group, LLC (the "Medical Coverage Administrator").  Employees have the option to waive coverage if they are covered under another insurance plan.  Eligible Employees have the option to participate

in UnitedHealthcare Oxford health plans.  Under the Medical Coverage, preventative care visits, emergency care, pharmacy, and domestic partner coverage are all offered.

38.     On average, the Debtors cover approximately sixty percent (60%) to eighty percent (80%) of the cost of premiums, while the Eligible Employees cover the remaining twenty percent (20%) to forty percent (40%).   Legal spouses, domestic partners and children are eligible dependents able to be covered under the Medical Coverage plans.   Approximately ten percent (10%) of Employees enroll in Medical Coverage.  The annual cost of the Medical Coverage to the Debtors is approximately $350,000.   As of the Petition Date, the Debtors believe there are no outstanding amounts with respect to the (a) Medical Coverage premiums and (b) medical and pharmacy claims; however, the Debtors may owe up to $75,000 in prepetition Medical Coverage all of which will become due and owing within the Interim Period.

**B.     FSA Program.**

39.     In addition to offering the medical benefits described above, the Debtors offer Employees the option to enroll in certain flexible spending accounts (the "Flexible Spending Accounts"), which are administered by Flex Facts ("Flex Facts"). Participating Employees make pre-tax payroll contributions to the Flexible Spending Accounts up to the maximum amounts permitted by the Internal Revenue Service.  Employees may use the proceeds of Flexible Spending Accounts to, among other things, cover the cost of eligible health care expenses incurred by such Employees and/or their dependents, depending on the Flexible Spending Account in which they are enrolled.  The Debtors disburse, on average, approximately $200 per month on account of Flexible Spending Accounts.  As of the Petition Date, the total accrued but unpaid obligations owed by the Debtors relating to the Flexible Spending Accounts is approximately $200, all of which will come due and owing during the Interim Period.

**C.     Voluntary Term Life Insurance.**

40.     The Debtors offer to all Eligible Employees the option of participating in voluntary term life insurance ("Life Insurance") administered by Principal. Employees have the option to enroll in the Life Insurance pay one-hundred percent (100%) of the cost.

**D.     Supplemental Life, AD&D, and Long-Term Care Insurance.**

41.     The Debtors offer to all Eligible Employees basic life and accidental death and dismemberment insurance (the "Life and AD&D Insurance") as well as long-term and short-term disability insurance (the "Disability Benefits") through Principal.  The Life and AD&D Insurance is funded by the Debtors up to $50,000.

42.     The Debtors pay, on average, approximately $6,000 per month for the Life and AD&D Insurance and the Disability Benefits.  As of the Petition Date, the total accrued but unpaid obligations owed by the Debtors relating to Life and AD&D Insurance and Disability Benefits is approximately $6,000, all of which is coming due and owing during the Interim Period.

**E.     Voluntary Supplemental Individual Disability Insurance.**

43.     The Debtors offer to all Eligible Employees the option of participating in voluntary short-term disability insurance (the "Short Term Disability Insurance") administered by Principal. Employees have the option to enroll in the Short Term Disability Insurance pay one-hundred percent (100%) of the cost.

**F.     Voluntary Specified Disease Insurance.**

44.     The Debtors offer to all eligible Employees the option of participating in voluntary specified disease insurance (the "Specified Disease Insurance") administered by Principal. Employees have the option to enroll in the Specified Disease Insurance pay one-hundred percent (100%) of the cost.

G. **Dental Insurance Coverage.**

45.     Additionally, the Debtors offer all eligible Employees the option of participating in dental plans (the "Dental Plans") administered by Principal.  The Debtors offer Employees a PPO Plan.  The Debtors pay, on average approximately $1,000 per month towards the Dental Plans.  As of the Petition Date, the total accrued but unpaid obligations owed by the Debtors relating to the Dental Plan is approximately $1,000, all of which will come due and owing during the Interim Period.

H. **Vision Insurance Coverage.**

46.     The Debtors also offer al eligible Employees the option of participating in a vision plan (the "Vision Plan") administered through VSP Vision.  As of the Petition Date, the total accrued but unpaid obligations owed by the Debtors relating to the Vision Plan is approximately $1,000, all of which will come due and owing during the Interim Period.

I. **Workers Compensation Program.**

47.     The Debtors maintain a workers' compensation program (the "Workers' Compensation Program") for their employees at the level required by law for claims arising from or related to their employment with the Debtors and to satisfy the Workers' Compensation Program (such amounts, the "Workers' Compensation Obligations").

48.     Additional information regarding the processing of payments under the Workers' Compensation Program and the Workers' Compensation Obligations is contained in the Insurance Motion. All relief with respect to the Workers' Compensation Program is being sought pursuant to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (a) Pay Their Obligations Under Prepetition Insurance Policies, (b) Continue to Pay Certain Brokerage Fees, (c) Renew, Supplement, Modify, or Purchase Insurance Coverage, (d) Enter into New*

*Financing Agreements in the Ordinary Course of Business, and (e) Continue the Workers'*
*Compensation Program, and (II) Granting Related Relief*, filed concurrently herewith.

### J.    COBRA.

49.    The Debtors do not incur any costs associated with the COBRA benefits outside of costs associated with the COBRA benefits administrator, CobraHelp, which is approximately $100 per month.

### K.    401(k) Plan.

50.    The Debtors, offer a 401(k) plan for the benefit of their Eligible Employees (the "401(k) Plan"), which is administered through CMC Interactive, LLC.  The 401(k) Plan permits eligible full-time Employees to defer a portion of their wages into the 401(k) Plan, which are deducted from Employees' paychecks.

51.    Employees enrolled in the 401(k) Plan can contribute up to the maximum amount permitted under federal law.  On behalf of Employees enrolled in the 401(k) Plan, subsequent to each pay period, the Debtors remit approximately $8,000 for contributions for Employees' 401(k) Plans each month.  Additionally, the Debtors may make a basic safe harbor matching contribution equal to one hundred percent (100%) of your salary deferrals that do not exceed three percent (3%) of Employees compensation plus fifty percent (50%) of Employees salary deferrals between three percent (3%) and five percent (5%) of Employees compensation.

52.    As of the Petition Date, the total accrued but unpaid obligations owed by the Debtors relating to the 401(k) Plans is approximately $10,000, all of which is coming due and owing during the Interim Period.

**L.    Paid Leave.**

53.    Permanent full-time non-exempt Employees receive 10 vacation days and sick days, as well as 10 floating holidays (the "Paid Time Off").  Accrual of the days begin on the respective Employee's first day.

54.    As of the Petition Date, the total unpaid obligations owed by the Debtors relating to Paid Time Off is approximately $435,000.  The Debtors are not requesting the authority, or the direction, to pay amounts relating to the Paid Time Off.

**M.    Paid Parental Leave.**

55.    Permanent full-time, nonexempt, Employees at senior manager level or above receive twelve (12) weeks of paid parental leave after one (1) year of employment.

56.    As of the Petition Date, the total accrued obligations owed by the Debtors relating to paid parental leave is approximately $23,300.

**N.    Additional Benefit Programs.**

  1.    Employee Assistance Program

57.    Employees have the option to participate in the employee assistance program (the "Employee Assistance Program") at no cost to the Employee or household family members. Participants have access to Employee Assistance Program counselors to help address a variety of needs including: marital and family relationships, legal & financial problems, stress management, alcohol & substance abuse, crisis management, parenting difficulties, domestic violence, physical & mental illness, and grief or loss.

58.    As of the Petition Date, the total unpaid obligations owed by the Debtors relating to Employee Assistance Programs is approximately $1,000.

2.      IDShield – 360 Degree Protection

59.     The Debtors offer to all eligible Employees the option of participating in voluntary IDShield protection ("IDShield").  IDShield monitors Employees' identity, credit, and financial accounts, and IDShield provides device and online reputation management services.  Employees pay the cost of this coverage, which is $10.95 per month for individual Employees or $20.95 per month for families.

60.     As of the Petition Date, the Debtors do not owe amounts relating to IDShield.

3.      MetLife Legal Assistance

61.     The Debtors offer to all eligible Employees the option of participating in legal assistance administered by MetLife (the "Legal Assistance Program").  The Legal Assistance Program gives Employees, their spouses, and their dependents access to legal assistance for some of the most frequently needed personal legal matters.  Employees pay the cost of this coverage, which is $19.50 per month.

62.     As of the Petition Date, the Debtors do not owe amounts relating to the Legal Assistance Program.

4.      Commuter Benefits Program

63.     The commuter benefits program (the "Commuter Benefits Program") administered by Flex Facts allows Employees to use pre-tax dollars to pay for commuting expenses. The Commuter Benefits Program covers all types of commuting.

64.     As of the Petition Date, the Debtors do not owe amounts relating to the Commuter Benefits Program.

## BASIS FOR RELIEF REQUESTED

I.    **Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits.**

A.    **Certain Employee Compensation and Benefits Are Entitled to Priority Treatment.**

65.    Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code grant priority treatment to certain of the Employee Compensation and Benefits owed to the Employees.  The Debtors are required to pay such priority claims in full to confirm a chapter 11 plan.[5]  To the extent that an Employee receives no more than the statutorily prescribed limit on account of claims entitled to priority, granting the relief sought herein should only affect the timing of certain payments to the Employees and should not negatively affect recoveries for general unsecured creditors.

66.    Payment of the Employee Compensation and Benefits as set forth in this Motion enhances value for the benefit of all interested parties and reduces the risk of Employee attrition that would inevitably result if payment were to cease.  As described in the First Day Declarations, maintaining, and motivating the Debtors' workforce is vital to the Debtors' efforts to implement a sale process through these chapter 11 cases and otherwise wind down their operations.

67.    Indeed, the Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties.  Finding, attracting, and training new qualified talent would be extremely difficult and would most likely require higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are currently provided to Employees and Independent Contractors.

---

[5] *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including sick leave pay earned by an individual and (b) contributions to an employee benefit plan).

**B.      Payment of Certain Employee Compensation and Benefits Is Required by Law.**

68.      As discussed above, the Debtors seek authority to pay the Withholding Obligations to the appropriate third-party payees.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' wages.  Certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' wages on behalf of other parties. *See* 11 U.S.C. §§ 541(b)(1), (d).  Federal and state laws require the Debtors to withhold certain tax payments from Employees' wages and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request authorization to transmit the Withholding Obligations to the proper parties in the ordinary course of business.  *See In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998).

69.      The Debtors, therefore, respectfully request that the Court authorize, but not direct, the Debtors to transmit amounts collected for Withholding Obligations to the proper parties in the ordinary course of business.

**II.      Payment of the Employee Compensation and Benefits Is Proper Pursuant to Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.**

70.      Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing.  11 U.S.C. § 363(c)(1).  The Debtors submit that

obligations on account of the Insurance Policies are within the ordinary course of business and thus may be continued in the Debtors' discretion under section 363(c)(1) of the Bankruptcy Code. In the alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363(b) of the Bankruptcy Code, courts in this jurisdiction require only that the debtor provide some "articulated business justification" for the proposed use of property.  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (requiring only that the debtor "show that a sound business purpose" justifies the proposed use of property); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring a "good business reason" for use of property under section 363(b) of the Bankruptcy Code).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

71.    Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).  Pursuant to section 105(a), the "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581–82 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet,*

*Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan). Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Court may grant the relief requested herein.

72.     Payment of the Employee Compensation and Benefits is warranted under this authority and the facts of these chapter 11 cases. Many of the Employees rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses. Consequently, Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation and Benefits. Additionally, continuing ordinary course benefits will help maintain Employee morale and minimize the adverse effect of the commencement of these chapter 11 cases on the Debtors' ongoing business operations.

73.     Moreover, Employees provide the Debtors with services necessary to conduct the Debtors' business, and the Debtors believe that absent the payment of the Employee Compensation and Benefits, the Debtors may experience turnover and instability at this critical time in these chapter 11 cases. The Debtors believe that without these payments, the Employees may become demoralized and unproductive because of the potential significant financial strain and other hardships these Employees may face. Such Employees may then elect to seek alternative employment opportunities. Additionally, a significant portion of the value of the Debtors' business is tied to their workforce, which cannot be replaced without significant efforts—efforts that might not be successful given the overhang of these chapter 11 cases. Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario. The Debtors therefore believe that

payment of the prepetition obligations with respect to the Employee Compensation and Benefits is a necessary and critical element of the Debtors' efforts to preserve value and will give the Debtors the greatest likelihood of retention of their Employees as the Debtors seek to operate their business in these chapter 11 cases.

**DEBTOR'S BANKS SHOULD BE AUTHORIZED TO
HONOR CHECKS AND ELECTRONIC FUNDS TRANSFERS**

74.      The Debtors anticipate having sufficient funds to pay the amounts described in this Motion, including by virtue of the DIP Financing.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment pursuant to this Motion.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.  Any such financial institution may rely on the representations of such Debtors as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

**THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**

75.      The Debtors assert that immediate relief is necessary to avoid immediate and irreparable harm.  Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, entry of the Proposed Interim Order is integral to the Debtors' ability to successfully transition into chapter 11 and run an orderly sale.  Specifically, the relief requested is necessary to avoid a severe disruption of the Debtors' sale process and operations at this critical juncture and, in turn, to preserve and maximize the value

of the Debtors' estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully requests that the Court approve the relief requested in this Motion.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

76.    The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors' ongoing operations and value-maximization process. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## RESERVATION OF RIGHTS

77.    Nothing contained herein or any action taken pursuant to relief requested is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of

any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

## **NOTICE**

78.    Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors; (c) Alter Domus (US) LLC, in its capacity as administrative agent and collateral agent under the Prepetition Financing Agreement and the DIP Facility; (d) counsel to the DIP Lenders and Prepetition Term Loan Lender; (e) counsel to LiveStyle; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; (i) ADP; (j) the Medical Coverage Administrator; (k) Flex Facts; (l) Principal; (m) VSP Vision; (n) CobraHealth; (o) CMC Interactive, LLC; (p) IDShield; (q) MetLife; and (r) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.


*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of an interim order and a final order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  August 4, 2025
        Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ *S. Alexander Faris*
Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Kenneth J. Enos (No. 4544)
S. Alexander Faris (No. 6278)
Sarah Gawrysiak (No. 7403)
Evan S. Saruk (No. 7452)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  sbeach@ycst.com
        emorton@ycst.com
        kenos@ycst.com
        afaris@ycst.com
        sgawrysiak@ycst.com
        esaruk@ycst.com

*Proposed Counsel to the Debtors and Debtors in Possession*

33418084.9

**Exhibit A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 ([•]) |
| Debtors. | (Jointly Administered) |
| | **Ref: Docket No. [•]** |

**INTERIM ORDER (I) AUTHORIZING,**
**BUT NOT DIRECTING, THE DEBTORS TO (A) PAY PREPETITION EMPLOYEE**
**WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES**
**AND (B) CONTINUE EMPLOYEE BENEFIT PROGRAMS AND (II) GRANTING**
**RELATED RELIEF**

Upon the motion ("Motion")[2] of AGDP Holding Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") (i) authorizing, but not directing, the Debtors to (a) pay prepetition wages, salaries, commissions, other compensation, and reimbursable expenses and (b) continue employee benefit programs in the ordinary course, including payment of certain prepetition obligations related thereto; (ii) granting related relief, each as more fully set forth in the Motion;  and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431).  The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for hearing on the Motion having been given; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The relief requested in the Motion is GRANTED on an interim basis as set forth herein.

2.      The final hearing on the Motion shall be held on [•], 2025, at [•] (prevailing Eastern Time) (the "Final Hearing").  Any objections or responses to entry of the proposed final order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on [•], 2025, and shall be served on (a) the Debtors, 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel; (b) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE, Attn: Sean M. Beach (sbeach@ycst.com), S. Alexander Faris (afaris@ycst.com) and Evan S. Saruk (esaruk@ycst.com); (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jonathan W. Lipshie (Jon.Lipshie@usdoj.gov); and (d) counsel to any statutory committee appointed in these chapter 11 cases.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter a final order without need for the Final Hearing.

3.      The Debtors are authorized, but not directed, to: (a) continue, modify, change, or discontinue the Employee Compensation and Benefits in the ordinary course of business during these chapter 11 cases without the need for further Court approval in their discretion, subject to applicable law; and (b) pay and honor prepetition amounts outstanding under or related to the

Employee Compensation and Benefits programs in the ordinary course of business within the thirty (30) days after the Petition Date; provided that such payments on prepetition amounts shall not exceed the amounts in the chart set forth below on an interim basis; provided, further, that the Debtors shall not make any payments to any Employee or Independent Contractor that exceeds the statutory cap on priority status set forth in sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code absent further order of this Court.

| Employee Compensation and Benefits | Interim Amounts |
|---|---|
| **Compensation** | **$410,000** |
| Employee Wages | **$350,000** |
| Independent Contractor Obligations | **$30,000** |
| Additional Compensation Obligations | **$30,000** |
| **Withholding Obligations** | **$150,000** |
| **Payroll Processing Fees** | **$20,000** |
| **Reimbursable Expenses** | **$60,000** |
| **Employee Benefit Obligations** | **$94,200** |
| **Total** | **$750,000** |

4.     Nothing in this Interim Order shall be construed as approving any transfer pursuant to section 503(c) of the Bankruptcy Code.  No payment to any Employee or Independent Contractor may be made pursuant to this Interim Order to the extent that such payment is a transfer in derogation of section 503(c) of the Bankruptcy Code.  For the avoidance of doubt, this Interim Order does not implicitly or explicitly approve any bonus plan, incentive plan, or other plan to the extent subject to section 503(c) of the Bankruptcy Code.

5.     Nothing herein shall be deemed to: (a) authorize the payment of any amounts in satisfaction of bonus or severance obligations, or which are subject to section 503(c) of the Bankruptcy Code; or (b) authorize the Debtors to cash out unpaid vacation/leave time upon termination of an employee unless applicable law requires such payment.

6.      The Debtors will seek approval of any insider bonus or incentive programs, if any, under separate motion under section 503(c) of the Bankruptcy Code.

7.      The Debtors are authorized, but not directed, to forward any unpaid amounts on account of the Withholding Obligations to the appropriate third-party recipients or taxing authorities in the ordinary course.

8.      The Debtors are authorized to maintain the Corporate Cards in the ordinary course of business.

9.      Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits.

10.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty to inquire otherwise and without liability for following the Debtors' instructions.

11.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

12.     Nothing in this Interim Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy

law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party

in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or

granting of approval for assumption of any agreement, contract, program, policy, or lease under

section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability,

or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors'

estates.  Any payment made pursuant to this Interim Order is not intended to be and should not be

construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in

interest's rights to subsequently dispute such claim.

13.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

14.    The requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied.

15.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim

Order are immediately effective and enforceable upon its entry.

16.    The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Interim Order in accordance with the Motion.

17.    This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation and enforcement of this Interim Order.

**Exhibit B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 ([•]) |
| Debtors. | (Jointly Administered)<br>**Ref: Docket Nos. [•] & [•]** |

**FINAL ORDER (I) AUTHORIZING, BUT NOT**
**DIRECTING, THE DEBTORS TO (A) PAY PREPETITION WAGES,**
**SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND**
**(B) CONTINUE EMPLOYEE BENEFIT PROGRAMS AND**
**(II) GRANTING RELATED RELIEF**

Upon the motion ("Motion")[2] of AGDP Holding Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order") (i) authorizing, but not directing, the Debtors to (a) pay prepetition wages, salaries, commissions, other compensation, and reimbursable expenses and (b) continue employee benefit programs in the ordinary course, including payment of certain prepetition obligations related thereto; (ii) granting related relief, each as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Motion having been given; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The relief requested in the Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed to: (a) continue, modify, change, or discontinue the Employee Compensation and Benefits in the ordinary course of business during these chapter 11 cases without the need for further Court approval in their discretion, subject to applicable law; and (b) pay and honor prepetition amounts outstanding under or related to the Employee Compensation and Benefits programs in the ordinary course of business; provided that such payments on prepetition amounts shall not exceed shall not exceed the amounts in the chart set forth below; provided, further, that the Debtors shall not make any payments to any Employee or Independent Contractor that exceeds the statutory cap on priority status set forth in sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code absent further order of this Court.

| Employee Compensation and Benefits | Total Amounts |
|---|---|
| **Compensation** | **$430,000** |
| Employee Wages | $350,000 |
| Independent Contractor Obligations | $30,000 |
| Additional Compensation Obligations | $50,000 |
| **Withholding Obligations** | **$150,000** |
| **Payroll Processing Fees** | **$20,000** |
| **Reimbursable Expenses** | **$60,000** |
| **Employee Benefit Obligations** | **$94,200** |
| **Total** | **$800,000** |

3.      Nothing in this Final Order shall be construed as approving any transfer pursuant to section 503(c) of the Bankruptcy Code. No payment to any Employee or Independent Contractor may be made pursuant to this Final Order to the extent that such payment is a transfer in derogation of section 503(c) of the Bankruptcy Code. For the avoidance of doubt, this Final Order does not implicitly or explicitly approve any bonus plan, incentive plan, or other plan to the extent subject to section 503(c) of the Bankruptcy Code.

4.      Nothing herein shall be deemed to: (a) authorize the payment of any amounts in satisfaction of bonus or severance obligations, or which are subject to section 503(c) of the Bankruptcy Code; or (b) authorize the Debtors to cash out unpaid vacation/leave time upon termination of an employee unless applicable law requires such payment.

5.      The Debtors will seek approval of any insider bonus or incentive programs, if any, under separate motion under section 503(c) of the Bankruptcy Code.

6.      The Debtors are authorized, but not directed, to forward any unpaid amounts on account of the Withholding Obligations to the appropriate third-party recipients or taxing authorities in the ordinary course.

7.      The Debtors are authorized to maintain the Corporate Cards in the ordinary course of business.

8.      Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits.

9.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on

the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty to inquire otherwise and without liability for following the Debtors' instructions.

10.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

11.     Nothing in this Final Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  Any payment made pursuant to this Final Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Final Order.