# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AGDP HOLDING INC., *et al.*,[1]<br><br>      Debtors. | Chapter 11<br><br>Case No. 25-11446([●])<br><br>(Joint Administration Requested) |

## MOTION OF DEBTORS FOR
## ENTRY OF INTERIM AND FINAL ORDERS
## (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN CRITICAL VENDOR CLAIMS
## AND PACA/PASA CLAIMS; AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (the "Motion"):[2]

### RELIEF REQUESTED

1.   The Debtors seek entry of an interim order and a final order (respectively,

the "Proposed Interim Order" and "Proposed Final Order"), substantially in the forms attached

hereto as **Exhibit A** and **Exhibit B**, respectively, granting, among other things, the following

relief:

> i.   authorizing, but not directing, the Debtors to pay, in the ordinary course of business, certain prepetition and postpetition Critical Vendor Claims and PACA/PASA Claims (each as defined below, and, together, the "Trade Claims") on a postpetition basis, subject to the respective caps set forth in the Proposed Interim Order and the Proposed Final Order; and

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Gary Richards in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the First Day Declaration, as applicable.

ii.      granting related relief.

2.       In sum, the Debtors estimate that the prepetition amount owing on account of the Critical Vendor Claims and the PACA/PASA Claims in the aggregate is approximately $1,050,000.00, all of which may be due and payable within thirty (30) days after the Petition Date (the "Interim Period").

## JURISDICTION AND VENUE

3.       The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.       The statutory and legal bases for the relief requested in this Motion are sections 105(a), 363, 503, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND OF THE DEBTORS

6.       The Debtors operate a multi-space entertainment venue complex, specializing in large-scale live entertainment—concerts, festivals, corporate functions, and multimedia events— and are known for state-of-the-art audiovisual production, including a 2022 upgrade featuring one

33417518.4

of the world's highest-resolution video walls. The Debtors focus on industry-leading production capabilities, immersive audiovisual experiences, and status as one of North America's largest standing-room-only entertainment venues.

7. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these cases, and no statutory committee has been appointed.

8. Additional information regarding the Debtors' businesses, capital structures and circumstances preceding the Petition Date may be found in the First Day Declaration.

## OVERVIEW OF THE TRADE CLAIMS

9. As part of their business, the Debtors offer a wide selection of products, including food and beverage items, to their customers (collectively, the "Goods"). The Trade Claimants (as defined below) provide the Debtors with the Goods as well as other essential services (the "Services") that facilitate the Debtors' business, receipt of which will help ensure that the Debtors are able to continue to operate their business as required during these chapter 11 cases.

10. The Debtors therefore request authorization to pay the Trade Claims, subject to the limitations set forth in the Proposed Interim Order and the Proposed Final Order. The Debtors intend to pay only those Trade Claims that, as determined in their business judgment and discretion, are held by persons or entities that are critical to maintaining the Debtors' operations and maximizing stakeholder value. The following table summarizes the types of claims that the Debtors request authority to pay, respectively, after entry of the Proposed Interim Order and after entry of the Proposed Final Order:

| Category | Estimated Interim Amount | Estimated Final Amounts |
|---|---|---|
| Critical Vendor Claims | $1,000,000 | $1,000,000 |
| PACA/PASA Claims | $50,000 | $50,000 |
| **Total** | **$1,050,000** | **$1,050,000** |

## I.    Critical Vendors Claims

11.    The Debtors' business and path in these Chapter 11 Cases require them to rely heavily on certain vendors and service providers (collectively, the "Critical Vendors").[3]  Many of the Critical Vendors are the sole provider of certain Goods or Services, or otherwise have the specific requisite knowledge and experience with the Debtors' business.  Attempting to replace such Critical Vendors on short notice would prove catastrophic to the Debtors' value-maximization efforts in these Chapter 11 Cases.  Accordingly, to maximize the value of the Debtors' business, it is essential that the Debtors are able to maintain their business relationships with the Critical Vendors.

12.    Under some non-bankruptcy laws, the Critical Vendors may have a lien, or may be able to assert liens, on Goods in their possession to secure payment of the charges or expenses incurred in connection with the Critical Vendor Claims.  In the event these Critical Vendors Claims remain unpaid, the Critical Vendors could attempt to assert liens or otherwise disrupt Debtors' operations until their claims are satisfied and their liens redeemed.

13.    The Debtors anticipate that some Critical Vendors will demand immediate payment from the Debtors.  Additionally, pursuant to section 363(e) of the Bankruptcy Code, the Critical

---

[3] Certain of the Critical Vendors may be entitled to assert claims entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code, as detailed further herein.

Vendors may be entitled to adequate protection of any valid possessory lien, which would drain estate assets.

14.     The Debtors have determined, in their business judgment, that paying prepetition claims owing to the Critical Vendors (the "Critical Vendor Claims") is the most effective way to ensure that the Critical Vendors continue providing critical Goods and Services during these Chapter 11 Cases.  If the Debtors are unable to honor the Critical Vendor Claims, the Debtors face the significant and very real possibility that the Critical Vendors will refuse to continue delivering Goods or providing Services that are essential to maximizing the value of their estates—reducing their operational effectiveness and ability to maximize sales revenue, risking the management and safety of the venues, including vis-à-vis customers and employees. Thus, in order to prevent interruptions in the provision of critical Goods and Services, the Debtors seek the authority, but not direction, to pay Critical Vendor Claims pursuant to the terms described herein.

## II.    Critical Vendor Selection

15.     With the assistance of their advisors, the Debtors have spent considerable time reviewing and analyzing their books and records, consulting with management and personnel responsible for operations and purchasing, reviewing contracts, and analyzing applicable laws, regulations, and historical practice to identify critical business relationships and/or suppliers of critical goods and services.  The Debtors have considered a variety of factors, including:

a.     whether a vendor is a sole—or limited—source supplier of goods and services critical to the Debtors' business operations;

b.     whether alternative vendors are available that can provide similar goods and services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning thereto;

c.     the importance of such goods and services to driving retail foot traffic and revenues;

d.     the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

e.     whether an agreement exists which could compel a vendor to continue performing on prepetition terms;

f.     whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining goods and services from alternative sources;

g.     whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship goods or provide critical services postpetition; and

h.     whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation.

16.     In addition to these factors, the Debtors and their advisors examined the health of each vendor relationship, each vendor's familiarity with the chapter 11 process, and the extent to which each vendor's prepetition claims could be satisfied under authority obtained elsewhere in the chapter 11 process.  In summary, the Debtors' selection process balanced the need to preserve the Debtors' relationships with the vendors essential to the business at this time and the need to limit the expenditure of estate resources.

17.     The Debtors believe that jeopardizing their relationships with any of the entities identified as Critical Vendors would impose a severe strain on the Debtors' business operations and would likely result in significant revenue loss.  Even a temporary interruption of the provision of the Critical Vendors' Goods and Services would impede the Debtors' operations, and the cumulative impact of such interruptions could have a catastrophic adverse effect on the Debtors and the ability to maximize the value of the Debtors' business during this critical period.  The Debtors believe that the harm to their estates of not having the Goods or Services provided by the Critical Vendors would far outweigh the cost of paying the Critical Vendor Claims.  Thus, the requested relief will allow the Debtors to preserve the value of their estates.

18.     In the twelve-month period ending July 23, 2025, the Debtors paid in the ordinary course of business approximately $250,000 per month to the Critical Vendors.  The Debtors estimate that, as of the Petition Date, the outstanding amount of Critical Vendor Claims is $1,000,000, all of which may be due or may become due during the Interim Period.

### III.     PACA/PASA Claimants

19.     The Debtors believe that a portion of the goods received qualify as "perishable agricultural commodity[ies]" under the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. §§ 499a *et seq.* (as amended, the "PACA").  PACA's definition of "perishable agricultural commodity" includes "fresh fruits and fresh vegetables of every kind and character [whether or not frozen or packed in ice]." 7 U.S.C. § 499a(b)(4).  Under PACA, eligible produce suppliers and their agents (collectively, the "PACA Claimants") are beneficiaries of a statutory trust in all of the buyer's perishable agricultural commodity inventory, the derivatives of perishable agricultural commodities, the products derived therefrom, and the proceeds related to any sale of the foregoing (collectively, the "PACA Trust Assets"). *See* 7 U.S.C. § 499e(c)(2).

20.     In addition, certain of the Debtors' suppliers (the "PASA Claimants" and, together with the PACA Claimants, the "PACA/PASA Claimants") may be eligible to assert claims (the "PACA/PASA Claims") under the Packers and Stockyards Act of 1921, 7 U.S.C. § 181 *et seq.* (as amended, the "PASA"), which prescribes conditions of operations for businesses dealing in livestock and poultry. PASA also creates a statutory trust scheme which is virtually identical to PACA in respect of the livestock meat products, products derived therefrom, and the proceeds of the foregoing (collectively, the "PASA Trust Assets" and, together with the PACA Trust Assets, the "Trust Assets"). *See In re W.L. Bradley Co.*, 75 B.R. 505, 509 (Bankr. E.D. Pa. 1987).

21.     The continuous delivery of goods provided by the PACA/PASA Claimants is critical to the Debtors' ability to maximize revenue at their stores for the benefit of these estates.

Because the PACA/PASA Claimants may seek to impose statutory trusts on the applicable Goods and thereby obtain priority over all other secured and unsecured creditors of the Debtors' estates, payment of valid PACA/PASA Claims will not prejudice or affect the amount available for distributions to the Debtors' other creditors. Accordingly, the Debtors seek the authority, but not direction, to pay the PACA/PASA Claims pursuant to the terms described herein.

22.     In the twelve-month period ending July 23, 2025, the Debtors paid in the ordinary course of business approximately $30,000 per month to the PACA/PASA Claimants. The Debtors estimate that, as of the Petition Date, the outstanding amount of the PACA/PASA Claims is $50,000, approximately all of which may due or may become due during the Interim Period.

## IV.     Customary Trade Terms Condition

23.     In return for the payment of prepetition Trade Claims, the Debtors propose that the applicable parties be required (unless waived by the Debtors in their discretion) to continue providing Goods and/or Services on the following terms and conditions:

  a.  The Debtors, in their sole discretion, subject to the limitations set forth below, shall determine which Trade Claims will be paid pursuant to the Proposed Interim Order and the Proposed Final Order.

  b.  The Debtors, in their sole discretion, may require as a condition to receiving payment on account of Trade Claims, that Trade Claimants agree to continue to provide Goods and/or Services to the Debtors on terms that are as good as or better than the terms and conditions that existed during the twelve-month period prior to the Petition Date (collectively, the "Customary Trade Terms") during the pendency of these Chapter 11 Cases. If, after receiving a payment under the Proposed Interim Order or the Proposed Final Order, a Trade Claimant ceases to provide Customary Trade Terms, then the Debtors may, in their sole discretion, seek an order from the Court: (i) to determine that any payment on a prepetition claim received by such Trade Claimant be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may recover in cash or goods; or (ii) to deem such payment to apply instead to any postpetition amount that may be owing to such Trade Claimant.

  c.  The Trade Claimant agrees not to file or otherwise assert against the Debtors, their estates, or their respective assets or property any lien

(a "<u>Lien</u>") related in any way to any remaining prepetition amounts allegedly owed to the Trade Claimant by the Debtors arising from Goods and/or Services provided to the Debtors prior to the Petition Date, and, to the extent a Trade Claimant has previously obtained such a Lien, the Trade Claimant shall immediately take all necessary actions to release such Lien.

d.      Before making a payment to a creditor under the Proposed Interim Order or the Proposed Final Order, the Debtors may, in their sole discretion, settle all or some of the prepetition claims of such creditor for less than their face amount.

**BASIS FOR RELIEF REQUESTED**

**I.      The Court Should Grant the Relief Requested Pursuant to Section 105(a) and 363(b) of the Bankruptcy Code.**

24.      The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estates." 11 U.S.C. § 363(b)(1).  A court may authorize a debtor to pay certain prepetition claims under section 363 of the Bankruptcy Code.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) of the Bankruptcy Code); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).   To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Id.*

25.      The Court may also authorize payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code, which codifies the bankruptcy court's equitable powers, empowers a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a), a court may permit payments of prepetition obligations to be made outside of a plan if such payments are essential to the continued operation of a debtor's business.  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code

to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

26.     The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581(3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating that a court may authorize the payment of a prepetition claim if there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until its pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

27.     The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11."  *Ionosphere Clubs*, 98 B.R. at 176; *see also Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re*

*Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation . . ." is appropriate); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 2 COLLIER ON BANKRUPTCY ¶ 105.02[4][a] (16th ed. 2023) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately). Accordingly, the Court has authority to authorize the Debtors to continue to pay the prepetition Trade Claims pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.

28.    As discussed more fully herein, it is a sound exercise of the Debtors' business judgment to pay the Trade Claims as they become due in the ordinary course of business because doing so will avoid value-destructive business interruption.  The Goods and Services provided by the Trade Claimants are necessary for the continued, uninterrupted operation of the Debtors' businesses.  The Debtors anticipate that failure to pay the Trade Claims as they become due is likely to result in many Trade Claimants refusing to provide essential Goods and Services, conditioning the delivery of such goods and services on compliance with onerous and commercially unreasonable terms, or seeking to assert liens on the Debtors' property.

29.     Nonperformance by the Trade Claimants could materially disrupt the Debtors' business operations in these Chapter 11 Cases and jeopardize the Debtors' ability to maximize recoveries for their estates.  Accordingly, continued payment of the Trade Claims as provided herein is a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, is in the best interests of the Debtors' respective estates and creditors, and is warranted under the circumstances.

## II.     Payment of the Trade Claims May Be Required by the Debtors' Fiduciary Duties.

30.     Moreover, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("Upon filing its petition, the Debtor became a debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *In re CoServ*, 273 B.R. at 497.

31.     Some courts have noted that there are instances in which a debtor can fulfill its fiduciary duties "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." *Id.* at 498.

32.     Payment of the Trade Claims meets each element of the *CoServ* court's standard. First, any further disruptions of the Debtors' operations that result from non-payment of such claims would cost the Debtors' estates substantial amounts in lost revenues.  The harm and

economic disadvantage that would stem from the Debtors' failure to pay the Trade Claims are grossly disproportionate to the amount of the prepetition claims that would have to be paid.  In addition, the Debtors have examined the alternatives to paying the Trade Claims and could not find any practical substitute to paying such claims to avoid significant disruption of the Debtors' business operations.  Therefore, the Debtors can only fulfill their fiduciary duties as debtors in possession by paying the Trade Claims where necessary.

### III.    Certain of the Trade Claims May Be Secured or Priority Claims.

33.    Section 503(b)(9) provides administrative priority for the "value of any goods received by the debtor within [twenty] days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).  Thus, claims qualifying for administrative priority under section 503(b)(9) of the Bankruptcy Code must be paid in full for the Debtors to confirm any chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A).

34.    Consequently, payment of such claims in full only provides the applicable claimants with what they would be entitled to receive under a chapter 11 plan unless they consented otherwise.  Moreover, the timing of the payment of administrative claims lies squarely within the Court's discretion.  *See In re Global Home Prods., LLC*, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court").  Payment of any Trade Claims that constitute section 503(b)(9) claims would merely accelerate the timing of payment and not the ultimate treatment of such claims while allowing the Debtors guaranteed access to the Goods necessary to maintain their business operations will maximize the value of the Debtors' estates.

**DEBTOR'S BANKS SHOULD BE AUTHORIZED TO**
**HONOR CHECKS AND ELECTRONIC FUNDS TRANSFERS**

35.     The Debtors anticipate having sufficient funds to pay the amounts described in this
Motion, including by virtue of the DIP Financing.  In addition, under the Debtors' existing cash
management system, the Debtors can readily identify checks or wire transfer requests as relating
to an authorized payment pursuant to this Motion.  Therefore, the Debtors respectfully request that
the Court authorize all applicable financial institutions to receive, process, honor, and pay any and
all checks or wire transfer requests in respect of the relief requested in this Motion.  Any such
financial institution may rely on the representations of such Debtors as to which checks are issued
or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be
paid in accordance with this Motion without any duty of further inquiry and without liability for
following the Debtors' instructions.

**THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**

36.     The Debtors' assert that immediate relief is necessary to avoid immediate and
irreparable harm.  Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days
after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid
immediate and irreparable harm."  For the reasons discussed above, entry of the Proposed Interim
Order is integral to the Debtors' ability to successfully transition into chapter 11 and run an orderly
sale.  Specifically, the relief requested is necessary to avoid a severe disruption of the Debtors'
sale process and operations at this critical juncture and, in turn, to preserve and maximize the value
of the Debtors' estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that
they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and,
therefore, respectfully requests that the Court approve the relief requested in this Motion.

## **REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS**

37.    The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).    As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors' ongoing operations and value-maximization process.    Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## **RESERVATION OF RIGHTS**

38.    Nothing contained herein or any action taken pursuant to relief requested is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or non-bankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.    Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

## **NOTICE**

39.     Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors; (c) Alter Domus (US) LLC, in its capacity as administrative agent and collateral agent under the Prepetition Financing Agreement and the DIP Facility; (d) counsel to the DIP Lenders and Prepetition Term Loan Lender; (e) counsel to LiveStyle; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of the page intentionally left blank]*

33417518.4

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and granting such other relief as is just and proper.

Dated:    August 4, 2025
        Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ S. Alexander Faris*

Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Kenneth J. Enos (No. 4544)
S. Alexander Faris (No. 6278)
Sarah Gawrysiak (No. 7403)
Evan S. Saruk (No. 7452)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  sbeach@ycst.com
       emorton@ycst.com
       kenos@ycst.com
       afaris@ycst.com
       sgawrysiak@ycst.com
       esaruk@ycst.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (___) |
| Debtors. | (Jointly Administered) |
|  | **Ref: Docket No.** |

**INTERIM ORDER AUTHORIZING THE DEBTORS TO PAY CERTAIN CRITICAL
VENDOR CLAIMS AND PACA/PASA CLAIMS; (II) GRANTING RELATED RELIEF**

Upon the motion ("Motion")[2] of Avant Gardner, LLC, and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") (i) authorizing, but not directing, the Debtors to pay certain prepetition and postpetition Critical Vendor Claims, and PACA/PASA Claims on a postpetition basis, and (ii) granting related relief, each as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for hearing on the Motion having been given; and the relief requested in the Motion being in the best

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431).  The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The relief requested in the Motion is GRANTED on an interim basis as set forth herein.

2.     The final hearing on the Motion shall be held on [•], 2025, at [•] (prevailing Eastern Time) (the "Final Hearing").  Any objections or responses to entry of the proposed final order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on [•], 2025, and shall be served on (a) the Debtors, 140 Stewart Ave, Brooklyn, NY 11237, Attn: [•]; (b) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE, Attn: Sean M. Beach (sbeach@ycst.com), S. Alexander Faris (afaris@ycst.com) and Evan S. Saruk (esaruk@ycst.com); (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jonathan W. Lipshie (Jon.Lipshie@usdoj.gov); and (d) counsel to any statutory committee appointed in these chapter 11 cases.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter a final order without need for the Final Hearing.

3.     The Debtors are authorized, but not directed, to pay the Trade Claims (or portions thereof) during the course of these Chapter 11 Cases; *provided* that the Debtors are authorized, but not directed during the Interim Period to pay the Trade Claims in the aggregate amount not to exceed $1,050,000.00 (the "Interim Cap"), unless otherwise ordered by this Court.

4.      In return for the payment of the prepetition Trade Claims, the applicable parties are required (unless waived by the Debtors in their discretion) to continue providing Goods and/or Services on the following terms and conditions:

a.      The Debtors, in their sole discretion, subject to the limitations set forth below, shall determine which Trade Claims will be paid pursuant to this Interim Order.

b.      The Debtors, in their sole discretion, may require as a condition to receiving payment on account of Trade Claims, that Trade Claimants agree to continue to provide Goods and/or Services to the Debtors on terms that are as good as or better than the terms and conditions that existed during the twelve-month period prior to the Petition Date (collectively, the "Customary Trade Terms") during the pendency of these Chapter 11 Cases. If, after receiving a payment under this Interim Order or the Final Order, a Trade Claimant ceases to provide Customary Trade Terms, then the Debtors may, in their sole discretion, seek an order from the Court: (i) to determine that any payment on a prepetition claim received by such Trade Claimant be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may recover in cash or goods; or (ii) to deem such payment to apply instead to any postpetition amount that may be owing to such Trade Claimant.

c.      The Trade Claimant agrees not to file or otherwise assert against the Debtors, their estates, or their respective assets or property any lien (a "Lien") related in any way to any remaining prepetition amounts allegedly owed to the Trade Claimant by the Debtors arising from Goods and/or Services provided to the Debtors prior to the Petition Date, and, to the extent a Trade Claimant has previously obtained such a Lien, the Trade Claimant shall immediately take all necessary actions to release such Lien.

d.      Before making a payment to a creditor under this Interim Order, the Debtors may, in their sole discretion, settle all or some of the prepetition claims of such creditor for less than their face amount.

5.      This Interim Order shall not be construed to limit or in any way affect the Debtors' ability to contest any invoice or other charge or claim of any Trade Claimant.

6.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented

for payment, and all such the banks and financial institutions are authorized to rely on the Debtors'
designation of any particular check or electronic payment request as approved by this Interim
Order without any duty of further inquiry and without liability for following the Debtors'
instructions.

7.      The Debtors are authorized, but not directed, to issue postpetition checks, or to
effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests
that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts
owed in connection with the relief granted herein.

8.      Nothing in this Interim Order constitutes (a) an admission as to the validity of any
claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute
the amount of, basis for, or validity of any claim or interest under applicable law or non-bankruptcy
law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party
in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or
granting of approval for assumption of any agreement, contract, program, policy, or lease under
section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability,
or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors'
estates.  Any payment made pursuant to this Interim Order is not intended to be and should not be
construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in
interest's rights to subsequently dispute such claim.

9.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

10.     The  requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim
Order are immediately effective and enforceable upon its entry.

12.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

13.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Interim Order.

33417518.4

**<u>EXHIBIT B</u>**

**Proposed Final Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (•) |
|  | (Jointly Administered) |
| Debtors. | **Ref: Docket Nos. [•] & [•]** |

## FINAL ORDER
## (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN CRITICAL VENDOR
## CLAIMS, AND PACA/PASA CLAIMS; AND (II) GRANTING RELATED RELIEF

Upon the motion ("Motion")[2] of Avant Gardner, LLC, and its debtor affiliates, as debtors

and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Final

Order") (i) authorizing, but not directing, the Debtors to pay certain prepetition and postpetition

Critical Vendor Claims, and PACA/PASA Claims on a postpetition basis, and (ii) granting related

relief, each as more fully set forth in the Motion; and upon consideration of the First Day

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and

the *Amended Standing Order of Reference* from the United States District Court for the District of

Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning

of 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III

of the United States Constitution; and venue of this proceeding and the Motion in this district being

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

hearing on the Motion having been given; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The relief requested in the Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to pay the Trade Claims (or portions thereof) during the course of these Chapter 11 Cases in the aggregate amount not to exceed $1,050,000.00, unless otherwise ordered by this Court.

3.      In return for the payment of the prepetition Trade Claims, the applicable parties are required (unless waived by the Debtors in their discretion) to continue providing Goods and/or Services on the following terms and conditions:

   a.      The Debtors, in their sole discretion, subject to the limitations set forth below, shall determine which Trade Claims will be paid pursuant to this Final Order.

   b.      The Debtors, in their sole discretion, may require as a condition to receiving payment on account of Trade Claims, that Trade Claimants agree to continue to provide Goods and/or Services to the Debtors on terms that are as good as or better than the terms and conditions that existed during the twelve-month period prior to the Petition Date (collectively, the "Customary Trade Terms") during the pendency of these Chapter 11 Cases. If, after receiving a payment under the Interim Order or this Final Order, a Trade Claimant ceases to provide Customary Trade Terms, then the Debtors may, in their sole discretion, seek an order from the Court: (i) to determine that any payment on a prepetition claim received by such Trade Claimant be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may recover in cash or goods; or (ii) to deem such payment to apply instead to any postpetition amount that may be owing to such Trade Claimant.

   c.      The Trade Claimant agrees not to file or otherwise assert against the Debtors, their estates, or their respective assets or property any lien (a "Lien") related in any way to any remaining prepetition amounts allegedly owed to the Trade Claimant by the Debtors arising from Goods

and/or Services provided to the Debtors prior to the Petition Date, and, to the extent a Trade Claimant has previously obtained such a Lien, the Trade Claimant shall immediately take all necessary actions to release such Lien.

    d.    Before making a payment to a creditor under this Final Order, the Debtors may, in their sole discretion, settle all or some of the prepetition claims of such creditor for less than their face amount.

4.    This Final Order shall not be construed to limit or in any way affect the Debtors' ability to contest any invoice or other charge or claim of any Trade Claimant.

5.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such the banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.    The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

7.    Nothing in this Final Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or non-bankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors'

33417518.4

estates.  Any payment made pursuant to this Final Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

8.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

10.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Final Order.

33417518.4