**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 ([•]) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION
FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING
DEBTORS TO MAINTAIN AND ADMINISTER CERTAIN CUSTOMER
PROGRAMS AND PRACTICES, (II) AUTHORIZING DEBTORS TO PAY AND
HONOR RELATED PREPETITION AND POSTPETITION
OBLIGATIONS, AND (III) GRANTING
RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (the "Motion"):[2]

**RELIEF REQUESTED**

1. By this Motion, the Debtors seek entry of an interim order and a final order, (respectively, the "Proposed Interim Order" and the "Proposed Final Order") substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting, among other things, the following relief:

   i. authorizing the Debtors to maintain and administer the Customer Programs (as defined below);

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Gary Richards in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the First Day Declaration, as applicable.

ii. authorizing the Debtors to pay amounts associated with and otherwise honor the Customer Programs in the ordinary course of business, whether such obligations arise before, on, or after the Petition Date; and

iii. granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal bases for the relief requested in this Motion are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND OF THE DEBTORS

5. The Debtors operate a multi-space entertainment venue complex, specializing in large-scale live entertainment—concerts, festivals, corporate functions, and multimedia events— and are known for state-of-the-art audiovisual production, including a 2022 upgrade featuring one of the world's highest-resolution video walls.  The Debtors focus on industry-leading production capabilities, immersive audiovisual experiences, and status as one of North America's largest standing-room-only entertainment venues.

6. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these cases, and no statutory committee has been appointed.

7. Additional information regarding the Debtors' businesses, capital structures and circumstances preceding the Petition Date may be found in the First Day Declaration.

## THE CUSTOMER PROGRAMS

8. As detailed further in the First Day Declaration, the Debtors experienced financial distress leading to these chapter 11 cases because they were unable to reopen the Brooklyn Mirage, their prominent indoor/outdoor event venue in Brooklyn, New York. The Brooklyn Mirage has a capacity of approximately 6,250, while the smaller stages in the Avant Gardner complex—The Great Hall and The Kings Hall—have capacities of 3,000 and 800, respectively. The Brooklyn Mirage was slated to open on May 1, 2025, and tickets were sold for event at the Brooklyn Mirage venue through November 7, 2025.

9. For upcoming shows in the Brooklyn Mirage, the Debtors can relocate shows to smaller venues (either inside or outside the Avant Gardner complex), can turn one event into multiple events (thereby spreading capacity over multiple days in a small venue), or can provide partial or full creditors or refunds to ticketholders. The Debtors, in their business judgment, select whatever option is most feasible for the artist, ticketholders, and other venues.

10. The Debtors must be authorized to continue offering refunds, credits, or otherwise addressing show relocations (collectively, the "Show Accommodations") in order to maintain positive, productive, and profitable relationships with their customers and artists that ultimately

3

promote customer satisfaction, encourage ticket sales, and ensure that the Debtors remain competitive.

11. Further, as described in the Cash Management Motion,[3] the Debtors' payment processors withhold certain amounts to pay for refunded goods and services, and sometimes the Debtors are asked refund *de minimis* leftover balances on Billfold wristbands (collectively, the "Other Refunds", and with the Show Refunds, the "Customer Accommodations").

12. The Debtors regularly conduct sales promotions to its customers. The Sales Promotions consist of seasonal memberships; discounted tickets to underperforming shows; ticket bundles to back-to-back shows or to multiple events with the same performing artist; VIP tickets; and other promotions (the "Sales Promotions", and with the Customer Accommodations, the "Customer Programs"). These Sale Promotions help increase sale volume by allowing the Debtors to adjust prices and bundles to changing market conditions and artist popularity.

13. By this Motion, the Debtors are requesting authorization to continue conducting their Customer Programs and paying and otherwise honoring their Customer Programs in the ordinary course of business, including with respect to any obligations that arose before the Petition Date. The Debtors' ability to maintain and administer the Customer Programs is therefore necessary to protect the value and reputation of the Debtors' brand, meet competitive market pressures, ensure continued customer satisfaction, and, in turn, maximize the value of the Debtors' estates to the benefit of all interested parties. Based on the foregoing, I believe the Customer Programs Motion should be granted.

---

[3] The "Cash Management Motion" means the *Debtors' Motion For Entry Of Interim And Final Orders (I) Authorizing The Debtors To (A) Continue Use Of Their Existing Cash Management System, Bank Accounts, And Business Forms, (B) Continue Intercompany Transactions, (C) Pay Related Obligations, (D) Pay And Honor Processing Obligations, (E) Authorizing And Directing The Banks And Payment Processors To Cease Any Holds On, Or Redirection Of, Cash Or Receivables Of The Debtors, (II) Waiving Certain Investment And Deposit Guidelines, And (III) Granting Related Relief*, filed concurrently herewith.

**BASIS FOR RELIEF**

I. **Maintenance of Customer Programs Is Warranted Under Sections 105(a) and 363(b) of the Bankruptcy Code and the Doctrine of Necessity.**

14. The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A court may authorize a debtor to pay certain prepetition claims under section 363 of the Bankruptcy Code. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) of the Bankruptcy Code). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Id.*

15. The Court may also authorize payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the bankruptcy court's equitable powers, empowers a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankrutpcy Code, a court may permit payments of prepetition obligations to be made outside of a plan if such payments are essential to the continued operation of a debtor's business. Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

16. The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581(3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating that a court may

authorize the payment of a prepetition claim if there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until its pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

17.     The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176; *see also Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation . . ." is appropriate); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of

prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 2 COLLIER ON BANKRUPTCY ¶ 105.02[4][a] (16th ed. 2025) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately). Accordingly, the Court has authority to authorize the Debtors to continue the Customer Programs and pay prepetition claims arising thereunder pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.

18.  The Debtors' continued ability to maintain and administer the Customer Programs without interruption during the pendency of these chapter 11 cases will help to preserve the hard-earned trust, loyalty, and goodwill of their ticketholders, as well as their market share, which will inure to the benefit of all of the Debtors' creditors and stakeholders. The Debtors need the flexibility to be able to accommodate changes to venues and provide ticketholders with safe and enjoyable experiences. Accordingly, if the Debtors were unable to continue their Customer Programs during these cases or pay amounts associated with or otherwise honor the Customer Programs, the Debtors would risk alienating their ticketholders and losing business to their competitors. Such a result would jeopardize the Debtors' restructuring efforts and irreparably harm their estates.

19.  For these reasons, the Court should authorize the Debtors to maintain and administer the Customer Programs and pay amounts associated with and otherwise honor the Customer Programs in the ordinary course of business, whether such amounts claimed arise before, on, or after the Petition Date.

**DEBTOR'S BANKS SHOULD BE AUTHORIZED TO
HONOR CHECKS AND ELECTRONIC FUNDS TRANSFERS**

20. The Debtors anticipate having sufficient funds to pay the amounts described in this Motion, including by virtue of the DIP Financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment pursuant to this Motion. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion. Any such financial institution may rely on the representations of such Debtors as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

**REQUEST FOR BANKRUPTCY RULE 6003 WAIVER**

21. The Debtors assert that immediate relief is necessary to avoid immediate and irreparable harm. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, entry of the proposed interim order is integral to the Debtors' ability to successfully transition into chapter 11 and avoid a severe disruption of the Debtors' operations at this critical juncture and, in turn, to preserve and maximize the value of the Debtors' estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

22. The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## RESERVATION OF RIGHTS

23. Nothing contained herein or any action taken pursuant to relief requested is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

**NOTICE**

24.     Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors; (c) Alter Domus (US) LLC, in its capacity as administrative agent and collateral agent under the Prepetition Financing Agreement and the DIP Facility; (d) counsel to the DIP Lenders and Prepetition Term Loan Lender; (e) Cullen and Dykman LLP, counsel to LiveStyle; (f) the United States Attorney's Office for the District of Delaware; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of the page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of the Proposed Interim Order and the Proposed Final Order granting the relief requested herein and granting such other relief as is just and proper.

Dated: August 4, 2025
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ S. Alexander Faris*
Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Kenneth J. Enos (No. 4544)
S. Alexander Faris (No. 6278)
Sarah Gawrysiak (No. 7403)
Evan S. Saruk (No. 7452)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:   sbeach@ycst.com
         emorton@ycst.com
         kenos@ycst.com
         afaris@ycst.com
         sgawrysiak@ycst.com
         esaruk@ycst.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 ([•]) |
| Debtors. | (Jointly Administered) |
| | Ref: Docket No. [•] |

**INTERIM ORDER (I) AUTHORIZING DEBTORS
TO MAINTAIN AND ADMINISTER CERTAIN CUSTOMER
PROGRAMS AND PRACTICES, (II) AUTHORIZING DEBTORS TO PAY AND
HONOR RELATED PREPETITION AND POSTPETITION OBLIGATIONS,
AND (III) GRANTING RELATED RELIEF**

Upon the motion ("Motion")[2] of AGDP Holding Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") (i) authorizing the Debtors to maintain and administer certain Customer Programs, (ii) authorizing the Debtors to pay amounts associated with and otherwise honor the Customer Program, and (iii) granting related relief, each as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409;

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

and appropriate notice of and opportunity for hearing on the Motion having been given; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The relief requested in the Motion is GRANTED on an interim basis as set forth herein.

2. The final hearing on the Motion shall be held on [•], 2025 at [•] (prevailing Eastern Time) (the "<u>Final Hearing</u>").  Any objections or responses to entry of the proposed final order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on [•], 2025, and shall be served on (a) the Debtors, 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel; (b) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE, Attn: Sean M. Beach (sbeach@ycst.com), S. Alexander Faris (afaris@ycst.com) and Evan S. Saruk (esaruk@ycst.com); (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jonathan W. Lipshie (Jon.Lipshie@usdoj.gov); and (iv) counsel to any statutory committee appointed in these chapter 11 cases.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter a final order without need for the Final Hearing.

3. The Debtors are authorized, but not directed, to maintain and administer the Customer Programs and pay amounts associated with or otherwise honor any Customer Programs, whether arising before, on or after the Petition Date, in the ordinary course of business and consistent with past practice, as necessary and appropriate in the Debtors' business judgment.

4. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

5. The Debtors are authorized, but not directed, to issue new postpetition checks, or to effect new electronic funds transfers, on account of the Customer Programs, and to replace any prepetition checks or electronic fund transfer requests that have been lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 case.

6. Nothing in this Interim Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  Any payment made pursuant to this Interim Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

7. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

4

8. The requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied.

9. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

10. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

11. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Interim Order.

**Exhibit B**

**Proposed Final Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11447 ([•]) |
| Debtors. | (Jointly Administered) |
| | Ref: Docket No. [•] & [•] |

**FINAL ORDER (I) AUTHORIZING DEBTORS
TO MAINTAIN AND ADMINISTER CERTAIN CUSTOMER PROGRAMS AND
PRACTICES, (II) AUTHORIZING DEBTORS TO PAY AND HONOR RELATED
PREPETITION AND POSTPETITION OBLIGATIONS,
AND (III) GRANTING RELATED RELIEF**

Upon the motion ("Motion")[2] of AGDP Holding Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order") (i) authorizing the Debtors to maintain and administer certain Customer Programs, (ii) authorizing the Debtors to pay amounts associated with and otherwise honor the Customer Programs, and (iii) granting related relief, each as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409;

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

and appropriate notice of and opportunity for a hearing on the Motion having been given; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The relief requested in the Motion is GRANTED on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, to maintain and administer the Customer Programs and pay amounts associated with or otherwise honor any Customer Programs, whether arising before, on or after the Petition Date, in the ordinary course of business and consistent with past practice, as necessary and appropriate in the Debtors' business judgment.

3. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

4. The Debtors are authorized, but not directed, to issue new postpetition checks, or to effect new electronic funds transfers, on account of the Customer Programs, and to replace any prepetition checks or electronic fund transfer requests that have been lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 case.

5. Nothing in this Final Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy

law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates. Any payment made pursuant to this Final Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

6. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

7. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

8. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Final Order.