## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (MFW) |
| Debtors. | (Joint Administration Requested) |
| | **Ref: Docket No. 12** |

**NOTICE OF FILING OF *REVISED* PROPOSED INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 364, 503 AND 507 OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (B) ADEQUATE PROTECTION TO CERTAIN PREPETITION LENDERS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that, on August 4, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105, 361, 362, 363, 364, 503 And 507 of the Bankruptcy Code (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Scheduling A Final Hearing; and (V) Granting Related Relief* [Docket No. 12] (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Court"). A proposed form of order approving the Motion on an interim basis (the "Proposed Interim Order") was attached to the Motion as Exhibit A.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals, LLC (8854); Made Event, LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

**PLEASE TAKE FURTHER NOTICE** that, subsequent to filing the Motion, the Debtors received informal comments to the Proposed Interim Order from the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").  Following discussions with the U.S. Trustee, the Debtors have agreed to a revised form of the Proposed Interim Order, attached hereto as **Exhibit 1** (the "Revised Proposed Interim Order").  For the convenience of the Court and all interested parties, a blackline comparing the Revised Proposed Interim Order to the Proposed Interim Order is attached hereto as **Exhibit 2**.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to present the Revised Proposed Interim Order in connection with the Motion at the hearing scheduled for August 5, 2025 at 11:30 a.m. (ET) (the "Hearing").  The Debtors reserve all rights to modify the Revised Proposed Interim Order at or prior to the Hearing.

*[Remainder of page intentionally left blank]*

Dated:   August 5, 2025
         Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ S. Alexander Faris*

Edmon L. Morton (No. 3856)
Sean M. Beach (No. 4070)
Kenneth J. Enos (No. 4544)
S. Alexander Faris (No. 6278)
Sarah Gawrysiak (No. 7403)
Evan S. Saruk (No. 7452)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  sbeach@ycst.com
        emorton@ycst.com
        kenos@ycst.com
        afaris@ycst.com
        sgawrysiak@ycst.com
        esaruk@ycst.com

*Proposed Counsel to the Debtors and Debtors in Possession*

33427870.2

**<u>EXHIBIT 1</u>**

**Revised Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25- 11446 (MFW) |
| Debtors. | (Joint Administration Requested) |
| | **Ref: Docket No. 11** |

**INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 364, 503 AND 507 OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (B) ADEQUATE PROTECTION TO CERTAIN PREPETITION LENDERS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Upon the *Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection To Certain Prepetition Lenders; (III) Authorizing Use Of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "Motion")[2] of the debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors"), for entry of an interim order (this "Interim Order") and a final order (the "Final Order"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2) 364(c)(3), 364(d), 364(e), 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002,

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals, LLC (8854); Made Event, LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Each capitalized term used but not defined herein shall have the meaning ascribed to it in the applicable DIP Loan Documents (as defined below).

4001(b) and (c), 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (together, the "Local Rules"), requesting, among other things:

(1)     authorization for Avant Gardner, LLC, a New York limited liability company "Avant Gardner") and AGDP Holding Inc., a New York corporation ("AGDP" and, together with Avant Gardner, the "Borrowers") to obtain postpetition financing pursuant to the DIP Facility (as defined below), and for each of the Debtors (other than the Borrowers) (the "Guarantors") to guarantee unconditionally on a joint and several basis, and subject to the terms and limitations set forth in the DIP Loan Documents in all respects, the Borrowers' obligations under the DIP Facility, consisting of  a senior secured super-priority term loan facility (the "DIP Facility"), on the terms and conditions set forth in that certain Debtor in Possession Term Promissory Note in the form annexed hereto as **Exhibit A** (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "DIP Term Loan Note," and, together with any other related agreements, documents, guarantees, security agreements, or pledge agreements, including this Interim Order and the Final Order, collectively, the "DIP Loan Documents"), by and among the Borrowers, Alter Domus (US) LLC, as administrative agent and collateral agent (in each such capacity, the "DIP Agent"[3]), and the lenders party thereto from time to time (the "DIP Lenders," and, together with the DIP Agent, the "DIP Secured Parties"), in an aggregate principal amount of up to $45,803,621.66[4] in term loan commitments (of which $25,000,000.00 shall be in the form of new money term loans (the "New

---

[3] Any reference to the DIP Agent set forth herein shall mean ADUS (as defined below in paragraph (E)(i)) in its capacity as administrative agent or collateral agent, as appropriate based on the context in which such term is used.

[4] The Roll-Up DIP Term Loans represent Protective Advances (as defined in the Prepetition Financing Agreement; defined below) made by the Prepetition Term Loan Lenders from time to time between May 14, 2025 and the Petition Date to provide the Debtors with necessary working capital to avoid immediate and irreparable harm pending the preparation for and commencement of these Chapter 11 Cases.

Money DIP Term Loans") and, subject to entry of the Final Order, $20,803,621.66 shall be in the form of roll-up term loans (the "Roll-Up DIP Term Loans," and together with the New Money DIP Term Loans, the "DIP Term Loans")), of which an aggregate funded interim principal amount of DIP Term Loans not to exceed $10,000,000.00 (the "Interim DIP Term Loans") shall be available to the Borrowers upon entry of this Interim Order and satisfaction of the other conditions set forth herein and in the DIP Loan Documents prior to entry of the Final Order, and (y) the remainder of which (including the Roll-Up DIP Term Loans) shall be available upon entry of the Final Order to the extent set forth therein.

(2)      authorization for the Debtors to execute, deliver, and enter into the DIP Loan Documents and to perform all of the Debtors' respective obligations thereunder, and such other and further acts as may be required in connection with the DIP Loan Documents;

(3)      authorization for the Debtors to pay the principal, interest, fees, expenses and other amounts payable to the DIP Secured Parties pursuant to the DIP Loan Documents, including, without limitation, any principal, interest, fees, commitment fees, administrative agent fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges, and disbursements of the DIP Secured Parties (including the reasonable and documented out-of-pocket fees and expenses of the DIP Secured Parties' attorneys, advisors, accountants and other consultants) and any obligations in respect of indemnity claims, whether contingent or absolute, in each case, to the extent constituting Borrower and/or Guarantor obligations of any kind under the DIP Loan Documents (collectively, the "DIP Obligations");

(4)      authorization for the Debtors, immediately upon entry of this Interim Order, to use proceeds of the DIP Facility as expressly provided in the DIP Loan Documents and solely in accordance with this Interim Order and the applicable Approved Budget (as defined below),

subject to Permitted Variances (as defined below) and other exclusions set forth in the DIP Loan Documents, to: (A) fund general corporate needs, including without limitation working capital and other general corporate purposes and (B) pay costs, premiums, fees, and expenses incurred to administer or related to the Chapter 11 Cases, including fees and expenses of professionals (including professional fees and expenses of the Debtors, the DIP Agent, the DIP Lenders, any Committee (as defined below) that may be appointed or any other party that are reimbursable by the Debtors, and including funding of the Carve-Out in accordance with this Interim Order and the Final Order) and adequate protection payments under this Interim Order and the Final Order;

(5)      the grant and approval of superpriority administrative expense claim status, pursuant to sections 364(c)(1), 503(b)(1) and 507(b) of the Bankruptcy Code, to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, in respect of all DIP Obligations, subject only to the Carve-Out (as defined below);

(6)      granting the DIP Agent, for the benefit of itself and the other DIP Secured Parties, valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including, without limitation, all property constituting Prepetition Collateral (as defined below), including, without limitation, any Cash Collateral (as that term is defined in section 363(a) of the Bankruptcy Code and further defined below), to secure the DIP Obligations, which DIP Liens shall be subject only to the Carve-Out and Permitted Prior Liens (as defined below) and the relative rankings and priorities set forth herein and in **Exhibit B**;

(7)      authorization for the borrowing, funding and application of the Roll-Up DIP Term Loans for the Protective Advance Refinancing to the extent hereinafter set forth;

(8)      authorization for the Debtors to use, solely in accordance with the Approved Budget, subject to Permitted Variances and other exclusions set forth in the DIP Loan Documents,

any Cash Collateral in which any of the Prepetition Secured Parties (as defined below) may have an interest, and the granting of adequate protection solely to the extent of any postpetition diminution in the value of their respective interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, as a result of (i) the incurrence of the DIP Obligations, (ii) the Debtors' use of Cash Collateral, (iii) the subordination of the Prepetition Secured Obligations to the Carve-Out, (iv) any other diminution in value of the Prepetition Collateral arising from the Debtors' use, sale, or disposition of such Prepetition Collateral or the proceeds thereof, (v) the priming of the Prepetition Liens by the DIP Liens on the Prepetition Collateral (as defined below), and (vi) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, "Diminution in Value");

(9)    the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the other DIP Loan Documents to the extent hereinafter set forth;

(10)    a waiver of the Debtors' ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and, subject to entry of the Final Order, the Prepetition Collateral, and subject to entry of the Final Order, any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(11)    this Court's waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order;

(12)    the scheduling of a final hearing on the Motion (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis, and approving the form of notice with respect to the Final Hearing; and

(13)    granting the Debtors such other and further relief as is just and proper.

The initial hearing on the Motion having been held by this Court on August [__], 2025 (the "Interim Hearing"), and the Court having found that, under the circumstances, due and sufficient notice of the Motion and Interim Hearing was provided by the Debtors as set forth in Paragraph D of this Interim Order, and upon the record made by the Debtors at the Interim Hearing, including the Motion, the *Declaration of Gary Richards in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. __] (the "First Day Declaration"), the *Declaration of Jeffrey Gasbarra in Support of Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "Gasbarra Declaration") and the *Declaration of Stephen Golmont in Support of Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "Golmont Declaration" and together with the Gasbarra Declaration, the "DIP Declarations"), filed contemporaneously with the Motion; any exhibits in connection with the foregoing, and the filings and pleadings in these Chapter 11 Cases, the Court having found that the interim relief requested in the Motion is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates"), their stakeholders and other parties in interest, and

represents a sound exercise of the Debtors' business judgment and is essential for the continued operation and maintenance of the Debtors' businesses; it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[5]

(A)     <u>Petition Date</u>. On August 4, 2025 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief (each, a "<u>Petition</u>") commencing these cases (the "<u>Chapter 11 Cases</u>") under chapter 11 of the Bankruptcy Code. The Debtors continue to operate and maintain their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No chapter 11 trustee or examiner has been appointed in any of the Chapter 11 Cases.

(B)     <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Court may enter this Interim Order and a Final Order consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 and Local Rule 4001-2.

---

[5] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(C)     Committee Formation. As of the date hereof, no official committee of unsecured creditors under section 1102 of the Bankruptcy Code or any other statutory committee has been appointed in the Chapter 11 Cases.

(D)     Notice.  Notice of the Motion, the interim relief requested therein, and the Interim Hearing (the "Notice") has been provided by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on: (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis) (the "30 Largest Unsecured Creditors"); (c) McDermott, Will & Schulte, LLP, as counsel to the Prepetition Term Loan Lenders (as defined below) and the DIP Lenders; (d) Holland & Knight LLP, as counsel to the Prepetition Agent (as defined below) and DIP Agent; (e) Cullen and Dykman LLP, counsel to LiveStyle Holdings, Inc., NYC Festivals, LLC, NYC Club Event, LLC and SFXE IP LLC (collectively, LiveStyle"); (f)  all other parties asserting a lien on or a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

(E)     Debtors' Acknowledgments, Agreements, and Stipulations. In requesting the DIP Facility and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Secured Parties and the Prepetition Secured Parties to agree to provide, or consent to, the DIP Facility, access to the Cash Collateral, and subordination of the Prepetition Liens (as defined below) to the DIP Liens and the Carve-Out, as provided herein, and as a condition to providing financing under the DIP Facility and consenting to the use of Cash Collateral as set forth herein, subject to the rights of parties in interest (other than the Debtors) set forth in paragraph 5.1 of this

8

Interim Order, the Debtors permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:

(i)      __Prepetition Term Loan Facility__. The Borrowers, EZ Festivals, LLC, a Delaware limited liability company, Made Event, LLC, a Delaware limited liability company ("__Made Event__"), and Reynard Productions LLC, a New York limited liability company ("__Reynard__") (each a "__Prepetition Guarantor__" and collectively, the "__Prepetition Guarantors__"; and together with the Borrowers, the "__Prepetition Loan Parties__"), the lenders from time to time party thereto (each a "__Prepetition Term Loan Lender__" and collectively, the "__Prepetition Term Loan Lenders__"), Alter Domus (US) LLC, a Delaware limited liability company ("__ADUS__"), as administrative agent and collateral agent for the Prepetition Term Loan Lenders (in each such capacity, together with its successors and assigns in such capacity, the "__Prepetition Agent__")[6] are parties to that certain Amended and Restated Financing Agreement, dated as of July 1, 2024 (as amended, restated, supplemented or otherwise modified from time to time prior to the date hereof, the "__Prepetition Financing Agreement__", and, together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Term Loan Secured Parties, including, without limitation, all security agreements, deposit account control agreements (including, without limitation, the Control Agreements (as defined below)), control agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "__Prepetition Term Loan Documents__").   Pursuant to the Prepetition Financing Agreement, the Prepetition Term Loan Lenders made term loans and protective advances to the

---

[6] The Prepetition Agent and the Prepetition Term Loan Lenders are collectively referred to herein as the "Prepetition Term Loan Secured Parties."

Borrowers in the aggregate principal amount of $141,908,103.77 (the "Prepetition Term Loans"). As of the Petition Date, approximately $143,642,297.06 of indebtedness under the Prepetition Financing Agreement was outstanding, and, together with any other amounts outstanding under the Prepetition Term Loan Documents, including interest, fees, and expenses, the "Prepetition Term Loan Obligations").  Pursuant to the Prepetition Term Loan Documents, the Prepetition Loan Parties granted to the Prepetition Agent, for the benefit of the Prepetition Term Loan Secured Parties, properly perfected and continuing liens on and security interests in substantially all of the Prepetition Loan Parties' assets, including (without limitation) all "Collateral" (as defined in the Prepetition Term Loan Documents) (such liens and security interests, the "Prepetition Term Loan Liens").

(ii)     LiveStyle Subordinated Loan Obligations.  Avant Gardner, Parent, Made Event, and Reynard (collectively, the "Prepetition LiveStyle Credit Parties", and together with the Prepetition Term Loan Parties, the "Prepetition Secured Debt Obligors"), on the one hand, and LiveStyle (the "Prepetition LiveStyle Secured Parties", and together with the Prepetition Term Loan Secured Parties, the "Prepetition Secured Parties"), on the other hand, are parties to that certain Promissory Note dated as of July 16, 2024 (as amended, restated, supplemented or otherwise modified from time to time prior to the date hereof, the "Prepetition LiveStyle Note", and together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition LiveStyle Credit Parties, including, without limitation, all security agreements, deposit account control agreements, control agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "Prepetition LiveStyle Debt Documents", and together with the Prepetition Term Loan

Documents, the "Prepetition Secured Debt Documents").    Pursuant to the Prepetition LiveStyle Note, the Prepetition LiveStyle Credit Parties agreed to pay LiveStyle an aggregate principal amount of $10,816,000.00.  As of the Petition Date, approximately $11,961,365.00 was owed by the Prepetition LiveStyle Credit Parties to LiveStyle, which includes interest, fees, and expenses (the "Prepetition LiveStyle Obligations" and together with the Prepetition Term Loan Obligations, the "Prepetition Secured Obligations").    Pursuant to the Security Agreement (as defined in the Prepetition LiveStyle Note), the Prepetition LiveStyle Credit Parties granted to LiveStyle properly perfected and continuing liens on and security interests in substantially all of the Prepetition LiveStyle Credit Parties' assets, including (without limitation) all "Collateral" (as defined in the Prepetition LiveStyle Debt Documents) (such liens and security interests, the "Prepetition LiveStyle Liens", and together with the Prepetition Term Loan Liens, the "Prepetition Liens").

(iii)    Prepetition Intercreditor Agreement. The Prepetition Agent, LiveStyle and the Prepetition Secured Debt Obligors (among others) are parties to that certain Intercreditor Agreement, dated as of November 16, 2023 (as amended, restated, supplemented or otherwise modified from time to time prior to the date hereof, the "Prepetition Intercreditor Agreement"). The Prepetition Agent and LiveStyle acknowledge and agree that the Prepetition Intercreditor Agreement is a valid and enforceable "subordination agreement" under section 510(a) of the Bankruptcy Code and other applicable non-bankruptcy law and is, as of the Petition Date, binding on the Prepetition Agent, the Prepetition Term Loan Lenders, LiveStyle and each of the other parties thereto.

(iv)    Prepetition Collateral. To secure the Prepetition Secured Obligations, the Debtors entered into certain guaranty and collateral agreements and certain other security documents governing the Prepetition Secured Parties' security interests in the Prepetition

Collateral (such agreements, as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof, and together with any ancillary collateral documents, including, without limitation, any related mortgages and deeds of trust, the "Prepetition Collateral Documents," and the assets subject to the liens and security interests granted thereunder, the "Prepetition Collateral"). Pursuant to the Prepetition Collateral Documents, and on the terms set forth therein, the Debtors granted to the Prepetition Secured Parties the Prepetition Liens on the Prepetition Collateral.

(v)   Prepetition Secured Obligations. The Prepetition Secured Obligations owing to the Prepetition Secured Parties constitute legal, valid, and binding obligations of the Debtors, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code and this Interim Order), and no portion of the Prepetition Secured Obligations owing to the Prepetition Secured Parties is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Cases (as defined below).

(vi)   Prepetition Liens. The Prepetition Liens granted to the Prepetition Secured Parties (A) constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code and this Interim Order), and perfected security interests in and liens on the Prepetition Collateral, (B) were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and (C) are not subject to defense, counterclaim, recharacterization, subordination,

avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Cases.

(vii)    No Challenges/Claims. No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtors and their Estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code) objections, challenges, causes of action, and/or choses in action against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees with respect to the Prepetition Secured Debt Documents, the Prepetition Secured Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents. The Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(viii)    Indemnity. Subject to entry of Final Order, the DIP Agent and the DIP Lenders have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approval of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens (as defined below), any

challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing. Accordingly, the  DIP Agent and the DIP Lenders shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, provided that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct. Except as otherwise provided in this paragraph E(viii), no exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph E(viii) or in the DIP Loan Documents, to the Debtors' obligation to indemnify and/or hold harmless the DIP Agent or the DIP Lenders, as the case may be.

(ix)    <u>Release</u>. Subject to paragraph 5.1 of this Interim Order and subject to entry of the Final Order, each of the Debtors, their Estates and the Prepetition Loan Parties, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns have agreed to provide releases to each of the Released Parties (as defined below) as provided in paragraph 5.17 of this Interim Order.

(x)    <u>Cash Collateral</u>. The Debtors admit, stipulate, acknowledge, and agree that all of the cash of the Debtors, wherever located, and all cash equivalents, including any cash in deposit accounts of the Debtors, as income, proceeds, products, rents or profits of other Prepetition Collateral, or otherwise, constitutes "<u>cash collateral</u>" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>").

(F)    <u>Findings Regarding the Postpetition Financing and Use of Cash Collateral</u>.

(i)    <u>Request for Postpetition Financing</u>. The Debtors have requested from the DIP Secured Parties, and the DIP Secured Parties are willing, subject to the terms of this Interim Order and satisfaction of the conditions set forth in the DIP Loan Documents, to extend the DIP Loans on the terms and conditions set forth in this Interim Order and the DIP Loan Documents.

(ii)    <u>Need for Postpetition Financing and Use of Cash Collateral</u>. The Debtors do not have sufficient liquidity, including Cash Collateral, to operate and maintain their businesses in the ordinary course of business without the financing requested in the Motion. The Debtors' ability to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, pay certain fees and expenses as set forth herein, and to otherwise fund their operations and other efforts and activities is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates for the benefit of all creditors of the Debtors. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Secured Parties and the use of Cash Collateral as set forth in this Interim Order, the DIP Term Loan Note and the other DIP Loan Documents, as applicable, is vital to the preservation, maximization and maintenance of the going concern value of each Debtor. Accordingly, the Debtors have an immediate need to obtain the postpetition financing and to use Cash Collateral as set forth in this Interim Order to, among other things, permit the orderly continuation of the operation and maintenance of their businesses, minimize the disruption of their business operations and other efforts and activities and preserve and maximize the value of the assets of the Debtors' Estates to maximize the recovery to all creditors of the Estates.

(iii)    <u>No Credit Available on More Favorable Terms</u>. The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under

sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superiority administrative expense, or liens on property of the Estates not subject to a lien pursuant to sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code. The Debtors demonstrated in the Motion, in the First Day Declaration, in the DIP Declarations, and on the record at the Interim Hearing, that it would be futile under the circumstances for the Debtors to undertake further efforts to seek, and they would not obtain, the necessary postpetition financing, let alone on terms more favorable, taken as a whole, than the financing offered by the DIP Secured Parties pursuant to the DIP Loan Documents. In light of the foregoing, and considering the futility of all other alternatives, the Debtors have reasonably and properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to the Debtors at this time, and are in the best interests of the Debtors, their Estates, and all of their stakeholders.

(iv)    Budget. The Debtors have prepared and delivered to the DIP Agent and DIP Lender an initial budget (the "Initial Budget"), a copy of which is attached hereto as **Exhibit C**. The Initial Budget reflects the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date (the Initial Budget and each subsequent budget approved by the DIP Agent (at the written direction of the DIP Lender) and then in effect, the "Approved Budget"), in each case, subject to (i) permitted variances with respect to maximum cumulative disbursement variances ("Permitted Variances"; which variances shall be tested on a biweekly basis (*i.e.*, every two weeks)) of, in respect of the aggregate amount of actual Total Operating Disbursements, (x) 15% for the Initial Two Week Disbursements Period, (y) 15% for the Initial Three Week Disbursements Period, and (z) 15% for the Initial Four Week

Disbursements Period and each Four Week Disbursements Period thereafter; and (ii) other exclusions set forth in the DIP Loan Documents. The Debtors believe that the Initial Budget is reasonable under the facts and circumstances. The DIP Secured Parties and Prepetition Secured Parties are relying upon the Debtors' agreement to comply with the terms set forth in the DIP Term Loan Note, the other DIP Loan Documents, this Interim Order, and with the Approved Budget, in determining to enter into the postpetition financing arrangements provided for herein and to consent to the Debtors' use of Cash Collateral as set forth herein. The Debtors shall provide the DIP Agent and the DIP Lender a revised proposed budget every Thursday beginning on August 21, 2025, and continuing each week thereafter (each, a "Proposed Budget"). If a Proposed Budget is approved by the DIP Agent (at the written direction of the DIP Lender), it shall become the Approved Budget. If the DIP Agent do not approve a Proposed Budget, the last Approved Budget prior to the delivery of the applicable Proposed Budget shall remain the Approved Budget as provided herein.

(v) <u>Sale Process</u>. The DIP Lenders' willingness to make the DIP Loans and the Prepetition Secured Parties' willingness to consent to the use of Cash Collateral (each on the terms and subject to the conditions set forth in the DIP Loan Documents and this Interim Order) is predicated upon (i) the Debtors seeking authority to sell all or substantially of their assets to one or more buyers pursuant to section 363 of the Bankruptcy Code by filing a motion (the "<u>Bid Procedures Motion</u>") for entry of an order (a) authorizing and approving bid procedures for the sale of all or substantially all of their assets, (b) selecting Buyer as the stalking horse bidder, subject to higher or better offers, and (c) establishing other sale-related procedures and deadlines by no later than the Petition Date and (ii) the Debtors' retention of Portage Point Partners ("<u>Portage Point</u>") to advise them in connection with, among other things, the sale of the Debtors' assets.

Absent such arrangements, the DIP Lenders and the Prepetition Secured Parties would not have agreed to make the DIP Loans or consent to the use of Cash Collateral (as applicable) as provided in the DIP Loan Documents and this Interim Order.

(vi)     <u>Certain Conditions to DIP Facility</u>. The DIP Lenders' willingness to make the DIP Loans is conditioned upon, among other things: (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of the obligations thereunder, and to confer upon the DIP Secured Parties all applicable rights, powers, and remedies thereunder in each case as modified by this Interim Order; (b) the Debtors obtaining Court approval of, and the Debtors' compliance with, the "<u>Milestones</u>" set forth on **Exhibit D**, which are hereby approved in all respects; (c) the provision of adequate protection of the Prepetition Secured Parties' interests in the Prepetition Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code; and (d) the DIP Secured Parties being granted, as security for the prompt payment of the DIP Facilities and all other obligations of the Debtors under the DIP Loan Documents, subject to the priorities described in **Exhibit B** annexed hereto, superpriority perfected security interests in and liens upon all property and assets of the Debtors (subject to the Carve-Out), including, but not limited to, a valid and perfected security interest in and lien upon all of the following now existing or hereafter arising or acquired property and assets: (i) all property and assets comprising Prepetition Collateral and (ii) all other property and assets of the Debtors, including any property or assets consisting of "<u>Excluded Assets</u>" under any of the Prepetition Secured Debt Documents (collectively hereinafter referred to as the "<u>DIP Collateral</u>" which, for the avoidance of doubt, shall, subject to the entry of the Final Order, include the proceeds (the "<u>Avoidance Proceeds</u>") of any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions

of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "Avoidance Actions")).

(vii)    Business Judgment and Good Faith Pursuant to Section 364(e). Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Secured Parties, including, without limitation, pursuant to this Interim Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Facility, the DIP Liens, and the DIP Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

(viii)    Sections 552(b) and 506(c). The Debtors have agreed as a condition to obtaining financing under the DIP Facility and the use of Cash Collateral as set forth in this Interim Order that as a material inducement to the DIP Secured Parties to agree to provide the DIP Facility and the Prepetition Secured Parties' consent to the use of Cash Collateral as set forth in this Interim Order, and in exchange for (a) the DIP Secured Parties' willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Secured Parties' and the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve-Out, and (c) the consensual use of Cash Collateral consistent with the Approved Budget, the terms of the DIP Term Loan Note, and the terms of this Interim Order, each of the DIP Secured Parties and the Prepetition Secured Parties are entitled (subject to the entry of the Final Order) to receive (1) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code, and (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

(ix)    <u>Good Cause</u>. Good cause has been shown for the entry of this Interim Order. The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' remaining operating businesses, ongoing operations and other applicable activities and efforts, including the pursuit of a Court-approved marketing and sale process, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (3) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets. The terms of the DIP Facilities and this Interim Order are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration. The DIP Facilities and this Interim Order are the product of reasonable, arm's length, good faith negotiations between the Debtors, the DIP Secured Parties and the Prepetition Secured Parties.

(x)    <u>Refinancing of the Protective Advances</u>.

(a)    The roll-up of the Protective Advances with the proceeds of borrowings under the DIP Facility in accordance with this Interim Order (but subject to the provisions of paragraph 5.1 hereof) is necessary as the Prepetition Term Loan Secured Parties have not otherwise consented to the use of their Cash Collateral, the subordination of their liens to the Carve-Out and the DIP Liens, in each case as provided in this Interim Order, or the extension of credit to fund the Debtors' critical working capital needs in the form of the DIP Facility.  Moreover, as set forth in the Golmont Declarations, in consideration of the entry of this Interim Order authorizing the roll-up of the Protective Advances with the proceeds of the DIP Facility subject to the terms and conditions set forth herein, the Prepetition Term Loan Secured Parties have agreed to waive any

claims for interest at the Default Rate (as such term is defined in the Prepetition Financing Agreement) on $117,983,827.51 of Prepetition Term Loan Obligations. As set forth in the DIP Declarations, the Protective Advances were made by the Prepetition Term Loan Lenders in the months leading up to the commencement of these Chapter 11 cases so as to avoid immediate and irreparable harm to the Debtors' businesses, their estates and their creditors.

(xi)     <u>Adequate Protection</u>. The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, to receive adequate protection against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral), as set forth in this Interim Order.

(xii)     <u>Immediate Entry</u>. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). Any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled), and all reservations of rights included therein, are hereby denied and overruled on the merits.

(xiii)     <u>Interim Hearing</u>. Proper, timely, adequate, and sufficient notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules.  No order or further notice of the Motion or entry of this Interim Order shall be required.

Based upon the foregoing, and upon the record made before the Court at the Interim Hearing and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

Section 1.     <u>Authorization and Conditions to Financing and Use of Cash Collateral</u>.

1.1     <u>Motion Granted</u>. The Motion is granted solely to the extent provided in this Interim Order. Any objections to the entry of this Interim Order that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled on the merits.

1.2     Authorization of DIP Financing and Use of Cash Collateral.

(a)     The Debtors are hereby authorized to execute and deliver the DIP Loan Documents and to borrow, incur, and guarantee (as applicable) DIP Term Loans, pursuant to the terms and conditions of the DIP Loan Documents, this Interim Order and the Approved Budget, in each case up to an aggregate principal amount equal to $10,000,000.00 of Interim DIP Term Loans on an interim basis, together with applicable interest, expenses, fees, Protective Advances and other charges payable in connection with the DIP Facility and, subject to entry of the Final Order, an additional $15,000,000.00 of New Money DIP Term Loans and $20,803,621.66 of Roll-Up DIP Term Loans, together with applicable interest, expenses, fees, Protective Advances, and other charges payable in connection with the DIP Facility, which shall be used for the purposes permitted under the DIP Loan Documents, including, without limitation, to "roll up" and refinance a portion of the Protective Advances pursuant to the Protective Advance Refinancing as provided herein and to pay interest, fees, expenses and other charges in accordance with this Interim Order, the DIP Loan Documents and the Approved Budget (subject to Permitted Variances).

(b)     The Debtors are hereby authorized to (i) borrow under the DIP Facilities and use Cash Collateral during the period (the "Interim Financing Period") commencing on the date of this Interim Order through and including the earlier to occur of (x) the date of entry of the Final Order or (y) the occurrence of a DIP Termination Event (as defined below) solely in accordance with, and for the purposes permitted by, the DIP Loan Documents, this Interim Order and the Approved Budget (subject to Permitted Variances), (ii) pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the DIP Term Loan Note and other DIP Loan Documents, all pursuant to the terms and conditions of this Interim Order, the Approved Budget, the DIP Term Loan Note, and the other DIP Loan Documents, and (iii) effectuate the

Protective Advance Refinancing (as defined below). The Initial Budget is hereby approved in all respects.

1.3     <u>Financing Documents</u>.

(a)     <u>Authorization</u>. The Debtors are hereby authorized to enter into, execute, deliver, and perform all obligations under the DIP Loan Documents. No obligation, payment, transfer, or grant of security hereunder or under the DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or foreign law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity.

(b)     <u>Approval; Evidence of Borrowing Arrangements</u>. The DIP Loan Documents and DIP Obligations shall be valid, binding, and enforceable against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee appointed in any of these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases (collectively, the "<u>Successor Cases</u>"), and their creditors and other parties in interest, in each case, in accordance with the terms of this Interim Order and the DIP Loan Documents.

(c)     <u>Payment of DIP Fees and Other Expenses</u>. Any and all fees and expenses payable pursuant to the DIP Loan Documents (collectively, any and all such fees and expenses, the "<u>DIP Fees</u>") are hereby approved and the Debtors are hereby authorized to pay, in cash and on

a current basis, all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Agent and the DIP Lenders incurred at any time, to the extent and as provided by the DIP Loan Documents and this Interim Order in accordance with paragraph 6.15 hereof.

(d)    <u>Amendments to DIP Loan Documents</u>. Subject to the terms and conditions of the applicable DIP Loan Documents, the Debtors and the applicable DIP Secured Parties may make amendments, modifications, or supplements to any DIP Loan Document, and the DIP Agent and/or DIP Lender may waive any provisions in the DIP Loan Documents, without further approval of the Court; *provided* that any amendments, modifications, or supplements to any DIP Loan Documents that operate to increase the aggregate commitments, the rate of interest payable thereunder, or existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as currently provided in the DIP Loan Documents (collectively, the "<u>Material DIP Amendments</u>"), shall be filed with the Court, and the Debtors shall provide prior written notice of the Material DIP Amendment to (i) counsel to the DIP Agent and the Prepetition Agent, (ii) counsels to the DIP Agent and DIP Lender; (iii) counsel for the other Prepetition Secured Parties, (iv) counsel to any Committee, or, in the event no such Committee is appointed at the time of such Material DIP Amendment, the 30 Largest Unsecured Creditors, and (v) the U.S. Trustee; *provided*, *further*, that the consent of the foregoing parties will not be necessary to effectuate any such amendment, modification or supplement, except that any Material DIP Amendment that is subject to an objection filed within five (5) Business Days following receipt of such Material DIP Amendment must be approved by the Court.

1.4    <u>Refinancing of Protective Advances</u>.

(a)    Subject to entry of the Final Order, on the date of each borrowing of New Money DIP Term Loans under the DIP Loan Documents, the Prepetition Term Loan Obligations

in respect of Protective Advances held by the DIP Lenders shall, subject to paragraph 5.1 hereof, immediately, automatically and irrevocably be deemed to have been fully refinanced by, and the DIP Lenders shall be deemed to have funded, Roll-Up DIP Term Loans on the Final Order Closing Date (the "Protective Advance Refinancing"), which Roll-Up DIP Term Loans shall be entitled to all the priorities, privileges, rights and other benefits afforded to the other DIP Obligations under the Final Order and the DIP Loan Documents, in each case subject to the terms and conditions set forth in the Final Order, the DIP Loan Documents and paragraph 5.1 below. Until (a) all objections and challenges (including, without limitation, any Challenge Proceeding (as defined in paragraph 5.1 hereof)) to (1) the liens, security interests and claims of the Prepetition Term Loan Agent (including, without limitation, liens granted for adequate protection purposes) and/or (2) the Prepetition Term Loan Obligations (in each case in respect of the Protective Advances[7]) have been waived, denied or barred, and (b) all of the Debtors' Stipulations (as defined in paragraph 5.1 hereof) have become binding on their estates and parties in interest in accordance with paragraph 5.1 hereof, all liens, security interests and claims of the Prepetition Term Loan Agent (including, without limitation, liens granted for adequate protection purposes) in respect of the Protective Advances and the Protective Advance Refinancing shall remain valid and enforceable with the same continuing priority as described herein and the Prepetition Term Loan Documents shall remain in full force and effect; *provided*, however, that, subject to the results of any applicable Challenge Proceeding, to the extent that Protective Advances have been rolled-up pursuant to the Protective Advance Refinancing and have become and are DIP Obligations, such Protective Advances shall not be due or owing separately under the Prepetition Term Loan Documents; *provided, further*, however, that nothing in the foregoing proviso shall alter or diminish, or be

---

[7] "Protective Advances" means the protective advances under the Prepetition Term Loans.

deemed to alter or diminish, the Adequate Protection (as defined herein) of the Prepetition Term

Loan Agent and the Prepetition Term Loan Lenders.

    1.5    <u>DIP Term Loan Funding; Prepetition Intercreditor Agreement</u>.

    (a)    The proceeds of the DIP Term Loans shall be funded into an account under

the Debtors' cash management system and such account shall be specified in a Borrowing Request

delivered to the DIP Agent by a Responsible Officer of the Debtors.  The Debtors may request

DIP Term Loans no more frequently than once per week.  The Debtors shall be permitted to receive

proceeds of the DIP Term Loans if such Borrowing Request provides, among other things, that the

amount of the requested DIP Term Loans complies with the Borrowing Liquidity Condition.[8]

    (b)    Except to the extent that it is modified as expressly set forth herein, the

Prepetition Intercreditor Agreement shall remain in full force and effect.

    1.6    <u>Indemnification</u>. Subject to entry of Final Order, the Debtors are authorized to

indemnify and hold harmless the DIP Agent, the DIP Lender, and, in each case solely in their

capacities as such, each of their respective affiliates, and each such Person's respective officers,

directors, employees, attorneys, agents, and representatives (each, an "<u>Indemnified Party</u>"), in

accordance with, and subject to, the DIP Loan Documents.

    1.7    <u>Modification of Automatic Stay</u>. The automatic stay provisions of section 362 of

the Bankruptcy Code is hereby modified and vacated to the extent necessary to permit the Debtors,

the DIP Secured Parties and the Prepetition Secured Parties to accomplish the transactions

contemplated by this Interim Order, including to: (a) permit the Debtors to grant the DIP Liens,

the DIP Superpriority Claims, the Adequate Protection Liens, and the Prepetition Secured Parties'

---

[8] The terms "Borrowing Request", "Responsible Officer", and "Borrowing Liquidity Condition" shall have the meanings ascribed thereto in the DIP Term Loan Note.

Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent, Prepetition Agent or LiveStyle may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Secured Parties and the Prepetition Secured Parties under this Interim Order and the DIP Loan Documents; and (d) authorize the Debtors to pay, and the DIP Secured Parties and Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Final Order.

Section 2.    Postpetition Lien; Superpriority Administrative Claim Status.

2.1    Postpetition Lien.

(a)    Postpetition DIP Lien Granting. To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the Debtors to the DIP Secured Parties of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, the DIP Agent, for the benefit of the DIP Secured Parties, shall have and are hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (the "DIP Liens") in and upon all DIP Collateral, subject to the Carve-Out, Permitted Prior Liens and the rankings and priority set forth in paragraph 2.1(b) below and as set forth on **Exhibit B** hereto.

(b)    DIP Lien Priority in DIP Collateral.

(i)    The DIP Liens on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364, or

any other section of the Bankruptcy Code or other applicable law;[9] *provided*, however, that the DIP Liens on (A) the Prepetition Collateral (whether in existence on the Petition Date or hereafter arising) shall be subject to the Carve-Out and Permitted Prior Liens[10]; (B) assets of the Debtors (the "Non-Lender Encumbered Assets") that were subject to validly perfected liens or security interests as of the Petition Date other than the Prepetition Liens (if any, the "Non-Lender Existing Liens") shall be subject to such Non-Lender Existing Liens and the Carve-Out; and (C) any other assets of the Debtors ("Unencumbered Assets") that were not subject to any validly perfected liens or security interest as of the Petition Date (including, subject to the entry of a Final Order, Avoidance Proceeds) shall be subject to the Carve-Out, in each case as such priorities are set forth in **Exhibit B**.[11]

    (c)  <u>Postpetition Lien Perfection</u>. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Prepetition Secured Parties' Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a control agreement or other depository account consisting of DIP Collateral, or requirement to register liens on any

---

[9] The DIP Liens shall "prime" and be senior to the Prepetition Liens pursuant to section 364(d)(1) if the Bankruptcy Code. The Prepetition Secured Parties have consented to the priming of their Prepetition Liens.

[10] For purposes of this Interim Order, "Permitted Prior Liens" shall mean any liens that are senior by operation of law (including any such liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or that were, as of the Petition Date, valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens.

[11] In the event of any conflict or inconsistency between the terms and provisions of this Interim Order and **Exhibit B**, **Exhibit B** shall control.

certificates of title (a "Perfection Act"). Notwithstanding the foregoing, if any DIP Agent or Prepetition Secured Party, as applicable, shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then such DIP Agent or Prepetition Secured Party, as applicable, is authorized to perform such act, and the Debtors are authorized and directed to perform such act to the extent necessary or required by the DIP Loan Documents and this Interim Order, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. The DIP Agent or Prepetition Secured Parties, as applicable, may choose to file, record, or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Interim Order in accordance with applicable law. Should any DIP Agent or Prepetition Secured Party, as applicable, so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Interim Order.

(d)     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by this Interim Order (including the DIP Liens and the Prepetition Secured Parties' Adequate Protection Liens) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the

judicial power and authority of this Court; provided, however, that nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens. By virtue of the terms of this Interim Order, to the extent that any DIP Agent or Prepetition Secured Party, as applicable, has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors (including all Guarantors), such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Interim Order without further action by the DIP Agent or Prepetition Secured Party, as applicable.

(e)     Except as provided in this Interim Order, the DIP Liens, the DIP Superpriority Claims, the Prepetition Secured Parties' Adequate Protection Liens, and the Prepetition Secured Parties' Adequate Protection Claims (as defined below) (i) other than the Carve-Out, shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in any of these Chapter 11 Cases or any Successor Cases; (ii) shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim; and (iii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

2.2     Superpriority Administrative Expenses.

(a)     DIP Loans. Subject to the priorities set forth on **Exhibit B** and the Carve-Out, on account of all DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Loan Documents, or otherwise, the DIP Agent, for the benefit of themselves and

the DIP Lender, are granted allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, sections 105, 326, 330, 331, 364(c)(1), 365, 503(b), 507(a) (other than 507 (a)(1)), 507(b), 546(c), 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including, subject to entry of the Final Order, proceeds of Avoidance Actions) (the "DIP Superpriority Claims"), in each case, other than the Carve-Out which shall have priority over the DIP Superpriority Claims.

Section 3.      Carve-Out Provisions.

3.1      The Debtors' obligations to the DIP Secured Parties and the Prepetition Secured Parties, and the liens, security interests and superpriority claims granted by this Interim Order or the Final Order or under the Prepetition Secured Debt Documents and the DIP Loan Documents, and the payment of all such obligations, shall be subject and subordinate in all respects to payment of the following fees and expenses: (a) the payment of unpaid fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (b) reasonable and documented fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (c) Allowed Professional Fees (as defined below) of the Estate Professionals (as defined below) prior to the delivery by the DIP Agent of a Carve-Out Trigger Notice (defined below) (at the written direction of the DIP Lender) (the amounts set forth in this clause (c) being the "Pre Carve-Out Trigger Notice Cap"); and (d) the Allowed Professional Fees of (i) Debtor

Professionals in an aggregate amount not to exceed $500,000.00 (plus any prepetition retainer held by a Debtor Professional to the extent not previously applied or returned), and (ii) Committee Professionals in an aggregate amount not to exceed $100,000.00, in each case incurred on or after the first business day following delivery by the DIP Agent of the Carve-Out Trigger Notice (at the written direction of the DIP Lender) (the amounts set forth in this clause (d) being the "Post Carve-Out Trigger Notice Cap" and together with the Pre Carve-Out Trigger Notice Cap and the amounts set forth in clauses (a) and (b), the "Carve-Out Cap"); (the foregoing clauses (a) through (d), collectively, the "Carve-Out").  Notwithstanding anything to the contrary herein, the fees and expenses included in the Carve-Out shall be subject to and consistent with the amounts set forth in the Approved Budget.

(a)     As used in this paragraph, persons or firms retained by (x) the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code are referred to as "Debtor Professionals"), and (y) any official committee appointed in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee") are referred to as "Committee Professionals" and, together with the Debtor Professionals, the "Estate Professionals".

(b)     The term "Allowed Professional Fees" means fees and expenses incurred prior to the applicable event set forth in this paragraph, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, but subject to final allowance by the Court, or were invoiced after the Carve-Out Trigger Notice Date.  To the extent that professional fees and expenses of the Estate Professionals have been incurred by the Debtors or the Committee at any time before or on the first business day after delivery by the DIP Agent of a Carve-Out Trigger Notice (at the written direction of the DIP Lender) but have not yet been allowed by the Court, such professional fees and expenses of the Estate Professionals shall constitute Allowed

Professional Fees benefiting from the Carve-Out upon their allowance by the Court, whether by interim or final compensation order, and the Carve-Out Accounts shall be funded to include such professional fees and expenses as set forth herein.  Allowed Professional Fees shall include any "success fee", "financing fee", or similar fee that is payable to Portage Point.

(c)     "Carve-Out Trigger Notice" means a written notice stating that the Post-Carve-Out Trigger Notice Cap has been invoked, delivered by hard copy or email by the DIP Agent (at the written direction of the DIP Lender) under the DIP Loan Documents to lead bankruptcy counsel for the Debtors, the U.S. Trustee, counsel to the Prepetition Agent, counsel to LiveStyle, and counsel to any Committee, which notice may be delivered following the occurrence and during the continued existence of a DIP Termination Event (as defined herein) under the terms of this Interim Order.

(d)     "Carve-Out Trigger Notice Date" means the day on which a Carve-Out Trigger Notice is received by the Debtors.

(e)     "Carve-Out Account" means a separate segregated account not subject to the control of the DIP Agent, the Prepetition Agent or any of the DIP Lenders or Prepetition Secured Parties.

3.2     Within five (5) business days of the initial funding of the Interim DIP Term Loans, the Debtors shall fund into two Carve-Out Accounts (one for Debtor Professionals and one for Committee Professionals) an amount equal to the total budgeted Debtor Professionals' and Committee Professionals' fees, respectively, for the first two (2) weeks set forth in the Approved Budget and, thereafter, the Debtors are authorized to transfer into the Carve-Out Accounts on a weekly basis cash in an amount equal to the Debtor Professionals' and Committee Professionals' fees, respectively, (excluding any restructuring, sale, success or other transaction fee of any

investment bankers or financial advisors) for such unfunded week as set forth in the Approved Budget.  Thereafter, the Debtors shall use such funds held in the Carve-Out Accounts to pay Estate Professional fees as they become allowed and payable pursuant to interim or final orders of the Court; provided, that the Debtors' obligations to pay the Allowed Professional Fees of the Estate Professionals shall not be limited or deemed limited to funds held in the Carve-Out Account. Notwithstanding anything in this Interim Order or the DIP  Loan Documents to the contrary, the budgeted Debtors' Professionals and Committees Professionals' fees that are to be funded into the Carve-Out Accounts (as applicable) upon the delivery of a Carve-Out Trigger Notice shall, pursuant to Section 2 of the DIP Term Loan Note, automatically constitute a permitted Borrowing and shall be funded in full without offset or deduction and shall not be subject to the Borrowing Liquidity Condition.

3.3     On the Carve-Out Trigger Notice Date, the Carve-Out Trigger Notice shall constitute a demand to the Debtors to fund the Carve-Out Accounts in cash in an amount equal to the Carve-Out Cap, and immediately following receipt of a Carve-Out Trigger Notice, and prior to the payment of any DIP Obligations or Prepetition Secured Obligations, the Debtors shall be required to deposit into the Carve-Out Accounts cash in an amount equal to the difference between the applicable Carve-Out Cap and the balance held in the applicable Carve-Out Account as of the Carve-Out Trigger Notice Date.  Notwithstanding anything to the contrary herein or in the DIP Loan Documents, following delivery of a Carve-Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Accounts have been fully funded as required herein in an amount equal to all obligations benefitting from the Carve-Out.

3.4     The amounts in the Carve-Out Accounts shall be available only to satisfy Allowed Professional Fees and other amounts included in the Carve-Out until such amounts are paid in full. Notwithstanding anything to the contrary herein, the failure of the Carve-Out Accounts to satisfy in full the amount set forth in the Carve-Out shall not affect the priority of the Carve-Out.  All funds in the Carve-Out Accounts shall be used first to pay all obligations benefitting from the Pre Carve-Out Trigger Notice Cap, until paid in full, and then the obligations benefitting from the Post Carve-Out Trigger Notice Cap; *provided* that the amount in the Carve-Out Accounts shall be reduced on a dollar-for-dollar basis for Allowed Professional Fees that are paid after the delivery of the Carve-Out Trigger Notice, and the Carve-Out Accounts shall not be replenished for such amounts so paid.

3.5     Payments from the Carve-Out shall be subject to any terms and conditions of the engagement agreements and appurtenant orders for the employment of each Estate Professional. The Debtors shall be permitted to pay compensation and reimbursement of expenses incurred prior to the occurrence of a DIP Termination Event or delivery of a Termination Notice to the extent allowed and payable under sections 330 and 331 of the Bankruptcy Code.

3.6     Notwithstanding anything to the contrary herein or elsewhere, the Carve-Out shall be senior to all claims and liens, including liens securing the DIP Facility as well as any adequate protection liens and claims described herein, and the DIP Collateral and Prepetition Collateral shall exclude the Carve-Out Accounts; *provided* that if, after paying all amounts set forth in the definition of Carve-Out, the Carve-Out Account(s) have not been reduced to zero, all remaining funds shall be distributed first, to DIP Agent on account of the DIP Term Loans, unless the DIP Term Loans have been indefeasibly paid in full in cash, second to the Prepetition Secured Parties on account of the Prepetition Secured Obligations, and third to the Debtors.   The Carve-Out

Account shall not be subject to the control of the DIP Agent, DIP Lenders or Prepetition Secured Parties, and the funds transferred to the Carve-Out Account shall not be subject to the DIP Liens or Prepetition Liens, constitute DIP Collateral or Prepetition Collateral, nor be available to pay the DIP Superpriority Claims, Prepetition Secured Parties' Adequate Protection Claims or Prepetition Secured Obligations, until all amounts set forth in this paragraph 3.6 are paid in full.

3.7     The DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or expenses of any Estate Professionals incurred in connection with the Chapter 11 Cases or any Successor Case under any chapter of the Bankruptcy Code, regardless of whether payment of such fees or disbursement has been allowed by the Court.  Nothing in this Interim Order or otherwise shall be construed to obligate any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties in any way to pay compensation to or reimburse expenses of any Estate Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or expense reimbursement.

3.8     <u>Prepetition Secured Parties' Adequate Protection</u>.

(a)     <u>Adequate Protection Claims and Liens</u>. The Prepetition Secured Parties are entitled, pursuant to sections 361, 363(e), 364(d)(1), 503(b), 507(a), and 507(b) of the Bankruptcy Code and effective as of the Petition Date, to adequate protection of their respective interests in the Prepetition Collateral, including any Cash Collateral, in an amount equal to the aggregate Diminution in Value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral from and after the Petition Date. On account of such adequate protection, the Prepetition Secured Parties are hereby granted the following, in each case subject to the priorities set forth on **Exhibit B** and the Carve-Out (collectively, the "<u>Adequate Protection</u>"):

(i)      Prepetition Secured Parties' Adequate Protection Liens. As adequate protection against, and solely to the extent of, any postpetition Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral, the Prepetition Secured Parties are hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of any Perfection Act) valid and perfected postpetition replacement security interests in and liens upon the DIP Collateral (the "Prepetition Secured Parties' Adequate Protection Liens"), which liens shall be, with respect to: (A) the Prepetition Collateral (whether in existence on the Petition Date or hereafter arising), subject and subordinate solely to the Carve-Out, Permitted Prior Liens, and the DIP Liens, (B) the Non-Lender Encumbered Assets, subject to the Non-Lender Existing Liens, the Carve-Out and the DIP Liens, and (C) Unencumbered Assets, subject to the Carve-Out and the DIP Liens, .and in each case as such priorities are set forth in **Exhibit B**.  For the avoidance of doubt, the Prepetition Secured Parties' Adequate Protections Liens shall be subject to the Prepetition Intercreditor Agreement.

(ii)     Adequate Protection Superpriority Claims. As adequate protection against, and solely to the extent of, any postpetition Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral, the Prepetition Secured Parties are hereby granted allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "Prepetition Secured Parties' Adequate Protection Claims"), which shall be allowed claims against each of the Debtors (jointly and severally), with priority (except as otherwise provided herein) over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328,

330, 331, 365, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment. The Prepetition Secured Parties' Adequate Protection Claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors, subject to the Carve-Out, Permitted Prior Liens and the rankings and priorities set forth in **Exhibit B**.  For the avoidance of doubt, the Prepetition Secured Parties' Superpriority Claims shall be subject to the Prepetition Intercreditor Agreement.

(b)     Fees and Expenses. The Debtors are authorized and directed to pay: (i) on the date of the first advance under the DIP Facilities, all reasonable and documented fees and out-of-pocket expenses of the Prepetition Agent that are required to be paid by the Debtors under the Prepetition Secured Debt Documents, including such fees and expenses of counsel and financial advisors to such Prepetition Agent; and (ii) on an ongoing basis, from time to time after the Petition Date, and without duplication, all reasonable and documented fees and out-of-pocket expenses incurred by such Prepetition Agent and required to be paid by the Debtors under the Prepetition Term Loan Documents, including the reasonable and documented fees and out-of-pocket expenses of McDermott, Will & Schulte LLP and Holland & Knight LLP (such professionals, the "Adequate Protection Professionals," and such fees and expenses, collectively, the "Adequate Protection Professional Fees and Expenses").

(c)     Requests for Payment of Fees and Expenses. With respect to Adequate Protection Professional Fees and Expenses incurred postpetition, such Adequate Protection Professionals shall deliver an invoice in summary form (which shall not be required to include time entry detail, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted for privileged or confidential information)

to the Debtors, the U.S. Trustee, and any Committee, with a copy of such invoices delivered simultaneously to counsels to the DIP Lenders, the DIP Agent, the Prepetition Secured Parties and the Prepetition Agent. If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) calendar days after delivery of such invoice, the Debtors shall promptly pay such fees and expenses in full. If an objection to a professional's invoice is timely received, the undisputed portion of any such invoice will be deemed allowed, the Debtors shall promptly pay such undisputed amount and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date (as defined in the DIP Term Loan Note) all Adequate Protection Professional Fees and Expenses incurred on or prior to (including prior to the Petition Date) such date without the need for any Adequate Protection Professional to first deliver a copy of its invoice as provided for herein. The Adequate Protection Professionals shall not be required to comply with the U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, the Court for the payment of any of their fees or out-of-pocket expenses (other than with respect to disputed amounts). Subject to Paragraph 5.1 hereof, payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination, or disgorgement.

Section 4.    <u>DIP Termination Events; Rights and Remedies; Relief from Stay</u>.

4.1    The occurrence of an "Event of Default" as defined in the DIP Loan Documents shall constitute a "<u>DIP Termination Event</u>" unless waived in writing by the DIP Secured Parties in accordance with the DIP Loan Documents.

4.2    Upon the occurrence of a DIP Termination Event, without further notice to, hearing, or order from the Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Agent, subject to paragraphs

4.3 to 4.8 of this Interim Order, to (i) deliver to the Borrowers a notice declaring the occurrence of a DIP Termination Event, (ii) declare the termination, reduction or restriction of the commitments under the DIP Facility (to the extent any such commitment remains), (iii) declare the DIP Obligations then outstanding to be immediately due and payable, (iv) declare the termination of the DIP Facility and the DIP Loan Documents as to any further liability or obligation thereunder, but without affecting the DIP Liens or the DIP Obligations, (v) declare the termination, restriction or revocation of the ability of the Debtors to use Cash Collateral (subject to paragraph 4.5 of this Interim Order), and (vii) charge interest at the default rate under and in accordance with the DIP Facility.

4.3     In addition, upon the occurrence and during the continuation of a DIP Termination Event, the DIP Agent shall provide counsel to the Debtors, counsel to any Committee, counsel to the Prepetition Agent, counsel to LiveStyle, and the U.S. Trustee, five (5) business days' prior written notice (the "Termination Notice") (which may be provided by email) of the occurrence of the DIP Termination Event.    After such five (5) business day period (the "Remedies Notice Period"), subject to paragraphs 4.3 through 4.8, without further notice to, hearing, or order from the Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Agent to (i) freeze all monies or balances in any deposit accounts of the Debtors, (ii) immediately exercise any and all rights of set-off under, and in accordance with, the DIP Loan Documents, (iii) direct the DIP Agent to exercise any right or remedy against the DIP Collateral, including, without limitation, the disposition of DIP Collateral for application towards the DIP Obligations, or (iv) take any other action or exercise any other right or remedy permitted under the DIP Loan Documents, this Interim Order or applicable law.

4.4     During the Remedies Notice Period, the Debtors and any Committee are each deemed to have standing and shall be permitted to request an emergency hearing before the Court (which request must be made prior to the conclusion of the Remedies Notice Period, and shall seek consideration of such request on an expedited basis).

4.5     Notwithstanding anything to the contrary in this Interim Order, during the Remedies Notice Period, the Debtors are permitted to use Cash Collateral and proceeds of the DIP Facility to the extent granted herein and consistent with the Approved Budget (without any Permitted Variance) to fund expenses necessary to preserve the value of the Debtors' business and the DIP Collateral (including payroll and other expenses), as determined by the Debtors in their reasonable discretion and to fund the Carve-Out Accounts in accordance with this Interim Order.

4.6     Following the expiration of the Remedies Notice Period and absent any order of the Court to the contrary, without further notice to, hearing or order from the Court, the automatic stay as to the DIP Agent shall automatically be vacated and modified for the purpose of permitting the applicable DIP Secured Parties to exercise any and all remedies available to them under or pursuant to this Interim Order, the DIP Loan Documents, and applicable law (including, without limitation, the enforcement of rights against DIP Collateral pursuant to paragraph 3.7), and following the payment in full in cash of all DIP Obligations, permitting the Prepetition Agent to exercise all rights and remedies available under the Prepetition Term Loan Documents or applicable law with respect to the Prepetition Collateral and the DIP Collateral.

4.7     Following the expiration of the Remedies Notice Period and absent any order of the Court to the contrary, the Debtors shall reasonably cooperate with the DIP Secured Parties and/or the Prepetition Term Loan Secured Parties in their efforts to enforce their liens and security interests in the DIP Collateral or the Prepetition Collateral, as applicable, in accordance with this

Interim Order and the other DIP Loan Documents and the Debtors shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such party from enforcing its rights or remedies in the DIP Collateral or the Prepetition Collateral, as applicable.

4.8    Nothing included herein shall prejudice, impair, or otherwise affect the DIP Secured Parties' or Prepetition Secured Parties' rights to seek any other supplemental relief in respect of the Debtors, the DIP Collateral, or the Prepetition Collateral.

Section 5.    <u>Representations and Covenants</u>.

5.1    <u>Reservation of Third Party Challenge Rights</u>.

(a)    The stipulations, releases, agreements, and admissions contained in this Interim Order, including, without limitation, paragraph E hereof, and (subject to entry of a Final Order) the releases contained in clause (ix) thereof (collectively, the "<u>Debtors' Stipulations</u>"), shall be binding on the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes immediately upon entry of this Interim Order. The Debtors' Stipulations shall be binding on each other party in interest, including, without limitation, the Committee (if any), unless, and solely to the extent that (a) any such party in interest (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so), obtains requisite standing pursuant to an order of the Court entered prior to the Challenge Deadline (as defined below) and has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "**Challenge Proceeding**") by no later than the Challenge Deadline, (i) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt Documents, the Prepetition Secured Obligations, the Prepetition Liens or the Prepetition Collateral, or otherwise objecting to or challenging any of the admissions, stipulations, findings or

releases included in the Debtors' Stipulations, (ii) asserting or prosecuting any so-called "lender liability" claims, Avoidance Actions or any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action seeking reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery with respect to the Prepetition Liens, the Prepetition Secured Obligations or the Prepetition Secured Debt Documents, and (iii) asserting or prosecuting any other claim or Cause of Action of any nature or description whatsoever, whether arising under the Bankruptcy Code, applicable law or otherwise, against any of the Prepetition Secured Parties or their Representatives (subclauses (i)-(iii), collectively, the "**Challenges**", and each, a "**Challenge**"), and (b) there is entered a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such timely Challenge in any duly-filed Challenge Proceeding; provided, however, that as to the Debtors, any and all such Challenges are hereby irrevocably waived and relinquished as of the Petition Date; provided, further, however, that any pleadings filed in connection with any Challenge Proceeding, including any motion filed with the Court seeking requisite standing and authority to pursue a Challenge, shall include a draft complaint attached thereto and shall set otherwise forth with specificity the basis for each such Challenge, and any Challenge not so specified in a Challenge Proceeding timely and properly filed prior to the Challenge Deadline shall be deemed forever, waived, released and barred.

(b)    If no such Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court does not rule in favor of the plaintiff in any such Challenge Proceeding, then, without further notice or order of the Court, (i) each of the admissions, stipulations, findings and releases contained in the Debtors' Stipulations shall be binding on all

parties-in-interest, including, without limitation, any Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), (ii) the Prepetition Secured Obligations shall constitute allowed claims against each of the Debtors in the Chapter 11 Cases and any Successor Cases, and the Prepetition Liens shall be deemed to be legal, valid, non-avoidable, binding, continuing, perfected and enforceable, as of the Petition Date, against each of the Debtors in the Chapter 11 Cases and any Successor Cases, (iii) the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Secured Debt Documents shall not be subject to any other or further Challenge, contest, attack, objection, challenge, defense, claim, counterclaim, reduction, setoff, offset, recoupment, avoidance, recharacterizationn, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, by any Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), and (iv) all Challenges against any of the Prepetition Secured Parties or any of their Representatives (in their capacities as such) shall be deemed forever waived, released and barred.

(c)    If any such Challenge Proceeding is timely filed by the Challenge Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive on any Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner

appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), except to the extent that any of the admissions, stipulations, findings or releases contained in the Stipulations were expressly challenged in such Challenge Proceeding (and solely as to the plaintiff party that timely filed such Challenge Proceeding and not, for the avoidance of doubt, any other party-interest).  If the Chapter 11 Cases convert to Chapter 7 cases prior to the Challenge Deadline, the Challenge Deadline shall be extended for the Chapter 7 trustee to 45 days after their appointment.  If the Chapter 11 Cases convert to a Chapter 7, and if the Committee has timely filed a Challenge which remains pending at the time of conversion, the chapter 7 trustee will be able to "stand in the shoes" of the committee for purposes of prosecuting such timely-filed Challenge action.

(d)     The "**Challenge Deadline**" means the date that is (i) the earlier of (a) confirmation of any chapter 11 plan of reorganization in these bankruptcy cases, and (b) seventy-five (75) calendar days from entry of this Interim Order; or (ii) any such later date as has been ordered by the Court, for cause shown, upon a motion filed and served within the time period set forth in paragraph 5.1(d).

(e)     For the avoidance of doubt, the Debtors' stipulations, waivers, agreements and releases contained in paragraph E of this Interim Order shall not be subject to Challenge, and shall be binding upon the Debtors and their estates, and any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or selected in any of the Chapter 11 Cases or any Successor Cases), any Committee, all other creditors and all parties-in-interest and each of their respective successors and assigns, in all circumstances and for all purposes, immediately upon entry of this Interim Order.

(f)       Nothing in this Interim Order vests or confers on any person or entity, including any Committee, standing or authority to pursue any Challenge belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved.

Section 6.       Other Rights and DIP Obligations.

6.1       No Modification or Stay of this Interim Order. The DIP Agent and the DIP Lenders have acted in good faith in connection with the DIP Facilities and with this Interim Order, and their reliance on this Interim Order is in good faith, and the DIP Agent and the DIP Lenders are entitled to the protections of section 364(e) of the Bankruptcy Code.

6.2       Rights of Access and Information. The Debtors shall comply with the rights of access and information afforded to the DIP Secured Parties under the DIP Loan Documents and the Prepetition Secured Parties under the Prepetition Secured Debt Documents.

6.3       Power to Waive Rights; Duties to Third Parties.

(a)       Subject to the terms of the DIP Loan Documents, the DIP Agent (acting at the direction of the DIP Lender if so required by the applicable DIP Loan Documents) and/or the DIP Lender shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this Interim Order that are in favor of the DIP Lender (the "DIP Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Rights; *provided that*, the DIP Agent shall (subject to the Prepetition Intercreditor Agreement) obtain the prior written consent of the applicable Prepetition Secured Party for any waiver that affects any rights of the Prepetition Secured Parties hereunder or any treatment of the Prepetition Secured Obligations. Any waiver by the DIP Agent of any DIP Lender Rights shall not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Agent or

any DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Agent or any DIP Lender.

6.4    <u>No Unauthorized Disposition of Collateral; Use of Cash Collateral; Investigation Budget</u>.

(a)    The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including inventory and Cash Collateral), other than pursuant to the terms of this Interim Order or as permitted by the DIP Loan Documents and the Approved Budget (subject to Permitted Variances), and the Debtors are authorized to use Cash Collateral solely in a manner consistent with this Interim Order, the Approved Budget (subject to Permitted Variances), and the DIP Loan Documents (including exclusions to the Approved Budget permitted thereunder).

(b)    Notwithstanding anything herein to the contrary, other than as set forth in Section 4 hereof, no portion of the proceeds of the DIP Facility, the DIP Collateral or the Prepetition Collateral, including Cash Collateral, may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person in connection with (i) preventing, hindering, impeding, or delaying any of the DIP Secured Parties' or Prepetition Secured Parties' enforcement or realization upon, or exercise of rights in respect of, any of the DIP Collateral or Prepetition Collateral, other than to seek a determination that a DIP Termination Event (as defined below) has not occurred or is not continuing or in connection with a remedies hearing, (ii) seeking to amend or modify any of the rights or interests granted to the DIP Secured Parties or Prepetition Secured Parties under this Interim Order or the DIP Loan Documents, including seeking to use Cash Collateral on a contested basis, (iii) asserting, commencing, or prosecuting any claims or

causes of action, including, without limitation, any Challenge or any other actions under chapter 5 of the Bankruptcy Code (or any similar law), against any DIP Secured Party or Prepetition Secured Party, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, or (iv) asserting, joining, commencing, supporting, investigating, or prosecuting any Challenge, or any other action for any claim, counterclaim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the material interests of any DIP Secured Party or Prepetition Secured Party, arising out of, in connection with, or relating to the DIP Loan Documents or the Prepetition Secured Debt Documents, or the transactions contemplated thereunder, including, without limitation, (A) any action arising under the Bankruptcy Code, (B) any so-called "lender liability" claims and causes of action, (C) any action with respect to the validity and extent of the DIP Obligations or the Prepetition Secured Obligations or the validity, extent, perfection and priority of the DIP Liens or the Prepetition Liens, (D) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, re-characterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counterclaims, or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against, or with respect to, the DIP Liens or the Prepetition Liens, in whole or in part, or (E) appeal or otherwise challenge this Interim Order or the Final Order.  Notwithstanding the foregoing, no more than $25,000 in the aggregate of the proceeds of the DIP Facility, DIP Collateral, or Cash Collateral may be used by any Committee in connection with the investigation of, but not litigation of, any potential Challenge.

6.5     <u>No Waiver</u>. The failure of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, to seek relief or otherwise exercise their rights and remedies under the DIP Loan Documents, the DIP Facility, the Prepetition Secured Debt Documents, or this Interim Order, as applicable, shall not constitute a waiver of any of the DIP Secured Parties' or Prepetition Secured Parties' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Secured Parties or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Secured Parties and the Prepetition Secured Parties to: (a) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties.

6.6     <u>Maintenance of Collateral</u>. Unless the DIP Agent (acting at the direction of the applicable DIP Lender) or the DIP Lender otherwise consent in writing, until (i) the payment in full or otherwise acceptable satisfaction of all DIP Obligations and (ii) the termination of the DIP Agent' and the DIP Lenders' obligations to extend credit under the DIP Facilities, the Debtors shall comply with the covenants contained in the DIP Loan Documents regarding the maintenance and insurance of the DIP Collateral. Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Lender) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and lender's loss

payable on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

6.7     Reservation of Rights. The terms, conditions, and provisions of this Interim Order are in addition to and without prejudice to the rights of each DIP Secured Party and Prepetition Secured Party, as applicable, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, the Prepetition Secured Debt Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the DIP Collateral or the Prepetition Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

6.8     Binding Effect.

(a)     All of the provisions of this Interim Order and the DIP Loan Documents, the DIP Obligations, all liens, and claims granted hereunder in favor of each of the DIP Secured Parties and the Prepetition Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of each DIP Agent, DIP Lender, and Prepetition Secured Party set forth herein, including, without limitation, the parties' acknowledgements, stipulations, and agreements in Paragraph E of this Interim Order, subject to paragraph 5.1 hereof (without each of which the DIP Secured Parties would not have entered into or provided funds under the DIP Loan Documents and the Prepetition Secured Parties would not have consented to the priming of the Prepetition Liens as set forth herein and use of Cash Collateral provided for hereunder) provided or

50

acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective and enforceable as of the Petition Date immediately upon entry of this Interim Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting one or more of the Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing one or more of the Chapter 11 Cases, approving any sale of any or all of the DIP Collateral or the Prepetition Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this Interim Order or any provision hereof; *provided that*, in the event a Final Order is entered, the terms and conditions of such Final Order shall control over this Interim Order; provided further that such Final Order must affirm each of the provisions, protections, grants, statements, stipulations, and agreements in this Interim Order in order for such provisions, protections, grants, statements, stipulations, and agreements to remain in effect after entry of the Final Order.

(b)    Nothing in these Chapter 11 Cases may impair the DIP Superpriority Claim, the Prepetition Secured Parties' Adequate Protection Claims, and the DIP Secured Parties' and the Prepetition Secured Parties' respective liens on and security interests in the DIP Collateral and the Prepetition Collateral, respectively, and all other claims, liens, adequate protections, and other rights granted pursuant to the terms of this Interim Order, which shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations and Prepetition Secured Obligations are indefeasibly paid and satisfied in full. Notwithstanding any such dismissal, this

Court shall retain jurisdiction for the purposes of enforcing all such claims, liens, protections, and rights referenced in this paragraph and otherwise in this Interim Order.

(c)     Except as set forth in this Interim Order, in the event this Court modifies, reverses, vacates, or stays any of the provisions of this Interim Order or any of the DIP Loan Documents, such modifications, reversals, vacatur, or stays shall not affect the (i) validity, priority, or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Agent or Prepetition Secured Parties, as applicable, of the effective date of such modification, reversal, vacatur, or stay, (ii) validity, priority, or enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Secured Parties' Adequate Protection Liens and the Prepetition Secured Parties' Adequate Protection Claims or (iii) rights or priorities of any DIP Secured Party or Prepetition Secured Party pursuant to this Interim Order with respect to the DIP Collateral or any portion of the DIP Obligations. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein.

(d)     Subject to paragraph 5.1 hereof, this Interim Order shall be binding upon the Debtors, all parties in interest in the Chapter 11 Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Chapter 11 Cases or any subsequently converted bankruptcy case(s) of any Debtor and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law. This Interim Order shall also inure to the benefit of the Debtors, DIP Agent, DIP Lenders, Prepetition Secured Parties, and each of their respective successors and assigns.

6.9     No Discharge. The DIP Obligations and the obligations of the Debtors with respect to adequate protection hereunder, including granting the Prepetition Secured Parties' Adequate Protection Liens and the Prepetition Secured Parties' Adequate Protection Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, has otherwise agreed in writing.

6.10    No Priming of Prepetition Secured Obligations. Notwithstanding anything to the contrary herein, from and after the entry of this Interim Order, absent the express written consent of the Prepetition Term Loan Lenders, no Debtor shall seek authorization from this Court to obtain or incur any indebtedness or enter into an alternative financing facility other than the DIP Facility (a "Competing DIP Facility") seeking to impose liens on any Prepetition Collateral ranking on a *pari passu* or priming basis with respect to the Prepetition Liens held by the Prepetition Secured Parties; provided, however, that nothing herein shall preclude the Debtors from seeking authorization to incur any indebtedness or enter into any Competing DIP Facility that provides for the payment in full of the DIP Obligations and the Prepetition Term Loan Obligations at the initial closing of such Competing DIP Facility.

6.11    Section 506(c) Waiver. Subject to entry of the Final Order, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the DIP Agent or the DIP Lender upon the DIP Collateral, or by the Prepetition Secured Parties upon the Prepetition Collateral, as applicable) shall be

charged against any of the DIP Agent, the DIP Lender, or the Prepetition Secured Parties, or any of the DIP Obligations or Prepetition Secured Obligations or the DIP Collateral or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Secured Parties and/or affected Prepetition Secured Parties, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out or the approval of any budget hereunder).

6.12   Section 552(b) Waiver. Subject to entry of the Final Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facility and using Cash Collateral as provided in this Interim Order that the Prepetition Secured Parties are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and that the "equities of the case" exception under section 552(b) shall not apply to the DIP Agent, the DIP Lenders, the DIP Obligations, the Prepetition Secured Parties, or the Prepetition Secured Obligations.

6.13   No Marshaling/Application of Proceeds.

(a)   Subject to entry of the Final Order, in no event shall the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable, and all proceeds shall be received and applied in accordance with the DIP Loan Documents and the Prepetition Secured Debt Documents (including the Prepetition Intercreditor Agreement), as applicable.

(b)   Notwithstanding anything to the contrary in this Interim Order, but subject in all respects to the Carve-Out and the priorities set forth on **Exhibit B** hereto, the respective DIP Obligations shall be satisfied from the proceeds of DIP Collateral.

6.14    Right to Credit Bid.  To the extent authorized by section 363(k) of the Bankruptcy Code and subject to and upon the entry of a Final Order granting such relief, the Debtors acknowledge and agree that each of the DIP Secured Parties and (subject to the Prepetition Intercreditor Agreement) the  Prepetition Secured Parties shall have the right to credit bid the full amount of the DIP Obligations or the Prepetition Secured Obligations (as applicable) held by such party in connection with any sale of the Debtors' assets pursuant to the Sale Motion or otherwise.

6.15    Payment of DIP Lender Fees and Expenses.

(a)    The Debtors shall pay (i) the reasonable and documented fees and expenses reimbursable under the DIP Facility, the DIP Term Loan Note, or the other DIP Loan Documents, as applicable, whether incurred before or after the Petition Date and (ii) all reasonable and documented out-of-pocket costs and expenses of the DIP Agent and the DIP Lender including, without limitation, reasonable and documented fees and disbursements of counsels in connection with the enforcement or preservation of any rights under the DIP Facility, the DIP Term Loan Note, or the other DIP Loan Documents. With respect to payment of fees and expenses incurred from and after the Petition Date, the DIP Agent and the DIP Lenders shall comply with the procedures set forth in paragraph 3.8(c) hereof.

(b)    The DIP Agent and the DIP Lender shall be entitled to reimbursement of the reasonable fees and expenses of their counsel (the "Lender's Expenses"); provided, however, that copies of all invoices reflecting the Lender's Expenses shall be served by email on the Debtor, the U.S. Trustee, and counsel to the Committee (if any) (collectively the "Fee Notice Parties"), who shall have ten (10) business days to review and to assert any objections thereto.  Such invoices shall include a general description of the nature of the matters worked on, a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, the year of law school graduation for each attorney; provided,

however, that the U.S. Trustee reserves the right to seek copies of invoices containing the detailed time entries of any professional.  Any expenses sought to be reimbursed shall be specified, and broken out by type of expense.  The provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  If no objection to the payment of the Lender Expenses is made in writing by the Fee Notice Parties within ten (10) calendar days after delivery of such invoices, then, without further order of, or application to, the Court or notice to any other party, such Lender Expenses shall be promptly paid by the Debtor.  If an objection is made by any of the Fee Notice Parties within the ten-day objection period to the payment of the Lender Expenses, then the disputed portion of such Lender Expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtor.

6.16   Limits on Lender Liability.

(a)   Solely as a result of making any loan under the DIP Term Loan Note, authorizing the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Secured Parties, and, subject to entry of the Final Order, the Prepetition Secured Parties, shall not be deemed to (i) be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtors, so long as the such party's actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors.

56

Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or, subject to the entry of the Final Order, the Prepetition Secured Parties, of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

(b)     As to the United States, its agencies, departments, or agents, nothing in this Interim Order or the DIP Loan Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

6.17    <u>Release</u>. Subject to paragraph 5.1 of this Interim Order and entry of the Final Order, each of the Debtors, their Estates and the Prepetition Secured Debt Obligors, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit each of the DIP Secured Parties and the Prepetition Secured Parties, and (in such capacity) each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "<u>Released Parties</u>") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to (i) the Prepetition Secured Obligations and the DIP Facilities or (ii) the DIP Loan Documents and the Prepetition Secured Debt Documents, as applicable, including, without limitation, (a) any so-called "<u>lender</u>

liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Secured Obligations and the DIP Obligations, the Prepetition Secured Debt Documents and the DIP Loan Documents, or the Prepetition Liens and the DIP Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order. The Debtors are authorized in any payoff letter or similar agreement into which they enter upon payment in full of any DIP Obligations to provide a waiver and release substantially similar to the waiver and release set forth in this paragraph 6.17 of the applicable DIP Agent(s) and the applicable DIP Lenders and their respective related parties.

6.18    Survival. The provisions of this Interim Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Secured Parties' Adequate Protection Liens, the Prepetition Secured Parties' Adequate Protection Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by,

entry of any order that may be entered (a) confirming any plan of reorganization in any of these Chapter 11 Cases, (b) converting any or all of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of these Chapter 11 Cases, (d) terminating the joint administration of these Chapter 11 Cases or any other act or omission, (e) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents), or (f) pursuant to which the Court abstains from hearing any of these Chapter 11 Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in any of these Chapter 11 Cases, following dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Loan Documents and this Interim Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facilities are terminated, and (ii) in respect of the Prepetition Secured Obligations, all of the adequate protection obligations owed to the Prepetition Secured Parties provided for in this Interim Order and under the Prepetition Secured Debt Documents have been indefeasibly paid in full in cash.

6.19   <u>Proofs of Claim</u>. None of the Prepetition Secured Parties shall be required to file proofs of claim in any of these Chapter 11 Cases or subsequent cases of any of the Debtors under any chapter of the Bankruptcy Code, and the Debtors' Stipulations in this Interim Order shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s).

6.20 <u>No Third Party Rights</u>. Except as specifically provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

6.21 <u>No Avoidance</u>. No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facilities shall be avoidable or recoverable from the DIP Agent or the DIP Lenders under any section of the Bankruptcy Code, or any other federal, state, or other applicable law, *provided that*, nothing within this paragraph is intended to limit or curtail the provisions of paragraph 5.1 hereof, with respect to the Prepetition Secured Obligations.

6.22 <u>Reliance on Order</u>. All postpetition advances under the DIP Loan Documents are made in reliance on this Interim Order.

6.23 <u>Payments Free and Clear</u>. Subject to paragraph 5.1, any and all payments or proceeds remitted to the DIP Agent on behalf of the applicable DIP Secured Parties, or to the Prepetition Secured Parties, pursuant to the provisions of this Interim Order, any subsequent order of this Court or the DIP Loan Documents, shall be irrevocable, received free and clear of any claims, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve-Out in all respects.

6.24 <u>LLC Derivative Standing</u>. For the avoidance of doubt, the Prepetition Secured Parties and, to the extent necessary, the Debtors, waive any right to contest ability of any statutory committee appointed in these Chapter 11 Cases to obtain standing on grounds that such cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company and applicable non-bankruptcy law prohibits a party other than the Debtors from bringing claims on behalf of such an entity. Notwithstanding anything

to the contrary contained herein, all Challenges shall be released at the closing of any sale to the Proposed Purchaser and the releases set forth in paragraph 6.17 of this Interim Order shall be effective.

6.25    <u>Interim Order Governs</u>. In the event of a conflict between the terms and provisions of any of the DIP Loan Documents and this Interim Order, the terms and provisions of this Interim Order shall govern.

6.26    <u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

6.27    <u>Bankruptcy Rules</u>. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

6.28    <u>General Authorization</u>. The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties are authorized to take any and all actions necessary to effectuate the relief granted in this Interim Order.

6.29    <u>Retention of Exclusive Jurisdiction</u>. This Court shall retain jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the DIP Term Loan Note, and the other DIP Loan Documents.

6.30    <u>Final Hearing and Response Dates</u>. The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) will be held on _____, 2025, at __:__ _.m., prevailing Eastern Time. The Debtors shall promptly send copies of this Interim Order to the Notice Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or the Committee's counsel if same shall have filed a request for notice. The Debtors may serve the Motion and this Interim Order without the exhibits attached thereto as such exhibits are voluminous and available, free of charge, at the Debtors' claims and noting agent's website: veritaglobal.net/agdp, and such notice is deemed good and sufficient and no further notice need be given. Any party in interest objecting to the relief sought at the Final Hearing shall serve

and file written objections, which objections shall be served upon the Notice Parties and shall be filed with the Clerk of the Court, in each case, to allow actual receipt of the foregoing no later than 4:00 p.m. (prevailing Eastern Time), on _____, 2025.

#  #  #   END OF ORDER   #  #  #

## **<u>EXHIBITS</u>**
(*Intentionally Omitted*)

**<u>EXHIBIT 2</u>**

**Blackline**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25- 11446 ([●]MFW) |
| Debtors. | (Joint Administration Requested) |
| | **Ref: Docket No. 11** |

**INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 364, 503 AND 507 OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (B) ADEQUATE PROTECTION TO CERTAIN PREPETITION LENDERS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Upon the *Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection To Certain Prepetition Lenders; (III) Authorizing Use Of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "Motion")[2] of the debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors"), for entry of an interim order (this "Interim Order") and a final order (the "Final Order"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2) 364(c)(3), 364(d), 364(e), 503 and 507 of title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals, LLC (8854); Made Event, LLC (6272); and Reynard Productions, LLC (5431).  The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Each capitalized term used but not defined herein shall have the meaning ascribed to it in the applicable DIP Loan Documents (as defined below).

"Bankruptcy Code"), Rules 2002, 4001(b) and (c), 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (together, the "Local Rules"), requesting, among other things:

(1)      authorization for Avant Gardner, LLC, a New York limited liability company "Avant Gardner") and AGDP Holding Inc., a New York corporation ("AGDP" and, together with Avant Gardner, the "Borrowers") to obtain postpetition financing pursuant to the DIP Facility (as defined below), and for each of the Debtors (other than the Borrowers) (the "Guarantors") to guarantee unconditionally on a joint and several basis, and subject to the terms and limitations set forth in the DIP Loan Documents in all respects, the Borrowers' obligations under the DIP Facility, consisting of a senior secured super-priority term loan facility (the "DIP Facility"), on the terms and conditions set forth in that certain Debtor in Possession Term Promissory Note in the form annexed hereto as **Exhibit A** (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "DIP Term Loan Note," and, together with any other related agreements, documents, guarantees, security agreements, or pledge agreements, including this Interim Order and the Final Order, collectively, the "DIP Loan Documents"), by and among the Borrowers, Alter Domus (US) LLC, as administrative agent and collateral agent (in each such capacity, the "DIP Agent"[3]), and the lenders party thereto from time to time (the "DIP Lenders," and, together with the DIP Agent, the "DIP Secured Parties"), in an aggregate principal amount of up to $45,803,621.66[4] in term loan commitments (of which $25,000,000.00 shall be in the form of

---

[3] Any reference to the DIP Agent set forth herein shall mean ADUS (as defined below in paragraph (E)(i)) in its capacity as administrative agent or collateral agent, as appropriate based on the context in which such term is used.

[4] The Roll-Up DIP Term Loans represent Protective Advances (as defined in the Prepetition Financing Agreement; defined below) made by the Prepetition Term Loan Lenders from time to time between May 14, 2025 and the

new money term loans (the "New Money DIP Term Loans") and, subject to entry of the Final

Order, $20,803,621.66 shall be in the form of roll-up term loans (the "Roll-Up DIP Term

Loans," and together with the New Money DIP Term Loans, the "DIP Term Loans")), of which

an aggregate funded interim principal amount of DIP Term Loans not to exceed $10,000,000.00

(the "Interim DIP Term Loans") shall be available to the Borrowers upon entry of this Interim

Order and satisfaction of the other conditions set forth herein and in the DIP Loan Documents

prior to entry of the Final Order, and (y) the remainder of which (including the Roll-Up DIP

Term Loans) shall be available upon entry of the Final Order to the extent set forth therein.

(2)     authorization for the Debtors to execute, deliver, and enter into the DIP Loan

Documents and to perform all of the Debtors' respective obligations thereunder, and such other

and further acts as may be required in connection with the DIP Loan Documents;

(3)     authorization for the Debtors to pay the principal, interest, fees, expenses and

other amounts payable to the DIP Secured Parties pursuant to the DIP Loan Documents,

including, without limitation, any principal, interest, fees, commitment fees, administrative agent

fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges,

and disbursements of the DIP Secured Parties (including the reasonable and documented

out-of-pocket fees and expenses of the DIP Secured Parties' attorneys, advisors, accountants and

other consultants) and any obligations in respect of indemnity claims, whether contingent or

absolute, in each case, to the extent constituting Borrower and/or Guarantor obligations of any

kind under the DIP Loan Documents (collectively, the "DIP Obligations");

---

defined below) made by the Prepetition Term Loan Lenders from time to time between May 14, 2025 and the
Petition Date to provide the Debtors with necessary working capital to avoid immediate and irreparable harm
pending the preparation for and commencement of these Chapter 11 Cases.

(4)      authorization for the Debtors, immediately upon entry of this Interim Order, to use proceeds of the DIP Facility as expressly provided in the DIP Loan Documents and solely in accordance with this Interim Order and the applicable Approved Budget (as defined below), subject to Permitted Variances (as defined below) and other exclusions set forth in the DIP Loan Documents, to: (A) fund general corporate needs, including without limitation working capital and other general corporate purposes and (B) pay costs, premiums, fees, and expenses incurred to administer or related to the Chapter 11 Cases, including fees and expenses of professionals (including professional fees and expenses of the Debtors, the DIP Agent, the DIP Lenders, any Committee (as defined below) that may be appointed or any other party that are reimbursable by the Debtors, and including funding of the Carve-Out in accordance with this Interim Order and the Final Order) and adequate protection payments under this Interim Order and the Final Order;

(5)      the grant and approval of superpriority administrative expense claim status, pursuant to sections 364(c)(1), 503(b)(1) and 507(b) of the Bankruptcy Code, to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, in respect of all DIP Obligations, subject only to the Carve-Out (as defined below);

(6)      granting the DIP Agent, for the benefit of itself and the other DIP Secured Parties, valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including, without limitation, all property constituting Prepetition Collateral (as defined below), including, without limitation, any Cash Collateral (as that term is defined in section 363(a) of the Bankruptcy Code and further defined below), to secure the DIP Obligations, which DIP Liens shall be subject only to the Carve-Out and Permitted Prior Liens (as defined below) and the relative rankings and priorities set forth herein and in **Exhibit B**;

(7)     authorization for the borrowing, funding and application of the Roll-Up DIP Term Loans for the Protective Advance Refinancing to the extent hereinafter set forth;

(8)     authorization for the Debtors to use, solely in accordance with the Approved Budget, subject to Permitted Variances and other exclusions set forth in the DIP Loan Documents, any Cash Collateral in which any of the Prepetition Secured Parties (as defined below) may have an interest, and the granting of adequate protection solely to the extent of any postpetition diminution in the value of their respective interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, as a result of (i) the incurrence of the DIP Obligations, (ii) the Debtors' use of Cash Collateral, (iii) the subordination of the Prepetition Secured Obligations to the Carve-Out, (iv) any other diminution in value of the Prepetition Collateral arising from the Debtors' use, sale, or disposition of such Prepetition Collateral or the proceeds thereof, (v) the priming of the Prepetition Liens by the DIP Liens on the Prepetition Collateral (as defined below), and (vi) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, "Diminution in Value");

(9)     the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the other DIP Loan Documents to the extent hereinafter set forth;

(10)     a waiver of the Debtors' ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and, subject to entry of the Final Order, the Prepetition Collateral, and subject to entry of the Final Order, any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(11)     this Court's waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order;

(12)    the scheduling of a final hearing on the Motion (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis, and approving the form of notice with respect to the Final Hearing; and

(13)    granting the Debtors such other and further relief as is just and proper.

The initial hearing on the Motion having been held by this Court on August [__], 2025 (the "Interim Hearing"), and the Court having found that, under the circumstances, due and sufficient notice of the Motion and Interim Hearing was provided by the Debtors as set forth in Paragraph D of this Interim Order, and upon the record made by the Debtors at the Interim Hearing, including the Motion, the *Declaration of Gary Richards in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. __] (the "First Day Declaration"), the *Declaration of Jeffrey Gasbarra in Support of Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "Gasbarra Declaration") and the *Declaration of Stephen Golmont in Support of Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "Golmont Declaration" and together with the Gasbarra Declaration, the "DIP

Declarations"), filed contemporaneously with the Motion; any exhibits in connection with the foregoing, and the filings and pleadings in these Chapter 11 Cases, the Court having found that the interim relief requested in the Motion is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation and maintenance of the Debtors' businesses; it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[5]

(A)    Petition Date. On August 4, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief (each, a "Petition") commencing these cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code. The Debtors continue to operate and maintain their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No chapter 11 trustee or examiner has been appointed in any of the Chapter 11 Cases.

---

[5] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(B)    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Court may enter this Interim Order and a Final Order consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 and Local Rule 4001-2.

(C)    <u>Committee Formation</u>. As of the date hereof, no official committee of unsecured creditors under section 1102 of the Bankruptcy Code or any other statutory committee has been appointed in the Chapter 11 Cases.

(D)    <u>Notice</u>.  Notice of the Motion, the interim relief requested therein, and the Interim Hearing (the "<u>Notice</u>") has been provided by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on: (a) the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"); (b) the entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis) (the "<u>30 Largest Unsecured Creditors</u>"); (c) McDermott, Will & Schulte, LLP, as counsel to the Prepetition Term Loan Lenders (as defined below) and the DIP Lenders; (d) Holland & Knight LLP, as counsel to the Prepetition Agent (as defined below) and DIP Agent; (e) Cullen and Dykman LLP, counsel to LiveStyle Holdings, Inc., NYC Festivals, LLC, NYC Club Event, LLC and SFXE IP LLC (collectively, <u>LiveStyle</u>"); (f)  all other parties asserting a lien on or a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>").

(E)     <u>Debtors' Acknowledgments, Agreements, and Stipulations</u>. In requesting the DIP Facility and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Secured Parties and the Prepetition Secured Parties to agree to provide, or consent to, the DIP Facility, access to the Cash Collateral, and subordination of the Prepetition Liens (as defined below) to the DIP Liens and the Carve-Out, as provided herein, and as a condition to providing financing under the DIP Facility and consenting to the use of Cash Collateral as set forth herein, subject to the rights of parties in interest (other than the Debtors) set forth in paragraph 5.1 of this Interim Order, the Debtors permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:

(i)     <u>Prepetition Term Loan Facility</u>. The Borrowers, EZ Festivals, LLC, a Delaware limited liability company, Made Event, LLC, a Delaware limited liability company ("<u>Made Event</u>"), and Reynard Productions LLC, a New York limited liability company ("<u>Reynard</u>") (each a "<u>Prepetition Guarantor</u>" and collectively, the "<u>Prepetition Guarantors</u>"; and together with the Borrowers, the "<u>Prepetition Loan Parties</u>"), the lenders from time to time party thereto (each a "<u>Prepetition Term Loan Lender</u>" and collectively, the "<u>Prepetition Term Loan Lenders</u>"), Alter Domus (US) LLC, a Delaware limited liability company ("<u>ADUS</u>"), as administrative agent and collateral agent for the Prepetition Term Loan Lenders (in each such capacity, together with its successors and assigns in such capacity, the "<u>Prepetition Agent</u>")[6] are parties to that certain Amended and Restated Financing Agreement, dated as of July 1, 2024 (as amended, restated, supplemented or otherwise modified from time to time prior to the date hereof, the "<u>Prepetition Financing Agreement</u>", and, together with all other agreements,

---

[6] The Prepetition Agent and the Prepetition Term Loan Lenders are collectively referred to herein as the "Prepetition Term Loan Secured Parties."

documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Term Loan Secured Parties, including, without limitation, all security agreements, deposit account control agreements (including, without limitation, the Control Agreements (as defined below)), control agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "Prepetition Term Loan Documents"). Pursuant to the Prepetition Financing Agreement, the Prepetition Term Loan Lenders made term loans and protective advances to the Borrowers in the aggregate principal amount of $141,908,103.77 (the "Prepetition Term Loans"). As of the Petition Date, approximately $143,642,297.06 of indebtedness under the Prepetition Financing Agreement was outstanding, and, together with any other amounts outstanding under the Prepetition Term Loan Documents, including interest, fees, and expenses, the "Prepetition Term Loan Obligations"). Pursuant to the Prepetition Term Loan Documents, the Prepetition Loan Parties granted to the Prepetition Agent, for the benefit of the Prepetition Term Loan Secured Parties, properly perfected and continuing liens on and security interests in substantially all of the Prepetition Loan Parties' assets, including (without limitation) all "Collateral" (as defined in the Prepetition Term Loan Documents) (such liens and security interests, the "Prepetition Term Loan Liens").

(ii)     LiveStyle Subordinated Loan Obligations. Avant Gardner, Parent, Made Event, and Reynard (collectively, the "Prepetition LiveStyle Credit Parties", and together with the Prepetition Term Loan Parties, the "Prepetition Secured Debt Obligors"), on the one hand, and LiveStyle (the "Prepetition LiveStyle Secured Parties", and together with the Prepetition Term Loan Secured Parties, the "Prepetition Secured Parties"), on the other hand, are parties to that certain Promissory Note dated as of July 16, 2024 (as amended, restated, supplemented or

otherwise modified from time to time prior to the date hereof, the "Prepetition LiveStyle Note", and together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition LiveStyle Credit Parties, including, without limitation, all security agreements, deposit account control agreements, control agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "Prepetition LiveStyle Debt Documents", and together with the Prepetition Term Loan Documents, the "Prepetition Secured Debt Documents").   Pursuant to the Prepetition LiveStyle Note, the Prepetition LiveStyle Credit Parties agreed to pay LiveStyle an aggregate principal amount of $10,816,000.00.  As of the Petition Date, approximately $11,961,365.00 was owed by the Prepetition LiveStyle Credit Parties to LiveStyle, which includes interest, fees, and expenses (the "Prepetition LiveStyle Obligations" and together with the Prepetition Term Loan Obligations, the "Prepetition Secured Obligations").  Pursuant to the Security Agreement (as defined in the Prepetition LiveStyle Note), the Prepetition LiveStyle Credit Parties granted to LiveStyle properly perfected and continuing liens on and security interests in substantially all of the Prepetition LiveStyle Credit Parties' assets, including (without limitation) all "Collateral" (as defined in the Prepetition LiveStyle Debt Documents) (such liens and security interests, the "Prepetition LiveStyle Liens", and together with the Prepetition Term Loan Liens, the "Prepetition Liens").

(iii)    Prepetition Intercreditor Agreement. The Prepetition Agent, LiveStyle and the Prepetition Secured Debt Obligors (among others) are parties to that certain Intercreditor Agreement, dated as of November 16, 2023 (as amended, restated, supplemented or otherwise modified from time to time prior to the date hereof, the "Prepetition Intercreditor Agreement").

The Prepetition Agent and LiveStyle acknowledge and agree that the Prepetition Intercreditor Agreement is a valid and enforceable "subordination agreement" under section 510(a) of the Bankruptcy Code and other applicable non-bankruptcy law and is, as of the Petition Date, binding on the Prepetition Agent, the Prepetition Term Loan Lenders, LiveStyle and each of the other parties thereto.

(iv)    Prepetition Collateral. To secure the Prepetition Secured Obligations, the Debtors entered into certain guaranty and collateral agreements and certain other security documents governing the Prepetition Secured Parties' security interests in the Prepetition Collateral (such agreements, as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof, and together with any ancillary collateral documents, including, without limitation, any related mortgages and deeds of trust, the "Prepetition Collateral Documents," and the assets subject to the liens and security interests granted thereunder, the "Prepetition Collateral"). Pursuant to the Prepetition Collateral Documents, and on the terms set forth therein, the Debtors granted to the Prepetition Secured Parties the Prepetition Liens on the Prepetition Collateral.

(v)    Prepetition Secured Obligations. The Prepetition Secured Obligations owing to the Prepetition Secured Parties constitute legal, valid, and binding obligations of the Debtors, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code and this Interim Order), and no portion of the Prepetition Secured Obligations owing to the Prepetition Secured Parties is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other challenges pursuant to the Bankruptcy Code or applicable

non-bankruptcy law or regulation by any person or entity, including in any Successor Cases (as defined below).

(vi)    <u>Prepetition Liens</u>. The Prepetition Liens granted to the Prepetition Secured Parties (A) constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code and this Interim Order), and perfected security interests in and liens on the Prepetition Collateral, (B) were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and (C) are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Cases.

(vii)    <u>No Challenges/Claims</u>. No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtors and their Estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code) objections, challenges, causes of action, and/or choses in action against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees with respect to the Prepetition Secured Debt Documents, the Prepetition Secured Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502,

510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents. The Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(viii)    Indemnity. ~~The~~Subject to entry of Final Order, the DIP Agent and the DIP Lenders have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approval of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens (as defined below), any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing. Accordingly, the DIP Agent and the DIP Lenders shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, provided that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct. Except as otherwise provided in this paragraph E(viii), no exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph E(viii) or in the DIP Loan Documents, to the Debtors' obligation to indemnify and/or hold harmless the DIP Agent or the DIP Lenders, as the case may be.

(ix)    Release. Subject to paragraph 5.1 of this Interim Order and subject to entry of the Final Order, each of the Debtors, their Estates and the Prepetition Loan Parties, on their own behalf and on behalf of each of their past, present and future predecessors, successors,

14

heirs, subsidiaries, and assigns have agreed to provide releases to each of the Released Parties (as defined below) as provided in paragraph 5.17 of this Interim Order.

(x)     Cash Collateral. The Debtors admit, stipulate, acknowledge, and agree that all of the cash of the Debtors, wherever located, and all cash equivalents, including any cash in deposit accounts of the Debtors, as income, proceeds, products, rents or profits of other Prepetition Collateral, or otherwise, constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

(F)     Findings Regarding the Postpetition Financing and Use of Cash Collateral.

(i)     Request for Postpetition Financing. The Debtors have requested from the DIP Secured Parties, and the DIP Secured Parties are willing, subject to the terms of this Interim Order and satisfaction of the conditions set forth in the DIP Loan Documents, to extend the DIP Loans on the terms and conditions set forth in this Interim Order and the DIP Loan Documents.

(ii)     Need for Postpetition Financing and Use of Cash Collateral. The Debtors do not have sufficient liquidity, including Cash Collateral, to operate and maintain their businesses in the ordinary course of business without the financing requested in the Motion. The Debtors' ability to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, pay certain fees and expenses as set forth herein, and to otherwise fund their operations and other efforts and activities is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates for the benefit of all creditors of the Debtors. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Secured Parties and the use of Cash Collateral as set forth in this Interim Order, the DIP Term Loan Note and the other DIP Loan Documents, as applicable, is vital to the preservation, maximization and maintenance

of the going concern value of each Debtor. Accordingly, the Debtors have an immediate need to obtain the postpetition financing and to use Cash Collateral as set forth in this Interim Order to, among other things, permit the orderly continuation of the operation and maintenance of their businesses, minimize the disruption of their business operations and other efforts and activities and preserve and maximize the value of the assets of the Debtors' Estates to maximize the recovery to all creditors of the Estates.

(iii)    <u>No Credit Available on More Favorable Terms</u>. The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, or liens on property of the Estates not subject to a lien pursuant to sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code. The Debtors demonstrated in the Motion, in the First Day Declaration, in the DIP Declarations, and on the record at the Interim Hearing, that it would be futile under the circumstances for the Debtors to undertake further efforts to seek, and they would not obtain, the necessary postpetition financing, let alone on terms more favorable, taken as a whole, than the financing offered by the DIP Secured Parties pursuant to the DIP Loan Documents. In light of the foregoing, and considering the futility of all other alternatives, the Debtors have reasonably and properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to the Debtors at this time, and are in the best interests of the Debtors, their Estates, and all of their stakeholders.

(iv)    <u>Budget</u>. The Debtors have prepared and delivered to the DIP Agent and DIP Lender an initial budget (the "<u>Initial Budget</u>"), a copy of which is attached hereto as **<u>Exhibit C</u>**. The Initial Budget reflects the Debtors' anticipated cash receipts and anticipated

disbursements for each calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date (the Initial Budget and each subsequent budget approved by the DIP Agent (at the written direction of the DIP Lender) and then in effect, the "Approved Budget"), in each case, subject to (i) permitted variances with respect to maximum cumulative disbursement variances ("Permitted Variances"; which variances shall be tested on a biweekly basis (*i.e.*, every two weeks)) of, in respect of the aggregate amount of actual Total Operating Disbursements, (x) 15% for the Initial Two Week Disbursements Period, (y) 15% for the Initial Three Week Disbursements Period, and (z) 15% for the Initial Four Week Disbursements Period and each Four Week Disbursements Period thereafter; and (ii) other exclusions set forth in the DIP Loan Documents. The Debtors believe that the Initial Budget is reasonable under the facts and circumstances. The DIP Secured Parties and Prepetition Secured Parties are relying upon the Debtors' agreement to comply with the terms set forth in the DIP Term Loan Note, the other DIP Loan Documents, this Interim Order, and with the Approved Budget, in determining to enter into the postpetition financing arrangements provided for herein and to consent to the Debtors' use of Cash Collateral as set forth herein. The Debtors shall provide the DIP Agent and the DIP Lender a revised proposed budget every Thursday beginning on August 21, 2025, and continuing each week thereafter (each, a "Proposed Budget"). If a Proposed Budget is approved by the DIP Agent (at the written direction of the DIP Lender), it shall become the Approved Budget. If the DIP Agent do not approve a Proposed Budget, the last Approved Budget prior to the delivery of the applicable Proposed Budget shall remain the Approved Budget as provided herein.

(v)     Sale Process. The DIP Lenders' willingness to make the DIP Loans and the Prepetition Secured Parties' willingness to consent to the use of Cash Collateral (each on the

terms and subject to the conditions set forth in the DIP Loan Documents and this Interim Order) is predicated upon (i) the Debtors seeking authority to sell all or substantially of their assets to one or more buyers pursuant to section 363 of the Bankruptcy Code by filing a motion (the "Bid Procedures Motion") for entry of an order (a) authorizing and approving bid procedures for the sale of all or substantially all of their assets, (b) selecting Buyer as the stalking horse bidder, subject to higher or better offers, and (c) establishing other sale-related procedures and deadlines by no later than the Petition Date and (ii) the Debtors' retention of Portage Point Partners ("Portage Point") to advise them in connection with, among other things, the sale of the Debtors' assets. Absent such arrangements, the DIP Lenders and the Prepetition Secured Parties would not have agreed to make the DIP Loans or consent to the use of Cash Collateral (as applicable) as provided in the DIP Loan Documents and this Interim Order.

(vi) Certain Conditions to DIP Facility. The DIP Lenders' willingness to make the DIP Loans is conditioned upon, among other things: (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of the obligations thereunder, and to confer upon the DIP Secured Parties all applicable rights, powers, and remedies thereunder in each case as modified by this Interim Order; (b) the Debtors obtaining Court approval of, and the Debtors' compliance with, the "Milestones" set forth on **Exhibit D**, which are hereby approved in all respects; (c) the provision of adequate protection of the Prepetition Secured Parties' interests in the Prepetition Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code; and (d) the DIP Secured Parties being granted, as security for the prompt payment of the DIP Facilities and all other obligations of the Debtors under the DIP Loan Documents, subject to the priorities described in **Exhibit B** annexed hereto, superpriority perfected security interests in and liens upon all property and assets of the Debtors (subject to the Carve-Out), including, but

not limited to, a valid and perfected security interest in and lien upon all of the following now existing or hereafter arising or acquired property and assets: (i) all property and assets comprising Prepetition Collateral and (ii) all other property and assets of the Debtors, including any property or assets consisting of "Excluded Assets" under any of the Prepetition Secured Debt Documents (collectively hereinafter referred to as the "DIP Collateral" which, for the avoidance of doubt, shall, subject to the entry of the Final Order, include the proceeds (the "Avoidance Proceeds") of any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "Avoidance Actions")).

(vii)   Business Judgment and Good Faith Pursuant to Section 364(e). Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Secured Parties, including, without limitation, pursuant to this Interim Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Facility, the DIP Liens, and the DIP Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

(viii)   Sections 552(b) and 506(c). The Debtors have agreed as a condition to obtaining financing under the DIP Facility and the use of Cash Collateral as set forth in this Interim Order that as a material inducement to the DIP Secured Parties to agree to provide the DIP Facility and the Prepetition Secured Parties' consent to the use of Cash Collateral as set

forth in this Interim Order, and in exchange for (a) the DIP Secured Parties' willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Secured Parties' and the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve-Out, and (c) the consensual use of Cash Collateral consistent with the Approved Budget, the terms of the DIP Term Loan Note, and the terms of this Interim Order, each of the DIP Secured Parties and the Prepetition Secured Parties are entitled (subject to the entry of the Final Order) to receive (1) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code, and (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

(ix)   <u>Good Cause</u>. Good cause has been shown for the entry of this Interim Order. The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' remaining operating businesses, ongoing operations and other applicable activities and efforts, including the pursuit of a Court-approved marketing and sale process, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (3) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets. The terms of the DIP Facilities and this Interim Order are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration. The DIP Facilities and this Interim Order are the product of reasonable, arm's length, good faith negotiations between the Debtors, the DIP Secured Parties and the Prepetition Secured Parties.

(x)   <u>Refinancing of the Protective Advances</u>.

20

(a)     The roll-up of the Protective Advances with the proceeds of borrowings under the DIP Facility in accordance with this Interim Order (but subject to the provisions of paragraph 5.1 hereof) is necessary as the Prepetition Term Loan Secured Parties have not otherwise consented to the use of their Cash Collateral, the subordination of their liens to the Carve-Out and the DIP Liens, in each case as provided in this Interim Order, or the extension of credit to fund the Debtors' critical working capital needs in the form of the DIP Facility. Moreover, as set forth in the Golmont Declarations, in consideration of the entry of this Interim Order authorizing the roll-up of the Protective Advances with the proceeds of the DIP Facility subject to the terms and conditions set forth herein, the Prepetition Term Loan Secured Parties have agreed to waive any claims for interest at the Default Rate (as such term is defined in the Prepetition Financing Agreement) on $117,983,827.51 of Prepetition Term Loan Obligations. As set forth in the DIP Declarations, the Protective Advances were made by the Prepetition Term Loan Lenders in the months leading up to the commencement of these Chapter 11 cases so as to avoid immediate and irreparable harm to the Debtors' businesses, their estates and their creditors.

(xi)     _Adequate Protection_. The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, to receive adequate protection against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral), as set forth in this Interim Order.

(xii)     _Immediate Entry_. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). Any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled), and all reservations of rights included therein, are hereby denied and overruled on the merits.

21

(xiii)   <u>Interim Hearing</u>. Proper, timely, adequate, and sufficient notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules. No order or further notice of the Motion or entry of this Interim Order shall be required.

Based upon the foregoing, and upon the record made before the Court at the Interim Hearing and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

<u>Section 1.</u>    <u>Authorization and Conditions to Financing and Use of Cash Collateral</u>.

1.1   <u>Motion Granted</u>. The Motion is granted solely to the extent provided in this Interim Order. Any objections to the entry of this Interim Order that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled on the merits.

1.2   <u>Authorization of DIP Financing and Use of Cash Collateral</u>.

(a)     The Debtors are hereby authorized to execute and deliver the DIP Loan Documents and to borrow, incur, and guarantee (as applicable) DIP Term Loans, pursuant to the terms and conditions of the DIP Loan Documents, this Interim Order and the Approved Budget, in each case up to an aggregate principal amount equal to $10,000,000.00 of Interim DIP Term Loans on an interim basis, together with applicable interest, expenses, fees, Protective Advances and other charges payable in connection with the DIP Facility and, subject to entry of the Final Order, an additional $15,000,000.00 of New Money DIP Term Loans and $20,803,621.66 of Roll-Up DIP Term Loans, together with applicable interest, expenses, fees, Protective Advances, and other charges payable in connection with the DIP Facility, which shall be used for the purposes permitted under the DIP Loan Documents, including, without limitation, to "roll up" and refinance a portion of the Protective Advances pursuant to the Protective Advance

Refinancing as provided herein and to pay interest, fees, expenses and other charges in accordance with this Interim Order, the DIP Loan Documents and the Approved Budget (subject to Permitted Variances).

(b)     The Debtors are hereby authorized to (i) borrow under the DIP Facilities and use Cash Collateral during the period (the "Interim Financing Period") commencing on the date of this Interim Order through and including the earlier to occur of (x) the date of entry of the Final Order or (y) the occurrence of a DIP Termination Event (as defined below) solely in accordance with, and for the purposes permitted by, the DIP Loan Documents, this Interim Order and the Approved Budget (subject to Permitted Variances), (ii) pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the DIP Term Loan Note and other DIP Loan Documents, all pursuant to the terms and conditions of this Interim Order, the Approved Budget, the DIP Term Loan Note, and the other DIP Loan Documents, and (iii) effectuate the Protective Advance Refinancing (as defined below). The Initial Budget is hereby approved in all respects.

1.3     Financing Documents.

(a)     Authorization. The Debtors are hereby authorized to enter into, execute, deliver, and perform all obligations under the DIP Loan Documents. No obligation, payment, transfer, or grant of security hereunder or under the DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or foreign law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset,

recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity.

(b)    <u>Approval; Evidence of Borrowing Arrangements</u>. The DIP Loan Documents and DIP Obligations shall be valid, binding, and enforceable against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee appointed in any of these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases (collectively, the "<u>Successor Cases</u>"), and their creditors and other parties in interest, in each case, in accordance with the terms of this Interim Order and the DIP Loan Documents.

(c)    <u>Payment of DIP Fees and Other Expenses</u>. Any and all fees and expenses payable pursuant to the DIP Loan Documents (collectively, any and all such fees and expenses, the "<u>DIP Fees</u>") are hereby approved and the Debtors are hereby authorized to pay, in cash and on a current basis, all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Agent and the DIP Lenders incurred at any time, to the extent and as provided by the DIP Loan Documents and this Interim Order in accordance with paragraph 6.15 hereof.

(d)    <u>Amendments to DIP Loan Documents</u>. Subject to the terms and conditions of the applicable DIP Loan Documents, the Debtors and the applicable DIP Secured Parties may make amendments, modifications, or supplements to any DIP Loan Document, and the DIP Agent and/or DIP Lender may waive any provisions in the DIP Loan Documents, without further approval of the Court; *provided* that any amendments, modifications, or supplements to any DIP Loan Documents that operate to increase the aggregate commitments, the rate of interest payable

thereunder, or existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as currently provided in the DIP Loan Documents (collectively, the "Material DIP Amendments"), shall be filed with the Court, and the Debtors shall provide prior written notice of the Material DIP Amendment to (i) counsel to the DIP Agent and the Prepetition Agent, (ii) counsels to the DIP Agent and DIP Lender; (iii) counsel for the other Prepetition Secured Parties, (iv) counsel to any Committee, or, in the event no such Committee is appointed at the time of such Material DIP Amendment, the 30 Largest Unsecured Creditors, and (v) the U.S. Trustee; *provided*, *further*, that the consent of the foregoing parties will not be necessary to effectuate any such amendment, modification or supplement, except that any Material DIP Amendment that is subject to an objection filed within five (5) Business Days following receipt of such Material DIP Amendment must be approved by the Court.

      1.4    <u>Refinancing of Protective Advances</u>.

      (a)    Subject to entry of the Final Order, on the date of each borrowing of New Money DIP Term Loans under the DIP Loan Documents, the Prepetition Term Loan Obligations in respect of Protective Advances held by the DIP Lenders shall, subject to paragraph 5.1 hereof, immediately, automatically and irrevocably be deemed to have been fully refinanced by, and the DIP Lenders shall be deemed to have funded, Roll-Up DIP Term Loans on the Final Order Closing Date (the "Protective Advance Refinancing"), which Roll-Up DIP Term Loans shall be entitled to all the priorities, privileges, rights and other benefits afforded to the other DIP Obligations under the Final Order and the DIP Loan Documents, in each case subject to the terms and conditions set forth in the Final Order, the DIP Loan Documents and paragraph 5.1 below. Until (a) all objections and challenges (including, without limitation, any Challenge

Proceeding (as defined in paragraph 5.1 hereof)) to (1) the liens, security interests and claims of the Prepetition Term Loan Agent (including, without limitation, liens granted for adequate protection purposes) and/or (2) the Prepetition Term Loan Obligations (in each case in respect of the Protective Advances[7]) have been waived, denied or barred, and (b) all of the Debtors' Stipulations (as defined in paragraph 5.1 hereof) have become binding on their estates and parties in interest in accordance with paragraph 5.1 hereof, all liens, security interests and claims of the Prepetition Term Loan Agent (including, without limitation, liens granted for adequate protection purposes) in respect of the Protective Advances and the Protective Advance Refinancing shall remain valid and enforceable with the same continuing priority as described herein and the Prepetition Term Loan Documents shall remain in full force and effect; *provided*, however, that, subject to the results of any applicable Challenge Proceeding, to the extent that Protective Advances have been rolled-up pursuant to the Protective Advance Refinancing and have become and are DIP Obligations, such Protective Advances shall not be due or owing separately under the Prepetition Term Loan Documents; *provided, further*, however, that nothing in the foregoing proviso shall alter or diminish, or be deemed to alter or diminish, the Adequate Protection (as defined herein) of the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders.

1.5    DIP Term Loan Funding; Prepetition Intercreditor Agreement.

(a)    The proceeds of the DIP Term Loans shall be funded into an account under the Debtors' cash management system and such account shall be specified in a Borrowing Request delivered to the DIP Agent by a Responsible Officer of the Debtors.  The Debtors may request DIP Term Loans no more frequently than once per week.  The Debtors shall be permitted

---

[7] "Protective Advances" means the protective advances under the Prepetition Term Loans.

to receive proceeds of the DIP Term Loans if such Borrowing Request provides, among other things, that the amount of the requested DIP Term Loans complies with the Borrowing Liquidity Condition.[8]

(b)     Except to the extent that it is modified as expressly set forth herein, the Prepetition Intercreditor Agreement shall remain in full force and effect.

1.6     Indemnification. ~~The~~Subject to entry of Final Order, the Debtors are authorized to indemnify and hold harmless the DIP Agent, the DIP Lender, and, in each case solely in their capacities as such, each of their respective affiliates, and each such Person's respective officers, directors, employees, attorneys, agents, and representatives (each, an "Indemnified Party"), in accordance with, and subject to, the DIP Loan Documents.

1.7     Modification of Automatic Stay. The automatic stay provisions of section 362 of the Bankruptcy Code is hereby modified and vacated to the extent necessary to permit the Debtors, the DIP Secured Parties and the Prepetition Secured Parties to accomplish the transactions contemplated by this Interim Order, including to: (a) permit the Debtors to grant the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Prepetition Secured Parties' Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent, Prepetition Agent or LiveStyle may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Secured Parties and the Prepetition Secured Parties under this Interim Order and the DIP Loan Documents; and (d) authorize the Debtors to pay, and the DIP Secured

---

[8] The terms "Borrowing Request", "Responsible Officer", and "Borrowing Liquidity Condition" shall have the meanings ascribed thereto in the DIP Term Loan Note.

Parties and Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Final Order.

Section 2.   Postpetition Lien; Superpriority Administrative Claim Status.

    2.1   Postpetition Lien.

        (a)   Postpetition DIP Lien Granting. To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the Debtors to the DIP Secured Parties of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, the DIP Agent, for the benefit of the DIP Secured Parties, shall have and are hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (the "DIP Liens") in and upon all DIP Collateral, subject to the Carve-Out, Permitted Prior Liens and the rankings and priority set forth in paragraph 2.1(b) below and as set forth on **Exhibit B** hereto.

        (b)   DIP Lien Priority in DIP Collateral.

        (i)   The DIP Liens on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364, or any other section of the Bankruptcy Code or other applicable law;[9] *provided*, however, that the DIP Liens on (A) the Prepetition Collateral (whether in existence on the Petition Date or hereafter arising) shall be subject to the Carve-Out and Permitted Prior Liens[10];

---

[9] The DIP Liens shall "prime" and be senior to the Prepetition Liens pursuant to section 364(d)(1) if the Bankruptcy Code. The Prepetition Secured Parties have consented to the priming of their Prepetition Liens.

[10] For purposes of this Interim Order, "Permitted Prior Liens" shall mean any liens that are senior by operation of law (including any such liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the

(B) assets of the Debtors (the "Non-Lender Encumbered Assets") that were subject to validly perfected liens or security interests as of the Petition Date other than the Prepetition Liens (if any, the "Non-Lender Existing Liens") shall be subject to such Non-Lender Existing Liens and the Carve-Out; and (C) any other assets of the Debtors ("Unencumbered Assets") that were not subject to any validly perfected liens or security interest as of the Petition Date (including, subject to the entry of a Final Order, Avoidance Proceeds) shall be subject to the Carve-Out, in each case as such priorities are set forth in **Exhibit B**.[11]

(c)    Postpetition Lien Perfection. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Prepetition Secured Parties' Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a control agreement or other depository account consisting of DIP Collateral, or requirement to register liens on any certificates of title (a "Perfection Act"). Notwithstanding the foregoing, if any DIP Agent or Prepetition Secured Party, as applicable, shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then such DIP Agent or Prepetition Secured Party, as applicable, is authorized to perform such act, and the Debtors are authorized

---

law (including any such liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or that were, as of the Petition Date, valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens.

[11] In the event of any conflict or inconsistency between the terms and provisions of this Interim Order and **Exhibit B**, **Exhibit B** shall control.

and directed to perform such act to the extent necessary or required by the DIP Loan Documents and this Interim Order, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. The DIP Agent or Prepetition Secured Parties, as applicable, may choose to file, record, or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Interim Order in accordance with applicable law. Should any DIP Agent or Prepetition Secured Party, as applicable, so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Interim Order.

(d)     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by this Interim Order (including the DIP Liens and the Prepetition Secured Parties' Adequate Protection Liens) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of this Court; provided, however, that nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens. By virtue of the terms of this Interim Order, to the extent that any DIP Agent or Prepetition

Secured Party, as applicable, has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors (including all Guarantors), such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Interim Order without further action by the DIP Agent or Prepetition Secured Party, as applicable.

(e)     Except as provided in this Interim Order, the DIP Liens, the DIP Superpriority Claims, the Prepetition Secured Parties' Adequate Protection Liens, and the Prepetition Secured Parties' Adequate Protection Claims (as defined below) (i) other than the Carve-Out, shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in any of these Chapter 11 Cases or any Successor Cases; (ii) shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim; and (iii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

2.2     Superpriority Administrative Expenses.

(a)     DIP Loans. Subject to the priorities set forth on **Exhibit B** and the Carve-Out, on account of all DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Loan Documents, or otherwise, the DIP Agent, for the benefit of themselves and the DIP Lender, are granted allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors, whether now in

existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(b), 507(a) (other than 507 (a)(1)), 507(b), 546(c), 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including, subject to entry of the Final Order, proceeds of Avoidance Actions) (the "DIP Superpriority Claims"), in each case, other than the Carve-Out which shall have priority over the DIP Superpriority Claims.

Section 3.    Carve-Out Provisions.

3.1    The Debtors' obligations to the DIP Secured Parties and the Prepetition Secured Parties, and the liens, security interests and superpriority claims granted by this Interim Order or the Final Order or under the Prepetition Secured Debt Documents and the DIP Loan Documents, and the payment of all such obligations, shall be subject and subordinate in all respects to payment of the following fees and expenses: (a) the payment of unpaid fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (b) reasonable and documented fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (c) Allowed Professional Fees (as defined below) of the Estate Professionals (as defined below) prior to the delivery by the DIP Agent of a Carve-Out Trigger Notice (defined below) (at the written direction of the DIP Lender) (the amounts set forth in this clause (c) being the "Pre Carve-Out Trigger Notice Cap"); and (d) the Allowed Professional Fees of (i) Debtor Professionals in an aggregate amount not to exceed $500,000.00 (plus any prepetition retainer held by a Debtor Professional to the extent not previously applied or

returned), and (ii) Committee Professionals in an aggregate amount not to exceed $100,000.00, in each case incurred on or after the first business day following delivery by the DIP Agent of the Carve-Out Trigger Notice (at the written direction of the DIP Lender) (the amounts set forth in this clause (d) being the "Post Carve-Out Trigger Notice Cap" and together with the Pre Carve-Out Trigger Notice Cap and the amounts set forth in clauses (a) and (b), the "Carve-Out Cap"); (the foregoing clauses (a) through (d), collectively, the "Carve-Out").  Notwithstanding anything to the contrary herein, the fees and expenses included in the Carve-Out shall be subject to and consistent with the amounts set forth in the Approved Budget.

(a)    As used in this paragraph, persons or firms retained by (x) the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code are referred to as "Debtor Professionals"), and (y) any official committee appointed in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee") are referred to as "Committee Professionals" and, together with the Debtor Professionals, the "Estate Professionals".

(b)    The term "Allowed Professional Fees" means fees and expenses incurred prior to the applicable event set forth in this paragraph, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, but subject to final allowance by the Court, or were invoiced after the Carve-Out Trigger Notice Date.  To the extent that professional fees and expenses of the Estate Professionals have been incurred by the Debtors or the Committee at any time before or on the first business day after delivery by the DIP Agent of a Carve-Out Trigger Notice (at the written direction of the DIP Lender) but have not yet been allowed by the Court, such professional fees and expenses of the Estate Professionals shall constitute Allowed Professional Fees benefiting from the Carve-Out upon their allowance by the Court, whether by interim or final compensation order, and the Carve-Out Accounts shall be

funded to include such professional fees and expenses as set forth herein.  Allowed Professional

Fees shall include any "success fee", "financing fee", or similar fee that is payable to Portage

Point.

   (c) "<u>Carve-Out Trigger Notice</u>" means a written notice stating that the

Post-Carve-Out Trigger Notice Cap has been invoked, delivered by hard copy or email by the

DIP Agent (at the written direction of the DIP Lender) under the DIP Loan Documents to lead

bankruptcy counsel for the Debtors, the U.S. Trustee, counsel to the Prepetition Agent, counsel

to LiveStyle, and counsel to any Committee, which notice may be delivered following the

occurrence and during the continued existence of a DIP Termination Event (as defined herein)

under the terms of this Interim Order.

   (d) "<u>Carve-Out Trigger Notice Date</u>" means the day on which a Carve-Out

Trigger Notice is received by the Debtors.

   (e) "<u>Carve-Out Account</u>" means a separate segregated account not subject to

the control of the DIP Agent, the Prepetition Agent or any of the DIP Lenders or Prepetition

Secured Parties.

   3.2 Within five (5) business days of the initial funding of the Interim DIP Term

Loans, the Debtors shall fund into two Carve-Out Accounts (one for Debtor Professionals and

one for Committee Professionals) an amount equal to the total budgeted Debtor Professionals'

and Committee Professionals' fees, respectively, for the first two (2) weeks set forth in the

Approved Budget and, thereafter, the Debtors are authorized to transfer into the Carve-Out

Accounts on a weekly basis cash in an amount equal to the Debtor Professionals' and Committee

Professionals' fees, respectively, (excluding any restructuring, sale, success or other transaction

fee of any investment bankers or financial advisors) for such unfunded week as set forth in the

Approved Budget.  Thereafter, the Debtors shall use such funds held in the Carve-Out Accounts to pay Estate Professional fees as they become allowed and payable pursuant to interim or final orders of the Court; <u>provided</u>, that the Debtors' obligations to pay the Allowed Professional Fees of the Estate Professionals shall not be limited or deemed limited to funds held in the Carve-Out Account.  Notwithstanding anything in this Interim Order or the DIP  Loan Documents to the contrary, the budgeted Debtors' Professionals and Committees Professionals' fees that are to be funded into the Carve-Out Accounts (as applicable) upon the delivery of a Carve-Out Trigger Notice shall, pursuant to Section 2 of the DIP Term Loan Note, automatically constitute a permitted Borrowing and shall be funded in full without offset or deduction and shall not be subject to the Borrowing Liquidity Condition.

3.3    On the Carve-Out Trigger Notice Date, the Carve-Out Trigger Notice shall constitute a demand to the Debtors to fund the Carve-Out Accounts in cash in an amount equal to the Carve-Out Cap, and immediately following receipt of a Carve-Out Trigger Notice, and prior to the payment of any DIP Obligations or Prepetition Secured Obligations, the Debtors shall be required to deposit into the Carve-Out Accounts cash in an amount equal to the difference between the applicable Carve-Out Cap and the balance held in the applicable Carve-Out Account as of the Carve-Out Trigger Notice Date.  Notwithstanding anything to the contrary herein or in the DIP Loan Documents, following delivery of a Carve-Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Accounts have been fully funded as required herein in an amount equal to all obligations benefitting from the Carve-Out.

3.4     The amounts in the Carve-Out Accounts shall be available only to satisfy Allowed Professional Fees and other amounts included in the Carve-Out until such amounts are paid in full.  Notwithstanding anything to the contrary herein, the failure of the Carve-Out Accounts to satisfy in full the amount set forth in the Carve-Out shall not affect the priority of the Carve-Out. All funds in the Carve-Out Accounts shall be used first to pay all obligations benefitting from the Pre Carve-Out Trigger Notice Cap, until paid in full, and then the obligations benefitting from the Post Carve-Out Trigger Notice Cap; *provided* that the amount in the Carve-Out Accounts shall be reduced on a dollar-for-dollar basis for Allowed Professional Fees that are paid after the delivery of the Carve-Out Trigger Notice, and the Carve-Out Accounts shall not be replenished for such amounts so paid.

3.5     Payments from the Carve-Out shall be subject to any terms and conditions of the engagement agreements and appurtenant orders for the employment of each Estate Professional. The Debtors shall be permitted to pay compensation and reimbursement of expenses incurred prior to the occurrence of a DIP Termination Event or delivery of a Termination Notice to the extent allowed and payable under sections 330 and 331 of the Bankruptcy Code.

3.6     Notwithstanding anything to the contrary herein or elsewhere, the Carve-Out shall be senior to all claims and liens, including liens securing the DIP Facility as well as any adequate protection liens and claims described herein, and the DIP Collateral and Prepetition Collateral shall exclude the Carve-Out Accounts; *provided* that if, after paying all amounts set forth in the definition of Carve-Out, the Carve-Out Account(s) have not been reduced to zero, all remaining funds shall be distributed first, to DIP Agent on account of the DIP Term Loans, unless the DIP Term Loans have been indefeasibly paid in full in cash, second to the Prepetition Secured Parties on account of the Prepetition Secured Obligations, and third to the Debtors.   The Carve-Out

Account shall not be subject to the control of the DIP Agent, DIP Lenders or Prepetition Secured Parties, and the funds transferred to the Carve-Out Account shall not be subject to the DIP Liens or Prepetition Liens, constitute DIP Collateral or Prepetition Collateral, nor be available to pay the DIP Superpriority Claims, Prepetition Secured Parties' Adequate Protection Claims or Prepetition Secured Obligations, until all amounts set forth in this paragraph 3.6 are paid in full.

3.7     The DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or expenses of any Estate Professionals incurred in connection with the Chapter 11 Cases or any Successor Case under any chapter of the Bankruptcy Code, regardless of whether payment of such fees or disbursement has been allowed by the Court.  Nothing in this Interim Order or otherwise shall be construed to obligate any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties in any way to pay compensation to or reimburse expenses of any Estate Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or expense reimbursement.

3.8     <u>Prepetition Secured Parties' Adequate Protection</u>.

(a)     <u>Adequate Protection Claims and Liens</u>. The Prepetition Secured Parties are entitled, pursuant to sections 361, 363(e), 364(d)(1), 503(b), 507(a), and 507(b) of the Bankruptcy Code and effective as of the Petition Date, to adequate protection of their respective interests in the Prepetition Collateral, including any Cash Collateral, in an amount equal to the aggregate Diminution in Value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral from and after the Petition Date. On account of such adequate protection, the Prepetition Secured Parties are hereby granted the following, in each case subject to the priorities set forth on **<u>Exhibit B</u>** and the Carve-Out (collectively, the "<u>Adequate Protection</u>"):

(i)    <u>Prepetition Secured Parties' Adequate Protection Liens</u>. As adequate protection against, and solely to the extent of, any postpetition Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral, the Prepetition Secured Parties are hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of any Perfection Act) valid and perfected postpetition replacement security interests in and liens upon the DIP Collateral (the "<u>Prepetition Secured Parties' Adequate Protection Liens</u>"), which liens shall be, with respect to: (A) the Prepetition Collateral (whether in existence on the Petition Date or hereafter arising), subject and subordinate solely to the Carve-Out, Permitted Prior Liens, and the DIP Liens, (B) the Non-Lender Encumbered Assets, subject to the Non-Lender Existing Liens, the Carve-Out and the DIP Liens, and (C) Unencumbered Assets, subject to the Carve-Out and the DIP Liens, .and in each case as such priorities are set forth in **Exhibit B**. For the avoidance of doubt, the Prepetition Secured Parties' Adequate Protections Liens shall be subject to the Prepetition Intercreditor Agreement.

(ii)    <u>Adequate Protection Superpriority Claims</u>. As adequate protection against, and solely to the extent of, any postpetition Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral, the Prepetition Secured Parties are hereby granted allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "<u>Prepetition Secured Parties' Adequate Protection Claims</u>"), which shall be allowed claims against each of the Debtors (jointly and severally), with priority (except as otherwise provided herein) over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections

105, 326, 327, 328, 330, 331, 365, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment. The Prepetition Secured Parties' Adequate Protection Claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors, subject to the Carve-Out, Permitted Prior Liens and the rankings and priorities set forth in **Exhibit B**.  For the avoidance of doubt, the Prepetition Secured Parties' Superpriority Claims shall be subject to the Prepetition Intercreditor Agreement.

(b)    Fees and Expenses. The Debtors are authorized and directed to pay: (i) on the date of the first advance under the DIP Facilities, all reasonable and documented fees and out-of-pocket expenses of the Prepetition Agent that are required to be paid by the Debtors under the Prepetition Secured Debt Documents, including such fees and expenses of counsel and financial advisors to such Prepetition Agent; and (ii) on an ongoing basis, from time to time after the Petition Date, and without duplication, all reasonable and documented fees and out-of-pocket expenses incurred by such Prepetition Agent and required to be paid by the Debtors under the Prepetition Term Loan Documents, including the reasonable and documented fees and out-of-pocket expenses of McDermott, Will & Schulte LLP and Holland & Knight LLP (such professionals, the "Adequate Protection Professionals," and such fees and expenses, collectively, the "Adequate Protection Professional Fees and Expenses").

(c)    Requests for Payment of Fees and Expenses. With respect to Adequate Protection Professional Fees and Expenses incurred postpetition, such Adequate Protection Professionals shall deliver an invoice in summary form (which shall not be required to include time entry detail, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted for privileged or confidential

information) to the Debtors, the U.S. Trustee, and any Committee, with a copy of such invoices delivered simultaneously to counsels to the DIP Lenders, the DIP Agent, the Prepetition Secured Parties and the Prepetition Agent. If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) calendar days after delivery of such invoice, the Debtors shall promptly pay such fees and expenses in full. If an objection to a professional's invoice is timely received, the undisputed portion of any such invoice will be deemed allowed, the Debtors shall promptly pay such undisputed amount and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date (as defined in the DIP Term Loan Note) all Adequate Protection Professional Fees and Expenses incurred on or prior to (including prior to the Petition Date) such date without the need for any Adequate Protection Professional to first deliver a copy of its invoice as provided for herein. The Adequate Protection Professionals shall not be required to comply with the U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, the Court for the payment of any of their fees or out-of-pocket expenses (other than with respect to disputed amounts). Subject to Paragraph 5.1 hereof, payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination, or disgorgement.

Section 4.    <u>DIP Termination Events; Rights and Remedies; Relief from Stay</u>.

4.1    The occurrence of an "Event of Default" as defined in the DIP Loan Documents shall constitute a "<u>DIP Termination Event</u>" unless waived in writing by the DIP Secured Parties in accordance with the DIP Loan Documents.

4.2    Upon the occurrence of a DIP Termination Event, without further notice to, hearing, or order from the Court, the automatic stay provisions of section 362 of the Bankruptcy

Code shall be vacated and modified to the extent necessary to permit the DIP Agent, subject to paragraphs 4.3 to 4.8 of this Interim Order, to (i) deliver to the Borrowers a notice declaring the occurrence of a DIP Termination Event, (ii) declare the termination, reduction or restriction of the commitments under the DIP Facility (to the extent any such commitment remains), (iii) declare the DIP Obligations then outstanding to be immediately due and payable, (iv) declare the termination of the DIP Facility and the DIP Loan Documents as to any further liability or obligation thereunder, but without affecting the DIP Liens or the DIP Obligations, (v) declare the termination, restriction or revocation of the ability of the Debtors to use Cash Collateral (subject to paragraph 4.5 of this Interim Order), and (vii) charge interest at the default rate under and in accordance with the DIP Facility.

4.3    In addition, upon the occurrence and during the continuation of a DIP Termination Event, the DIP Agent shall provide counsel to the Debtors, counsel to any Committee, counsel to the Prepetition Agent, counsel to LiveStyle, and the U.S. Trustee, five (5) business days' prior written notice (the "Termination Notice") (which may be provided by email) of the occurrence of the DIP Termination Event.    After such five (5) business day period (the "Remedies Notice Period"), subject to paragraphs 4.3 through 4.8, without further notice to, hearing, or order from the Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Agent to (i) freeze all monies or balances in any deposit accounts of the Debtors, (ii) immediately exercise any and all rights of set-off under, and in accordance with, the DIP Loan Documents, (iii) direct the DIP Agent to exercise any right or remedy against the DIP Collateral, including, without limitation, the disposition of DIP Collateral for application towards the DIP Obligations, or (iv) take any

other action or exercise any other right or remedy permitted under the DIP Loan Documents, this Interim Order or applicable law.

4.4     During the Remedies Notice Period, the Debtors and any Committee are each deemed to have standing and shall be permitted to request an emergency hearing before the Court (which request must be made prior to the conclusion of the Remedies Notice Period, and shall seek consideration of such request on an expedited basis).

4.5     Notwithstanding anything to the contrary in this Interim Order, during the Remedies Notice Period, the Debtors are permitted to use Cash Collateral and proceeds of the DIP Facility to the extent granted herein and consistent with the Approved Budget (without any Permitted Variance) to fund expenses necessary to preserve the value of the Debtors' business and the DIP Collateral (including payroll and other expenses), as determined by the Debtors in their reasonable discretion and to fund the Carve-Out Accounts in accordance with this Interim Order.

4.6     Following the expiration of the Remedies Notice Period and absent any order of the Court to the contrary, without further notice to, hearing or order from the Court, the automatic stay as to the DIP Agent shall automatically be vacated and modified for the purpose of permitting the applicable DIP Secured Parties to exercise any and all remedies available to them under or pursuant to this Interim Order, the DIP Loan Documents, and applicable law (including, without limitation, the enforcement of rights against DIP Collateral pursuant to paragraph 3.7), and following the payment in full in cash of all DIP Obligations, permitting the Prepetition Agent to exercise all rights and remedies available under the Prepetition Term Loan Documents or applicable law with respect to the Prepetition Collateral and the DIP Collateral.

4.7     Following the expiration of the Remedies Notice Period and absent any order of the Court to the contrary, the Debtors shall reasonably cooperate with the DIP Secured Parties and/or the Prepetition Term Loan Secured Parties in their efforts to enforce their liens and security interests in the DIP Collateral or the Prepetition Collateral, as applicable, in accordance with this Interim Order and the other DIP Loan Documents and the Debtors shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such party from enforcing its rights or remedies in the DIP Collateral or the Prepetition Collateral, as applicable.

4.8     Nothing included herein shall prejudice, impair, or otherwise affect the DIP Secured Parties' or Prepetition Secured Parties' rights to seek any other supplemental relief in respect of the Debtors, the DIP Collateral, or the Prepetition Collateral.

Section 5.     Representations and Covenants.

5.1     Reservation of Third Party Challenge Rights.

(a)     The stipulations, releases, agreements, and admissions contained in this Interim Order, including, without limitation, paragraph E hereof, and (subject to entry of a Final Order) the releases contained in clause (ix) thereof (collectively, the "Debtors' Stipulations"), shall be binding on the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes immediately upon entry of this Interim Order. The Debtors' Stipulations shall be binding on each other party in interest, including, without limitation, the Committee (if any), unless, and solely to the extent that (a) any such party in interest (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so), obtains requisite standing

pursuant to an order of the Court entered prior to the Challenge Deadline (as defined below) and has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "**Challenge Proceeding**") by no later than the Challenge Deadline, (i) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt Documents, the Prepetition Secured Obligations, the Prepetition Liens or the Prepetition Collateral, or otherwise objecting to or challenging any of the admissions, stipulations, findings or releases included in the Debtors' Stipulations, (ii) asserting or prosecuting any so-called "lender liability" claims, Avoidance Actions or any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action seeking reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery with respect to the Prepetition Liens, the Prepetition Secured Obligations or the Prepetition Secured Debt Documents, and (iii) asserting or prosecuting any other claim or Cause of Action of any nature or description whatsoever, whether arising under the Bankruptcy Code, applicable law or otherwise, against any of the Prepetition Secured Parties or their Representatives (subclauses (i)-(iii), collectively, the "**Challenges**", and each, a "**Challenge**"), and (b) there is entered a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such timely Challenge in any duly-filed Challenge Proceeding; provided, however, that as to the Debtors, any and all such Challenges are hereby irrevocably waived and relinquished as of the Petition Date; provided, further, however, that any pleadings filed in connection with any Challenge Proceeding, including any motion filed with the Court seeking requisite standing and authority to pursue a Challenge, shall include a draft complaint attached thereto and shall set otherwise forth with specificity the basis for each such Challenge,

and any Challenge not so specified in a Challenge Proceeding timely and properly filed prior to the Challenge Deadline shall be deemed forever, waived, released and barred.

(b)    If no such Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court does not rule in favor of the plaintiff in any such Challenge Proceeding, then, without further notice or order of the Court, (i) each of the admissions, stipulations, findings and releases contained in the Debtors' Stipulations shall be binding on all parties-in-interest, including, without limitation, any Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), (ii) the Prepetition Secured Obligations shall constitute allowed claims against each of the Debtors in the Chapter 11 Cases and any Successor Cases, and the Prepetition Liens shall be deemed to be legal, valid, non-avoidable, binding, continuing, perfected and enforceable, as of the Petition Date, against each of the Debtors in the Chapter 11 Cases and any Successor Cases, (iii) the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Secured Debt Documents shall not be subject to any other or further Challenge, contest, attack, objection, challenge, defense, claim, counterclaim, reduction, setoff, offset, recoupment, avoidance, recharacterizationn, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, by any Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), and (iv) all

45

Challenges against any of the Prepetition Secured Parties or any of their Representatives (in their capacities as such) shall be deemed forever waived, released and barred.

(c)     If any such Challenge Proceeding is timely filed by the Challenge Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive on any Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), except to the extent that any of the admissions, stipulations, findings or releases contained in the Stipulations were expressly challenged in such Challenge Proceeding (and solely as to the plaintiff party that timely filed such Challenge Proceeding and not, for the avoidance of doubt, any other party-interest).  If the Chapter 11 Cases convert to Chapter 7 cases prior to the Challenge Deadline, the Challenge Deadline shall be extended for the Chapter 7 trustee to 45 days after their appointment.  If the Chapter 11 Cases convert to a Chapter 7, and if the Committee has timely filed a Challenge which remains pending at the time of conversion, the chapter 7 trustee will be able to "stand in the shoes" of the committee for purposes of prosecuting such timely-filed Challenge action.

(d)     The "**Challenge Deadline**" means the date that is (i) the earlier of (a) confirmation of any chapter 11 plan of reorganization in these bankruptcy cases, and (b) seventy-five (75) calendar days from entry of this Interim Order; or (ii) any such later date as has been ordered by the Court, for cause shown, upon a motion filed and served within the time period set forth in paragraph 5.1(d).

(e)     For the avoidance of doubt, the Debtors' stipulations, waivers, agreements and releases contained in paragraph E of this Interim Order shall not be subject to Challenge, and

shall be binding upon the Debtors and their estates, and any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or selected in any of the Chapter 11 Cases or any Successor Cases), any Committee, all other creditors and all parties-in-interest and each of their respective successors and assigns, in all circumstances and for all purposes, immediately upon entry of this Interim Order.

(f)  Nothing in this Interim Order vests or confers on any person or entity, including any Committee, standing or authority to pursue any Challenge belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved.

**Section 6.**  <u>Other Rights and DIP Obligations</u>.

6.1  <u>No Modification or Stay of this Interim Order</u>. The DIP Agent and the DIP Lenders have acted in good faith in connection with the DIP Facilities and with this Interim Order, and their reliance on this Interim Order is in good faith, and the DIP Agent and the DIP Lenders are entitled to the protections of section 364(e) of the Bankruptcy Code.

6.2  <u>Rights of Access and Information</u>. The Debtors shall comply with the rights of access and information afforded to the DIP Secured Parties under the DIP Loan Documents and the Prepetition Secured Parties under the Prepetition Secured Debt Documents.

6.3  <u>Power to Waive Rights; Duties to Third Parties</u>.

(a)  Subject to the terms of the DIP Loan Documents, the DIP Agent (acting at the direction of the DIP Lender if so required by the applicable DIP Loan Documents) and/or the DIP Lender shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this Interim Order that are in favor of the DIP Lender (the "<u>DIP Lender Rights</u>"), and shall have no obligation or duty to any other party with respect to the exercise or

enforcement, or failure to exercise or enforce, any DIP Lender Rights; *provided that*, the DIP Agent shall (subject to the Prepetition Intercreditor Agreement) obtain the prior written consent of the applicable Prepetition Secured Party for any waiver that affects any rights of the Prepetition Secured Parties hereunder or any treatment of the Prepetition Secured Obligations. Any waiver by the DIP Agent of any DIP Lender Rights shall not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Agent or any DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Agent or any DIP Lender.

6.4    <u>No Unauthorized Disposition of Collateral; Use of Cash Collateral; Investigation Budget</u>.

(a)    The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including inventory and Cash Collateral), other than pursuant to the terms of this Interim Order or as permitted by the DIP Loan Documents and the Approved Budget (subject to Permitted Variances), and the Debtors are authorized to use Cash Collateral solely in a manner consistent with this Interim Order, the Approved Budget (subject to Permitted Variances), and the DIP Loan Documents (including exclusions to the Approved Budget permitted thereunder).

(b)    Notwithstanding anything herein to the contrary, other than as set forth in Section 4 hereof, no portion of the proceeds of the DIP Facility, the DIP Collateral or the Prepetition Collateral, including Cash Collateral, may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person in connection with (i) preventing,

hindering, impeding, or delaying any of the DIP Secured Parties' or Prepetition Secured Parties'

enforcement or realization upon, or exercise of rights in respect of, any of the DIP Collateral or

Prepetition Collateral, other than to seek a determination that a DIP Termination Event (as

defined below) has not occurred or is not continuing or in connection with a remedies hearing,

(ii) seeking to amend or modify any of the rights or interests granted to the DIP Secured Parties

or Prepetition Secured Parties under this Interim Order or the DIP Loan Documents, including

seeking to use Cash Collateral on a contested basis, (iii) asserting, commencing, or prosecuting

any claims or causes of action, including, without limitation, any Challenge or any other actions

under chapter 5 of the Bankruptcy Code (or any similar law), against any DIP Secured Party or

Prepetition Secured Party, or any of their respective affiliates, agents, attorneys, advisors,

professionals, officers, directors, or employees, or (iv) asserting, joining, commencing,

supporting, investigating, or prosecuting any Challenge, or any other action for any claim,

counterclaim, action, cause of action, proceeding, application, motion, objection, defense, or

other contested matter seeking any order, judgment, determination, or similar relief against, or

adverse to the material interests of any DIP Secured Party or Prepetition Secured Party, arising

out of, in connection with, or relating to the DIP Loan Documents or the Prepetition Secured

Debt Documents, or the transactions contemplated thereunder, including, without limitation, (A)

any action arising under the Bankruptcy Code, (B) any so-called "lender liability" claims and

causes of action, (C) any action with respect to the validity and extent of the DIP Obligations or

the Prepetition Secured Obligations or the validity, extent, perfection and priority of the DIP

Liens or the Prepetition Liens, (D) any action seeking to invalidate, set aside, avoid, reduce, set

off, offset, re-characterize, subordinate (whether equitable, contractual, or otherwise), recoup

against, disallow, impair, raise any defenses, cross-claims, or counterclaims, or raise any other

challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against, or with respect to, the DIP Liens or the Prepetition Liens, in whole or in part, or (E) appeal or otherwise challenge this Interim Order or the Final Order. Notwithstanding the foregoing, no more than $25,000 in the aggregate of the proceeds of the DIP Facility, DIP Collateral, or Cash Collateral may be used by any Committee in connection with the investigation of, but not litigation of, any potential Challenge.

6.5     No Waiver. The failure of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, to seek relief or otherwise exercise their rights and remedies under the DIP Loan Documents, the DIP Facility, the Prepetition Secured Debt Documents, or this Interim Order, as applicable, shall not constitute a waiver of any of the DIP Secured Parties' or Prepetition Secured Parties' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Secured Parties or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Secured Parties and the Prepetition Secured Parties to: (a) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties.

6.6     Maintenance of Collateral. Unless the DIP Agent (acting at the direction of the applicable DIP Lender) or the DIP Lender otherwise consent in writing, until (i) the payment in full or otherwise acceptable satisfaction of all DIP Obligations and (ii) the termination of the DIP

Agent' and the DIP Lenders' obligations to extend credit under the DIP Facilities, the Debtors shall comply with the covenants contained in the DIP Loan Documents regarding the maintenance and insurance of the DIP Collateral. Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Lender) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and lender's loss payable on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

6.7    <u>Reservation of Rights</u>. The terms, conditions, and provisions of this Interim Order are in addition to and without prejudice to the rights of each DIP Secured Party and Prepetition Secured Party, as applicable, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, the Prepetition Secured Debt Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the DIP Collateral or the Prepetition Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

6.8    <u>Binding Effect</u>.

(a)    All of the provisions of this Interim Order and the DIP Loan Documents, the DIP Obligations, all liens, and claims granted hereunder in favor of each of the DIP Secured Parties and the Prepetition Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of each DIP Agent, DIP Lender, and Prepetition Secured Party

set forth herein, including, without limitation, the parties' acknowledgements, stipulations, and agreements in Paragraph E of this Interim Order, subject to paragraph 5.1 hereof (without each of which the DIP Secured Parties would not have entered into or provided funds under the DIP Loan Documents and the Prepetition Secured Parties would not have consented to the priming of the Prepetition Liens as set forth herein and use of Cash Collateral provided for hereunder) provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective and enforceable as of the Petition Date immediately upon entry of this Interim Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting one or more of the Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing one or more of the Chapter 11 Cases, approving any sale of any or all of the DIP Collateral or the Prepetition Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this Interim Order or any provision hereof; *provided that*, in the event a Final Order is entered, the terms and conditions of such Final Order shall control over this Interim Order; provided further that such Final Order must affirm each of the provisions, protections, grants, statements, stipulations, and agreements in this Interim Order in order for such provisions, protections, grants, statements, stipulations, and agreements to remain in effect after entry of the Final Order.

(b)      Nothing in these Chapter 11 Cases may impair the DIP Superpriority Claim, the Prepetition Secured Parties' Adequate Protection Claims, and the DIP Secured

Parties' and the Prepetition Secured Parties' respective liens on and security interests in the DIP Collateral and the Prepetition Collateral, respectively, and all other claims, liens, adequate protections, and other rights granted pursuant to the terms of this Interim Order, which shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations and Prepetition Secured Obligations are indefeasibly paid and satisfied in full. Notwithstanding any such dismissal, this Court shall retain jurisdiction for the purposes of enforcing all such claims, liens, protections, and rights referenced in this paragraph and otherwise in this Interim Order.

(c)     Except as set forth in this Interim Order, in the event this Court modifies, reverses, vacates, or stays any of the provisions of this Interim Order or any of the DIP Loan Documents, such modifications, reversals, vacatur, or stays shall not affect the (i) validity, priority, or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Agent or Prepetition Secured Parties, as applicable, of the effective date of such modification, reversal, vacatur, or stay, (ii) validity, priority, or enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Secured Parties' Adequate Protection Liens and the Prepetition Secured Parties' Adequate Protection Claims or (iii) rights or priorities of any DIP Secured Party or Prepetition Secured Party pursuant to this Interim Order with respect to the DIP Collateral or any portion of the DIP Obligations. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein.

(d)     Subject to paragraph 5.1 hereof, this Interim Order shall be binding upon the Debtors, all parties in interest in the Chapter 11 Cases, and their respective successors and

assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Chapter 11 Cases or any subsequently converted bankruptcy case(s) of any Debtor and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law. This Interim Order shall also inure to the benefit of the Debtors, DIP Agent, DIP Lenders, Prepetition Secured Parties, and each of their respective successors and assigns.

6.9     No Discharge. The DIP Obligations and the obligations of the Debtors with respect to adequate protection hereunder, including granting the Prepetition Secured Parties' Adequate Protection Liens and the Prepetition Secured Parties' Adequate Protection Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, has otherwise agreed in writing.

6.10     No Priming of Prepetition Secured Obligations. Notwithstanding anything to the contrary herein, from and after the entry of this Interim Order, absent the express written consent of the  Prepetition Term Loan Lenders, no Debtor shall seek authorization from this Court to obtain or incur any indebtedness or enter into an alternative financing facility other than the DIP Facility (a "Competing DIP Facility") seeking to impose liens on any Prepetition Collateral ranking on a *pari passu* or priming basis with respect to the Prepetition Liens held by the Prepetition Secured Parties; provided, however, that nothing herein shall preclude the Debtors from seeking authorization to incur any indebtedness or enter into any Competing DIP Facility that provides for the payment in full of the DIP Obligations and the Prepetition Term Loan Obligations at the initial closing of such Competing DIP Facility.

6.11    Section 506(c) Waiver. Subject to entry of the Final Order, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the DIP Agent or the DIP Lender upon the DIP Collateral, or by the Prepetition Secured Parties upon the Prepetition Collateral, as applicable) shall be charged against any of the DIP Agent, the DIP Lender, or the Prepetition Secured Parties, or any of the DIP Obligations or Prepetition Secured Obligations or the DIP Collateral or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Secured Parties and/or affected Prepetition Secured Parties, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out or the approval of any budget hereunder).

6.12    Section 552(b) Waiver. Subject to entry of the Final Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facility and using Cash Collateral as provided in this Interim Order that the Prepetition Secured Parties are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and that the "equities of the case" exception under section 552(b) shall not apply to the DIP Agent, the DIP Lenders, the DIP Obligations, the Prepetition Secured Parties, or the Prepetition Secured Obligations.

6.13    No Marshaling/Application of Proceeds.

(a)     Subject to entry of the Final Order, in no event shall the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition

Collateral, as applicable, and all proceeds shall be received and applied in accordance with the DIP Loan Documents and the Prepetition Secured Debt Documents (including the Prepetition Intercreditor Agreement), as applicable.

(b)    Notwithstanding anything to the contrary in this Interim Order, but subject in all respects to the Carve-Out and the priorities set forth on **Exhibit B** hereto, the respective DIP Obligations shall be satisfied from the proceeds of DIP Collateral.

6.14    Right to Credit Bid. ~~The~~ Debtors acknowledge and agree that, ~~pursuant to~~To the extent authorized by section 363(k) of the Bankruptcy Code~~,~~ and subject to and upon the entry of a Final Order granting such relief, the Debtors acknowledge and agree that each of the DIP Secured Parties and (subject to the Prepetition Intercreditor Agreement) the  Prepetition Secured Parties shall have the right to credit bid the full amount of the DIP Obligations or the Prepetition Secured Obligations (as applicable) held by such party in connection with any sale of the Debtors' assets pursuant to the Sale Motion or otherwise.

6.15    Payment of DIP Lender Fees and Expenses.

(a)    The Debtors shall pay (i) the reasonable and documented fees and expenses reimbursable under the DIP Facility, the DIP Term Loan Note, or the other DIP Loan Documents, as applicable, whether incurred before or after the Petition Date and (ii) all reasonable and documented out-of-pocket costs and expenses of the DIP Agent and the DIP Lender including, without limitation, reasonable and documented fees and disbursements of counsels in connection with the enforcement or preservation of any rights under the DIP Facility, the DIP Term Loan Note, or the other DIP Loan Documents. With respect to payment of fees and expenses incurred from and after the Petition Date, the DIP Agent and the DIP Lenders shall comply with the procedures set forth in paragraph 3.8(c) hereof.

(b)    The DIP Agent and the DIP Lender shall be entitled to reimbursement of the reasonable fees and expenses of their counsel (the "Lender's Expenses"); provided, however, that copies of all invoices reflecting the Lender's Expenses shall be served by email on the Debtor, the U.S. Trustee, and counsel to the Committee (if any) (collectively the "Fee Notice Parties"), who shall have ten (10) business days to review and to assert any objections thereto. Such invoices shall include a general description of the nature of the matters worked on, a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, the year of law school graduation for each attorney; provided, however, that the U.S. Trustee reserves the right to seek copies of invoices containing the detailed time entries of any professional. Any expenses sought to be reimbursed shall be specified, and broken out by type of expense. The provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. If no objection to the payment of the Lender Expenses is made in writing by the Fee Notice Parties within ten (10) calendar days after delivery of such invoices, then, without further order of, or application to, the Court or notice to any other party, such Lender Expenses shall be promptly paid by the Debtor. If an objection is made by any of the Fee Notice Parties within the ten-day objection period to the payment of the Lender Expenses, then the disputed portion of such Lender Expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtor.

6.16    Limits on Lender Liability.

(a)    Solely as a result of making any loan under the DIP Term Loan Note, authorizing the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Secured Parties, and, subject to entry of the Final Order, the Prepetition Secured Parties, shall not be deemed to (i) be in control of the operations of the Debtors or to be acting as a "controlling person,"

"responsible person," or "owner or operator" with respect to the operation or management of the Debtors, so long as the such party's actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or, subject to the entry of the Final Order, the Prepetition Secured Parties, of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

(b)     As to the United States, its agencies, departments, or agents, nothing in this Interim Order or the DIP Loan Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

6.17    Release. Subject to paragraph 5.1 of this Interim Order and entry of the Final Order, each of the Debtors, their Estates and the Prepetition Secured Debt Obligors, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit each of the DIP Secured Parties and the Prepetition Secured Parties, and (in such capacity) each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors,

consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Released Parties") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to (i) the Prepetition Secured Obligations and the DIP Facilities or (ii) the DIP Loan Documents and the Prepetition Secured Debt Documents, as applicable, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Secured Obligations and the DIP Obligations, the Prepetition Secured Debt Documents and the DIP Loan Documents, or the Prepetition Liens and the DIP Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and

all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order. The Debtors are authorized in any payoff letter or similar agreement into which they enter upon payment in full of any DIP Obligations to provide a waiver and release substantially similar to the waiver and release set forth in this paragraph 6.17 of the applicable DIP Agent(s) and the applicable DIP Lenders and their respective related parties.

6.18    <u>Survival</u>. The provisions of this Interim Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Secured Parties' Adequate Protection Liens, the Prepetition Secured Parties' Adequate Protection Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in any of these Chapter 11 Cases, (b) converting any or all of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of these Chapter 11 Cases, (d) terminating the joint administration of these Chapter 11 Cases or any other act or omission, (e) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents), or (f) pursuant to which the Court abstains from hearing any of these Chapter 11 Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in any of these Chapter 11 Cases, following dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Loan Documents and this Interim Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of

provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facilities are terminated, and (ii) in respect of the Prepetition Secured Obligations, all of the adequate protection obligations owed to the Prepetition Secured Parties provided for in this Interim Order and under the Prepetition Secured Debt Documents have been indefeasibly paid in full in cash.

6.19    <u>Proofs of Claim</u>. None of the Prepetition Secured Parties shall be required to file proofs of claim in any of these Chapter 11 Cases or subsequent cases of any of the Debtors under any chapter of the Bankruptcy Code, and the Debtors' Stipulations in this Interim Order shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s).

6.20    <u>No Third Party Rights</u>. Except as specifically provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

6.21    <u>No Avoidance</u>. No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facilities shall be avoidable or recoverable from the DIP Agent or the DIP Lenders under any section of the Bankruptcy Code, or any other federal, state, or other applicable law, *provided that*, nothing within this paragraph is intended to limit or curtail the provisions of paragraph 5.1 hereof, with respect to the Prepetition Secured Obligations.

6.22    <u>Reliance on Order</u>. All postpetition advances under the DIP Loan Documents are made in reliance on this Interim Order.

6.23    <u>Payments Free and Clear</u>. Subject to paragraph 5.1, any and all payments or proceeds remitted to the DIP Agent on behalf of the applicable DIP Secured Parties, or to the Prepetition Secured Parties, pursuant to the provisions of this Interim Order, any subsequent

order of this Court or the DIP Loan Documents, shall be irrevocable, received free and clear of any claims, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve-Out in all respects.

6.24    LLC Derivative Standing.  For the avoidance of doubt, the Prepetition Secured Parties and, to the extent necessary, the Debtors, waive any right to contest ability of any statutory committee appointed in these Chapter 11 Cases to obtain standing on grounds that such cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company and applicable non-bankruptcy law prohibits a party other than the Debtors from bringing claims on behalf of such an entity. Notwithstanding anything to the contrary contained herein, all Challenges shall be released at the closing of any sale to the Proposed Purchaser and the releases set forth in paragraph 6.17 of this Interim Order shall be effective.

6.25    ~~6.24~~ Interim Order Governs. In the event of a conflict between the terms and provisions of any of the DIP Loan Documents and this Interim Order, the terms and provisions of this Interim Order shall govern.

6.26    ~~6.25~~ Headings. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

6.27    ~~6.26~~ Bankruptcy Rules. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

6.28    ~~6.27~~ General Authorization. The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties are authorized to take any and all actions necessary to effectuate the relief granted in this Interim Order.

6.29  6.28 Retention of Exclusive Jurisdiction. This Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the DIP Term Loan Note, and the other DIP Loan Documents.

6.30  6.29 Final Hearing and Response Dates. The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) will be held on _____, 2025, at __:__ _.m., prevailing Eastern Time. The Debtors shall promptly send copies of this Interim Order to the Notice Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or the Committee's counsel if same shall have filed a request for notice. The Debtors may serve the Motion and this Interim Order without the exhibits attached thereto as such exhibits are voluminous and available, free of charge, at the Debtors' claims and noting agent's website: veritaglobal.net/agdp, and such notice is deemed good and sufficient and no further notice need be given. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon the Notice Parties and shall be filed with the Clerk of the Court, in each case, to allow actual receipt of the foregoing no later than 4:00 p.m. (prevailing Eastern Time), on _____, 2025.

### # # #   END OF ORDER   # # #