**<u>Exhibit A</u>**

**Proposed Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (MFW) |
| Debtors. | (Jointly Administered)<br>**Ref: Docket Nos. [•] & [•]** |

**ORDER (I) APPROVING CERTAIN BIDDING PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF, (II) AUTHORIZING THE DEBTORS TO DESIGNATE THE STALKING HORSE BIDDER, (III) SCHEDULING AN AUCTION AND A HEARING ON THE APPROVAL OF THE SALE OF SOME, ALL, OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (IV) AUTHORIZING THE DEBTORS TO ENTER INTO THE PURCHASE AGREEMENT(S), (V) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES AND APPROVING THE MANNER OF NOTICE THEREOF, AND (VI) GRANTING RELATED RELIEF**

Upon the motion ("Motion")[2] of AGDP Holding Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"): (i) approving the Bidding Procedures in connection with the Sale(s) of some, all or substantially all of the Assets and approving the form and manner of notice thereof; (ii) authorizing the Debtors to designate the Stalking Horse Bidder; (iii) scheduling the Auction and the Sale Hearing in conjunction with the Sale(s); (iv) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under the Purchase Agreement(s); (v) establishing the Assumption and Assignment Procedures for the Potentially Assigned Agreements and the form and manner of notice thereof; and (vi) granting related relief; and this Court having reviewed the Motion and held a hearing to consider the relief requested therein

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

(the "<u>Hearing</u>"); and the Court having considered the arguments of counsel made and the evidence adduced at the Hearing; and upon consideration of the First Day Declaration and the record of the Hearing; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      <u>Jurisdiction & Venue</u>.  This Court has jurisdiction to consider the Motion and the relief requested pursuant to 28 U.S.C § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) as to which the Court has authority to issue a final order consistent with Article III of the United States Constitution. Venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Statutory Predicates. The predicates for the relief granted herein are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9007, and Local Rule 6004-1.

C.      Notice. Notice of the Motion and the Hearing as provided therein shall be deemed good and sufficient notice of such Motion, Hearing, and the relief granted herein under the circumstances, and no other or further notice thereof is required.

D.      Stalking Horse Bidder. The Debtors have demonstrated compelling and sound business reasons for this Court to approve the Debtors' designation of AG Acquisition 1 LLC as the Stalking Horse Bidder for the Assets set forth in the Stalking Horse Bid.  The Stalking Horse

Purchase Agreement was negotiated in good faith and at arm's-length by the Debtors and the Stalking Horse Bidder.

**NOW, THEREFORE,** this Court having determined that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.      The relief requested in the Motion is GRANTED as set forth herein.  All objections to the entry of this Order or to the relief provided herein that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled. All withdrawn objections are deemed withdrawn with prejudice.

2.      The Bidding Procedures, attached as **Exhibit 1** to this Order, are hereby approved in their entirety, incorporated by reference as if fully set forth herein, and shall govern all Bids and Bid proceedings relating to the Assets. The Debtors and Verita Global, the Debtors' claims and noticing agent, are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3.      The Debtors will file and serve a proposed Sale Order or proposed Sale Orders on or before **Friday, October 17, 2025**.

4.      **Bid Deadline**. **Wednesday, October 8, 2025, at 12:00 p.m. (prevailing Eastern Time)**, unless extended by the Debtors pursuant to the Bidding Procedures, is the deadline by which all Qualified Bids must be **actually received** by the parties specified in the Bidding Procedures (the "Bid Deadline").

5.      **Stalking Horse Bidder**. AG Acquisition 1 LLC (or such affiliate(s) as it may designate in writing pursuant to the terms of the Stalking Horse Purchase Agreement) is hereby

designated the Stalking Horse Bidder for the applicable Assets. The Debtors are authorized to enter into the Stalking Horse Purchase Agreement and comply with any and all obligations set forth in the Stalking Horse Purchase Agreement that are intended to be performed prior to entry of the Sale Order(s).

6.     The Stalking Horse Bidder shall be deemed a Qualified Bidder, and the Stalking Horse Bid shall be deemed a Qualified Bid for purposes of the Bidding Procedures, which status cannot be abrogated by subsequent amendment or modification by the Debtors of the Bidding Procedures; *provided that* the Stalking Horse Bid may only be considered a Qualified Bid for a subset of the Assets included in the Stalking Horse Purchase Agreement with the Stalking Horse Bidder's consent.

7.     **The Bidding Procedures, the Auction, and the Sale Hearing**. All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court and waived any right to a jury trial with respect to all matters related to the Auction, the Sale(s), the Bidding Procedures, any written indications of interest, preliminary bid documents, the Bids, the Bid documents, and any and all other agreements entered into in connection with any proposed Sale, as applicable, and consented to the entry of a final order or judgment in any way related to the Bidding Procedures, the bidding process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale(s) if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent consent of the parties. Any party raising a dispute relating to the Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

8.     The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than **Wednesday, October 13, 2025**.

33466705.2

9.     If no Qualified Bids other than the Stalking Horse Bid are submitted on or before the Bid Deadline, the Debtors will not hold an Auction with respect to the Assets included in the Stalking Horse Bid and will request that this Court approve the Stalking Horse Purchase Agreement at the accelerated Sale Hearing.

10.     If at least one Qualified Bid other than the Stalking Horse Bid is received by the Bid Deadline with regard to any particular Assets (whether those Assets are included in the Stalking Horse Bid or not), the Debtors will conduct the Auction. The Auction will take place on **<u>Wednesday, October 15, 2025</u>**, at Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801, or, if determined by the Debtors to be necessary or convenient, via teleconference and/or videoconference. Professionals and principals for the Debtors, each Qualified Bidder (including its representative(s), if any), each of the Consultation Parties, any creditors that request access to the Auction prior to the Bid Deadline in accordance with the Bidding Procedures, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction. For the avoidance of doubt, the Debtors may adjourn the Auction to another date or change the location of the Auction (including making it conducted entirely via teleconference and/or videoconference), in consultation with the Consultation Parties, by filing a notice on the docket of these Chapter 11 Cases.

11.     Each Qualified Bidder participating at the Auction will be required to confirm in writing and on the record at the Auction that: (a) it has not engaged in any collusion with respect to the bidding process; (b) its Qualified Bid is a good-faith, *bona fide* offer; and (c) that it intends to consummate the transaction(s) if selected as a Successful Bid.

12.     Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid(s) is the Successful Bid(s) for the applicable Assets or

subsets thereof. The Debtors, in consultation with the Consultation Parties, may also determine the Back-Up Bid(s) for the applicable Assets or subsets thereof.

13.    Following the Auction, the Debtors will file the proposed form Purchase Agreement(s) and proposed Sale Order(s) of the Successful Bidder(s) and any Back-Up Bidder(s) with this Court.

14.    All objections to approval of the Sale(s) (with the exception of objections related solely to the conduct at the Auction, the identity of the Successful Bidder (unless the Successful Bidder is the Stalking Horse Bidder), and the ability of the Successful Bidder (unless the Successful Bidder is the Stalking Horse Bidder) to provide adequate assurance of future performance) or to the Stalking Horse Bidder's ability to provide adequate assurance of future performance, must be in writing, state the basis of such objection with specificity, and be filed with this Court and served upon the Objection Notice Parties on or before **Monday, September 29, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline").

15.    All objections related solely to the conduct at the Auction, the identity of the Successful Bidder (unless the Successful Bidder is the Stalking Horse Bidder), and the ability of the Successful Bidder (unless the Successful Bidder is the Stalking Horse Bidder) to provide adequate assurance of future performance, must be in writing, state the basis of such objection with specificity, and be filed with this Court and served upon the Objection Notice Parties on or before **Wednesday, October 20, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Post-Auction Objection Deadline").

16.    This Court shall convene the Sale Hearing on **Thursday, October 23, 2025, at [●]:00 a.m./p.m. (prevailing Eastern Time)**, or as soon thereafter as counsel and interested parties may be heard.

33466705.2

17.     At the Sale Hearing, this Court will consider approval of the Sale(s) to the Successful Bidder(s) or Back-Up Bidder(s) and the entry of the Sale Order(s). At the Sale Hearing, the Debtors will seek the entry of the Sale Order(s) approving and authorizing the Sale(s) to the Successful Bidder(s) or the Back-Up Bidder(s). Subject to consultation with the Consultation Parties, the Debtors may adjourn the Sale Hearing from time to time without further notice to creditors or other parties in interest other than by announcement of said adjournment at the Sale Hearing or in notice or agenda filed with this Court.

18.     **Assumption and Assignment Procedures**. **Within 2 business day of the entry of this Order**, the Debtors will file a Cure Notice, substantially in the form attached hereto as **Exhibit 3**, which shall include a schedule of cure obligations (the "Cure Schedule") for the Potentially Assigned Agreements, and shall serve such Cure Notice on each of the non-Debtor parties listed therein by email, where available, or otherwise by first-class mail on the date the Cure Notice is filed with this Court. The Cure Schedule will include a description of each Potentially Assigned Agreement potentially to be assumed and assigned by a potential buyer and the amount, if any, necessary to cure or compensate the non-Debtor parties for any defaults under such agreements pursuant to section 365 of the Bankruptcy Code (the "Cure Costs").

19.     To the extent the Debtors, at any time after the filing of the Cure Notice: (a) identify additional Potentially Assigned Agreements that may be assumed and assigned to the Successful Bidder(s); (b) remove any Potentially Assigned Agreement from the Cure Notice; and/or (c) modify the previously stated Cure Costs associated with any Potentially Assigned Agreement, the Debtors shall promptly file with this Court and serve such Cure Notice (the "Supplemental Cure Notice") on each of the affected non-Debtor parties therein by email, where available, or otherwise by first-class mail on the date the Supplemental Cure Notice is filed with this Court.

Each Supplemental Cure Notice will include the same information with respect to listed Potentially Assigned Agreements as was included in the Cure Notice.

20.     Objections to the Cure Costs set forth in the Cure Schedule or the assumption and assignment of any Potentially Assigned Agreement (excluding, for the avoidance of doubt, the ability of the Stalking Horse Bidder or the Successful Bidder(s), as applicable, to provide adequate assurance of future performance or the proposed form of adequate assurance of future performance), identified in the Cure Schedule must: (a) be in writing; (b) state with specificity the nature of the objection, and, if the objection pertains to the proposed Cure Amount, state the amount alleged to be owed, together with any applicable and appropriate documentation in support thereof; (c) be filed with the Clerk of the Court; and (d) be served on the Objection Notice Parties no later than **4:00 p.m. (prevailing Eastern Time) on the date that is 14 calendar days after the service of the Cure Notice (or the applicable Supplemental Cure Notice)**.

21.     Unless a non-Debtor party to a Potentially Assigned Agreement has timely and properly filed and served an objection to the assumption and assignment of its Potentially Assigned Agreement, such non-Debtor counterparty shall: (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Potentially Assigned Agreement, and the Debtors and the Successful Bidder(s) shall be entitled to rely solely upon the Cure Amount; (b) be deemed to have consented to any assumption and assignment of such Potentially Assigned Agreement; and (c) be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder(s) that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Potentially Assigned Agreement, or that there is any objection or defense to the assumption and assignment of such Potentially Assigned Agreement. In addition, the Cure Amounts set forth in the Cure

Schedule shall be binding upon the non-Debtor parties to the Potentially Assigned Agreements for all purposes in these Chapter 11 Cases and will constitute a final determination of the Cure Amounts required to be paid by the Debtors in connection with any assumption and assignment of the Potentially Assigned Agreements.

22.      Where a non-Debtor counterparty to a Potentially Assigned Agreement timely and properly files an objection asserting a Disputed Cure Amount, then: (a) the cure amount shall be as agreed between the parties; or (b) to the extent the parties are unable to consensually resolve the dispute, then such objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors or fixed by the Court. All other objections to the proposed assumption and assignment of a Potentially Assigned Agreement will likewise be heard at the Sale Hearing, unless adjourned by agreement of the parties.

23.      **Notice Procedures**. The forms of the Sale Notice and the Cure Notice attached hereto as **Exhibit 2** and **Exhibit 3**, respectively, are hereby approved and are appropriate and sufficient for all purposes, and no other or further notice shall be required. No finding or ruling is made in this Order as to the merits of any motion for approval of the Sale(s).

24.      As soon as practicable after the entry of this Order, the Debtors will serve the Sale Notice by first-class mail upon the Sale Notice Parties or pursuant to the relief set forth in this Court's *Order (I) Authorizing (A) the Debtors to Redact Certain Personally Identifiable Information and (B) Electronic Noticing Procedures for Customers; and (II) Granting Related Relief*.

25.      In addition, the Debtors shall publish the Sale Notice once in *The New York Times* (National Edition) or another publication with similar national circulation as soon as practicable after entry of this Order and post the Sale Notice and this Order on the website of the Debtors'

33466705.2

claims and noticing agent, Verita Global. Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008 and is reasonably calculated to provide notice to any affected party, including any Potential Bidder(s), and to afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

26.    **Other Provisions**. Failure to timely file an objection in accordance with the deadlines set forth in this Order, or any subsequent order of this Court, shall forever bar the assertion of any objection to the Motion, entry of the Sale Order(s), or consummation of the Sale(s), and shall be deemed to constitute consent to entry of the Sale Order(s) and consummation of the Sale(s) and all transactions related thereto, including, without limitation, for purposes of section 363(f) of the Bankruptcy Code.

27.    All parties (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily: (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction, and/or the Sale(s)) to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (b) waived any right to jury trial in connection with any disputes relating to any of the foregoing matters.

28.    The Debtors are authorized to revise the Bidding Procedures, the bidding process, and the Sale Schedule in consultation with the Consultation Parties and as otherwise set forth in this Order and the Bidding Procedures. The Debtors are further authorized, but not directed, in consultation with the Consultation Parties, to conduct multiple Sales and/or Auctions as necessary

33466705.2

in substantial conformity with the Bidding Procedures and schedule for the Sale(s) established through this Order.

29.     Notwithstanding anything to the contrary herein or elsewhere, the Debtors are authorized to establish a separate segregated escrow account to hold Good Faith Deposit amounts, which such escrow account will not be subject to the control of the DIP Lender.

30.     The failure to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Bidding Procedures.

31.     In the event there is any conflict between this Order and the Bidding Procedures, the terms and conditions of this Order shall control and govern in all respects.

32.     The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied, modified, or waived.

33.     Notwithstanding the applicability of Bankruptcy Rules 6004(h), 6006(d), 7052, or 9014, this Order shall be immediately effective and enforceable upon its entry. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

34.     Nothing in this Order shall be construed as this Court determining or allowing any fees or expenses incurred or requested in connection with the Auction and/or Sale(s), including any fees or expenses of any professionals retained in the Chapter 11 Cases, and the rights of all parties in interest to object to any such fees and expenses are expressly reserved.

35.     This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

**<u>Exhibit 1</u>**

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (MFW) |
| Debtors. | (Jointly Administered) |

### BIDDING PROCEDURES FOR THE
### SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS
### IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS

On August 4, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors are authorized to continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Set forth below are the bidding procedures (the "Bidding Procedures")[2] to be used with respect to the sale(s) and/or disposition(s) (collectively, the "Sale") of all, substantially all, or any portion of the Debtors' assets (the "Assets").

**Any party interested in bidding on the Assets should contact Triple P Securities, LLC ("Portage Point"), the Debtors' investment banker, in these chapter 11 cases (the "Chapter 11 Cases").**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Debtors' Motion for Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Debtors to Designate the Stalking Horse Bidder, (C) Scheduling an Auction and a Hearing on the Approval of the Sale of Some, All, or Substantially All of the Debtors' Assets, (D) Authorizing the Debtors to Enter Into the Purchase Agreement(s), (E) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (F) Granting Related Relief; and (II) an Order or Orders (A) Authorizing the Sale of Some, All, or Substantially All of the Debtors' Assets Free and Clear of Encumbrances, (B) Approving the Assumption and Assignment of the Potentially Assigned Contracts, and (C) Granting Related Relief* (the "Bidding Procedures Motion") or an order approving the Bidding Procedures Motion (such order, the "Bidding Procedures Order"), as applicable.

Copies of the Bidding Procedures Order or any other documents in the Chapter 11 Cases are available upon request to the Debtors' counsel, via email at tbollman@ycst.com, or the case website at https://www.veritaglobal.net/AGDP.

## I.    Summary of Key Sale Process Dates

| Dates | All Scenarios – Deadline/ Event |
|---|---|
| Thursday, September 4, 2025 | Bidding Procedures Hearing |
| As soon as practicable after entry of the Bidding Procedures Order | Sale Notice Filing Deadline |
| 2 business days after entry of the Bidding Procedures Order | Cure Notice Filing Deadline |
| 14 calendar days after service of the Cure Notice (or the Supplemental Cure Notice) at 4:00 p.m. (prevailing Eastern Time) | Cure Objection Deadline |
| Monday, September 29, 2025, at 4:00 p.m. (prevailing Eastern Time) | Sale Objection Deadline |
| Wednesday, October 8, 2025, at 12:00 p.m. (prevailing Eastern Time) | Bid Deadline |
| Monday, October 13, 2025 | Qualified Bid Designation Deadline |
| Wednesday, October 15, 2025 | Auction (if necessary) |
| Deadline to File and Serve Notice of Successful Bidder | As soon as practicable after completion of the Auction |
| Friday, October 17, 2025 | Deadline to file Proposed Sale Order |
| Monday, October 20, 2025, at 4:00 p.m. (prevailing Eastern Time) | Post-Auction Objection Deadline |
| Wednesday, October 22, 2025 | Sale Objection Reply Deadline |
| Thursday, October 23, 2025, subject to the Court's availability | Sale Hearing |
| Friday, November 7, 2025 | Targeted Closing |

## II.    Assets to Be Auctioned

The Debtors are seeking to sell all or substantially all of their Assets, or any portion thereof, either as a going concern or as a liquidation. These Assets include, but are not limited to, the Debtors' going-concern business, unexpired leases (the "Unexpired Leases"), executory contracts (the "Executory Contracts") and, with the Unexpired Leases, the "Potentially Assigned Agreements"), equipment, inventory, supplies, intellectual property, insurance proceeds, prepaid expenses and deposits, and books and records, in each case, free and clear of all liens, claims, interests, or other encumbrances.

The Sale of the Assets shall be subject to a competitive bidding process (the "Bidding Process") as set forth herein and approval by the Court pursuant to sections 105, 363, and 365 of the Bankruptcy Code, rules 2002, 6003, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure, and rules 2002-1, 6004-1, and 9006-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware. The Debtors may consider bids for the Assets (or any portion thereof) in a single bid from a single bidder or in multiple bids from multiple bidders.

## III.    Public Announcement of Auction

As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall: (a) serve the Sale Notice by email, if available, or otherwise by first-class mail upon the Sale Notice Parties (as defined in the Bidding Procedures Order); provided, however, that the Debtors need not serve the Sale Notice on any party for whom the Debtors are unable to obtain, after reasonable diligence, an email or physical address as of the entry of the Bidding Procedures Order; provided, further that the Debtors shall not be obligated to provide supplemental service of the Sale Notice with respect to any Sale Notice that is returned to the Debtors as undeliverable so long as the Debtors have confirmed that any such Sale Notice was sent to the applicable physical address on file in the Debtors' books and records and no other email or physical address could be obtained after reasonable diligence; (b) publish the Sale Notice (as defined in the Bidding Procedures Motion), with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) or another publication with similar national circulation as soon as practicable after entry of the Bidding Procedures Order; and (c) post the Sale Notice on their case website, https://www.veritaglobal.net/AGDP. Further, the Debtors propose that within **2 business days of the entry of the Bidding Procedures Order**, the Debtors shall serve the initial Cure Notice in accordance with the Bidding Procedures Order.

## IV.    Stalking Horse Bidder

"The Debtors have entered into an asset purchase agreement (the "Stalking Horse Purchase Agreement") with AG Acquisition 1 LLC (the "Stalking Horse Bidder"), a special purpose entity formed by the Prepetition Term Loan Lender for the purpose of providing the DIP Loans and consummating the transactions contemplated by the Stalking Horse Agreement (including the purchase of substantially all of the Debtors' assets) ."

## V.    Participation Requirements

To participate in the Bidding Process (as defined below) or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing the Assets or part of the Assets must deliver or have previously delivered to the Debtors and their advisors the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

      a.      an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance reasonably acceptable to the Debtors;

      b.      sufficient information, as reasonably determined by the Debtors and their advisors in their sole discretion, to allow the Debtors to determine that such person or entity (i) has or can reasonably obtain the financial wherewithal to consummate the applicable Sale, and (ii) intends to access the Data Room (as defined below) for a purpose consistent with these Bidding Procedures; and

      c.      a statement detailing whether the person or entity is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid to the extent reasonably practicable.

After provision of the Preliminary Bid Documents, the adequacy of which the Debtors and their advisors shall determine in their sole discretion, such submitting person or entity shall be deemed a "Potential Bidder."

The Debtors shall promptly inform the Consultation Parties of any entity that becomes a Potential Bidder. For the avoidance of doubt, the Stalking Horse Bidder shall be a Potential Bidder.

## VI.    Determination by the Debtors

As appropriate throughout the Bidding Process, the Debtors will consult with: (a) any statutory committee appointed in the Chapter 11 Cases, if any (each, a "Committee") and such Committee's counsel; and (b) any other party the Debtors deem appropriate (collectively, the "Consultation Parties" and each, a "Consultation Party"); provided that, notwithstanding anything to the contrary in these Bidding Procedures, the Debtors shall not consult with a Consultation Party (or its advisors) that is actively participating as a Potential Bidder for the Assets, including, for the avoidance of doubt, by pursuing a Credit Bid (as defined below).

For the avoidance of doubt, if one of the Consultation Parties (or its affiliates, as applicable) is actively participating as a Potential Bidder for the Assets, then the remaining Consultation Parties and their respective counsel shall continue to be Consultation Parties but shall not provide any information they receive as Consultation Parties to such Potential Bidder. Neither the Debtors

nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any party that is not a Potential Bidder or a Consultation Party.[3]

## VII.  Due Diligence

The Debtors have established a confidential electronic data room concerning the Assets (the "Data Room") and will grant each Potential Bidder or Consultation Party, as applicable, access to such Data Room. ***No Potential Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement***.

Up to and including the Bid Deadline, the Debtors shall afford any Potential Bidder or Consultation Party such due diligence access or additional information as may be reasonably requested by the Potential Bidder or the Consultation Party that the Debtors, in their business judgment, determine to be reasonable and appropriate under the circumstances. The Debtors may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders and/or Consultation Parties, as applicable. In the event that any such due diligence materials are prepared by the Debtors in written form and have not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide access to such materials to: (a) all Potential Bidders; and (b) all Consultation Parties. Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Assets in conjunction with submitting its Bid (as defined below).

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person or entity who is not a Potential Bidder or a Consultation Party who does not otherwise comply with the participation requirements set forth above.

## VIII.  Bid Deadline

A Potential Bidder that desires to make a Bid shall deliver written copies of its Bid in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) to the following **by no later than Wednesday, October 8, 2025, at 12:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline"):

> a.    proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE, Attn: Sean M. Beach (sbeach@ycst.com), S. Alexander Faris (afaris@ycst.com) and Evan S. Saruk (esaruk@ycst.com); and

---

[3] Notwithstanding anything to the contrary in these Bidding Procedures, no Prepetition Term Loan Secured Party or DIP Secured Party shall be considered a Consultation Party to the extent that the Stalking Horse Bidder is actively participating as a Potential Bidder for the Assets; provided, however, to the extent that that the Stalking Horse Bidder stops participating as a Potential Bidder for the Assets, the Prepetition Term Loan Secured Parties and DIP Secured Parties may be considered as Consultation Parties.

b.      proposed investment banker to the Debtors, Portage Point, 640 Fifth Avenue, 10th Floor, New York, NY 10019, Attn: Jason Cohen (jcohen@pppllc.com) and Stephen Golmont (sgolmont@pppllc.com).

The Debtors shall provide to the Consultation Parties copies of each Bid received by the Debtors as soon as reasonably practicable following receipt of such Bid.

The Debtors may extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment, in consultation with the Consultation Parties, for all or certain Potential Bidders.

## IX.    Qualified Bid Requirements[4]

To participate in the Auction, a Potential Bidder (other than the Stalking Horse Bidder) must deliver to the Debtors and their advisors an irrevocable offer for the purchase of all, substantially all, or some of the Assets (each, a "Bid"), and shall meet the following criteria (collectively, the "Qualified Bid Requirements"), in each case, on or prior to the Bid Deadline:

a.      **Bid Description and Representations**: Each Bid (other than, for the avoidance of doubt, the Stalking Horse Bid) must be accompanied by a letter or email:

(i)      fully disclosing the identity of the Potential Bidder and providing the contact information of the specific person(s) whom the Debtors or their advisors should contact (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating a proposed Sale) in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder;

(ii)     setting forth the purchase price to be paid by such Potential Bidder and forms of consideration the Potential Bidder intends to use to pay such purchase price;

(iii)    identifying separately the cash and non-cash components of the purchase price;

(iv)    if such Bid relates to the Assets contemplated to be sold under the Stalking Horse Purchase Agreement, providing for consideration to the Debtors of at least the sum of the Stalking Horse Bid and an incremental overbid of $350,000, which may be adjusted for any Bid relating to Assets not contemplated to be sold under the Stalking Horse Purchase Agreement (such incremental overbid, the "Incremental Overbid"); provided that any

---

[4] The Debtors will also consider proposals to acquire any and all of the Assets through a chapter 11 plan. Should any such proposal be received prior to the Bid Deadline that the Debtors, in consultation with the Consultation Parties and the consent of the DIP Lender, conclude is in the best interests of the estates and their stakeholders, the Debtors reserve the right to postpone the Auction and proceed toward confirmation of a chapter 11 plan.

such Bid must include a cash component sufficient to satisfy the DIP Obligations (as defined in the DIP Order);

(v)      specifying whether the Bid is conditioned on purchasing all Assets included in the Bid or whether the Bid should be viewed as separate Bids for one or more sets of Assets;

(vi)     indicating the allocation of the purchase price among the applicable Assets; provided that, for the avoidance of doubt, such allocation shall not prejudice the rights of any party in interest to contest such allocation;

(vii)    stating with specificity the Assets (including any specific Potentially Assigned Agreements) such Potential Bidder wishes to bid on and the liabilities and obligations (including any applicable cure costs) to be assumed by the Potential Bidder in the Sale;

(viii)   indicating, as applicable, whether the Potential Bidder intends to operate the Debtors' business as a going-concern or to liquidate the Assets;

(ix)     providing that the Bid is not subject to any bidding fee, break-up fee, termination fee, transaction fee, expense reimbursement, or any similar type of reimbursement, and including an express waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets;

(x)      containing a commitment to close the contemplated transaction(s) by a Closing Date (as defined below) of no later than **November 7, 2025**, contingent upon receiving the necessary Consent Rights (as defined below), if any;

(xi)     providing that such Bid is not subject to contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, or due diligence;

(xii)    providing that such Potential Bidder has procured and provided all necessary information required to procure any necessary approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights (collectively, the "Consent Rights") required for the sale or purchase of Assets contemplated in the Bid, or, in the alternative, the Potential Bidder will endeavor to procure and provide all necessary information required for such Consent Rights by no later than **October 31, 2025**;

(xiii)   containing an acknowledgement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the Assets, has relied solely upon its own independent review and investigation and/or inspection of any documents and any other information in making the Bid;

(xiv)    agreeing that the Potential Bidder's offer is binding, unconditional, and irrevocable until after the Debtors and the Successful Bidder(s) consummate the applicable Sale(s); and

(xv)    providing that the Potential Bidder agrees to serve as a back-up bidder (the "Back-Up Bidder") if the Potential Bidder's Qualified Bid (as defined below) is the next highest or best bid after the Successful Bid (as defined below) (the "Back-Up Bid") with respect to the relevant Assets through the Closing Date.

b.    **Qualified Bid Purchase Agreement**: Each Bid must be accompanied by:

(i)    an executed purchase agreement in form and substance reasonably satisfactory to the Debtors (a "Qualified Bid Purchase Agreement"); and

(ii)    a redline of the executed Qualified Bid Purchase Agreement to reflect any proposed amendments and modifications to the Stalking Horse Purchase Agreement or the form purchase agreement (if provided by the Debtors), as applicable, and the applicable schedules and exhibits.

c.    **Adequate Assurance Information**: Each Bid must be accompanied by adequate assurance of future performance information (the "Adequate Assurance Information"), which may include:

(i)    information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate a proposed Sale;

(ii)    evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid; and

(iii)    such additional information regarding the Potential Bidder as the Potential Bidder may elect to include.

By submitting a Bid, Potential Bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale(s) and the Consultation Parties in the event that the Debtors determine such bid to be a Qualified Bid (as defined below).

d.    **Good Faith Deposit**: Each Bid must be accompanied by:

(i)    a deposit in the form of a certified check or wire transfer, payable to the order of the Debtors, in the amount of ten percent (10%) of the cash consideration of the Bid, which funds will be deposited, prior to the Bid Deadline, into an escrow account to be identified and established by the Debtors (a "Good Faith Deposit"); provided that, to the extent a Bid is modified at or prior to the Auction in any manner that increases the

proposed purchase price contemplated by such Bid, the Debtors reserve the right, after consultation with the Consultation Parties, to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the increased aggregate purchase price promptly and in no event no later than one (1) business day following the conclusion of the Auction; and

(ii)     the Debtors reserve the right to increase the Good Faith Deposit for one or more Qualified Bidders (as defined below) in their sole discretion after consulting with the Consultation Parties, including by requiring Qualified Bidders to provide a Good Faith Deposit for any non-cash consideration based on such Qualified Bidder's estimate of the value of any such non-cash consideration.

e.     **Acknowledgement of Compliance with the Bidding Procedures, the Bidding Order, the Bankruptcy Code, and Non-Bankruptcy Law**: Each Bid must acknowledge its compliance in all respects with these Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, and any applicable non-bankruptcy law.

f.     **No Collusion**: The Potential Bidder must acknowledge in writing: (i) that it has not engaged in any collusion with respect to any Bid(s) or any Sale(s); (ii) that it did not agree with any Potential Bidders to control price; and (iii) that it will not engage in any collusion with respect to any Bids, the Auction, or the Sale(s). For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors' prior written consent (e-mail shall suffice), in consultation with the Consultation Parties.

g.     **Irrevocable**: Each Bid must state that in the event such Bid is chosen as a Back-Up Bid, it shall remain irrevocable until after the Debtors and the Successful Bidder(s) consummate the applicable Sale(s).

h.     **Regulatory Approvals and Covenants**: A Bid must set forth each regulatory and third-party approval required for the Potential Bidder to consummate the applicable Sale, if any, and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to after **October 31, 2025**, those actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible).

i.     **Expected Closing Date**: Each Bid must state the Potential Bidder's expected date of closing of the applicable Sale(s) and be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as a Successful Bid, by no later than **November 7, 2025**.

**X.**     **Right to Credit Bid**

Subject to any applicable intercreditor agreement, any Qualified Bidder that has a valid and perfected lien on any Assets of the Debtors' estates (each, a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code (a "Credit Bid"); provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; provided further that a Credit Bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full all claims for which there are valid, perfected, and unavoidable liens on any assets included in such bid that are senior in priority to those of the Secured Creditor seeking to credit bid.

**XI.**     **Evaluation of Qualified Bids**

The Debtors, in consultation with the Consultation Parties, will review each Bid received from a Potential Bidder to determine whether it meets the requirements set forth above. A bid received from a Potential Bidder for any portion of the Assets that is determined by the Debtors, in consultation with the Consultation Parties, to meet the above requirements will be considered a "Qualified Bid," and each Potential Bidder that submits such a Qualified Bid will be considered a "Qualified Bidder." The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than **Monday, October 13, 2025, at 12:00 p.m. (prevailing Eastern Time)**. For the avoidance of doubt, the Stalking Horse Bid is deemed a Qualified Bid, and the Stalking Horse Bidder is deemed a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder.

A Qualified Bid will be valued by the Debtors based upon any and all factors that the Debtors deem pertinent in their reasonable business judgment (in consultation with the Consultation Parties), including, among other things: (a) the amount of the Qualified Bid; (b) the risks and timing associated with consummating the transaction(s) with the Qualified Bidder; (c) any excluded Assets or Potentially Assigned Agreements; (d) the number, type, and nature of any changes to the Stalking Horse Purchase Agreement; (e) the net benefit to the Debtors' estates; (f) the tax consequences of such Qualified Bid; and (g) any other factors that the Debtors, in consultation with the Consultation Parties, reasonably may deem relevant.

The Debtors, in their business judgment, reserve the right to reject any Bid if such Bid, among other things:

    a.     requires any indemnification of the Potential Bidder in any Qualified Bid Purchase Agreement submitted as part of the Bid;

    b.     is not received by the Bid Deadline;

    c.     does not comport with the Qualified Bid Requirements;

    d.     is subject to any contingencies (including representations, warranties, covenants, and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Assets; or

e.      does not, in the Debtors' determination (after consultation with the Consultation Parties), include a fair and adequate price or acceptance of which would not be in the best interests of the Debtors' estates or the Auction.

Any Bid rejected pursuant to the foregoing shall not be deemed to be a Qualified Bid; provided that the Debtors may work with the parties to any rejected Bid to cure any such defect(s). In the event that any Bid is so rejected, the Debtors shall cause the Good Faith Deposit of such Potential Bidder (including all accumulated interest thereon) to be refunded to such Potential Bidder as soon as reasonably practicable.

The Debtors may, in consultation with the Consultation Parties, among other things: (a) extend such Bid Deadline with respect to the subject Assets; (b) postpone the Auction; (c) cancel the Auction; or (d) terminate the proposed Sale(s) for the subject Assets.

## XII.   No Qualified Bids

If no Qualified Bids other than the Bid submitted by the Stalking Horse Bidder (the "Stalking Horse Bid") are received for the Assets included in the Stalking Horse Bid by the Bid Deadline, then the Debtors, in consultation with the Consultation Parties, may cancel the Auction with respect to such Assets. If the Stalking Horse Bid is the only Qualified Bid received by the Bid Deadline, the Debtors may decide, in their reasonable business judgment, after consultation with the Consultation Parties, to designate the Stalking Horse Bid as the Successful Bid as to the applicable Assets and pursue entry of an order approving a Sale with respect to such Assets to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement. The Debtors shall promptly file notice of any cancellation of the Auction and/or designation of the Stalking Horse Bid, where applicable, as the Successful Bid with the Court and request the Sale Hearing as set forth herein.

If only one Qualified Bid is received for the Assets not included in the Stalking Horse Bid by the Bid Deadline, then the Debtors, in consultation with the Consultation Parties, may designate such Qualified Bidder as the Successful Bidder with respect to such Assets and pursue entry of an order approving a Sale with respect to such Assets. The Debtors shall promptly file notice of any such designation and request approval of such Sale at the Sale Hearing.

## XIII.  Auction

Other than as expressly set forth herein, if the Debtors receive more than one Qualified Bid for any particular Asset or portion of Assets by the Bid Deadline, the Debtors shall conduct the Auction to determine the Successful Bidder(s) in their reasonable business judgment, in consultation with the Consultation Parties, with respect to such Assets or portion of the Assets. If the Debtors do not receive a Qualified Bid for any particular Asset by the Bid Deadline, the Debtors will not conduct the Auction with respect to such Asset. If one or more Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline with respect to the applicable Assets, then the Debtors shall conduct the Auction with respect to such Assets. In addition, the Debtors, in consultation with the Consultation Parties, shall determine which Qualified Bid is the highest or other best Qualified Bid for purposes of constituting the opening bid at the Auction for the relevant Assets (the "Starting Bid(s)"). The determination of which Qualified Bid(s) constitutes

the Starting Bid(s) shall take into account any factors the Debtors (in consultation with the Consultation Parties) reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates. The Starting Bid(s) will be provided to the Qualified Bidders prior to the commencement of the Auction.

The Auction, if required, will be conducted on **Wednesday, October 15, 2025** at Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801 or, if determined by the Debtors to be necessary or convenient, via teleconference and/or videoconference. Professionals and principals for the Debtors, each Qualified Bidder (including its representative(s), if any), each of the Consultation Parties, any creditors that request access to the Auction prior to the Bid Deadline in accordance with the Bidding Procedures, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction. Each Qualified Bidder participating in the Auction will be required to confirm, in writing and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, (b) its Qualified Bid is a good-faith, *bona fide* offer, and (c) that it intends to consummate the applicable Sale(s) if selected as a Successful Bidder. For the avoidance of doubt, the Debtors may adjourn the Auction to another date or change the location of the Auction (including making it conducted entirely via teleconference and/or videoconference), in consultation with the Consultation Parties, by filing a notice on the docket of these Chapter 11 Cases.

Bidding at the Auction for the Assets (or subset thereof) that are subject to Qualified Bids will begin with the Starting Bid(s) and continue, in one or more rounds of bidding, so long as during each round: (a) at least one Qualified Bidder submits a Qualified Bid that improves on such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid"); and (b) the Debtors reasonably determine, in consultation with the Consultation Parties, that such Subsequent Bid is (i) for the first round, a higher or otherwise better offer than the Starting Bid, and (ii) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below).

Each Subsequent Bid at the Auction shall provide additional net value to the estates over the Starting Bid or the Leading Bid (as defined below) in an amount equal to or greater than the Incremental Overbid amount. After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe to be the highest or otherwise best offer for the subject Assets (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid, subject to the Debtors' authority to revise the Auction procedures as set forth below.

The Debtors may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (*e.g.*, the amount of time to make Subsequent Bids, the amount of the Incremental Overbid, or the requirement that parties submit "best and final" Bids) for conducting the Auction or otherwise modify these Bidding Procedures; provided that such rules are disclosed to each Qualified Bidder during the Auction. The bidding at the Auction shall be transcribed and the Debtors shall maintain a transcript of all Bids made and announced at the Auction.

Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, will, for the Assets (or subset thereof) that were subject to the Auction:

a.      determine, consistent with the Bidding Procedures, which bid(s) constitutes the highest or otherwise best bid (the "Successful Bid(s)"); and

b.      notify all Qualified Bidders at the Auction of the subject Assets, prior to its conclusion, of the name(s) of the maker of the Successful Bid(s) (the "Successful Bidder(s)") with respect to the subject Assets, and the amount and other material terms of the Successful Bid(s).

The Debtors may, in consultation with the Consultation Parties, designate the Back-Up Bid(s) and the Back-Up Bidder(s) with respect to the subject Assets in the event that the Successful Bidder(s) does not close the Sale(s). Unless the Court orders otherwise upon application by the Debtors, the Debtors shall not consider any Bids or Subsequent Bids submitted after the conclusion of the Auction, and any and all such Subsequent Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

The Debtors shall file a notice on the Court's docket identifying the Successful Bidder(s) for the Assets and any applicable Back-Up Bidder(s) as soon as practicable upon the conclusion of the Auction.

All bidders at the Auction will be deemed to have consented to the core jurisdiction and constitutional authority of the Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale(s), and all agreements entered into in connection with any proposed Sale(s).

## XIV.    Sale Hearing

Each Successful Bid and Back-Up Bid shall be subject to approval by the Court. The hearing to approve a Successful Bid and Back-Up Bid shall take place **Thursday, October 23, 2025, at [●] a.m./p.m. (prevailing Eastern Time)**, or as soon as thereafter as counsel and interested parties may be heard (as applicable, the "Sale Hearing").

The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of these Chapter 11 Cases.

For the avoidance of doubt, the Debtors' presentation to the Court for approval of a selected Qualified Bid as a Successful Bid (or a Back-Up Bid) does not constitute the Debtors' acceptance of such Bid. The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing.

## XV.    Return of the Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in escrow, but shall not become property of the Debtors' estates absent further order of the Court. The Debtors shall retain any Good Faith Deposit submitted by each Successful Bidder. At the closing of a Sale contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided. The Good Faith

Deposit of any Back-Up Bidder shall be retained until five (5) business days after the date of consummation of the applicable Sale (the "Closing Date"). The Good Faith Deposits of any other Qualified Bidders will be returned as soon as reasonably practicable, but no later than ten (10) business days following the Auction.

If a Successful Bidder (or, if a Sale is to be closed with a Back-Up Bidder, then such Back-Up Bidder) fails to consummate the applicable Sale(s) because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the applicable Qualified Bid Purchase Agreement (as such agreement may be amended or modified at the Auction) or any other form of purchase agreement reasonably satisfactory to the Debtors, the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if a Sale is to be closed with a Back-Up Bidder, then such Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform; provided, however, retaining a Successful Bidder's Good Faith Deposit upon such bidder's breach does not constitute liquidated damages, and the Debtors reserve all rights, remedies, and causes of action that may be available to the Debtors and their estates as a consequence of such bidder's breach.

## XVI.    Reservation of Rights and Modifications

Notwithstanding any of the foregoing, the Debtors, in consultation with the Consultation Parties, reserve the right to modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Qualified Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and/or adjourn the Sale Hearing; provided that the Debtors may not amend these Bidding Procedures or the Bidding Process to reduce or otherwise modify its obligations to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court; provided further that notwithstanding anything to the contrary herein, any such modification (including, for the avoidance of doubt, extension of the Bid Deadline, postponement of the Auction, cancellation of the Auction, or termination of the proposed Sale) shall not override any milestones set forth in the DIP Order or the DIP Loan Documents.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Bidding Procedures; provided, however, that the Debtors shall not be required to consult with any Consultation Party (or its advisors) regarding any particular issue, selection, or determination if the Debtors determine in good faith on advice of counsel that such consultation would be inconsistent with the exercise of their fiduciary duties.

Each reference in these Bidding Procedures to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith.

Further, for the avoidance of doubt, any rights that the Consultation Parties may have pursuant to the terms of other agreements, any orders of the Court, or the Bankruptcy Code are hereby reserved and shall not in any way be affected by these Bidding Procedures. All rights of the Consultation Parties with respect to the proposed Sale are fully reserved.

## XVII. Consent to Jurisdiction

All Qualified Bidders at the Auction will be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the Sale(s), and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid documents, and any and all other agreements entered into in connection with any proposed Sale, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the Bidding Process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale(s) if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

## XVIII. Fiduciary Out

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor to take any action or to refrain from taking any action related to any Sale or with respect to these Bidding Procedures, to the extent such Debtor, board of director, board of managers, or such similar governing body reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

## Exhibit 2

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (MFW) |
| Debtors. | (Jointly Administered) |
|  | **Docket Ref. No. [●]** |

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that on August 4, 2025 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on August 14, 2025, the Debtors filed the *Debtors' Motion for Entry of an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Debtors to Designate the Stalking Horse Bidder, (C) Scheduling an Auction and a Hearing on the Approval of the Sale of Some, All, or Substantially All of the Debtors' Assets, (D) Authorizing the Debtors to Enter Into the Purchase Agreement(s), (E) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (F) Granting Related Relief; and (II) An Order or Orders (A) Authorizing the Sale of Some, All, or Substantially All of the Debtors' Assets Free and Clear of Encumbrances, (B) Approving the Assumption and Assignment of the Potentially Assigned Contracts, and (C) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Motion"), pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, *inter alia*, entry of an order (the "Bidding Procedures Order"): (a) scheduling an auction (the "Auction") for the sale(s) of all, substantially all, or any portion of the Debtors' assets (the "Assets"); (b) approving procedures (the "Bidding Procedures")[2] for submitting competing bids for the Assets; (c) authorizing, but not directing, the Debtors to designate the Stalking Horse Bidder in accordance with the Stalking Horse Purchase Agreement; (d) subject to final Court approval at the Sale Hearing, authorizing and approving the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431).  The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures, the Bidding Procedures Order, or the Bidding Procedures and Sale Motion, as applicable.

Debtors to enter into and perform under the Purchase Agreement(s), subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures; (e) approving the form and manner of the notice of the Auction and the Sale Hearing; and (f) establishing procedures for the assumption and assignment of the Potentially Assigned Agreements to any purchaser(s) of the Assets and approving the manner of notice thereof (the "Cure Notice").

**PLEASE TAKE FURTHER NOTICE** that on [●], the Court entered the Bidding Procedures Order [Docket No. [●]]. Pursuant to the Bidding Procedures Order, if at least two (2) Qualified Bids with regard to any Assets (as defined in the Bidding Procedures Order) are received by the Bid Deadline (as defined below), the Debtors will conduct the Auction. The Auction shall be held on **Wednesday, October 15, 2025, starting at 10:00 a.m. (prevailing Eastern Time)**, or such other time as the Debtors shall designate and thereafter notify all Qualified Bidders. Professionals and principals for the Debtors, each Qualified Bidder (including its representative(s), if any), each of the Consultation Parties, any creditors that request access to the Auction prior to the Bid Deadline, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction. Only parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, by no later than **October 8, 2025, at 12:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline") may bid at the Auction. Any party that wishes to submit a Bid (as defined in the Bidding Procedures) for all, substantially all, or any portion of the Assets must submit a Bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Auction, if required, will be conducted at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 or, if determined by the Debtors to be necessary or convenient, via teleconference and/or videoconference. For the avoidance of doubt, the Debtors may adjourn the Auction to another date or change the location of the Auction (including making it conducted entirely via teleconference and/or videoconference), in consultation with the Consultation Parties, by filing a notice on the docket of these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE** that, as soon as practicable after completion of the Auction, the Debtors shall file a notice identifying the Successful Bidder(s) with the Court. The Debtors will file a proposed form of Sale Order or Sale Orders on the docket in these Chapter 11 Cases by **Friday, October 17, 2025.**

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the Sale(s) of the Assets to the Successful Bidder(s) free and clear of all liens, claims, and encumbrances will be held before the Honorable Mary F. Walrath, United States Bankruptcy Judge, 824 North Market Street, 5th Floor, Wilmington, Delaware 19801 on **Thursday, October23, 2025, at [●] a.m./p.m. (prevailing Eastern Time)**, or at such other time thereafter as counsel and interested parties may be heard.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Court or by the filing of a notice with the Court.

**PLEASE TAKE FURTHER NOTICE** that all objections to approval of the Sale(s) (with the exception of objections related solely to the conduct at the Auction, the identity of the Successful Bidder (unless the Successful Bidder is the Stalking Horse Bidder), and the ability of the Successful Bidder (unless the Successful Bidder is the Stalking Horse Bidder) to provide adequate assurance of future performance) or to the Stalking Horse Bidder's ability to provide adequate assurance of future performance must be in writing, state the basis for such objection with specificity, and be filed with the Court and served before **Monday, September 29, 2025, at 4:00 p.m. (prevailing Eastern Time)**, on the following parties (collectively, the "Objection Notice Parties"):

    a. proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE, Attn: Sean M. Beach (sbeach@ycst.com), S. Alexander Faris (afaris@ycst.com) and Evan S. Saruk (esaruk@ycst.com);

    b. counsel to the DIP Lender and the Stalking Horse Bidder, McDermott Will & Schulte LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam Harris (adam.harris@srz.com) and Reuben Dizengoff (reuben.dizengoff@srz.com);

    c. the Office of the United States Trustee for the District of Delaware, 844 N. King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Jonathan W. Lipshie (Jon.Lipshie@usdoj.gov);

    d. counsel to any statutory committee that has been appointed in these Chapter 11 Cases; and

    e. any Successful Bidder identified prior to such objection deadline, if applicable.

**PLEASE TAKE FURTHER NOTICE** that, all objections related solely to the conduct at the Auction, the identity of the Successful Bidder (unless the Successful Bidder is the Stalking Horse Bidder), and the ability of the Successful Bidder (unless the Successful Bidder is the Stalking Horse Bidder) to provide adequate assurance of future performance, must be in writing, state the basis for such objection with specificity, and be filed with the Court and be served upon the Objection Notice Parties on or before **October 22, 2025, at 4:00 p.m. (prevailing Eastern Time)**.

    **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

**PLEASE TAKE FURTHER NOTICE** that this Sale Notice is subject to the fuller terms and conditions of the Bidding Procedures Motion, the Bidding Procedures Order, and the Bidding Procedures, with such Bidding Procedures Order controlling in the event of any conflict. The Debtors encourage all parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale(s) of the Asset and/or copies of any related document(s), including the Bidding Procedures Motion, the Bidding Procedures Order, or

3

the Bidding Procedures, may make a written request at https://veritaglobal.net/agdp/inquiry. In addition, copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order, and the Bidding Procedures are on file with the Clerk of the Court, Third Floor, 824 North Market Street, Wilmington, Delaware 19801 and are available on the Debtors' claims and noticing agent's website free of charge at https://veritaglobal.net/agdp.

Dated:    August 13, 2025
        Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/
_____
Edmon L. Morton (No. 3856)
Sean M. Beach (No. 4070)
Kenneth J. Enos (No. 4544)
S. Alexander Faris (No. 6278)
Sarah Gawrysiak (No. 7403)
Evan S. Saruk (No. 7452)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  sbeach@ycst.com
      emorton@ycst.com
      kenos@ycst.com
      afaris@ycst.com
      sgawrysiak@ycst.com
      esaruk@ycst.com

_Proposed Counsel to the Debtors and Debtors in Possession_

4

**<u>Exhibit 3</u>**

**Cure Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. [●]** |

### NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS

> YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES MAY BE A COUNTERPARTY TO A CONTRACT OR LEASE WITH AGDP HOLDING INC. AND/OR ONE OF ITS DEBTOR AFFILIATES. PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.

**PLEASE TAKE NOTICE** that on August 14, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] filed a motion seeking approval of the Bidding Procedures for the sale of certain of the Debtors' assets (the "Assets") and approval of the sale(s) of such Assets [Docket No. [●]] (the "Bidding Procedures Motion") to the highest or best-qualified bidder(s) (the "Successful Bidder(s)"). The Debtors sought the approval of the Court (as defined below) of the proposed Bidding Procedures and the form of this notice at a hearing scheduled for **[●], at [●]a.m./p.m. (prevailing Eastern Time)**.[3] The Debtors have further requested a hearing to approve the sale(s) of the Assets (the "Sale Hearing") for **October 23, 2025 at [●] a.m./p.m. (prevailing Eastern Time)**, or as soon thereafter as counsel and interested parties may be heard in the United States Bankruptcy Court for the District of Delaware (the "Court").

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures and Sale Motion, the Debtors may assume and assign to the Successful Bidder(s) one or more of those executory contracts and/or unexpired leases listed on **Schedule A** annexed hereto (collectively,

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Motion (as defined herein) or the Bidding Procedures Order (as defined herein), as applicable.

[3] The Court entered its order approving the Bidding Procedures and the form of this notice prior to the hearing on [●] [Docket No. [●]].

the "Potentially Assigned Agreements" and each, a "Potentially Assigned Agreement"), pursuant to section 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have indicated on **Schedule A** the cure amounts, if any, that the Debtors believe must be paid to cure any prepetition defaults and pay all amounts accrued under the Potentially Assumed Agreements (in each instance, the "Cure Amount").

**PLEASE TAKE FURTHER NOTICE** that any party seeking to object to the validity of the Cure Amount, to the Stalking Horse Bidder's ability to provide adequate assurance of future performance, or to a proposed assignment to the Successful Bidder(s) of any Potentially Assigned Agreement (other than on the basis of adequate assurance of future performance by the Successful Bidder if such Successful Bidder is not the Stalking Horse Bidder) must file an objection (the "Cure Objection") that: (a) is in writing; (b) states with specificity the nature of the objection, and, if the objection pertains to the proposed Cure Amount, state the amount alleged to be to owed, together with any applicable and appropriate documentation in support thereof; (c) is filed with the Clerk of the Court; and (d) is served on the following parties (collectively, the "Objection Notice Parties") by no later than **4:00 p.m. (prevailing Eastern Time) on the date that is 14 calendar days after the service of this Cure Notice** (the "Cure Objection Deadline"):

a. counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE, Attn: Sean M. Beach (sbeach@ycst.com), S. Alexander Faris (afaris@ycst.com) and Evan S. Saruk (esaruk@ycst.com);

b. counsel to the DIP Lender and the Stalking Horse Bidder, McDermott Will & Schulte LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam Harris (adam.harris@srz.com) and Reuben Dizengoff (reuben.dizengoff@srz.com);

c. the Office of the United States Trustee for the District of Delaware, 844 N. King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Jonathan W. Lipshie (Jon.Lipshie@usdoj.gov);

d. counsel to any statutory committee that has been appointed in these Chapter 11 Cases; and

e. any Successful Bidder identified prior to such objection deadline, if applicable.

**PLEASE TAKE FURTHER NOTICE** that the Debtors shall file a notice identifying the Successful Bidder(s) with the Court and serve such notice upon parties in interest as soon as practicable after completion of the Auction. The Debtors shall file a proposed form of Sale Order or Sale Orders by **Friday, October 17, 2025**.

**PLEASE TAKE FURTHER NOTICE** that unless a Cure Objection is timely and properly filed and served before the Cure Objection Deadline, the non-Debtor party to a Potentially Assigned Agreement shall: (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Potentially Assigned Agreement, and the Debtors and the Successful Bidder(s) shall be entitled to rely solely upon the Cure Amount; (b) be deemed to have consented to any assumption and assignment of such

Potentially Assigned Agreement; and (c) be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder(s) that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Potentially Assigned Agreement, or that there is any objection or defense to the assumption and assignment of such Potentially Assigned Agreement. In addition, the proposed Cure Amount set forth in **Schedule A** hereto shall be binding upon the non-Debtor parties to the Potentially Assigned Agreements for all purposes in these Chapter 11 Cases and will constitute a final determination of the Cure Amounts required to be paid by the Debtors in connection with any assumption and assignment of the Potentially Assigned Agreements.

**PLEASE TAKE FURTHER NOTICE** that where a non-Debtor counterparty to a Potentially Assigned Agreement timely and properly files an objection asserting a Cure Amount higher or different than the proposed Cure Amount (the "Disputed Cure Amount"), then: (a) the Cure Amount shall be as agreed between the parties; or (b) to the extent the parties are unable to consensually resolve the dispute, then such objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors or fixed by the Court. All other objections to the proposed assumption and assignment of a Potentially Assigned Agreement will likewise be heard at the Sale Hearing, unless adjourned by agreement of the parties.

**PLEASE TAKE FURTHER NOTICE** that a Cure Objection shall not constitute an objection to: (a) the relief generally requested in the Bidding Procedures Motion; (b) the conduct of the Auction (if one is held); (c) the identity of the Successful Bidder (unless the Successful Bidder is the Stalking Horse Bidder); or (d) the ability of the Successful Bidder (unless the Successful Bidder is the Stalking Horse Bidder) to provide adequate assurance of future performance. Parties wishing to object on such grounds must file and serve a separate objection stating with particularity such party's grounds for its objection on each of the Cure Notice Parties listed above and any Successful Bidder(s) identified no later than **Monday, October 20, 2025 at 4:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Amount indicated on **Schedule A** and otherwise do not object to the Debtors' assignment of your lease or contract, you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that the Debtors' decision to assume and assign the Potentially Assigned Agreements is subject to the Court's approval and consummation of the Sale(s) of the Assets.

**Inclusion of any document on the list of Potentially Assigned Agreements shall not constitute nor be deemed to be a determination or admission by the Debtors or the Successful Bidder(s) that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are expressly reserved.**

*[Remainder of page intentionally left blank]*

Dated:   August 13, 2025
         Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/*

Edmon L. Morton (No. 3856)
Sean M. Beach (No. 4070)
Kenneth J. Enos (No. 4544)
S. Alexander Faris (No. 6278)
Sarah Gawrysiak (No. 7403)
Evan S. Saruk (No. 7452)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  sbeach@ycst.com
        emorton@ycst.com
        kenos@ycst.com
        afaris@ycst.com
        sgawrysiak@ycst.com
        esaruk@ycst.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Schedule A

**Potentially Assigned Agreements**