**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (MFW) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JASON COHEN IN SUPPORT OF DEBTORS' MOTION
FOR ENTRY OF (I) AN ORDER (A) APPROVING CERTAIN BIDDING
PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF,
(B) AUTHORIZING THE DEBTORS TO DESIGNATE THE STALKING HORSE
BIDDER, (C) SCHEDULING AN AUCTION AND A HEARING ON THE APPROVAL
OF THE SALE OF SOME, ALL, OR SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS, (D) AUTHORIZING THE DEBTORS TO ENTER INTO THE PURCHASE
AGREEMENT(S), (E) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT
PROCEDURES AND APPROVING THE MANNER OF NOTICE THEREOF, AND
(F) GRANTING RELATED RELIEF; AND (II) AN ORDER OR ORDERS
(A) AUTHORIZING THE SALE OF SOME, ALL, OR SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS FREE AND CLEAR OF ENCUMBRANCES, (B) APPROVING
THE ASSUMPTION AND ASSIGNMENT OF THE POTENTIALLY ASSIGNED
CONTRACTS, AND (C) GRANTING RELATED RELIEF**

I, Jason Cohen, hereby declare under penalty of perjury as follows:

1. I am a Managing Director at Triple P Securities, LLC ("Triple P Securities"), the proposed investment banker to the above-captioned debtors and debtors-in-possession (the "Debtors" or the "Company") in the above-captioned chapter 11 cases (the "Chapter 11 Case"). Triple P Securities has its principal place of business at 640 Fifth Ave, 10th Floor, New York, New York 10019. Triple P Securities and Triple P RTS, LLC, the Debtors' proposed restructuring advisor ("Triple P RTS" and together with Triple P Securities, "Portage Point") are each wholly

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

33447801.4

owned by Portage Point Partners, LLC. I am authorized to submit this declaration ("Declaration") on behalf of Triple P Securities.

2. I submit this Declaration on behalf of the Debtors in support of the *Debtors' Motion for Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Debtors to Designate the Stalking Horse Bidder, (C) Scheduling an Auction and a Hearing on the Approval of the Sale of Some, All, or Substantially All of the Debtors' Assets, (D) Authorizing the Debtors to Enter Into the Purchase Agreement(s), (E) Establishing Certain Assumption and Assignment Procedures and Approving the Manner and Notice Thereof, and (F) Granting Related Relief; and (II) an Order or Orders (A) Authorizing the Sale of Some, All, or Substantially All of the Debtors' Assets Free and Clear of Encumbrances, (B) Approving the Assumption and Assignment of the Potentially Assigned Contracts, and (C) Granting Related Relief* (the "Motion"),[2] filed contemporaneously herewith.

3. Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge, my discussions with members of the Debtors' management team, other members of the Portage Point team, and the Debtors' other advisors, as well as my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge.

4. I am authorized to submit this Declaration on behalf of the Debtors and am over the age of 18. If called to testify, I could and would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents and/or opinion.

---

[2] All terms not otherwise defined herein shall be given the meaning ascribed to them in the Motion.

33447801.4

**Professional Qualifications**

5. Portage Point is a business advisory, interim management, investment banking and financial services firm whose professionals have a wealth of experience in providing financial advisory, restructuring advisory, and turnaround management services and which enjoys an excellent reputation for services it has rendered on behalf of debtors and creditors throughout the United States, both in chapter 11 cases and out-of-court restructurings. The Portage Point team is comprised of operators and advisors with proven skills necessary to identify, preserve and create value in the most challenging and complex situations. Portage Point's professionals have extensive experience across a wide range of industries.

6. Portage Point's professionals have assisted, advised and provided strategic advice to debtors, creditors, bondholders, investors and other entities in numerous cases, including the following: *In re Omega Therapeutics, Inc.*, Case No. 25-10211 (BLS) (Bankr. D. Del. Feb. 10, 2025); *In re Dig. Media Solutions, Inc.*, Case No. 24-90468 (ARP) (Bankr. S.D. Tex. Sept. 11, 2024); *In re Blink Holdings, Inc.*, Case No. 24-11686 (JKS) (Bankr. D. Del. Aug. 12, 2024); *In re DRF Logistics, LLC*, Case No. 24-90447 (CML) (Bankr. S.D. Tex. Aug. 8, 2024); *In re Supply Source Enters., Inc.*, Case No. 24-11054 (BLS) (Bankr. D. Del. May 21, 2024); *In re Appgate, Inc.*, Case No. 24-10956 (CTG) (Bankr. D. Del. May 6, 2024); *In re Ambri, Inc.*, Case No. 24-10952 (LSS) (Bankr. D. Del. May 5, 2024); *In re Nogin, Inc.*, Case No. 23-11945 (CTG) (Bankr. D. Del. Dec. 5, 2023); *In re Benitago Inc.*, Case No. 23-11394 (SHL) (Bankr. S.D.N.Y Aug. 31, 2023); *In re Plastiq*, Case No. 23-10174 (BLS) (Bankr. D. Del. June 19, 2023); *In re Big Village Holding LLC*, Case No. 23 10174 (CTG) (Bankr. D. Del. Mar. 6, 2023); *In re Performance Powersports Grp. Inv., LLC*, Case No. 23- 10047 (LSS) (Bankr. D. Del. Jan. 16, 2023); *In re VJGJ, Inc. (f/k/a Teligent, Inc.)*, Case No. 21- 11332 (BLS) (Bankr. D. Del. Oct. 14, 2021); *In re Alex*

33447801.4

*and Ani, LLC*, Case No. 21-10918 (CTG) (Bankr. D. Del. July 15, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC*, Case No. 21- 10474 (MFW) (Bankr. D. Del. Mar. 29, 2021); *In re LGA3 Corp.*, Case No. 20-11456 (LSS) (Bankr. D. Del. June 1, 2020).

7. I received a Bachelor of Science degree from the University of Connecticut and a Juris Doctor degree from the Brooklyn Law School. Prior to joining Portage Point, I was a Managing Director at Lazard and Special Counsel at Cadwalader, Wickersham and Taft LLP. I have over twenty-five years of experience advising and executing on financing and restructuring transactions, as well as mergers and acquisitions. My experience includes representing companies, boards, creditors, and other stakeholders in a variety of situations.

**The Debtors' Proposed Sale Process and Bid Procedures**

8. I understand the Assets primarily include, among other things, the Debtors' multi-space entertainment venue complex situated in Brooklyn, New York. Further, I understand this venue specializes in large-scale live entertainment—concerts, festivals, corporate functions, and multimedia events—and is known for state-of-the-art audiovisual production.

9. Portage Point was engaged by the Debtors in July of 2025 to, among other things, assist the Debtors in their sale process. It is my understanding that, through the Bidding Procedures, the Debtors intend to market their Assets to potential purchasers and facilitate access to diligence materials in support thereof. For those executing a non-disclosure agreement with the Debtors, such materials include access to a virtual data room, a confidential information memorandum and, as appropriate, meetings with management.

10. I believe the Debtors and their professional advisors have designed the Bidding Procedures to promote a competitive and fair bidding process. In my opinion, the Bidding

Procedures will allow the Debtors to market the Assets to buyers and conduct the Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders.

11. I have reviewed the proposed Bidding Procedures, and the Bidding Procedures establish, among other things:

   a. a robust due diligence process for Potential Bidders as it relates to the sale of the Assets or any lots of the Assets;

   b. the deadlines and requirements for the sale of the Assets and the methods and criteria by which such Bids will be deemed to be Qualified Bids, including the terms and conditions that must be satisfied and the deadlines that must be met by any bidder for the Assets to be considered a Qualified Bidder and to participate in the Auction;

   c. a Stalking Horse Bidder for the Assets;

   d. the manner by which Qualified Bids will be evaluated by the Debtors;

   e. the conditions for holding an auction and procedures for such auction, if any; and

   f. various other matters relating to the sales and marketing process generally, including the designation of one or more Backup Bids.

12. The Bid Procedures include a Bid Deadline for interested parties to formulate and submit a bid to purchase some or all of the Assets on October 8, 2025. I believe the proposed timeline for the sale of the Assets and other features of the Bid Procedures governing the sale, marketing, and auction process, including the Bid Deadline, are fair, reasonable and appropriate under these circumstances

13. Based on my experience, I believe the proposed Bidding Procedures have been designed to promote active bidding by interested parties and to achieve the highest or otherwise

best offer currently available for the Assets given the Debtors' liquidity constraints and the amount of available DIP financing. The proposed sale process is designed to minimize unnecessary administrative costs, while also providing for the opportunity to maximize the value the Debtors can recover from the Assets under the circumstances.

14. Furthermore, based on my experience, the Bidding Procedures provide an appropriate framework for the Debtors and their independent fiduciaries and professional advisors to review, analyze, and compare any bids received to determine which bids represent the highest or otherwise best value for the Debtors' estates and stakeholders. I believe the Bidding Procedures recognize and comport with the Debtors' fiduciary obligations to maximize sale value, do not impair the Debtors' ability to consider all Qualified Bids made at or prior to the Auction, and preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtors' estates.

### Selection of Stalking Horse Bidder

15. The Bidding Procedures Motion requests, among other things, entry of an order approving (i) the Bidding Procedures and assumption and assignment procedures; and (ii) entry into the Stalking Horse Purchase Agreement, subject to higher and better bids.

16. The Debtors' board of directors, after consultation with the Debtors' advisors, determined the Stalking Horse Purchase Agreement represented the highest or otherwise best offer received for the Assets marketing process conducted to date, and directed the Debtors to proceed with negotiating definitive terms with the Stalking Horse Bidder. After extensive and good faith, arms' length negotiations, the Debtors executed the Stalking Horse Purchase Agreement.

17. I believe the Stalking Horse Purchase Agreement provides the best alternative to maximize value for stakeholders. Entry into such agreement permits the Debtors to conduct a value

maximizing sale process backstopped by the proposed Stalking Horse Purchase Agreement. In addition, entry into the Stalking Horse Purchase Agreement provides business stability to employees, creditors and other parties-in-interest. Further, the Stalking Horse Purchase Agreement benefits the Debtors by serving as a floor for an overbid process to ensure the Debtors receive the highest or otherwise best offer(s) for the Assets. Indeed, the Debtors' ultimate consummation of the Stalking Horse Purchase Agreement is subject to higher or otherwise better offers the Debtors may receive for the Assets pursuant to the Bidding Procedures. There is a strong business justification for the Debtors' entry into the Stalking Horse Purchase Agreement and the Stalking Horse Purchase Agreement is reasonable.

18. In light of the foregoing, approval of the Stalking Horse Purchase Agreement, as set forth in the Bidding Procedures Order, is in the best interest of the Debtors' estates, and the Debtors' decision to seek such approval constitutes a sound exercise of the Debtors' business judgment.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 14, 2025                /s/ Jason Cohen
                                      Jason Cohen
                                      Managing Director, Triple P Securities, LLC

33447801.4