**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AGDP HOLDING INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11446 (MFW)<br><br>(Jointly Administered)<br><br>Hearing Date: November 5, 2025 at 10:30 a.m. (ET)<br>Obj. Deadline: October 22, 2025 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) APPROVING THE DEBTORS' (A) SEVERANCE PROGRAM AND**
**(B) PAYMENTS MADE THEREUNDER; AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):[2]

**RELIEF REQUESTED**

1. By this Motion, the Debtors seek entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, (a) approving the continuation and maintenance of the Debtors' severance program (the "Severance Program") as described herein, (b) authorizing, but not directing, payments made thereunder (the "Severance Payments") to eligible full-time employees; (c) and granting related relief.

**JURISDICTION AND VENUE**

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. § 1334 and the *Amended Standing Order of*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the *Declaration of Gary Richards in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 13] (the "First Day Declaration") and the Plan (defined herein), as applicable.

33627913.5

*Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal bases for the relief requested in this Motion are sections 105(a), 363, and 503(c) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

## BACKGROUND

5. The Debtors operate a multi-space entertainment venue complex, specializing in large-scale live entertainment—concerts, festivals, corporate functions, and multimedia events—and are known for state-of-the-art audiovisual production, including a 2022 upgrade featuring one of the world's highest-resolution video walls.  The Debtors focus on industry-leading production capabilities, immersive audiovisual experiences, and maintain a status as one of North America's largest standing-room-only entertainment venues.

6. On August 4, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 18, 2025, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [D.I. 73].

7. Additional information regarding the Debtors' businesses, capital structures and circumstances preceding the Petition Date may be found in the First Day Declaration.

## THE SEVERANCE PROGRAM

8. The Debtors' workforce consists of approximately 16 employees (the "Workforce") who are responsible for the day-to-day operations of the Debtors' business. The Debtors' Workforce is essential to the operation of the Debtors business, and the Debtors intend to continue to employ such individuals to support the Sale Process. However, as the Debtors move towards consummation of the sale of their assets, it is possible that some employees will be replaced or terminated either before or as a result of the sale closing.

9. The Debtors, in their business judgement, have determined (subject to the Court's approval) to continue the Severance Program that the Debtors had maintained prepetition and offer the Severance Payments to personnel who would be terminated. Such Severance Payments would be in exchange for releases of claims or causes of action against the Debtors. Those releases would protect the Debtors and aid the Debtors in maximizing the value of their assets through the Sale Process. Additionally, the Severance Payments would afford any terminated employees a softer landing as they seek new employment.

10. The terms of the Severance Program are as follows:

   a. *Eligibility*. Subject to the Debtors' sole discretion, all full-time employees that are providing service to the Debtors (collectively, the "Eligible Employees" and each, an "Eligible Employee") are eligible to receive a one-time Severance Payment to be paid in the next regularly scheduled payroll following separation of employment with the Debtors, provided that each Eligible Employee remains employed by the Debtors through and including such Eligible Employee's Termination Date (as defined below), and is not terminated for cause prior to the Termination Date. For purposes of the Severance Program, "cause" shall mean an Eligible Employee's (i) indictment on felony charges; (ii) fraudulent or grossly negligent conduct in connection with the Eligible Employee's employment duties or responsibilities; (iii) willful misconduct in connection with the Eligible Employee's employment duties; (iv) contravention, in any material respect,

33627913.5

of specific, lawful directions related to a material duty or responsibility that the Eligible Employee is directed to undertake by any person to whom he or she reports; (v) acts that constitute embezzlement, misappropriation, or breach of fiduciary duty resulting, or intending to result, in the Eligible Employee's personal gain or enrichment at the expense of the Debtors; (vi) failure to comply with ongoing confidentiality, non-solicitation and/or non-competition obligations (if any) between the Eligible Employee and the Debtors; or (vii) continued failure to comply with a material policy of the Debtors or direction of a direct supervisor after receiving notice of failure to comply from any person to whom the Eligible Employee reports.

    b.    *Termination Date*. The Severance Payment shall be earned as of the date (the "Termination Date") the Debtors terminate an Eligible Employee's employment without cause. If an Eligible Employee is terminated for cause, as described above, such Eligible Employee shall not be eligible for the Severance Program or any Severance Payment thereunder.

    c.    *Severance Payment*. Each Eligible Employee whose employment is not voluntarily terminated by the Eligible Employee or is not terminated for cause prior to the Termination Date, and who releases any claims or causes of action against the Debtors, shall, upon the Termination Date, earn a Severance Payment in the amount of approximately four-weeks' salary (subject to discretionary increases), less any applicable payroll withholding taxes. The amount of the Severance Payment shall be determined based on the Eligible Employee's salary as of the Termination Date. The payment of any Severance Payment is separate from, and in addition to, the Eligible Employees' regular salary and benefits and, therefore, the Severance Program is not subject to the terms and conditions contained in any employment contract, offer letter or other employment communication or policy of the Debtors, between the Eligible Employee and the Debtors, or that the Eligible Employee may have previously received from the Debtors; provided that any Eligible Employee whose employment with the Debtors is subject to a written employment agreement which provides for severance package shall not be entitled to the severance package specified in such agreement, and such Eligible Employee shall only be eligible for any payments under the Severance Program absent further Court order.

11. The aggregate amount of Severance Payments that the Debtors anticipate may be made under the Severance Program is approximately $75,000.00.

**BASIS FOR RELIEF**

**I.   THE COURT SHOULD APPROVE THE SEVERANCE PROGRAM AS IT RELATES TO NON-INSIDERS PURSUANT TO SECTION 363(B) OF THE BANKRUPTCY CODE**

12.   The Severance Program as it relates to non-insiders can be approved under section 363(b)(1) of the Bankruptcy Code, which provides, in relevant part, that the trustee or debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code provides that transactions outside of the ordinary course of business must be approved by Court order.

13.   Under applicable case law, in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct"). When a valid business justification exists, the law vests a debtor's decision to use property out of the ordinary course of business with a strong presumption that "in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated*

33627913.5

*Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations omitted), *appeal dismissed*, 3 F.3d 48 (2d Cir. 1993).

14. The business judgment rule in chapter 11 proceedings shields management's decision making from judicial second guessing. *See Myers v. Martin (In re Martin),* 91 F.3d at 395 (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under Bankruptcy Code section 363(b) when there is a legitimate business justification); *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999) (affirming bankruptcy court order approval of employee retention programs, stating that "[i]n determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtors to show that a sound business purpose justifies such actions").

15. The Court should approve the Severance Program as it relates to non-insiders under section 363(b) of the Bankruptcy Code. Courts generally approve employee compensation plans and programs that are outside the ordinary course of business pursuant to section 363(b)(1) of the Bankruptcy Code when (i) a debtor has used proper business judgment in formulation such a program, and (ii) the court finds that the program is fair and reasonable. *See, e.g.*, *In re Montgomery Ward Holding Corp.*, 242 B.R. at 155 (affirming bankruptcy court approval of the key employee retention program on the basis that debtors showed a "sound business purpose" justifying such approval); *In re Global Home Prods., LLC*, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) ("Compensation issues are normally governed by the business judgment standards, i.e., proof that there is a broad business purpose for an action . . . [.] The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment.") (citations omitted); *In re Dana Corp.*, 358 B.R. 567, 584 (Bankr. S.D.N.Y. 2006) (applying

33627913.5

business judgment rule to find that debtor's long term incentive plan was within the fair and reasonable business judgment of the debtor).

16. The Debtors' decision to implement the Severance Program and to make discretionary Severance Payments thereunder to non-insiders is supported by sound business reasons and made in good faith. The Severance Program is reasonable in light of, among other things, the Debtors' need to provide the Eligible Employees with a comprehensive compensation package that mitigates the economic disruption that will ensue following termination of employment without cause.

17. The Debtors' employees have been critical to the successful and efficient wind-down of the Debtors' operations. With a financial cushion following their termination, the Debtors' employees can focus on their current responsibilities without the added pressure of needing immediate employment after termination. Additionally, the releases gained in exchange for any Severance Payment will increase the value of the Debtors' estates. Accordingly, the Debtors submit that the Severance Program provides a direct benefit to their estates, as the Debtors' positive relationship with their employees and the releases received in exchange for the Severance Payments will positively impact the Debtors' estates during these Chapter 11 Cases.

II. **THE SEVERANCE PROGRAM SHOULD BE APPROVED AS TO THE DEBTORS' INSIDERS PURSUANT TO SECTION 503(C)(2) OF THE BANKRUPTCY CODE**

18. Section 503(c)(2) of the Bankruptcy Code provides, in pertinent part, that severance payments shall not be made to insiders of a debtor unless "(A) the payment is part of a program that is generally applicable to all full-time employees; and (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made . . . ." 11 U.S.C. § 503(c)(2).

19. The Severance Payments to insiders outlined in the Severance Program meet the standards set forth in section 503(c)(2). As of the Petition Date, the Debtors have approximately 18 full-time employees, and all employees are eligible for participation in the Severance Program. Additionally, each Eligible Employee will receive approximately four weeks' salary (subject to discretionary increases) as a Severance Payment upon termination. As such, the Severance Payments are being offered to all full-time employees, and section 503(c)(2)(A) is satisfied. *See also In re Forum Health*, 427 B.R. 650 (Bankr. N.D. Ohio 2010) (finding that section 503(c)(2) requires that a severance program be applicable to *all* full-time employees). With respect to section 503(c)(2)(B), the amount to be paid to each insider of the Debtors does not exceed ten (10) times the amount of the mean severance offered to any other non-insider employees. The mean severance offered to non-insider employees is approximately $25,000, and no Severance Payment paid to insiders will exceed $250,000. Accordingly, the Severance Payments also satisfy the requirements of section 503(c)(2)(B) and, thus, should be authorized.

## NOTICE

20. Notice of this Motion will be given to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) counsel to the Committee; (c) Alter Domus (US) LLC, in its capacity as administrative agent and collateral agent under the Prepetition Financing Agreement and the DIP Facility; (d) counsel to the DIP Lenders and Prepetition Term Loan Lender; (e) counsel to LiveStyle; (f) the United States Attorney for the District of Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: October 8, 2025
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ S. Alexander Faris*
Edmon L. Morton (No. 3856)
Sean M. Beach (No. 4070)
Kenneth J. Enos (No. 4544)
S. Alexander Faris (No. 6278)
Sarah Gawrysiak (No. 7403)
Evan S. Saruk (No. 7452)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  emorton@ycst.com
          sbeach@ycst.com
          kenos@ycst.com
          afaris@ycst.com
          sgawrysiak@ycst.com
          esaruk@ycst.com

*Counsel to the Debtors and Debtors in Possession*

33627913.5