**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING, INC. *et al.*,[1] | Case No. 25-11446 (MFW) |
| Debtors. | Jointly Administered |
| | Hearing Date: October 22, 2025 at 10:30 a.m.<br>Obj. Deadline: October 15, 2025 at 4:00 p.m. |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF TVT CAPITAL SOURCE LLC, INSTA FUNDING LLC, AND PINNACLE BUSINESS FUNDING LLC TO DEBTORS' MOTION PURSUANT TO SECTIONS 105, 361, 362, 363, 364, 503 AND 507 OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPER PRIORITY POST PETITION FINANCING; (II) GRANTING (A) LIENS AND SUPER PRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (B) ADEQUATE PROTECTION TO CERTAIN PREPETITION LENDERS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

TVT Capital Source, LLC, Insta Funding, LLC, and Pinnacle Business Funding LLC (collectively, the "MCA Funders") by and through their undersigned counsel, hereby file this limited objection and reservation of rights (the "Limited Objection") to the *Debtors' Motion Pursuant to Sections 105, 361, 362, 363, 364, 503 and 506 of the Bankruptcy Code (I) Authorizing the Debtors to Obtain Senior Secured Super Priority Post Petition Financing; (II) Granting (A) Liens and Super Priority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 12] (the "DIP Motion") and respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are AGDP Holding, Inc. (6504); Avant Gardner, LLC (6054); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave., Brooklyn, NY 11237, Attn: General Counsel.

10028344

**LIMITED OBJECTION**

1. Prior to the Petition Date, the MCA Funders provided the Debtors with $11,000,000[2] in much needed capital. At that time, the Debtors' own senior lender, Axar Capital Management, refused to support the Debtors and their operations with additional funding, and instead directed that the Debtors move forward with an arrangement with the MCA Funders.

2. Notwithstanding such support, and that the MCA Funders have only recovered approximately $3,700,000 on account of the $11,000,000 funded, the Debtors filed an adversary proceeding against the MCA Funders (the "Adversary Proceeding")[3] on the Petition Date. The Adversary Proceeding puts numerous factual and legal allegations at issue and seeks certain determinations from this Court, including as related to, *inter alia*, (i) the nature of the financing agreements with the MCA Funders (loans or sales); (ii) whether and to what extent the MCA Funders were perfected in the Debtors' accounts receivables; (iii) whether amounts generated from accounts receivables were ever property of the Debtors' estates (and, relatedly, whether the Debtors have engaged in the unauthorized use of the MCA Funders' property and/or cash collateral); and (iv) whether the MCA Funder Agreements, and amounts collected thereunder, are avoidable as fraudulent conveyances and/or preferential transfers, respectively. On October 13, 2025, the MCA Funders filed their *Answer, Affirmative Defenses, and Counterclaims of TVT Capital Source, LLC, Insta Funding LLC, and Pinnacle Business Funding LLC* [Adversary Proceeding, Docket No. 24] (the "Adversary Answer") in the Adversary Proceeding.

3. To the extent this Court enters a final order on the DIP Motion, such order cannot infringe on the MCA Funders' rights to defend against the allegations in the Adversary Proceeding

---

[2] This amount was collectively funded by the MCA Funders and White Star Funding, Inc d/b/a TVT Cap.
[3] Captioned *AGDP Holding Inc., et al. v. TVT Capital Source LLC, et. al.*, Adv. Pro. No. 25-51803 (MFW).

as well as prosecute their own claims related thereto. Simply put, the Debtors cannot seek to resolve pending issues in the Adversary Proceeding through an order on the DIP Motion. Accordingly, any final order of this Court related to the DIP Motion should be narrowly tailored to ensure all rights of the MCA Funders are preserved, including those related to the funds at issue in the Adversary Proceeding, any grant of liens attaching to proceeds of accounts receivable prior to an adjudication as to whether those funds constitute property of the estate and/or the MCA Funders' cash collateral, and the ability of the MCA Funders to challenge the validity of the prepetition lenders' claims and position through their colorable and direct claims against Axar and/or its affiliates.

4. As described in further detail in the MCA Funders' *Objection to the Debtors' Motion Pursuant to Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order Approving Settlement by and among the Debtors, Axar Capital Management, LP, and the Official Committee of Unsecured Creditors* [ECF No. 309] (the "9019 Objection"), the Debtors, through their Axar-controlled board, voluntarily agreed to certain funding agreements with the MCA Funders whereby the MCA Funders purchased certain receivables of the Debtors until the full amounts owed to the MCA Funders were paid back (the "MCA Funder Agreements").

5. As part of the MCA Funder Agreements, the Debtors' credit card processor was directed to send certain proceeds to a specified MCA Funder lockbox account (the "MCA Lockbox"). To that end, and in conjunction with various MCA Funder Agreements, the Debtors and the MCA Funders executed receivables redirection letters (each such letter constituting a "Receivables Redirection Letter"). *See* Adversary Answer, Counterclaims, at ¶26.

6. Pursuant to such Receivables Redirection Letters, the credit card processor would receive funds on account of food and beverage sales at the Debtors' various venues, and remit the

proceeds (net of the credit card processor's fees) directly to the MCA Lockbox. At all times, the MCA Lockbox was in the possession and control of the MCA Funders. The MCA Funders would then debit amounts owed to them consistent with the specified terms of the MCA Funder Agreements, and would remit any excess amounts to the Debtors. This arrangement, part and parcel of the MCA Funder Agreements, could only be amended or modified by a writing signed by all parties to the MCA Funder Agreement. *See Declaration of Gary Richards in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 13] ("First Day Declaration"), at ¶¶44, 56; *see also* 9019 Objection, at ¶7. The Debtors also admit that a UCC-1 was filed on behalf of one or more of the MCA Funders prepetition, and that the MCA Funders had prejudgment liens that attached to certain Debtor bank accounts. *See* First Day Declaration, at ¶44.

7. The Debtors made the unilateral decision to revoke and rescind the Receivables Redirection Letters that routed all net sales at the Debtors' venues to the MCA Lockbox. This action occurred post-petition and without any Court authorization, and while the Adversary Proceeding was pending. *See* First Day Declaration, at ¶56. Similarly, Axar, the same party that agreed to engage with the MCA Funders and consented to the MCA Funder arrangements, interfered with the MCA Funders' prejudgment liens on certain Debtor accounts.[4] *See id.*, at ¶58.

8. While the DIP Motion states that the Debtors intend to escrow "any" amounts received "due to food and beverage sales pending the outcome of the potential litigation against TVT, Pinnacle, and Insta Funding", the declaration in support of the DIP Motion from Jeffrey Gasbarra (the "Gasbarra Declaration") modifies that proposal, suggesting that only "*certain*" food and beverage sales pending the outcome of the litigation will be segregated. *See* Gasbarra Declaration [ECF No. 15], at ¶17 (emphasis added). No accounting has been provided to the Court

---

[4] It is unclear whether this occurred pre or post-petition.

or to the MCA Funders, so it is unclear what monies have been set aside, if any at all, based on the conflicting statements.[5]

9. The Debtors also claim that they have agreed to segregate and restrict the amount that was in their Bank Accounts when the Insta Funding prejudgment lien attached. *See* Gasbarra Declaration, at ¶15. Similarly, neither this Court nor the MCA Funders have had any visibility with respect to the amounts that the Debtors claim they set aside, as these funds are not reflected in the budget before this Court. At the very least, the Debtors must be required to provide proof that such funds have been escrowed consistent with the statements made to this Court, that such funds have not been used in operations, and that the amounts in the segregated and restricted account align with the amounts in the account as of the date of attachment of the MCA Funders' prejudgment lien.

10. While the Debtors assert that the MCA Funders "are adequately protected by this method of escrowing," the issue of whether the funds allegedly being escrowed are property of the estate in the first instance remains to be adjudicated in the Adversary Proceeding. *See* DIP Motion, at ¶45; *see* Adversary Answer, Counterclaims, at ¶¶35-36. Notwithstanding that a simple escrow and/or segregation of funds does not provide adequate protection to the MCA Funders because it does not provide just compensation for the MCA Funders' inability to use and invest these amounts, the MCA Funders have been informed that the Debtors have on at least one occasion withdrawn funds from the purported escrow to cover post-petition operating expenses, including but not limited to payroll of the Debtors. *See* Adversary Answer, Counterclaims, at ¶72.

11. Finally, the Debtors suggest that the funds in escrow are "subject to the senior liens held by the Prepetition Term Loan Lenders", *see* DIP Motion, at ¶45, but that issue also remains

---

[5] The Debtors' venues (other than the Brooklyn Mirage) have continued to host various artists; *see* https://www.avant-gardner.com/.

10028344

to be determined in the Adversary Proceeding. *See* Adversary Answer, Counterclaims, at ¶¶15, 16.

12. The issues discussed herein will be resolved in the Adversary Proceeding instituted by the Debtors against the MCA Funders. The postpetition liens sought to be established through the DIP Motion as to the funds in dispute with the MCA Funders cannot properly be granted until issue of ownership over the receivables, among other issues, is adjudicated in the Adversary Proceeding.

13. Accordingly, the MCA Funders submit that any final order on the DIP Motion should contain language sufficient to preserve all rights of the MCA Funders that have been raised in the Adversary Proceeding.[6]

14. Due process demands that the MCA Funders have their day in court. Any issues pending in the Adversary Proceeding must be heard there and not mooted by an order related to the DIP Motion. *See In re Mansaray-Ruffin*, 530 F.3d 230, 242 (3d Cir. 2008) ("Before it could be deprived of its property interest in its lien, EMC had the constitutional right to a level of process that was 'appropriate to the nature of the case.' [] As we emphasized above, our determination regarding the process due in any particular case depends on the context . . . [W]here the Rules require an adversary proceeding—which entails a fundamentally different, and heightened, level of procedural protections—to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one.").

---

[6] The MCA Funders note that no version of the proposed final order on the DIP Motion could be located on the Court's docket. Once the MCA Funders have received a draft of the proposed final order, they will propose suggested language sufficient to preserve their rights consistent with this Objection and the pending claims in the Adversary Proceeding.

10028344

## RESERVATION OF RIGHTS

15. The MCA Funders reserve all their respective rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Limited Objection, to seek discovery, and to raise additional objections and introduce evidence during the hearing on the DIP Motion.

## NOTICE

16. Notice of this Limited Objection has been provided to: (i) the U.S. Trustee; (ii) counsel to the Debtors; (iii) counsel to Alter Domus (US) LLC, in its capacity as administrative agent under the Prepetition Financing Agreement and the DIP Facility (as defined in the DIP Motion); (iv) counsel to the DIP Lenders and the Prepetition Term Lenders (as defined in the DIP Motion) and the Stalking Horse Bidder (as defined in the Sale Motion); (v) counsel to LiveStyle; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). In light of the nature of the relief requested herein, the MCA Funders respectfully submit that no further notice is required.

**CONCLUSION**

WHEREFORE, the MCA Funders respectfully request that the Court (i) sustain this Limited Objection, (ii) tailor any relief granted in connection with the DIP Motion to be consistent with the MCA Funders' rights in the Adversary Proceeding and as expressed herein, and (iii) grant the MCA Funders such other or further relief as it deems appropriate, including an accounting as related to the alleged escrowed and restricted accounts.

Dated: October 15, 2025

/s/ Cheryl A. Santaniello
Cheryl A. Santaniello, Esq. (DE Bar No. 5062)
Porzio, Bromberg & Newman, P.C.
300 Delaware Avenue, Suite 1220
Wilmington, Delaware 19801
Telephone: (302) 526-1235
Facsimile: (302) 416-6064
Email: casantaniello@pbnlaw.com

-and-

Rachel A. Parisi, Esq. (*Pro Hac Vice*)
Christopher P. Mazza, Esq. (*Pro Hac Vice*)
Michael F. Medved, Esq. (*Pro Hac Vice*)
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
Telephone: (973) 538-4006
Facsimile: (973) 538-5146
Email: raparisi@pbnlaw.com
Email: cpmazza@pbnlaw.com
Email: mfmedved@pbnlaw.com

*Counsel to TVT Capital Source, LLC, Insta Funding, LLC, and Pinnacle Business Funding LLC*

10028344