**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AGDP HOLDING INC., et al.[1]<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 25-11446 (MFW)<br><br>(Jointly Administered)<br><br>**Re: D.I. 262**<br><br>Hearing Date: October 22, 2025 at 10:30 a.m.<br>Obj. Deadline: October 15, 2025 at 4:00 p.m. |

**WHITE STAR FUNDING INC. D/B/A TVT CAP'S OBJECTION
TO DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363(b)
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR
AN ORDER APPROVING AND AUTHORIZING SETTLEMENT
BY AND AMONG THE DEBTORS, AXAR CAPITAL MANAGEMENT
LP, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

White Star Funding Inc. d/b/a TVT Cap ("TVT Cap"), by and through its undersigned counsel, objects (the "Objection") to the Debtors' Motion Pursuant to Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order Approving Settlement by and among the Debtors, Axar Capital Management, LP, and the Official Committee of Unsecured Creditors [D.I. 262] (the "9019 Motion"). In support of the Objection, TVT Cap states as follows:

**PRELIMINARY STATEMENT**

1.　The 9019 Motion seeks to approve a Settlement Stipulation Regarding the Committee Objection, Trustee Motion, and Certain Other Matters (the "Stipulation"), which incorporates the terms of the Global Settlement Term Sheet that was originally filed on September 18, 2025 [D.I. 206] (the "Settlement"). The Settlement purports to resolve the Official Committee

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

1

of Unsecured Creditors' ("Committee") objection to the Motion for Entry of Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief [D.I. 12] ("DIP Motion").

2. In response to the DIP Motion, the Committee filed a heavily redacted 63-page objection to Debtors' sale process and DIP Motion and a cross-motion to appoint a chapter 11 Trustee [D.I. 150] (the "Committee Objection"). The Committee Objection contained a number of serious allegations against the Debtors and Axar Capital Management LP ("Axar"), the Debtors' prepetition lender and proposed DIP Lender, regarding their prepetition operations and relationship. These allegations include the following:

   a. Axar exercised and continues to exercise outsize control and undue influence over the Debtors' business, effectively making Axar an "insider" (Committee Objection at ¶¶2,3).

   b. Because Axar is an insider, the DIP Motion and sale motion must be subjected to heightened under the "entire fairness" standard. (Committee Objection at ¶16).

   c. The purpose of the chapter 11 strategy is to deliver the Debtors' business, all of its unencumbered assets, and releases to Axar for no consideration to the exclusion of the unsecured creditors. (Committee Objection at ¶3).

   d. The Committee believes there may be actionable claims against Axar for lender liability, recharacterization, and equitable subordination, among other claims,

and seeks to disqualify Axar's credit bid for cause under section 363(k). Committee Objection at n. 40.

e. The Debtors and Axar's scheme is replete with objectionable features designed to chill bidding, strip the estate of assets and circumvent the fundamental protections of the Bankruptcy Code. (Committee Objection at ¶16).

f. The Stalking Horse APA requires the Debtors, on behalf of the estates to grant a broad and unconditional release to Axar and its representatives, extinguishing any and all causes of action the estates may hold against them for any prepetition conduct, lender liability, or avoidance actions. (Committee Objection at ¶53).

g. The integrated DIP Financing and insider sale constitute an impermissible sub rosa plan (Committee Objection at ¶68).

3. Despite all of these allegations, the Committee has seemingly resolved its objections to the DIP Motion and sale in exchange for, among other things, payment of up to $2.5 million for Committee professionals and a cash contribution of $3.3 million (over three years) for unsecured creditors. Despite the laundry list of bad acts by Axar, the Committee will give Axar a release of all estate claims against Axar, including giving Axar certain of the Debtors' estate causes of action, which ostensibly include the same lender liability claims asserted by the Committee in its objection. The Settlement disproportionately benefits Axar and the Committee at the expense of other parties, including TVT Cap. Further, the 9019 Motion provides a complete lack of evidence or any other basis as to how the parties formulated the Settlement.

4. Even if the Stipulation and Settlement could be approved, the terms of the Settlement, specifically, the grant of the releases to Axar constitute an impermissible "sub rosa" plan at the expense of having such release approved as part of a plan confirmation process.

5. The Settlement is rushed, having been filed less than two weeks after the filing of the Committee Objection and based on the deposition of only Jeffrey Gasbarra, the Debtors' designated representative and Andrew Axelrod, Axar's CEO, while failing to take the depositions of other parties who were noticed. Notably, the Committee did not take the deposition of Josh Wyatt, the Debtors' former CEO who oversaw much of the Debtors' prepetition business operations which led to the Debtors' filing. When the Settlement was filed, TVT Cap requested from the Committee copies of documents what were used to formulate the Settlement, including deposition transcripts and were soundly rebuffed.

6. Essentially, based on the Debtors and Committee's conduct since the filing of the Settlement, it appears the Debtors and Axar, with the Committee's consent are seeking to force through the Court a sale to an insider based without any evidence. The Debtors and the Committee are seeking to use the lower evidentiary standard under Bankruptcy Rule 9019 to approve the Settlement, rather than have the Settlement considered in the context of a chapter 11 plan. The 9019 Motion should be denied or, at least, the Settlement must be deferred until the Debtors provide sufficient information for the Court to determine if the Settlement is "fair, reasonable, and in the best interests of the estate" or such Settlement must wait until plan confirmation.

**OBJECTION**

**I.    THE PROPOSED SETTLEMENT MUST BE REJECTED**

7. The 9019 Motion and Settlement should be rejected under the Court's "independent" and "careful" evaluation, because it contains no evidentiary basis as to why the Settlement should be approved, despite the wealth of allegations contained in the Committee

4

Objection. The 9019 Motion does not explain the basis for why the releases should be granted and the reasoning behind the monetary settlement. Additionally, the 9019 Motion's cursory treatment of the Third Circuit's *Martin* factors cannot justify approval of the Settlement, because the "Court must consider the reasonableness of the [settlement] in light of each of the separate claims being resolved or released," these failings, alone and collectively, preclude approval of the Stipulation. *In re Washington Mutual, Inc.*, 442 B.R. 314, 329 (Bankr. D. Del. 2011).

8. Bankruptcy Rule 9019(a) authorizes the court to approve a compromise or settlement after notice and a hearing, but only if the proposed settlement is "fair, reasonable, and in the best interests of the estate." *See In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *see also In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998).

9. The Court has an independent duty to ensure that the settlement meets the requirements of Bankruptcy Rule 9019 and applicable law. The court's role is not to rubber-stamp the debtor's proposed settlement, but to independently "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005), *aff'd*, No. 03-10323 (MFW), 2006 WL 2842462 (D. Del. Oct. 2, 2006). "[T]he unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them," especially where the settlement implicates the rights of creditors or the release of estate claims. *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006).

10. In determining whether a proposed settlement is fair, reasonable, and in the best interests of the estate, courts in the Third Circuit consider the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4)

5

the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). No single factor is dispositive; rather, the court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.*

11. Importantly, to meet their burden under Bankruptcy Rule 9019, the Debtors' must support their motion with evidence and a reasoned explanation of how the settlement satisfies these factors. Courts in the Third Circuit and elsewhere have consistently held that, in order to approve a settlement under Bankruptcy Rule 9019, the debtor must provide information that allows the court to evaluate the merits of the claims being released. *See Key3Media Grp.*, 336 B.R. at 93 ("The Debtors carry a burden of persuasion to provide the court with sufficient information to conclude that the compromise falls within the reasonable range of litigation possibilities."); *In re Spansion, Inc.*, 2009 WL 1531788, at *7 (Bankr. D. Del. June 2, 2009) (rejecting settlement where "the Debtors have provided little information as to the specifics of the Actions to provide a basis for evaluating the strengths and weaknesses of the litigation"). This is because the Court can only determine if a settlement is "fair and equitable" after apprising itself of "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

12. "The Debtors carry a burden of persuasion to provide the court with sufficient information to conclude that the compromise falls within the reasonable range of litigation possibilities" and must persuade the bankruptcy court that the "compromise is fair and equitable and should be approved." *Key3Media*, 336 B.R. at 93. If the debtor fails to analyze the value of the claims being compromised or to address the *Martin* factors with respect to those claims, the settlement cannot be approved. *See Spansion*, 2009 WL 1531788, at *9 (when presented with a

"largely conclusory record," the Court did not find enough evidence to conclude whether proposed settlement was within the 'range of reasonableness'"). The court must have a sufficient record to determine that the settlement is in the best interests of the estate and its stakeholders. *TMT Trailer Ferry*, 390 U.S. at 434 ("It is essential, however, that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law").

13. Finally, because the proposed Settlement involve insiders, it is subject to a higher level of scrutiny. It is well-established that "[t]he business judgment rule is not applicable to transactions among a debtor and an insider of the debtor." *In re LATAM Airlines Grp. S.A.*, 2022 WL 272167, at *14 (Bankr. S.D.N.Y. Jan. 28, 2022). Rather, "courts apply a 'heightened scrutiny' test in assessing the bona fides of a transaction among a debtor and an insider of the debtor," including in the context of a Rule 9019 motion. *Id.* (internal citation omitted).

14. Thus, when evaluating the reasonableness of the Settlement, the Court must carefully examine the terms to ensure that the Settlement is in the best interest of the estate rather than the Debtors' insiders. Applying these standards here, the Settlement should be rejected.

15. TVT Cap sought to do its own initial investigation into the reasonableness of the Settlement. When the Settlement was first filed, counsel to TVT Cap reached out to counsel to the Committee for the documents and deposition transcripts that were used to determine the terms of the Settlement. Counsel to the Committee declined to provide any documents to TVT Cap. Because of the Committee's lack of transparency, which is further evidenced by the lack of evidence included in the 9019 Motion, TVT Cap was compelled to file its own motion for an examination of the Committee under Bankruptcy Rule 2004. Unfortunately, the 2004 Motion is

not scheduled to be heard until November 6, 2025.  At a minimum, the hearing on the 9019 Motion should be adjourned so that 2004 Motion can be heard by the Court and TVT Cap should be given the opportunity to conduct its own investigation of the Settlement.

16. The Debtors appear to have taken the same approach as the Committee as the Debtors have put forth zero evidence as to why the Settlement should be approved.  The 9019 Motion contains generic statements that the Settlement was the result of "good-faith arms'-length negotiations" creating the "only means through which the Debtors' estates could "(i) obtain approval of, and consummate the Sale without Committee opposition, (ii) avoid ongoing, time consuming, and expensive litigation with the Committee, (iii) conclude these chapter 11 cases with a fully funded wind down and chapter 11 plan process, and (iv) maximize the potential recovery to general unsecured creditors."  9019 Motion at ¶19.  Further, the Debtors' analysis of the Martin factors is merely a recitation of the Martin factors, rather than providing actual evidence or support for the Settlement.

17. There is no evidence as to why given Axar's many bad acts, why Axar would be entitled to any release of claims by the Debtors.  Additionally, there is no evidence as to why such a release is worth $3.3 million and why the Committee would be entitled to payment of fees up to $2.5 million.  Put simply, there is no evidentiary basis to support such a settlement.  The 9019 Motion essentially asks the parties to take their word for it.  TVT Cap understands that under Bankruptcy Rule 9019, a settlement only needs to be reasonable, however, the Debtors cannot even satisfy this low threshold.  Given that the Debtors cannot even prove that the Settlement is reasonable, the fact that Axar — an insider as asserted by the Committee — is a party to the Settlement, it cannot satisfy the higher level of scrutiny required for settlements with an insider.

18. In short, the Debtors have failed to carry their burden of demonstrating that the

8

Settlement is fair, reasonable, and in the best interests of the Debtors' estates. The 9019 Motion lacks any meaningful analysis of the merits of the claims being settled, the likelihood of success in litigation, or the true interests of creditors. Therefore, the Court should not approve the Settlement on the basis of generic recitations made in the 9019 Motion.

## II.     THE SETTLEMENT PRESENTS A SUB ROSA PLAN

19. The Committee Objection clearly states the Committee's belief that DIP Motion and proposed sale between the Debtors and Axar constituted a "sub rosa" plan. The Settlement does not change anything. The terms of the Stalking Horse APA remain unchanged and instead of a "non-consensual" release," Axar is now purchasing the release. Additionally, the Settlement proposes to turn over certain estate causes of action to Axar, which include potential lender liability claims. As stated herein, the Debtors have provided zero reasoning as to why such releases or the transfer for estate causes of action should be granted.

20. Significantly, the release will become effective upon "the earlier of (a) the effective date of a plan of liquidation, and (b) the entry of an order approving the Settlement pursuant to which Purchaser agrees to deliver to the Debtors the consideration contemplated by the APA, the Settlement and liquidating plan. While the settlement contemplates a plan, a plan is yet to be filed. Additionally, it is unclear if Axar will be the ultimate purchaser and whether Axar can and will fulfill its obligations under the Settlement, including the payments to the GUC Trust which are to be made over the next three years. However, the Settlement provides that potentially Axar could be entitled to a release as early as October 22, 2025, well in advance of any the payments being funded and any plan being confirmed.

21. The granting of such a release at such an early stage bears the hallmarks of a *sub rosa* plan, rather than a true Rule 9019 settlement. This Court has recognized that "[a] settlement

9

agreement proposed outside of the plan confirmation process which has the practical effect of dictating the terms of a prospective Chapter 11 plan constitutes an improper *sub rosa* plan and may not be approved." *In re Nortel Networks, Inc.*, 522 B.R. 491, 508 (Bankr. D. Del. 2014); *see also In re On-Site Sourcing, Inc.*, 412 B.R. 817, 826 (Bankr. E.D. Va. 2009) (transaction was *sub rosa* plan where it contained a provision that "effectively predetermine[d], in significant part, the structure of an as yet to be drafted plan of reorganization and effectively evade[d] the 'carefully crafted scheme' of the chapter 11 plan confirmation process").

22. While the Settlement Term Sheet seems to resolve issues of funding that were raised in the Committee Objection, this still results in ultimately a sale to Axar under the guise of a sub rosa plan. As explained herein, there is no attempt by any party to justify the amounts set forth in the term sheet and whether such amounts are feasible or reasonable. Accordingly, such an investigation should be required as part of a plan process, not under the guise of a settlement under Bankruptcy Rule 9019. Should the Court approve these insider releases, TVT Cap would request any release granted to Axar would not include TVT Cap as TVT Cap does not consent to any such release. Additionally, as the Court is well-aware, the Debtors have commenced an adversary proceeding (Adv. Proc. No. 25-51803) against TVT Cap to among other things, avoid certain transfers made to TVT Cap. Until the adversary proceeding is fully adjudicated, TVT Cap may have potential claims to assert against the Debtors and such claims should not be released by the Settlement.

## **JOINDER.**

23. In addition to the arguments set forth herein, TVT Cap also joins and incorporates herein by reference the arguments and authority set forth in TVT Capital Source, LLC, Insta Funding, LLC, and Pinnacle Business Funding LLC objection to the 9019 Motion that were not

10

raised in this Motion.

## **NOTICE**

24. Notice of this Objection has been provided to: (i) the U.S. Trustee; (ii) counsel to the Debtors; (iii) counsel to the Committee; (iv) counsel to Axar; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). In light of the nature of the relief requested herein, TVT Cap respectfully submits that no further notice is required.

WHEREFORE, TVT Cap respectfully requests that the Court (i) grant this Objection, (ii) deny the relief requested in the 9019 Motion, and (iii) grant the TVT Cap such other or further relief as it deems appropriate.

Dated: October 15, 2025

*/s/ Gregory W. Hauswirth*
Gregory W. Hauswirth (DE Bar No. 5679)
CAROTHERS & HAUSWIRTH LLP
1007 N. Orange Street, 4th Floor
Wilmington, DE 19801
Telephone: (302) 332-7181
Email: ghauswirth@ch-legal.com

-and-

Steven B. Eichel (pro hac vice pending)
LEECH TISHMAN
ROBINSON BROG, PLLC
One Dag Hammarskjöld Plaza
885 Second Avenue, 3rd Floor
New York, NY 10022
Telephone: (212) 603-6300
Email: seichel@leechtishman.com

*Counsel for White Star Funding, Inc.*

11