**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AGDP HOLDING INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 25-11446 (MFW)<br><br>(Jointly Administered)<br><br>Hearing Date:  November 6, 2025 at 2:00 p.m. (ET)<br>Objection Deadline: October 30, 2025 at 4:00 p.m. (ET) |

**MOTION OF WHITE STAR FUNDING INC. D/B/A TVT CAP FOR
ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004
AND LOCAL RULE 2004-1 DIRECTING THE PRODUCTION OF DOCUMENTS**

White Star Funding Inc. d/b/a TVT Cap ("**TVT Cap**") hereby submits this motion (the "**Motion**") pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§101 et seq. (the "**Bankruptcy Code**"), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") for entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing discovery in the form of production of materials responsive to the requests set forth in **Exhibit B** (the "**Requests**"), including through the issuance of a subpoena to the official committee of unsecured creditors (the "**Committee**") in the above-captioned bankruptcy case. In support of the Motion, TVT Cap respectfully states as follows:

**Jurisdiction and Venue**

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§157 and 1334

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431).  The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

1

and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding and the Motion is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2. The statutory bases for the relief sought herein are section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2004 and Local Rule 2004-1.

## BACKGROUND

3. On August 4, 2025 (the "**Petition Date**"), each of the debtors and debtors in possession (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On August 18, 2025, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors [D.I. 73].

5. On the Petition Date, the Debtors filed their Motion for Entry of Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief [D.I. 12] (the "**DIP Motion**"). The DIP Motion has subsequently been approved on an interim basis. [D.I. 46, 128, 176].

6. On or about September 7, 2025, the Committee filed the Omnibus Objection of the Official Committee of Unsecured Creditors to the Debtors (I) DIP Motion and (II) Sale Motion

(the "Objection") and Cross-Motion of the Official Committee of Unsecured Creditors for an Order Appointing a Chapter 11 Trustee [D.I. 150] (the "**DIP Objection**)").

7. The DIP Objection asserted numerous objections as to why the DIP Motion and Sale Motion should not be approved and why a trustee should be appointed. Those objections include, but are not limited to, the following:

    a  Axar Capital Management LP (the **"DIP Lender"**) exercised and continue to exercise outsize control and undue influence over the Debtors' business, which control requires the Court to scrutinize the proposed process under a heightened standard, and that the evidence will show that the proposed transactions are entirely unfair and that the case is foreclosure masquerading as a chapter 11 sale. (DIP Objection at ¶¶2,3). The DIP Motion and sale motion must be subjected to heightened under the entire fairness standard. (DIP Objection at ¶16).

    b  The purpose of the chapter 11 strategy is to deliver the Debtors' business, all of its unencumbered assets, and releases to DIP Lender for no consideration to the exclusion of the unsecured creditors. (DIP Objection at ¶3).

    c  The Debtors' and DIP Lender's scheme is replete with objectionable features (set forth in detail in paragraph 16 of the DIP Objection) designed to chill bidding, strip the estate of assets and circumvent the fundamental protections of the Bankrutpcy Code. (DIP Objection at ¶16).

    d  The Stalking Horse APA requires the Debtors, on behalf of the estates to grant a broad and unconditional release to the DIP Lender and its representatives, extinguishing any and all causes of action the estates may hold

against them for any prepetition conduct, lender liability, or avoidance actions. (citing paragraph 9.2 of Stalking Horse APA) (DIP Objection at ¶53).

 e The Debtors' sale process is deeply flawed and appears engineered to chill bidding, portrays an unrealistically gloomy image of the Debtors' true value and ensures the assets are delivered to the insider stalking horse bidder for a fraction of their value. (DIP Objection at ¶56).[1] The Court should not sanction a process structured to give the estates' crown jewels to their insider lender at a bargain price. (DIP Objection at ¶59).

 f The integrated DIP Financing and insider sale constitute an impermissible sub rosa plan (DIP Objection at ¶68).

 g The sale process was not extensive or robust. Even if there was a fair process, the Debtor cannot show that the terms of the proposed DIP Financing are entirely fair. (DIP Objection at ¶75).

 h There are no grounds for a roll up of allowable prepetition secured claims under the facts of this case. (DIP Objection at ¶78).

 i The proposed DIP financing seeks to expand the DIP lender's collateral package with liens on the proceeds of avoidance actions and other unencumbered assets. Avoidance actions are distinct creatures of bankruptcy law designed to benefit, and ensure equality of distribution among, general unsecured creditors. (DIP Objection at ¶80) At a minimum, any final DIP order should at least exclude estate claims against DIP Lender (which DIP Lender and

---

[2] It appears that the Committee's support for these allegations rely on the Joshua Nahas Declaration, the substance of which is redacted, and the declaration is under seal.

4

Debtors have agreed will be released under the Stalking Horse APA) and the proceeds thereof. (DIP Objection at ¶82).

j   DIP Term Note includes several events of default, including any suit to subordinate any claim or lien of the DIP Lender (citing DIP TERM NOTE section 16(p)) (DIP Objection at ¶87).

k   Cause exists to deny DIP Lender's right to credit bid due to its inequitable conduct. (DIP Objection at ¶90-93).

l   The prepetition loan was intended to be an investment rather than a loan (DIP Objection at ¶97).[3] To the extent the DIP Lender's claim is not recharacterized as equity, it should be subordinated to other general unsecured creditors. (DIP Objection at ¶105).

8.  Since the filing of the DIP Objection, counsel for the Debtors, the Committee and DIP Lender (together, the Parties) entered into settlement negotiations and a proposed global settlement with respect to the DIP Motion and Committee's DIP Objection. On September 18, 2025, the Debtors filed the Notice of Filing of Global Settlement Term Sheet [D.I. 206] ("**Term Sheet**"), which provides that the Term Sheet remains subject to documentation and approval by the Court. Subsequently, on October 1, 2025, a motion to approve the settlement was filed, which attached a settlement term sheet ("**Settlement Term Sheet**")

9.  It is TVT Cap's understanding that (i) certain documents were provided by the Debtors and DIP Lender, (ii) depositions were taken, and (iii) these documents and depositions

---

[3]Some of the evidence has been redacted in the DIP Objection.

were used by the Committee to negotiate the ultimate Term Sheet that provides the basis for the proposed settlement. All of this was done in secrecy, without the creditors being able to view the evidence that formed the basis of the settlement, and thus hindering their ability to determine whether the proposed settlement is fair and reasonable. Since the Term Sheet was filed, counsel to TVT Cap has reached out to counsel to the Debtors and counsel to the Committee to obtain copies of the documents produced and transcripts of the depositions in order to evaluate the proposed settlement. TVT Cap requested such information so that it could conduct its own investigation as to the reasonableness of the proposed settlement as set forth in the Settlement Term Sheet. Counsel to TVT Cap's requests were denied by counsel to both the Debtors and the Committee. Subsequently, as set forth below, counsel for TVT Cap also met and conferred with counsel for the Committee before the filing of this Motion.

**RELIEF REQUESTED**

10.  Pursuant to Bankruptcy Code section 105(a), Bankruptcy Rule 2004 and Local Rule 2004-1, TVT Cap requests that the Court enter an order authorizing TVT Cap to issue a subpoena to the Committees for the production of documents, communications, deposition transcripts, and electronically stored information or tangible things responsive to the Requests.

**BASIS FOR RELIEF**

11.  Under Bankruptcy Code section 105(a), the Court maintains broad equitable powers to fashion an order or decree in aid of the enhancement of the value of the Debtors' estates for the benefit of all stakeholders. 11 U.S.C. §105(a). Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). An examination under Bankruptcy Rule 2004 may be made of any entity with knowledge of "the acts, conduct, or property or to the liabilities and financial condition of the

debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge . . . and any other matter relevant to the case or to the formulation of a plan." *See* Fed. R. Bankr. P. 2004(b); *In re Wash. Mut., Inc.*, 408 B.R. 45, 49-50 (Bankr. D. Del. 2009).

12. "The clear intent of Rule 2004 . . . is to give the parties in interest an opportunity to examine individuals having knowledge of the financial affairs of the debtor in order to preserve the rights of creditors." *In re GHR Cos., Inc.*, 41 B.R. 655, 660 (Bankr. D. Mass. 1984); see *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 278 (3d Cir. 2013) ("A Rule 2004 examination may be used to cover a wide range of subjects relating to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate[.]") (internal quotations omitted). "Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Wash. Mut., Inc.*, 408 B.R. at 50 (Bankr. D. Del. 2009) (internal quotation marks omitted). Generally, the scope of a Rule 2004 examination is "unfettered and broad" and "commonly recognized in the nature of a 'fishing expedition.'" *Id*. at 49-50 (internal quotation marks and citations omitted); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a fishing expedition and an inquisition.") (citations and internal quotation marks omitted); *In re East West Resort Development V, L.P., L.L.L.P.*, 2014 WL 4537500, at *7 (Bankr. D. Del. Sept. 12, 2014) ("Rule 2004 examinations are often used to discover assets, and courts have recognized that the scope of a 2004 examination is 'unfettered and broad', and the examination is in the nature of a 'fishing expedition.'"). Notably, discovery under Bankruptcy Rule 2004 is "broader than discovery under the Federal Rules of Civil Procedure and has fewer procedural safeguards." *In re Drexel*

*Burnham Lambert Grp.*, Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991); *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("[T]he scope of examination allowed under Bankruptcy Rule 2004 is broader than discovery allowed under the Federal Rules of Civil Procedure and may be in the nature of a fishing expedition.") (internal quotation marks omitted)**.**

13. As (i) the Objection is redacted, (ii) the declarations relied upon in the DIP Objection are under seal [D.I. 151,152], (iii) depositions are under seal or subject to a confidentiality agreement, and (iv) the valuation performed by Committee professionals is redacted and not provided, creditors cannot evaluate the proposed settlement as was done behind closed doors without any transparency. The creditors have no ability to determine whether the settlement is fair and reasonable and in the best interest of the estates and their creditors. For instance, given all the objections by the Committee, it appears that the Committee professionals received a budget of $2.5 million (more than they requested in the DIP Objection) (DIP Objection at ¶85) with any unused portion to go to the GUC Trust. This amount is extremely high, given the size of the distribution to general unsecured creditors. The proposed Settlement Term Sheet provides that the GUC Trust Cash Contribution is as follows:

> "Purchaser shall provide to the Debtors (for the transfer to the GUC Trust upon confirmation of a liquidating plan (a) $1.05 million in cash on closing of sale, and (b) an additional $750,000 on each anniversary of the closing of the sale, beginning on the first anniversary of the closing and ending on the third anniversary of such sale (for aggregate additional payments of $3.3 million).
>
> To the extent that a Monetization Event (defined herein) occurs prior to the third anniversary of the closing of the sale under the APA, then any remaining GUC Trust Cash Contribution amounts shall be paid at or prior to the closing of such Monetization Event (and such amount shall be in addition to consideration the GUC Trust is entitled to receive pursuant to the CVR)."

14. The proposed Settlement Term Sheet also provides the GUC Trust with a contingent value right ("CVR") which will obligate the Purchaser, Axar and its affiliates to pay the CVR

holder 15% of all proceeds from any Monetization Event (as defined in the proposed Settlement Term Sheet ) in excess of the Threshold Amount (as defined in the proposed Settlement Term Sheet). Thus, under the proposed Settlement Term Sheet, the creditors may have to wait years to receive full payment.

15. Notwithstanding the arguments in the DIP Objection as to the DIP Lender taking avoidance actions, the proposed settlement allocates the causes of action between the GUC Trust and the Purchaser (which is Axar Capital Management LP).

16. With the evidence unavailable for public viewing, the question is why is this a good settlement for the creditors. TVT Cap is seeking (i) those documents that were produced to the Committee by the Debtors and/or the DIP Lender, (ii) deposition transcripts and exhibits used in the depositions, (iii) communications related to the settlement, (iv) declarations filed under seal with the accompanying exhibits, (v) valuations of the Debtor, (vi) those documents related to the Term Sheet and proposed settlement, and (vii) copies of non-disclosure agreements and/or protective orders that were entered into by the Committee.  Without such documentation, TVT Cap has no basis to determine if the proposed Settlement Term Sheet and proposed settlement is reasonable and whether the Committee acted in the best interests on behalf of all creditors. While a 2004 examination is intended to be broad in scope, TVT Cap submits its Requests are narrowly tailored for purposes of reviewing analyzing the Settlement Term Sheet and proposed settlement. To the extent necessary, TVT Cap is willing to enter into a confidentiality agreement.

17. Accordingly, pursuant to Bankruptcy Code section 105(a), Bankruptcy Rule 2004 and Local Rule 2004-1, TVT Cap requests entry of an order, substantially in the form attached as **Exhibit A** hereto, authorizing TVT Cap to issue a subpoena to the Committee for the production of documents, deposition transcripts, electronically stored information or tangible things,

including those responsive to the Requests set forth in **Exhibit B**.

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1**

18. Counsel to TVT Cap met and conferred with counsel to the Committee for the voluntary production of documents responsive to the requests, however, counsel to the Committee declined to produce any documents. The Committee's position is that the documents requested are in the possession of the Debtors or DIP Lender or are otherwise protected by confidentiality provisions that preclude them from producing the documents. Based on the meet and confer, TVT Cap submits that it believes that the Committee will not produce any documents without a court order authorizing the issuance of a formal subpoena.

## **RESERVATION OF RIGHTS**

19. TVT Cap reserves the right to seek further discovery pursuant to Bankruptcy Rule 2004 or otherwise, as appropriate.

## **NOTICE**

20. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Debtors, and (c) counsel to the Committee; (d) counsel to DIP Lender; and (e) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. TVT Cap submits that, in light of the nature of the relief requested, no other or further notice need be provided.

## **NO PRIOR REQUEST**

21. No prior motion for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the TVT Cap requests that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: October 15, 2025

                                              Respectfully submitted,

                                              CAROTHERS &
                                              HAUSWIRTH LLP

                                              By: <u>/s/ Gregory W. Hauswirth</u>
                                              Gregory W. Hauswirth (Bar No. 5679)
                                              1007 N. Orange Street, 4th Floor
                                              Wilmington, DE 19801
                                              Telephone:  302.332.7181
                                              Facsimile:  412.910.7510
                                              ghauswirth@ch-legal.com

                                                        -and-

                                              Steven B. Eichel (pro hac vice forthcoming)
                                              LEECH TISHMAN
                                              ROBINSON BROG, PLLC
                                              One Dag Hammarskjöld Plaza
                                              885 Second Avenue, 3rd Floor
                                              New York, NY 10022
                                              Telephone: (212) 603-6300
                                              Email: seichel@leechtishman.com

                                              *Counsel for White Star Funding Inc. d/b/a TVT Cap*