IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (MFW) |
| Debtors. | (Jointly Administered) |

**AFFIDAVIT OF PUBLICATION OF THE NOTICE OF ESTABLISHMENT OF BAR DATES FOR FILING PROOFS OF CLAIMS, INCLUDING SECTION 503(B)(9) CLAIMS IN THE NEW YORK TIMES**

  This Affidavit of Publication includes the sworn statement verifying that the Notice of Establishment of Bar Dates for Filing Proofs of Claims, Including Section 503(b)(9) Claims was published and incorporated by reference herein as follows:

1. In *The New York Times* on October 4, 2025, attached hereto as **Exhibit A**.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

# Exhibit A



**The New York Times Company**

620 8th Avenue
New York, NY 10018
nytimes.com

## PROOF OF PUBLICATION

October 7, 2025

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

10/4/2025, NY/NATL, pg B3



*Larnyce Tabron*



**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

In re: AGDP HOLDING INC., et al., Debtors.

Chapter 11
Case No. 25-11446 (MFW)
(Jointly Administered)
Ref: Docket Nos. 89 & 131

**NOTICE OF ESTABLISHMENT OF BAR DATES FOR FILING PROOFS OF CLAIMS, INCLUDING SECTION 503(b)(9) CLAIMS**

**(THE GENERAL BAR DATE IS OCTOBER 31, 2025 AT 5:00 P.M. (PREVAILING EASTERN TIME))**

PLEASE TAKE NOTICE OF THE FOLLOWING:

On August 4, 2025 (the "Petition Date"), the above-captioned debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). On September 2, 2025, the Court entered an order [D.I. 131] (the "Bar Date Order")[1] establishing certain deadlines for the filing of proofs of claim in these chapter 11 cases of the following debtors and debtors in possession (together, the "Debtors"): **Debtor, Case No. EIN. (Last 4 Digits):** Made Event LLC, 25-11442, 6272; Avant Gardner, LLC, 25-11443, 6504; EZ Festivals LLC, 25-11444, 8854; AG Management Pool LLC, 25-11445, 9962; AGDP Holding Inc., 25-11446, 6504; Reynard Productions, LLC, 25-11447, 5431.

Pursuant to the Bar Date Order, each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, and trust) that holds or seeks to assert a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date (including, without limitation, claims entitled to administrative priority status under section 503(b)(9) of the Bankruptcy Code), no matter how remote or contingent such right to payment or equitable remedy may be, **MUST FILE A PROOF OF CLAIM** on or before 5:00 p.m. (prevailing Eastern Time), on October 31, 2025 (the "General Bar Date"), by sending an original proof of claim form to Kurtzman Carson Consultants, LLC dba Verita Global ("Verita"), or by completing the online proof of claim form available at www.veritaglobal.net/agdp, so that it is **actually received** on or before the General Bar Date; provided that, solely with respect to governmental units (as defined in section 101(27) of the Bankruptcy Code), the deadline for such governmental units to file a proof of claim against the Debtors is February 2, 2026 at 5:00 p.m. (prevailing Eastern Time) (the "Governmental Bar Date").

All entities holding claims against the Debtors arising from the rejection of executory contracts and unexpired leases of the Debtors are required to file proofs of claim by the later of (a) the General Bar Date or the Governmental Bar Date, as applicable, and (b) 5:00 p.m. prevailing Eastern Time, on the date that is thirty (30) days following entry of an order approving the rejection of any executory contract or unexpired lease of the Debtors (the "Rejection Damages Bar Date").

All entities asserting claims against the Debtors that are affected by an amendment or supplement to the Schedules are required to file a proof of claim or amend any previously filed proof of claim in respect of the amended scheduled claim by the later of (a) the General Bar Date or the Governmental Bar Date, as applicable, and (b) 5:00 p.m. prevailing Eastern Time, on the date that is thirty (30) days from the date on which the Debtors mail notice of the amendment to the Schedules (or another time period as may be fixed by the Court) (the "Amended Schedules Bar Date").

Proofs of claim must be sent by U.S. first class mail to AGDP Claims Processing Center c/o KCC dba Verita, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245, if submitted by overnight mail or hand delivery system, to AGDP Claims Processing Center c/o KCC dba Verita, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245 or completed electronically through Verita's website, www.veritaglobal.net/agdp. Proofs of claim sent by facsimile, telecopy, or electronic mail will **not** be accepted and will **not** be considered properly or timely filed for any purpose in these chapter 11 cases.

ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM IN THESE CHAPTER 11 CASES WITH RESPECT TO A PARTICULAR CLAIM AGAINST THE DEBTORS, BUT THAT FAILS TO DO SO PROPERLY BY THE APPLICABLE BAR DATE, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR PURPOSES OF VOTING AND DISTRIBUTION.

A copy of the Bar Date Order and proof of claim form may be obtained by contacting the Debtors' Claims Agent, in writing, at AGDP Claims Processing Center c/o KCC dba Verita, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245, or online at www.veritaglobal.net/agdp. The Bar Date Order can also be viewed on the Court's website at www.deb.uscourts.gov. If you have questions concerning the filing or processing of claims, you may contact the Debtors' claims agent, Verita, at www.veritaglobal.net/agdp.

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**, Edmon L. Morton (No. 3856), Sean M. Beach (No. 4070), Kenneth J. Enos (No. 4544), S. Alexander Faris (No. 6778), Sarah Gawrysiak (No. 7403), Evan S. Saruk (No. 7452), 1000 North King Street, Rodney Square, Wilmington, Delaware 19801, Telephone: (302) 571-6600, Facsimile: (302) 571-1253, Email: emorton@ycst.com, sbeach@ycst.com, kenos@ycst.com, afaris@ycst.com, sgawrysiak@ycst.com, esaruk@ycst.com, *Counsel to the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bar Date Order.

LITIGATION | MEDIA

# Groups File Suit Over Trump's $100,000 Visa Fee for Foreign Workers

**By MADELEINE NGO and HAMED ALEAZIZ**

WASHINGTON — A group of unions, higher education professionals, religious organizations and others sued the Trump administration on Friday over its decision to charge a $100,000 fee for visas granted to skilled foreign workers.

The suit, which appears to be the first major challenge to the new fee for H-1B visas, argued that the change was unlawful because the president had no authority to unilaterally impose taxes or other requirements to generate revenue through the program, a power that is granted to Congress.

The plaintiffs also said the administration did not go through the required regulatory process to institute the fee, which they called "arbitrary and capricious." And they asserted that the federal government failed to consider how the steep fee would harm hospitals, churches, schools, small businesses and nonprofits across the country.

The suit, which was filed in the Northern District of California, comes after President Trump signed a proclamation last month imposing a $100,000 fee for each new H-1B visa. The change set off immediate confusion and chaos, with many companies urging workers outside the United States to return before the change went into effect. The White House later clarified that the fee applied only to new visas, and that existing visa holders would not be affected.

The Trump administration has argued that the visa program has historically hurt domestic workers, and federal officials say the new fee will help discourage companies from using H-1B visas to bring in foreign workers to replace Americans. Some policy experts and immigration hard-liners have applauded the change, which they say will make companies prioritize which foreign workers they want to hire.

But tech start-ups, higher education leaders and school districts have criticized the new fee, which they say will hurt their ability to fill critical roles and stay competitive. Health care associations have also said the fee would exacerbate physician shortages and worsen patient care.

The plaintiff group was represented by several immigration lawyers and advocacy groups, including the Justice Action Center, Democracy Forward and the South Asian American Justice Collaborative.

The Department of Homeland Security, which was named as a defendant along with Mr. Trump, referred questions to the White House. The White House did not respond to a request for comment on Friday (an automatic reply noted that there were staffing shortages during the government shutdown).

The suit also argued that the president's ability to restrict entry under the Immigration and Nationality Act did not allow Mr. Trump to impose the fee. Under the law, the president can suspend the entry of migrants if that would be "detrimental" to the interests of the United States. But the groups argued that the power was meant to "regulate and influence conduct abroad," and that the proclamation "makes clear that it is concerned with domestic policy."

It also contends that the change would harm the plaintiffs and the broader public.

The plaintiffs include the American Association of University Professors and U.A.W. International, a union that represents thousands of workers, including in higher education. They also include Global Nurse Force, a business that is primarily based in California and helps hospitals fill vacancies for nurses, and Global Village Academy Collaborative, which provides services to its

---

*U.S. institutions would be harmed, plaintiffs say.*

---

member charter schools in Colorado.

Nonprofit religious organizations that depend on H-1B visas to hire foreign workers with specialized language skills also brought the suit, including the Society of the Divine Word's Chicago Province.

Global Nurse Force's business model for its U.S. operations, for instance, depends on the H-1B visa program and the ability of health care facilities to afford the visa fees. The company places thousands of nurses at hospitals around the world, including in states like Washington, Ohio, Louisiana and California.

Most of the firm's clients cannot afford to pay the new fee for each nurse, meaning the impacts have been immediate for the company, the suit says. If the fee remains in effect, the company will have to close its U.S.-based operations, which would result in the loss of millions of dollars in revenue, according to the suit.

"Without access to international nurses, their clients will be forced to reduce capacity in I.C.U.s, emergency rooms and surgical units," the suit says. "Wait times will increase and patient outcomes will worsen."

The fee would also hurt K-12 school systems, resulting in the risk that districts lose "valuable teachers in both urban areas suffering from staffing shortages and in rural districts where teachers are difficult to recruit," according to the suit.

And the groups contend that researchers and academics would be hurt by the policy change. Some workers have received offers from universities that have now placed the processing of their H-1B visas on hold indefinitely because of the new fee, the suit says.

Karen Tumlin, the founder and director of the Justice Action Center, underscored that the H-1B visa program was not used just by tech companies, but also by many other industries that rely on foreign workers.

"This is how we get French speakers for our high schools and nurses in areas of chronic shortages," Ms. Tumlin said.

Some groups have applauded Mr. Trump's reforms to the H-1B visa program, including the Center for Immigration Studies, a think tank that favors restricting immigration.

"For too long, loopholes in the H-1B program have allowed corporations to undercut American workers and depress wages under the guise of a labor shortage," Elizabeth Jacobs, the center's director of regulatory affairs and policy, said in a statement last month. "By imposing this new fee, the Trump administration is signaling that U.S. workers must come first, but meaningful legislative reform is still urgently needed."

---

# Two Families Sue Tesla, Saying Design of Doors On Pickup Led to Deaths

FROM FIRST BUSINESS PAGE

sign in Georgia, and Mr. Nelson, a student at the University of Colorado, Boulder, were riding in the rear seat of a Cybertruck driven by Soren Dixon that smashed into a tree at high speed in Piedmont, Calif., a San Francisco Bay Area suburb. Mr. Dixon, 19, also died in the crash.

The suits claim that Ms. Tsukahara's and Mr. Nelson's injuries from the crash were minor but that they died of burns and smoke inhalation after the Cybertruck's



VIA THE TSUKAHARA FAMILY
Two suits claim Krysta Tsukahara, 19, and Jack Nelson, 20, were unable to escape the burning Cybertruck.

battery caught fire. They were unable to escape because the manual door releases were too difficult to find, the suits say.

Ms. Tsukahara "suffered unimaginable pain and emotional distress" because she could not escape the fire, which ultimately led to her death, according to the suit filed by her parents, Carl and Noelle Tsukahara.

If it had not been so difficult to escape the burning Cybertruck, "she'd be alive today," Mr. Tsukahara said in an interview at the family's home in Piedmont.

To open the Cybertruck's rear doors, the passenger must lift a rubber mat on the bottom of the door's storage pocket, then pull a cable underneath.

"Rear passengers like Jack were left with only a concealed mechanical release that was obscure, nonintuitive and highly unlikely to be located or operated in the smoke and chaos of a post-crash fire," according to the lawsuit filed on behalf of Mr. Nelson's parents, Todd and Stannye Nelson.

The New York Times confirmed the filing of the lawsuit brought by the Nelsons on Friday.

A friend who was following in another vehicle saved a fourth passenger who was in the front seat by smashing the Cybertruck's window with a branch.

The suits threaten another blow to Tesla's reputation after a Florida jury decided in August that the company should pay $243 million in damages for a crash involving its driver assistance system. The jury found that the company's software had contributed to an accident in 2019 that killed one person and severely injured another.

Tesla did not respond to requests for comment this week and did not respond to a request for comment after the suits were filed.

In the Piedmont case, Tesla may seek to place blame for the crash on Mr. Dixon, the driver of the Cybertruck. He was drunk and had consumed cocaine and amphetamines that night, according to a coroner's report. The company may also argue that the doors might not have opened because of damage to the Cybertruck's body, rather than flaws in the company's design.

Electric vehicles are far less likely to catch fire than cars that run on gasoline. But when the batteries do ignite, they burn intensely, and the flames can quickly envelop cars, requiring quick escapes or rescues.

Tesla is working on new designs that will make it easier to open doors if a vehicle loses power, Franz von Holzhausen, Tesla's chief designer, said in September on Bloomberg's "Hot Pursuit" podcast.

"That's something we are working on, and it's in the car soon," Mr. von Holzhausen said on the podcast.

The lawsuits filed this week claim that deadly flaws in the design of the door latches have been obvious for years, yet Tesla failed to make improvements even in the Cybertruck, its newest vehicle.

"For more than a decade before the crash," the Tsukaharas' suit says, "Tesla had repeated and direct notice that its reliance on electronic door systems created a serious risk of entrapment. Owners, bystanders, and first responders documented instances where Tesla occupants survived crash forces but could not escape when electrical power failed and fire ensued."

"It's just absolutely unforgivable. You know people have died and you continue to do it," said Andrew McDevitt, a San Francisco lawyer who is representing the Nelsons.



KARSTEN MORAN FOR THE NEW YORK TIMES
Tesla pioneered the use of doors that open or shut by pushing a button. The doors' latches rely on a 12-volt battery.

Last year, Tesla settled a lawsuit brought by the family of Kevin McCarthy, the chief executive of a software firm in Indiana, who died after a Tesla Model S driven by one of his employees struck a tree and caught fire.

The driver died on impact in that crash, which was in 2016 in Indianapolis. But witnesses reported seeing Mr. McCarthy struggling to get out of the front passenger side of the car before it was engulfed in flames.

"Ours is not an isolated case," said Mr. Tsukahara, who is represented by Roger Dreyer of the Sacramento firm of Dreyer Babich Buccola Wood Campora. "This company is worth a trillion dollars," he added, referring to Tesla. "How can you release a machine that's not safe in so many ways?"

Tesla doors are the focus of an investigation opened in September by federal regulators. The National Highway Traffic Safety Administration is examining 2021 Tesla Model Y sport utility vehicles after owners complained that, after leaving the front seats and getting out of the car, they were unable to open the rear doors. In four cases, owners reported that they had to break the cars' windows to free children trapped inside.

Other manufacturers, including Ford Motor, Toyota and Stellantis, the maker of Jeep vehicles, have adopted electronic doors. Those companies have used various designs that allow doors to be opened in the event of a power failure or emergency.

Electronic door handles on some Lexus models operate manually by being pulled twice, and there is a manual release tab on the exterior handle. The handles on Volkswagen's electric ID.4 operate manually if simply pulled harder.

On Ford's electric Mustang Mach E and some Jeep models, electronic doors have a capacitor near the door mechanism that retains enough power for it to open in case of a battery failure, according to the companies.

The Piedmont crash shattered the bedroom community set in hills above Oakland, where streets wind past homes with carefully landscaped yards, many with Teslas parked out front.

"The four young people in the Cybertruck were close friends and outstanding individuals, each on the verge of making meaningful contributions to the world," Todd and Stannye Nelson said in their statement. "They were all victims of Tesla's unsafe design."

Mr. Tsukahara said, "Our life is never going to be the same, and there are other families just like us."

Both families have also sued the estate of Mr. Dixon, the driver, but the Nelsons said that was for procedural reasons and they "do not seek to punish any families."

---

# Paramount Is Close on a Deal to Purchase The Free Press

**By BENJAMIN MULLIN and MICHAEL M. GRYNBAUM**

Paramount is expected to announce a deal to buy The Free Press as early as Monday, uniting the storied CBS News division with an upstart digital publisher that has positioned itself as an alternative to old-line media institutions, according to three people briefed on the discussions between the companies.

Paramount is also expected to name Bari Weiss, a co-founder of The Free Press, as editor in chief of CBS News, the people said. In the newly created role, Ms. Weiss, 41, who began her career as an opinion writer and editor for magazines and newspapers, would wield enormous influence over one of the country's largest broadcast news divisions and marquee shows like "60 Minutes."

Two people briefed on the terms said the acquisition would value The Free Press at around $150 million, paid out over time with a mix of cash and stock. The total value of the deal could fluctuate depending on the price of Paramount's stock.

A deal would be a major vote of confidence in Ms. Weiss from Paramount and its chief executive, David Ellison, who has been in talks to acquire The Free Press for months. Mr. Ellison has said he aims to carry on the fundamental mission of CBS News, telling reporters at a news conference in August that he wanted the network to remain a purveyor of "truth" and "facts."

Tom Cibrowski is expected to remain president of CBS News and work alongside Ms. Weiss, people briefed on internal deliberations said.

Paramount's acquisition of The Free Press could set up a culture clash within CBS News. Ms. Weiss does not have experience managing TV news coverage, and her publication is much smaller than CBS News, which has bureaus around the world staffed by hundreds of producers, anchors and reporters.

The Free Press publishes a heterodox mix of opinion columns and original journalism. Frequent themes include the excess of the "woke left" and the perceived biases of traditional media organizations.

Ms. Weiss co-founded The Free Press in 2021 after quitting The New York Times, where she worked for the opinion section, saying she was leaving because of an "illiberal environment." The Free Press has amassed roughly 1.5 million free and paid subscribers with reporting and opinionated essays on business, politics and international affairs.

The prospective arrival of Ms. Weiss is another twist in a tumultuous year at CBS News. President Trump sued Paramount over a "60 Minutes" interview last October with Kamala Harris, who was vice president and his electoral opponent, accusing the show of distorting her remarks to present her in a more favorable light.

Tensions at the news division escalated as Paramount entered into mediation with Mr. Trump to settle the lawsuit. Bill Owens, the executive producer of "60 Minutes," stepped down, citing encroachments on his journalistic independence. Wendy McMahon, the president of the division, was forced out soon after.

Paramount's eventual $16 million settlement, in a case that many legal experts dismissed as frivolous, led to accusations that the company was trying to curry favor with the Trump administration. Paramount was seeking to merge with Skydance, a movie studio run by Mr. Ellison, and the deal required approval from federal regulators. The merger was blessed in late July, about three weeks after the settlement.

---

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

In re:
AGDP HOLDING INC., et al.,[1]
Debtors.

Chapter 11
Case No. 25-11446 (MFW)
(Jointly Administered)
Ref: Docket Nos. 89 & 131

**NOTICE OF ESTABLISHMENT OF BAR DATES FOR FILING PROOFS OF CLAIMS, INCLUDING SECTION 503(b)(9) CLAIMS**

**(THE GENERAL BAR DATE IS OCTOBER 31, 2025 AT 5:00 P.M. (PREVAILING EASTERN TIME))**

PLEASE TAKE NOTICE OF THE FOLLOWING:

On August 4, 2025 (the "Petition Date"), the above-captioned debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). On September 2, 2025, the Court entered an order [D.I. 131] (the "Bar Date Order") establishing certain deadlines for the filing of proofs of claim in these chapter 11 cases of the following debtors and debtors in possession (together, the "Debtors"): **Debtor, Case No.EIN, (Last 4 Digits):** Made Event LLC, 25-11442, 6277; Avant Gardner, LLC, 25-11443, 6504; EZ Festivals LLC, 25-11444, 8854; AG Management Pool LLC, 25-11445, 9962; AGDP Holding Inc., 25-11446, 6504; Reynard Productions, LLC, 25-11447, 5431.

Pursuant to the Bar Date Order, each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, and trust) that holds or seeks to assert a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date (including, without limitation, claims entitled to administrative priority status under section 503(b)(9) of the Bankruptcy Code), no matter how remote or contingent such right to payment or equitable remedy may be, **MUST FILE A PROOF OF CLAIM** on or before 5:00 p.m. (prevailing Eastern Time), on October 31, 2025 (the "General Bar Date"), by sending an original proof of claim form to Kurtzman Carson Consultants, LLC dba Verita Global ("Verita"), or by completing the online proof of claim form available at www.veritagloabl.net/agdp, so that it is **actually received** on or before the General Bar Date; provided that, solely with respect to governmental units (as defined in section 101(27) of the Bankruptcy Code), the deadline for such governmental units to file a proof of claim against the Debtors is February 2, 2026 at 5:00 p.m. (prevailing Eastern Time) (the "Governmental Bar Date").

All entities holding claims against the Debtors arising from the rejection of executory contracts and unexpired leases of the Debtors are required to file proofs of claim by the later of (a) the General Bar Date or the Governmental Bar Date, as applicable, and (b) 5:00 p.m., prevailing Eastern Time, on the date that is thirty (30) days following entry of an order approving the rejection of any executory contract or unexpired lease of the Debtors (the "Rejection Damages Bar Date").

All entities asserting claims against the Debtors that are affected by an amendment or supplement to the Schedules are required to file a proof of claim and any previously filed proof of claim in respect of the Governmental Bar Date, as applicable, and (b) 5:00 p.m., prevailing Eastern Time, on the date that is thirty (30) days from the date on which the Debtors mail notice of the amendment to the Schedules (or another time period as may be fixed by the Court) (the "Amended Schedules Bar Date").

Proofs of claim must be sent by U.S. first-class mail to AGDP Claims Processing Center c/o KCC dba Verita, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245, if submitted by overnight mail or hand delivery system, to AGDP Claims Processing Center c/o KCC dba Verita, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245 or completed electronically through Verita's website, www.veritagloabl.net/agdp. Proofs of claim sent by facsimile, telecopy, or electronic mail will **not** be accepted and will **not** be considered properly or timely filed for any purpose in these chapter 11 cases.

ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM against the Debtors, BUT THAT FAILS TO DO SO PROPERLY BY THE APPLICABLE BAR DATE, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR PURPOSES OF VOTING AND DISTRIBUTION.

A copy of the Bar Date Order and proof of claim form may be obtained by contacting the Debtors' Claims Agent, in writing, at AGDP Claims Processing Center c/o KCC dba Verita, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245, or online at www.veritagloabl.net/agdp. The Bar Date Order can also be viewed on the Court's website at www.deb.uscourts.gov. If you have questions concerning the filing or processing of claims, you may contact the Debtors' claims agent, Verita, at www.veritagloabl.net/agdp.

YOUNG CONAWAY STARGATT & TAYLOR, LLP, Edmon L. Morton (No. 3856), Sean M. Beach (No. 4070), Kenneth J. Enos (No. 4544), S. Alexander Faris (No. 6278), Sarah Gawrysiak (No. 7403), Evan S. Sarulk (No. 7452), 1000 North King Street, Rodney Square, Wilmington, Delaware 19801, Telephone: (302) 571-6600, Facsimile: (302) 571-1253, Email: emorton@ycst.com, sbeach@ycst.com, kenos@ycst.com, afaris@ycst.com, sgawrysiak@ycst.com, esaruk@ycst.com, Counsel to the Debtors and Debtors in Possession

The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bar Date Order.