## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (MFW) |
| Debtors. | (Jointly Administered) |
|  | **Ref. Docket Nos. 317 & 404** |

## NOTICE OF FILING OF AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR AGDP HOLDING INC. AND ITS AFFILIATED DEBTORS

**PLEASE TAKE NOTICE** that, on October 15, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Joint Chapter 11 Plan of Liquidation for AGDP Holding Inc. and Its Affiliated Debtors* [D.I. 317, solicitation version at D.I. 404] (as may be amended, modified, or supplemented from time to time, the "Plan"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

**PLEASE TAKE FURTHER NOTICE** that, subsequent to filing the Plan, the Debtors have amended the Plan to address various informal comments received from third parties with respect to the Plan. Accordingly, the Debtors hereby file an amended version of the Plan (the "Amended Plan"), a copy of which is attached hereto as **Exhibit A**. For the convenience of the Court and other parties in interest, a blackline comparing the Amended Plan against the solicitation version of the Plan is attached hereto as **Exhibit B**. The Debtors reserve their rights to further amend, modify, or supplement the Amended Plan.[2]

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider confirmation of the Amended Plan (the "Confirmation Hearing") is scheduled for **January 20, 2026, at 10:30 a.m., prevailing Eastern Time**, before the Honorable Mary F. Walrath, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, Courtroom No. 4, Wilmington, Delaware 19801 or via remote video. The Confirmation Hearing may be continued from time to time without further notice to parties in interest other than the announcement of the adjourned date(s) at the Confirmation Hearing or any continued hearing or on the applicable hearing, agenda or a notice filed with the Court.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Amended Plan.

Dated:    January 15, 2026
          Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ S. Alexander Faris*

Edmon L. Morton (No. 3856)
Sean M. Beach (No. 4070)
Kenneth J. Enos (No. 4544)
S. Alexander Faris (No. 6278)
Sarah Gawrysiak (No. 7403)
Evan S. Saruk (No. 7452)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  emorton@ycst.com
        sbeach@ycst.com
        kenos@ycst.com
        afaris@ycst.com
        sgawrysiak@ycst.com
        esaruk@ycst.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Amended Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (MFW) |
| Debtors. | (Jointly Administered) |

## AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR
## AGDP HOLDING INC. AND ITS AFFILIATED DEBTORS

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

Edmon L. Morton (No. 3856)
Sean M. Beach (No. 4070)
Kenneth J. Enos (No. 4544)
S. Alexander Faris (No. 6278)
Sarah Gawrysiak (No. 7403)
Evan S. Saruk (No. 7452)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801

Date:   January 15, 2026
        Wilmington, Delaware

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.

# TABLE OF CONTENTS

ARTICLE I.   DEFINED TERMS AND RULES OF INTERPRETATION ................................ 1
  A.       Definitions ............................................................................................................ 1
  B.       Rules of Interpretation................................................................................ 15
  C.       Computation of Time ..................................................................................... 16
  D.       Controlling Document .................................................................................... 16

ARTICLE II.   ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND
STATUTORY FEES ................................................................................................................. 16
  A.       Administrative Claims ..................................................................................... 16
  B.       Professional Fee Claims and Administrative Claims of OCPs .................... 17
    1.    Final Fee Applications ................................................................................. 17
    2.    Administrative Claims of OCPs................................................................... 18
    3.    Post-Effective Date Fees and Expenses ...................................................... 18
    4.    Professional Fee Reserve Amount ............................................................... 18
    5.    Professional Fee Reserves............................................................................ 19
  C.       Priority Tax Claims ......................................................................................... 19
  D.       U.S. Trustee Statutory Fees ........................................................................... 20

ARTICLE III.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ... 20
  A.       Classification of Claims and Interests ......................................................... 20
  B.       Treatment of Claims and Interests............................................................... 21
    1.    Class 1 – Secured Claims............................................................................. 21
    2.    Class 2 – Other Priority Claims .................................................................. 22
    3.    Class 3 – Prepetition Deficiency Claims .................................................... 22
    4.    Class 4 – General Unsecured Claims.......................................................... 22
    5.    Class 5 – Subordinated Claims ................................................................... 23
    6.    Class 6 – Intercompany Claims ................................................................... 23
    7.    Class 7 – Interests ....................................................................................... 23
  C.       Special Provisions Governing Unimpaired Claims.................................... 24
  D.       Elimination of Vacant Classes ...................................................................... 24
  E.       Controversy Concerning Impairment ......................................................... 24
  F.       Subordination of Claims................................................................................ 24
  G.       Reservation of Rights Regarding Claims .................................................... 24
  H.       Postpetition Interest on Claims..................................................................... 25
  I.       Insurance ......................................................................................................... 25

# TABLE OF CONTENTS
(continued)

ARTICLE IV.   MEANS FOR IMPLEMENTATION OF THE PLAN.......................................25

A.     Sources of Consideration for Plan Distributions.................................................25

B.     Vesting of Assets.................................................................................................25

C.     Corporate Action.................................................................................................25

D.     Effectuating Documents; Further Transactions...................................................26

E.     Corporate Existence Post-Effective Date............................................................26

    1.   Directors and Officers...................................................................................26

    2.   Organizational Governance Documents........................................................26

F.     Settlement of Claims and Interests................................**Error! Bookmark not defined.**

G.     Cancellation of Old Securities and Interests.......................................................27

H.     Plan Administrator..............................................................................................27

    1.   Appointment of the Plan Administrator.........................................................27

    2.   The Plan Administrator Agreement...............................................................28

    3.   Rights, Powers, and Duties of the Debtors and the Plan Administrator........28

    4.   Transition Services.......................................................................................29

    5.   Compensation of the Plan Administrator.......................................................29

    6.   Insurance for the Plan Administrator.............................................................29

    7.   Termination of the Plan Administrator's Responsibilities and Obligations.................30

I.     Liquidating Trust.................................................................................................30

    1.   Establishment of the Liquidating Trust.........................................................30

    2.   Transfer of the Liquidating Trust Assets.......................................................30

    3.   Liquidating Trust Agreement........................................................................31

    4.   Purpose of the Liquidating Trust...................................................................31

    5.   Liquidating Trustee......................................................................................31

    6.   Insurance......................................................................................................32

    7.   Termination of the Liquidating Trust............................................................33

J.     U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust.................33

K.     Preservation of Causes of Action........................................................................34

L.     Corporate Action.................................................................................................34

M.     Books and Records..............................................................................................35

N.     Plan Transactions................................................................................................35

O.     Effectuating Documents and Further Transactions..............................................35

## TABLE OF CONTENTS
(continued)

P.  Section 1146 Exemption from Certain Taxes and Fees .............................. 35

Q.  Sale Order .................................................................................................. 36

R.  Authority to Act .......................................................................................... 36

S.  No Revesting of Liquidating Trust Assets or Plan Administration Assets ................. 36

ARTICLE V.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES ........................................... 36

A.  General Treatment ....................................................................................... 36

B.  Rejection Damages Claims .......................................................................... 37

C.  Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases. 37

D.  Insurance Preservation ................................................................................ 37

ARTICLE VI.   PROVISIONS GOVERNING DISTRIBUTIONS ........................... 37

A.  Distribution Record Date ............................................................................ 37

B.  Withholdings ............................................................................................... 38

C.  Date of Distributions ................................................................................... 38

D.  Disbursing Agent ........................................................................................ 38

E.  Powers of Disbursing Agent ....................................................................... 39

F.  Surrender of Instruments ............................................................................ 39

G.  IRS Forms ................................................................................................... 39

H.  Delivery of Distributions ............................................................................ 40

I.  Manner of Payment ..................................................................................... 40

J.  Foreign Currency Exchange Rate ............................................................... 40

K.  Setoffs and Recoupments ........................................................................... 40

L.  Minimum Distributions ............................................................................... 41

M.  Allocation of Distributions Between Principal and Interest ........................ 41

N.  Distributions Free and Clear ....................................................................... 41

O.  Claims Paid or Payable by Third Parties .................................................... 41

  1.  Claims Paid by Third Parties ................................................................. 41

  2.  Claims Payable by Third Parties ............................................................ 42

  3.  Applicability of Insurance Policies ........................................................ 42

P.  F&B Reserve and TVT Claims ................................................................... 42

**TABLE OF CONTENTS**
(continued)

ARTICLE VII.   PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS ............................................................................................................ 43

A.   Allowance of Claims .................................................................................. 43

B.   Claims Administration Responsibilities ..................................................... 43

C.   Estimation of Claims .................................................................................. 43

D.   Adjustment to Claims Without Objection .................................................. 44

E.   Time to File Objections to Claims ............................................................. 44

F.   Disallowance of Late Claims ..................................................................... 44

G.   Disputed Claims ......................................................................................... 44

H.   No Distributions Pending Allowance ........................................................ 44

I.   Distributions After Allowance .................................................................... 44

ARTICLE VIII.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ........................ 45

A.   Conditions Precedent ................................................................................. 45

B.   Waiver of Conditions ................................................................................. 46

C.   Effect of Vacatur of the Confirmation Order ............................................ 46

D.   Votes Solicited in Good Faith .................................................................... 46

ARTICLE IX.   RELEASE, INJUNCTION, AND RELATED PROVISIONS .......................... 46

A.   Releases by the Debtors ............................................................................. 46

B.   Releases by Holders of Claims .................................................................. 47

C.   Exculpation ................................................................................................ 48

D.   Injunction ................................................................................................... 48

E.   Waiver of Statutory Limitations on Releases ............................................ 50

F.   Release of Liens ......................................................................................... 50

ARTICLE X.   RETENTION OF JURISDICTION ................................................................ 50

ARTICLE XI.   MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .... 52

A.   Modification of the Plan ............................................................................ 52

B.   Other Amendments ..................................................................................... 53

C.   Effect of Confirmation on Modifications .................................................. 53

D.   Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date .. 53

ARTICLE XII.   MISCELLANEOUS PROVISIONS ............................................................ 53

A.   Debtors' Operation from Combined Confirmation Hearing Through Effective Date . 53

B.   Immediate Binding Effect .......................................................................... 54

# TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| C. | Additional Documents | 54 |
| D. | Substantial Consummation | 54 |
| E. | Reservation of Rights | 54 |
| F. | Successors and Assigns | 54 |
| G. | Determination of Tax Liabilities | 55 |
| H. | Dissolution of the Committee | 55 |
| I. | Notices | 55 |
| J. | Term of Injunctions or Stays | 56 |
| K. | Entire Agreement | 57 |
| L. | Plan Supplement Exhibits | 57 |
| M. | Governing Law | 57 |
| N. | Non-Severability of Plan Provision Upon Confirmation | 57 |
| O. | Closing of the Chapter 11 Cases | 58 |

## INTRODUCTION

AGDP Holding Inc. and its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, propose this joint chapter 11 plan (this "Plan") under section 1121 of the Bankruptcy Code.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.  Supplemental agreements and documents referenced in this Plan and the Disclosure Statement are available for review on both the Bankruptcy Court's docket and on the Debtors' case information website: https://veritaglobal.net/agdp/.

Reference is made to the Disclosure Statement filed contemporaneously with the Plan for a discussion of the Debtors' history, business, historical financial information, and liquidation analysis, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN**.

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Definitions

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1.      "1042 Withholding Tax Claims" means the withholding tax Claims reportable by the Debtors on Forms 1042, 1042-S, and 1042-T and asserted by the Internal Revenue Service, which are entitled to priority under section 507(a)(8)(C) of the Bankruptcy Code, and the liability for which either (i) has been assumed by the Purchaser pursuant to the APA or (ii) will be paid pursuant to the treatment identified in Section II.C hereof.

2.      "Administrative Claim(s)" means a Claim entitled to priority under section 503(b) or 507(a)(2) of the Bankruptcy Code, including (a) actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and the ongoing liquidation of the Debtors, (b) Professional Fee Claims (to the extent Allowed by the Bankruptcy Court), and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

3.      "Administrative Claims Bar Date" means the deadline for Filing all requests for allowance and payment of Administrative Claims (other than requests for payment of Professional Fee Claims by Retained Professionals or requests for payment of claims pursuant to section 503(b)(9) of the Bankruptcy Code), which shall be thirty (30) days after the Effective Date.

4.     "Admin Claims Reserve" means the escrow established by Purchaser pursuant to the Sale, funded in an amount not to exceed $100,000, which shall be used to pay any Allowed Administrative Claims that are not yet known at the closing of the Sale.

5.     "Affiliate" means any "affiliate," as defined in section 101(2) of the Bankruptcy Code.

6.     "Allowed" means, with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Filed Proof of Claim (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been Filed in an amount different than the amount listed on such Schedules; (c) a Claim Allowed pursuant to the Bankruptcy Code, the Plan, or a Final Order of the Bankruptcy Court; or (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority of the Liquidating Trustee or the Plan Administrator, as applicable; *provided* that with respect to a Claim described in clause (a) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such Claim, no objection to the allowance thereof has been Filed by the Liquidating Trustee, the Plan Administrator, or any other party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection was so Filed and the Claim shall have been Allowed by a Final Order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtors to the Liquidating Trust or the Plan Administrator, as applicable.  "Allow" and "Allowing" shall have correlative meanings.

7.     "APA" or "Asset Purchase Agreement" means that certain Amended and Restated Asset Purchase Agreement between the Debtors, as Sellers, and AG Acquisition 1 LLC, as Purchaser, dated October __, 2025, (as amended, modified or supplemented prior to the Effective Date), and which shall be consistent in all material respects with the Global Settlement.

8.     "Avoidance Actions" means any and all avoidance or equitable subordination or recovery actions under sections 105(a), 502(d), 510, 542 through 551 and 553 of, and otherwise under, the Bankruptcy Code or any similar federal, state or common law Causes of Action that the Debtors, the Estates, or other appropriate parties in interest have asserted or may assert; *provided*, *however*, any and all such actions against parties whom the Debtors and/or the Purchaser have waived such actions (including pursuant to the Global Settlement) shall not constitute "Avoidance Actions" for purposes hereof.

9.     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

10.     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

11. "<u>Bankruptcy Rule(s)</u>" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code.

12. "<u>Bar Date</u>" means, as applicable, the Administrative Claims Bar Date, and any other date or dates established by an order of the Bankruptcy Court by which Proofs of Claim must be Filed, including the general bar date and bar date for Governmental Units, each as set forth in the *Order (I) Establishing Bar Dates for Filing Proofs of Prepetition Claims, Including Section 503(b)(9) Claims; (II) Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* [D.I. 131]. Notwithstanding the foregoing, the Professional Fee Claims shall be Filed in accordance with Section II.B herein and shall not otherwise be subject to the Bar Date.

13. "<u>Business Day</u>" means any day, other than a Saturday, Sunday, or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

14. "<u>Carve-Out Accounts</u>" has the meaning set forth in the DIP Orders.

15. "<u>Cash</u>" means cash and cash equivalents in legal tender of the United States of America.

16. "<u>Causes of Action</u>" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws). For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Action or state law fraudulent transfer claim.

17. "<u>Chapter 11 Cases</u>" means the chapter 11 cases Filed by the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

18. "<u>Claim(s)</u>" means any "claim", as defined in section 101(5) of the Bankruptcy Code, against the Debtors or the Estates.

19. "<u>Claims Objection Deadline</u>" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other deadline as may be fixed by an order of the Bankruptcy Court for objecting to such Claims.

20. "<u>Claims Register</u>" means the official register of Claims against and Interests in the Debtors maintained by the Notice and Claims Agent.

21.    "Class" means a category of Claims or Interests as established by and set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

22.    "Combined Confirmation Hearing" means the hearing(s) conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to (a) consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code and (b) final approval of the adequacy of the disclosures contained in the Disclosure Statement, as such hearing(s) may be adjourned or continued from time to time.

23.    "Committee" means the Official Committee of Unsecured Creditors, appointed by the U.S. Trustee in the Chapter 11 Cases on August 21, 2025 [D.I. 77], as it may be reconstituted from time to time.

24.    "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court.

25.    "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

26.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27.    "Contingent Value Right" or "CVR" means the contingent value rights to be issued by Holdings to the Debtors at the closing of the Sale pursuant to the Contingent Value Rights Agreement and the Global Settlement for transfer to the Liquidating Trust upon the Effective Date of the Plan.

28.    "Contingent Value Rights Agreement" means the Contingent Value Rights Agreement between Holdings and the Debtors dated _____, 2026, which shall be consistent with the Global Settlement in all material respects.

29.    "Cure" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed or assumed and assigned by the Debtors.

30.    "D&O Policies" means, collectively, the Debtors' director and officer liability insurance policies along with any other applicable directors and officers liability insurance policies, including primary insurance, excess insurance, or tail insurance policies.

31.    "Debtors" means AGDP Holding Inc. and each of its affiliates in the Chapter 11 Cases as debtors and debtors-in-possession.

32.    "Debtor Releases" means the releases set forth in Section IX.A herein.

33.    "DIP Agent" means Alter Domus (US) LLC, as administrative agent and collateral agent under the DIP Loan Documents.

34.    "DIP Facility" means the senior secured super-priority term loan facility approved by the DIP Orders.

35.    "DIP Lenders" means the lenders party to the DIP Term Loan Note.

36.    "DIP Loan Documents" means the DIP Term Loan Note and any other related agreements, documents, guarantees, security agreements, or pledge agreements, including the DIP Orders, by and among the Debtors, the DIP Agent, and the DIP Lenders.

*37.*    "DIP Orders" means, collectively, (a)(i) the *Interim Order Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [D.I. 46], (ii) the *Second Interim Order Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [D.I. 128]; (iii) the *Third Interim Order Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [D.I. 176]; and (iv) the *Fourth Interim Order Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [D.I. 259] and (b) the *Final Order Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; and (IV) Granting Related Relief* [D.I. 370].

38.    "DIP Term Loan Note" means that certain *Debtor in Possession Term Promissory Note* by and among AGDP Holding Inc. and Avant Gardner, LLC, as the lead borrowers, each of the other Debtors party thereto as a borrower and/or a guarantor, as applicable, the DIP Agent, and the DIP Lenders (as amended, modified or supplemented prior to the Effective Date).

39.    "Disbursing Agent" means (a) prior to the Effective Date, the Debtors and (b) on and after the Effective Date, the Liquidating Trustee, the Plan Administrator, or the Entity(ies) selected by the Liquidating Trustee or Plan Administrator, which Entity(ies) may include the Notice and Claims Agent, as applicable, to make or to facilitate distributions pursuant to the Plan.

40.    "Disclosure Statement" means the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation for AGDP Holding Inc. and Its Affiliated Debtors*, dated October 15, 2025 (as such may be amended, supplemented, or modified from time to time), including all exhibits and schedules thereto and references therein that relate to this Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

41.    "Disclosure Statement Order" means any order entered by the Bankruptcy Court approving the Disclosure Statement (which may be on an interim basis).

42.    "Disputed" means, with respect to any Claim, except as otherwise provided herein, a Claim that is not Allowed and not disallowed under the Plan, the Bankruptcy Code, or a Final Order.

43.    "Disputed Claims Reserve" means any portion of the Liquidating Trust Assets that is reserved for Disputed Claims.

44.    "Distribution Record Date" means the date for determining which Holders of Claims are eligible to receive distributions under the Plan, which date shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

45.    "Effective Date" means the date that is the first Business Day after the entry of the Confirmation Order on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent to the occurrence of the Effective Date, as set forth in Section VIII.A herein, have been satisfied or waived in accordance with the Plan; and (c) the Debtors declare the Plan effective by filing a notice on the docket in these Chapter 11 Cases. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

46.    "Entity" means any "entity," as defined in section 101(15) of the Bankruptcy Code.

47.    "Estates" mean the bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

48.    "Exculpated Party" or "Exculpated Parties" means, in each case in its capacity as such, (a) the Debtors; (b) the Estates; (c) the Committee and its members, in their capacity as such; (d) the Retained Professionals; and (e) the Debtors' current and former directors, managers, and officers  who served as a fiduciary of the Debtors' Estates at any time between the Petition Date and the Effective Date of this Plan.

49.    "Executory Contract(s)" means a contract to which one or more Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

50.    "F&B Reserve" means the segregated bank account created in accordance with the Final Cash Management Order to hold funds in which the TVT Parties assert an interest. Those funds include: (i) the Debtors' Cash in their bank accounts as of the Petition Date that was segregated and restricted pursuant to the Cash Management Order; and (ii) the food and beverage sales received from the Debtors' third-party payment processor, Billfold, during these Chapter 11 Cases and prior to the closing of the Sale.

51.    "File" or "Filed" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or in the case of a Proof of Claim, the Notice and Claims Agent.

52.    "Final Cash Management Order" means that certain *Final Order (I) Authorizing and Directing the Banks and Payment Processors to Cease Any Holds on, or Redirection of, Cash or Receivables of the Debtors, (II) Authorizing the Debtors to (a) Continue Use of Their Existing Cash Management System, Bank Accounts, and Business Forms,(b) Continue Intercompany Transactions, (c) Pay Related Obligations, and (D) Pay and Honor Processing Obligations, (III) Waiving Certain Investment and Deposit Guidelines, and (IV) Granting Related Relief* [D.I. 124].

53.    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

54.    "Future Liquidating Trust Contributions" means payments from the Purchaser, pursuant to the Global Settlement, each in the amount of $750,000, which amounts shall be paid on each anniversary of the closing of the Sale beginning on the first anniversary of the closing and ending on the third anniversary of the closing of such Sale except to the extent that such amounts are required to be paid earlier pursuant to the Global Settlement; provided that to the extent a Disputed Administrative Claim is disallowed in whole or in part, the corresponding amount deposited in the Admin Claims Reserve shall be released to the Liquidating Trust and netted against the next Future Liquidating Trust Contribution pursuant to Section VII.H hereof.

55.    "General Unsecured Claim(s)" means any unsecured, non-priority Claim against the Debtors or the Estates.

56.    "Global Settlement" means the global settlement by and among (i) the Debtors, (ii) the Committee, and (iii) Axar Capital Management LP (on behalf of itself and its affiliates), which settlement was approved by the Court pursuant to the Global Settlement Approval Order.

57.    "Global Settlement Approval Order" means the order of the Court dated October 24, 2025 [D.I. 372] approving the Global Settlement.

33735561.8

58.    "<u>Global Settlement Definitive Documents</u>" shall mean, (a) this Plan, (b) the Disclosure Statement, (c) the Global Settlement Approval Order, (d) the Liquidating Trust Agreement, (e) the APA, (f) the Contingent Value Rights Agreement, (g) the limited liability company agreements any other organizational documents of Holdings and the Purchaser, (h) the Transition Services Agreement, (i) the Plan Administrator Agreement, and (j) such other documents related to, or necessary or appropriate to enter into in connection with, the Global Settlement, in each case, as they may be validly amended, supplemented or modified from time to time, and which documents shall be consistent in all respects with the Global Settlement.

59.    "<u>Global Settlement Parties</u>" means the parties to the Global Settlement: (i) the Debtors, (ii) the Committee, and (iii) Axar Capital Management LP (on behalf of itself and its affiliates, including the Purchaser and Holdings).

60.    "<u>Governmental Unit(s)</u>" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

61.    "<u>Holder(s)</u>" means a Person or Entity, as applicable, holding a Claim against, or an Interest in, the Debtors, as the context requires.

62.    "<u>Holdings</u>" means AG Acquisition Holdings LLC.

63.    "<u>Impaired</u>" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

64.    "<u>Initial Liquidating Trust Contribution</u>" means $1,050,000 funded by the Purchaser to the Debtors upon the closing of the Sale pursuant to the Global Settlement, which amount shall be held in trust by the Debtors pursuant to the APA pending the occurrence of the Effective Date, at which time the Initial Liquidating Trust Contribution shall be transferred to the Liquidating Trust.

65.    "<u>Insurance Policies</u>" means all insurance policies that have been issued at any time to or provide coverage to the Debtors and all agreements, documents, or instruments relating thereto, including the D&O Policies.

66.    "<u>Intercompany Claims</u>" means a Claim held by a Debtor against another Debtor.

67.    "<u>Interest(s)</u>" means any equity securities (as defined in section 101(16) of the Bankruptcy Code) of any Debtor, including all classes of shares, common stock, preferred stock, partnership interests, membership interests and any other equity or ownership interests, as well as redemption rights, earn-out rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, including arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor, or any other instrument evidencing any direct or indirect fixed or contingent ownership interest in any Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in any Debtor, whether vested or unvested, including without limitation, equity or equity-based incentives, grants, or other instruments issued, granted, or promised to be granted to current or former employees, directors, officers, or contractors of any Debtor, to acquire any such interest in any Debtor, in each case outstanding as of the Petition Date.

33735561.8

8

68.     "<u>Interim Compensation Order</u>" means that certain order of the Bankruptcy Court entered on September 2, 2025 [D.I. 132].

69.     "<u>IRS Form</u>" means IRS Form W-9, W-8BEN, any acceptable substitute, or any other tax information form that the Disbursing Agent may require from a Holder of a Claim for a distribution under the Plan.

70.     "<u>Law</u>" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

71.     "<u>Leased Premises</u>" means the non-residential real property lease by the Debtors in connection with their business operations.

72.     "<u>Lien</u>" means a "lien," as defined in section 101(37) of the Bankruptcy Code.

73.     "<u>Liquidating Trust</u>" means the liquidating trust established on the Effective Date pursuant to Article IV herein and the Liquidating Trust Agreement.

74.     "<u>Liquidating Trust Agreement</u>" means the agreement, filed with the Plan Supplement and executed as of the Effective Date, that establishes and governs the Liquidating Trust, and which shall be consistent in all material respects with the Global Settlement.

75.     "<u>Liquidating Trust Assets</u>" means (a) the Initial Liquidating Trust Contribution; (b) the CVR; (c) the Future Liquidating Trust Contributions; (d) the Retained Causes of Action designated as Liquidating Trust Assets in the Plan Supplement; (e) the balance of the Wind-Down Amount after the conclusion of the Wind-Down Process; (f) any unused portion of the Admin Claims Reserve; (g) any Cash remaining in the Professional Fee Reserve on account of Committee's Retained Professionals after payment in full of all Allowed Professional Fee Claims of the Committee's Retained Professionals; and (h) all of the Debtors' other tangible and intangible assets not sold to the Purchaser in connection with the Sale or not otherwise included in the Plan Administration Assets.

76.     "<u>Liquidating Trust Beneficiaries</u>" means all Holders of Liquidating Trust Interests.

77.     "<u>Liquidating Trust Distributable Proceeds</u>" means the Liquidating Trust Assets or the Cash proceeds thereof; *minus* Liquidating Trust Expenses.

78.     "<u>Liquidating Trust Expenses</u>" means any fees and expenses incurred by the Liquidating Trustee (including, but not limited to, the compensation of the Liquidating Trustee and the reasonable fees and expenses of professionals or other persons retained by the Liquidating Trustee) in connection with the administration of the Liquidating Trust.

79.     "<u>Liquidating Trust Interests</u>" means all of the interests in the Liquidating Trust allocable to applicable Holders of Allowed Claims (in accordance with the Plan and the Liquidating Trust Agreement, which shall not include Allowed Secured Claims or Interests (if any) held by any Party). For the avoidance of doubt, the Liquidating Trust Interests shall represent only

the right to receive distributions from the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement and shall not be deemed "securities" or "equity interests" in any Debtor or in any successor entity, and shall not grant any ownership, control or governance rights in the Liquidating Trust or in any entity whose assets are held by the Liquidating Trust.

80.    "Liquidating Trustee" means Dundon Advisers LLC, solely in its capacity as the trustee of, and to administer, the Liquidating Trust, and take such other actions as may be authorized under the Liquidating Trust Agreement, along with any successor thereto duly appointed under the Liquidating Trust Agreement.

81.    "New York State Sales Tax Claims" means the sales tax Claims asserted by the State of New York, which are entitled to priority under section 507(a)(8)(C) of the Bankruptcy Code, and the liability for which either (i) has been assumed by the Purchaser pursuant to the APA or (ii) will be paid pursuant to the treatment identified in Section II.C hereof.

82.    "Notice and Claims Agent" means Kurtzman Carson Consultants, LLC d/b/a Verita Global in its capacity as noticing, claims, and solicitation agent for the Debtors.

83.    "OCP" means an ordinary course professional whose retention and compensation has been authorized by the Bankruptcy Court in accordance with the OCP Order.

84.    "OCP Claim" means the Claim of any OCP for payment of professional fees and expenses in accordance with the OCP Order and the Approved Budget.

85.    "OCP Order" means the *Order (I) Authorizing the Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business Effective as of the Petition Date, (II) Waiving Certain Information Requirements of Local Rule 2016-1, and (III) Granting Related Relief* [D.I. 133] entered on September 2, 2025.

86.    "Other Priority Claim(s)" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

87.    "Person" means a "person," as defined in section 101(41) of the Bankruptcy Code.

88.    "Petition Date" means August 4, 2025, which is the date on which each Debtor Filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Cases.

89.    "Plan" means this plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

90.    "Plan Administrator" means the Person or Persons identified in the Plan Supplement (as determined by the Debtors, and who shall be acceptable to the Purchaser) and

33735561.8

appointed on the Effective Date, who will serve as the administrator for the Post-Effective Date Debtors, on and after the Effective Date in accordance with the Plan.

91.    "Plan Administrator Agreement" means the agreement between the Debtors and the Plan Administrator specifying the rights, duties and responsibilities of the Plan Administrator under the Plan and providing for the Plan Administrator's retention of the Plan Administrator's professionals, a form of which shall be filed with the Plan Supplement (and which shall be in form and substance acceptable to the Purchaser).

92.    "Plan Administration Assets" means (i) the balance of the Wind-Down Amount as of the Effective Date; (ii) the Admin Claims Reserve; (iii) any portion of the F&B Reserve that is not needed to satisfy Allowed Claims or Interests (if any) held by the TVT Parties; and (iv) any Retained Causes of Action designated as Plan Administration Assets in the Plan Supplement.

93.    "Plan Supplement" means a supplemental appendix to the Plan consisting of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the terms thereof, the Plan, the Bankruptcy Code and the Bankruptcy Rules), which shall be Filed by the Debtors no later than seven (7) days before the Voting Deadline to accept or reject the Plan or such later date that may be approved by the Bankruptcy Court on notice to parties in interest.  The Plan Supplement shall include, among other things, (a) the identity and compensation of the Liquidating Trustee; (b) the Liquidating Trust Agreement; (c) the identity and compensation of the Plan Administrator; (d) the Plan Administrator Agreement; (e) to the extent known, the identity of any insider that will be employed or retained by the Liquidating Trustee or the Post-Effective Date Debtors (or Plan Administrator), and the nature of any compensation for such insider; (f) the Schedule of Assumed Executory Contracts and Unexpired Leases; (g) the Transition Services Agreement; (h) the schedule of Retained Causes of Action; and (i) other documentation necessary to effectuate the Plan or that is contemplated by the Plan.  For the avoidance of doubt, the Debtors shall have the right (in consultation with the Committee) to amend, supplement, or modify the Plan Supplement through the Effective Date in accordance with this Plan, the Bankruptcy Code, and the Bankruptcy Rules.

94.    "Post-Effective Date Debtors" means the Debtors as of and following the Effective Date of this Plan.

95.    "Postpetition Tax Claims" means Administrative Claims and other Claims by a Governmental Unit for taxes against any of the Debtors (and for interest and/or penalties related to such taxes) for any tax year or period, which Claims first arose after the Petition Date through and including the Effective Date.

96.    "Prepetition Deficiency Claims" means unsecured Claims held by the Prepetition Term Loan Lenders pursuant to the Prepetition Term Loan Documents.

97.    "Prepetition LiveStyle Note" means that certain Promissory Note, dated as of July 16, 2024 (as amended, restated, supplemented, or otherwise modified from time to time) in the original principal amount of $10,816,000.00.

98.    "Prepetition LiveStyle Secured Parties" means LiveStyle Holdings, Inc., NYC Festivals LLC, NYC Club Event LLC, and SFXE IP LLC and any other lenders under the Prepetition LiveStyle Note.

99.    "Prepetition Term Loan Agent" means Alter Domus (US) LLC, as administrative agent and collateral agent for the Prepetition Term Loan Lenders under the Prepetition Term Loan Facility.

100.    "Prepetition Term Loan Claim" means the Claims held by the Prepetition Term Loan Lenders that were not satisfied pursuant to the Sale.

101.    "Prepetition Term Loan Financing Agreement" means that certain Amended and Restated Financing Agreement, dated as of July 1, 2024, by and among AGDP Holding Inc. and Avant Gardner, LLC, as borrowers; EZ Festivals, LLC, Made Event LLC, and Reynard Productions LLC as guarantors; the Prepetition Term Loan Agent; and the Prepetition Term Loan Lenders (as the same may have been amended, modified or supplemented).

102.    "Prepetition Term Loan Documents" means the Prepetition Term Loan Financing Agreement and all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Term Loan Lenders and the Prepetition Term Loan Agent, including, without limitation, all security agreements, deposit account control agreements (including, without limitation, the Control Agreements (as defined in the DIP Orders)), control agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto.

103.    "Prepetition Term Loan Lenders" means the lenders party to the Prepetition Term Loan Financing Agreement.

104.    "Priority Tax Claim(s)" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

105.    "Professional Fee Claim(s)" means a Claim by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Confirmation Date under sections 328, 330, 331, or 503(b)(2) of the Bankruptcy Code, as applicable, excluding OCP Claims.

106.    "Professional Fee Reserves" means the reserves established and funded by the Debtors prior to the Effective Date to satisfy the unpaid Professional Fee Claims of the Retained Professionals, and consistent in all respects with the Global Settlement and as-capped by the Approved Budget.

107.    "Professional Fee Reserve Amount" has the meaning set forth in Section II.B.4 herein and as capped by the Approved Budget.

108.    "Proof of Claim" means a proof of Claim Filed against a Debtor in the Chapter 11 Cases.

109.    "Purchaser" means AG Acquisition 1, LLC.

110.    "Related Party" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

111.    "Released Party" means each of, and in each case in its capacity as such: (a) the Debtors' and the Committee's Related Parties solely in their capacity as such; (b) the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders; (c) the DIP Agent and the DIP Lenders; (d) the Related Parties of each of the parties identified in clause (b)-(c) of this definition; (e) the members of the Restructuring Committee of the Board of AGDP Holding Inc., Pamela Corrie, Hooman Yazhari, and Vikram Jindal; and (f) Gary Richards and Alec Ifshin; *provided*, *however*, that, except as to those specifically referenced in this definition of "Released Parties," the Debtors' other current or former directors and officers shall not be Released Parties with respect to the Retained Causes of Action listed in the Plan Supplement, which the Liquidating Trustee shall be entitled to pursue solely to the extent of any available insurance coverage for such Retained Causes of Action.

112.    "Releasing Parties" means, in their capacities as such: (a) the Committee and its members; (b) all Holders of Claims in Class 3; (c) all Holders of Claims in Class 4 who vote to accept the Plan, vote to reject the Plan, or abstain from voting on the Plan and, in each case, "opt in" to the releases set forth in Article IX of the Plan, (d) all Holders of Claims or Interests that (i) are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code, and (ii) after receiving notice, "opt in" to the releases set forth in Article IX of the Plan; (e) all Holders of Claims or Interests that (i) are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code and, (ii) after receiving notice, "opt in" to the releases set forth in Article IX of the Plan; and (f) each Related Party of each Entity in clause (a) through (e), solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (e).

113.    "Retained Causes of Action" means the Causes of Action to be retained by the Plan Administrator or the Liquidating Trust, as applicable and as set forth in the Plan Supplement, and not released pursuant to Section IX.A herein, which Causes of Action shall be identified on a schedule to be filed with the Plan Supplement.

114.    "Retained Professional(s)" means a Person or Entity employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code, excluding OCPs.

115.    "<u>Sale</u>" means the sale of substantially all the Debtors' assets to the Purchaser.

116.    "<u>Sale Order</u>" means the order entered by the Bankruptcy Court authorizing the sale of substantially all the Debtors' assets to the Purchaser pursuant to sections 363 and 365 of the Bankruptcy Code and in accordance with the APA [D.I. 371], and which shall be consistent in all material respects with the Global Settlement.

117.    "<u>Schedule of Assumed Executory Contracts and Unexpired Leases</u>" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors from time to time (with the consent of the Purchaser and in consultation with the Committee) in accordance with the Plan.

118.    "<u>Schedules</u>" means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the Bankruptcy Rules, and the official bankruptcy forms, as the same may be amended, modified, or supplemented from time to time.

119.    "<u>Secured Claim(s)</u>" means any Claim against a Debtor where, pursuant to section 506 of the Bankruptcy Code, the Claim is secured by a valid, perfected, and enforceable Lien that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title, or interest of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the relevant determination date.  The term "Secured Claim" includes any Claim that is (a) subject to an offset right under applicable law as of the Petition Date; and (b) secured against the Debtors pursuant to sections 506(a) and 553 of the Bankruptcy Code.

120.    "<u>Statutory Fees</u>" means all fees due and payable pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code, to the extent applicable.

121.    "<u>Subordinated Claim(s)</u>" means any Claim that is subject to subordination in accordance with sections 510(b)-(c) of the Bankruptcy Code or otherwise.

122.    "<u>Transition Services Agreement</u>" means the Transition Services Agreement among the Purchaser and Debtors, as the same may be modified or amended by the parties thereto as provided therein, and which shall be filed with the Plan Supplement, and which shall be consistent in all material respects with the Global Settlement.

123.    "<u>TVT Causes of Action</u>" means the Causes of Action asserted or assertable against the TVT Defendants in the adversary proceeding styled *AGDP Holding Inc. v. TVT Capital Source LLC*, Adv. P. No. 25-51803 (MFW).

124.    "<u>TVT Parties</u>" means, collectively, (i) TVT Capital Source LLC; (ii) White Star Funding Inc. d/b/a TVT Cap; (iii) Insta Funding LLC; and (iv) Pinnacle Business Funding LLC.

125.    "<u>U.S. Trustee</u>" means the Office of the United States Trustee for the District of Delaware.

126.    "<u>Unexpired Lease(s)</u>" means a lease to which a Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

127.    "<u>Unimpaired</u>" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

128.    "<u>Voting Deadline</u>" means the date and time by which all ballots to accept or reject the Plan must be received to be counted.

129.    "<u>Wind-Down Amount</u>" means $3,250,000 (less any portion of the Wind Down Amount funded prior to the closing date pursuant to the Final DIP Order and Approved Budget, as agreed between the Debtors, the Committee, and the Purchaser) to be funded by the Purchaser to the Debtors in Cash on the closing date of the Sale.

130.    "<u>Wind-Down Process</u>" means the process by which the Plan Administrator or the Liquidating Trustee, as applicable, shall wind down, dissolve, and/or liquidate the Post-Effective Date Debtors.

## B.    **Rules of Interpretation**

For the purposes of the Plan, and except as otherwise provided herein, the following rules of interpretation shall apply:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan or Confirmation Order; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in the Plan to "Articles" and "Exhibits" are references to the articles and exhibits of or to the Plan unless otherwise noted; (6) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) the words "includes" or "including" are not limiting; (8) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified, references in the Plan to "Docket No." refer to entries on the Chapter 11 Cases' docket; (10) subject to the provisions of any contract, certificate of incorporation, by-laws, or similar constituent document, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules, and, to the extent applicable, the laws of the State of Delaware; (11) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (12) all references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

### C.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.  Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

### D.    Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan or the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III herein.

### A.    Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Plan Administrator (after consultation with the Purchaser and the Liquidating Trustee), each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for Statutory Fees) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which (i) an order allowing such Administrative Claim becomes a Final Order or (ii) the Plan Administrator (after consultation with the Purchaser), on the one hand, and the Holder of the Administrative Claim, on the other hand, consensually agree to the Allowed amount of such claim, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court. For the avoidance of doubt, Holders of Allowed Administrative Claims (other than Professional Fee Claims of the Committee in excess of the Professional Fee Reserve on account of the Committee's Retained Professionals) will be paid either from the Wind-Down Amount, the Admin Claims Reserve, or otherwise by the Purchaser pursuant to the APA and will have no recourse against the Liquidating Trust Assets.

Except for Professional Fee Claims and Postpetition Tax Claims, all applications seeking allowance and payment of Administrative Claims must be Filed and served on the Debtors, the Liquidating Trustee, the Plan Administrator, the Purchaser, and the U.S. Trustee, and each of their respective counsel, no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date.  The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim.  For the avoidance of doubt, Holders of Postpetition Tax Claims are not

required to File an application seeking allowance and payment of such Postpetition Tax Claims, as such Postpetition Tax Claims shall be paid in the ordinary course of business.

Objection to such applications must be Filed and served on the requesting party by the Claims Objection Deadline.  After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

**Except as otherwise provided in Sections II.B or II.D herein, Holders of Administrative Claims that do not File and serve an application for payment of administrative expense requesting the allowance of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, the Estates, the Liquidating Trustee, the Plan Administrator, the Purchaser or their respective assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date, without further order of this Court, unless otherwise ordered by the Court.**

The Debtors or the Plan Administrator (on behalf of the Post-Effective Date Debtors), as applicable, in consultation with the Purchaser and the Liquidating Trustee, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval.  The Debtors or the Plan Administrator, in consultation with the Purchaser and the Liquidating Trustee, may also choose to object to any Administrative Claim no later than the Claims Objection Deadline, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.  Unless the Debtors or the Plan Administrator object to a timely filed and properly served Administrative Claim, such Administrative Claim shall be deemed Allowed in the amount requested.  In the event that the Debtors or the Plan Administrator (or any other party with standing) objects to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Claim should be allowed and, if so, in what amount; *provided that* the Plan Administrator shall not settle or otherwise resolve any Administrative Claim for an amount exceeding $100,000 absent consent from the Liquidating Trustee or order from the Bankruptcy Court.

## B.  Professional Fee Claims and Administrative Claims of OCPs

### 1.  Final Fee Applications

All requests for payment of Professional Fee Claims by Retained Professionals for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Retained Professionals after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  Unless otherwise agreed to by the Debtors and the Retained Professional, the Liquidating Trustee shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the applicable Professional Fee Reserve within five (5) Business Days of the entry of such Final Order.

### 2. Administrative Claims of OCPs

All requests for payment of OCP Claims shall be made pursuant to the OCP Order. To the extent any OCP Claims have not been paid pursuant to the OCP Order on or before the Effective Date, the amount of OCP Claims shall be paid in Cash from the Wind-Down Amount to such OCPs by the Debtors or the Plan Administrator (as applicable) as soon as reasonably practicable after such OCP Claim is authorized in accordance with the OCP Order.

### 3. Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Plan Administrator or the Liquidating Trustee, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the Chapter 11 Cases that are incurred after the Effective Date; provided that the Purchaser shall pay for all fees and expenses of the Plan Administrator and its professionals pursuant to the terms of the Plan Administrator Agreement and the Transition Services Agreement (subject to Section IV.H.5 hereof) and the Liquidating Trustee's sole source of Cash for the payment of the fees and expenses of the Liquidating Trustee and its professionals shall be the Liquidating Trust Assets. Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 of the Bankruptcy Code or that OCPs comply with the OCP Order in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trustee or Plan Administrator (as applicable) may employ and pay any retained professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

### 4. Professional Fee Reserve Amount

Unless otherwise agreed to prior to the Effective Date by the Debtors and the Retained Professional, to receive payment for (a) unbilled fees and expenses incurred through the Effective Date and (b) unbilled fees and expenses anticipated to be incurred post-Effective Date in connection with the preparation of the Retained Professionals' Professional Fee Claims, the Retained Professionals shall estimate such amounts and shall deliver such estimates to the Debtors and their counsel no later than three (3) Business Days prior to the Effective Date; provided that such estimates shall not be binding with respect to the fees and expenses of such Retained Professional. If a Retained Professional does not provide an estimate of its unbilled fees and expenses, the Debtors may estimate such unbilled fees and expenses of the Retained Professional. The total amount so estimated hereunder as of the Effective Date shall comprise the "Professional Fee Reserve Amount," which shall be consistent in all respects with the Global Settlement and capped as set forth in the Approved Budget. The Retained Professionals may submit invoices for their post-Effective Date services, including with respect to the preparation of Professional Fee Claims, to the Plan Administrator or the Liquidating Trustee, as applicable, in the ordinary course of business.

5. <u>Professional Fee Reserves</u>

On or before the Effective Date, the Debtors shall fund the Professional Fee Reserves with proceeds from loans made under the DIP Facility, Cash from the Carve-Out Accounts and Cash on hand equal to the Professional Fee Reserves Amount, which may be held in trust accounts maintained at Verita Global LLC. Separate Professional Fee Reserves shall be established to reserve funds for Professional Fee Claims held by the Debtors' Retained Professionals and Professional Fee Claims held by the Committee's Retained Professionals. Following the Effective Date, the Liquidating Trustee is charged with administering the Professional Fee Reserve as to the Retained Professionals of the Committee and the Plan Administrator is charged with administering the Professional Fee Reserve as to the Retained Professionals of the Debtors. The Liquidating Trustee or the Plan Administrator, as applicable, shall open a new and segregated account at an FDIC-insured institution to effectuate this purpose. The Debtors' obligations with respect to Professional Fee Claims shall not be limited by, nor deemed limited to the balance of funds held in, the applicable Professional Fee Reserves.

The Professional Fee Reserves and amounts funded therein are, and shall continue to be, maintained in trust solely for each Retained Professional separately on a per-Retained Professional basis. Amounts funded to the Professional Fee Reserves shall be capped as set forth in the Approved Budget; provided that nothing set forth herein shall impose a cap on any Retained Professional's ability to assert a Professional Fee Claim. Such funds shall not be considered property of the Debtors, their Estates, the Post-Effective Date Debtors, or the Liquidating Trust (as applicable); provided, however, that the Purchaser shall have a reversionary interest in any Cash remaining in the Professional Fee Reserve on behalf of the Debtors' Retained Professionals after payment in full of all Allowed Professional Fee Claims of the Debtors' Retained Professionals without any further notice, action, or order of the Bankruptcy Court, and the Plan Administrator shall promptly transfer such remaining Cash to the Purchaser after payment in full of all Allowed Professional Fee Claims; provided further that any Cash remaining in the Professional Fee Reserve on account of Committee Retained Professionals after payment in full of all Allowed Professional Fee Claims of the Committee's Retained Professionals shall be transferred to the Liquidating Trust.

C. **Priority Tax Claims**

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim, on the one hand, and the Debtors or the Plan Administrator (after consultation with the Purchaser), on the other hand, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

To the extent the 1042 Withholding Tax Claims and/or the New York State Sales Tax Claims have not been assumed by the Purchaser pursuant to the terms of the APA, such Claims shall receive regular monthly installment payments, commencing on the first day of the month following the Effective Date of the Plan, (i) having a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim; (ii) over a period ending not later than five (5) years after the Petition Date; and (iii) in a manner that is not less favorable than the most favored

non-priority unsecured claim provided for by this Plan. The Purchaser shall make such installment payments to the Holder of such Claims as and when required by the Plan.

### D. U.S. Trustee Statutory Fees

All Statutory Fees that are due and owing as of the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Post-Effective Date Debtors and the Liquidating Trustee, as applicable, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. After the Effective Date, the Post-Effective Date Debtors and the Liquidating Trustee, as applicable, shall pay any and all applicable Statutory Fees in full in Cash when due and payable. The Post-Effective Date Debtors and the Liquidating Trustee, as applicable, shall remain obligated to pay any applicable Statutory Fees until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be treated as providing any release under the Plan. Statutory Fees are Allowed. The U.S. Trustee shall not be required to file any proof of claim or any request for administrative expense for Statutory Fees. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. Classification of Claims and Interests

The Plan constitutes a separate chapter 11 plan for each Debtor. Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims and Interests are placed in Classes for each of the applicable Debtors. Unless otherwise specified, the Plan consolidates Claims against all Debtors solely for purposes of voting, Confirmation, and distribution but not for any other purpose. The Debtors reserve the right to seek (in consultation with the Committee) substantive consolidation of the Debtors in connection with Confirmation, but substantive consolidation shall not affect the legal and organizational structure of the Post-Effective Date Debtors or their separate corporate existences and will not change the distributions to Holders of Claims compared to what is proposed in the Plan.

Except for the Claims addressed in Article II herein, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

33735561.8

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Prepetition Deficiency Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 7 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.  Treatment of Claims and Interests**

    1.  Class 1 – Secured Claims

        (a)  *Classification*:  Class 1 consists of all Secured Claims against the Debtors.

        (b)  *Treatment:*  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Secured Claim and the Debtors (with the consent of the Committee to the extent a resolved Claim exceeds $100,000.00) or the Plan Administrator (with the consent of (y) the Purchaser and (z) the Liquidating Trustee to the extent a resolved Claim exceeds $100,000.00) agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Secured Claim, each Holder thereof will receive:  (i) payment in full in Cash; *provided* that to the extent any Claim asserted by a TVT Party is determined to be an Allowed Secured Claim, such TVT Party shall only be entitled to recover its *pro rata* share of the F&B Reserve; (ii) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Claim; or (iv) such other treatment rendering such Claim Unimpaired.  For the avoidance of doubt, any portion of the F&B Reserve that is not needed to satisfy Allowed Claims or Interests (if any) held by the TVT Parties shall be considered an asset purchased by the Purchaser pursuant to the Sale.

        (c)  *Voting*:  Class 1 is Unimpaired, and Holders of Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Secured Claims are not entitled to vote to accept or reject the Plan.

2.  <u>Class 2 – Other Priority Claims</u>

(a)  *Classification*:  Class 2 consists of all Other Priority Claims against the Debtors.

(b)  *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors (with the consent of the Committee to the extent a resolved Claim exceeds $100,000.00) or the Plan Administrator (with the consent of the Liquidating Trustee to the extent a resolved Claim exceeds $100,000.00), agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Priority Claim, each Holder thereof will receive: (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired.

(c)  *Voting*:  Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.  <u>Class 3 – Prepetition Deficiency Claims</u>

(a)  *Classification*:  Class 3 consists of all Prepetition Deficiency Claims against the Debtors.

(b)  *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Prepetition Deficiency Claim and the Debtors (with the consent of the Committee) or the Plan Administrator (with the consent of the Liquidating Trustee), as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Prepetition Deficiency Claim, each Holder thereof will be treated as follows:

a.  to the extent an Allowed Prepetition Deficiency Claim arises from the Prepetition Term Loan Financing Agreement, the Holder of such Prepetition Deficiency Claim shall waive any right to distribution on account of such Claim on the Effective Date, *provided that* any waiver of a Holder's right to payment on account of a Prepetition Deficiency Claim shall not impair such Holder's ability to exercise any rights in connection with these Chapter 11 Cases as an interested party.

(c)  *Voting*:  Class 3 is Impaired, and Holders of the Prepetition Deficiency Claims are entitled to vote to accept or reject the Plan.

4.  <u>Class 4 – General Unsecured Claims</u>

(a)  *Classification*:  Class 4 consists of all General Unsecured Claims against the Debtors, including any Claim of the Prepetition LiveStyle Secured Parties pursuant to the Prepetition LiveStyle Note.

(b)    *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors (with the consent of the Committee to the extent a resolved Claim exceeds $100,000.00) or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed General Unsecured Claim, each Holder thereof will receive its *pro rata* share of the Liquidating Trust Distributable Proceeds.

(c)    *Voting*: Class 4 is Impaired, and Holders of the General Unsecured Claims are entitled to vote to accept or reject the Plan

5. Class 5 – Subordinated Claims

(a)    *Classification*: Class 5 consists of all Subordinated Claims against the Debtors.

(b)    *Treatment*: On the Effective Date, all Subordinated Claims shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Claims shall not receive any distributions under the Plan on account of such Claim.

(c)    *Voting*: Class 5 is Impaired, and Holders of Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 5 Subordinated Claims are not entitled to vote to accept or reject the Plan.

6. Class 6 – Intercompany Claims

(a)    *Classification*: Class 6 consists of all Intercompany Claims.

(b)    *Treatment:* On the Effective Date, all Intercompany Claims shall in the Debtors' (with the consent of the Committee) or the Liquidating Trustee's sole discretion be: (1) reinstated; (2) canceled, released, waived, and discharged; or (3) otherwise settled.

(c)    *Voting*: Class 6 consists of Intercompany Claims that are reinstated are conclusively presumed to accept the Plan pursuant to Section 1126(f) and Holders of Intercompany Claims that are canceled, released and discharged under the Plan without any distribution are deemed to reject pursuant to Section 1126(g) of the Bankruptcy Code, respectively. Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Intercompany Claims.

7. Class 7 – Interests

(a) *Classification*: Class 7 consists of all Interests in the Debtors.

(b)    *Treatment*: On the Effective Date, all Interests shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Interests shall not receive any distributions under the Plan on account of such Interest.

33735561.8

(c)    *Voting*:    Class 7 is Impaired, and Holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 7 Interests are not entitled to vote to accept or reject the Plan.

### C.  Special Provisions Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors', the Plan Administrator's, or the Liquidating Trustee's rights with respect to any Claims, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

### D.  Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Combined Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### E.  Controversy Concerning Impairment

If a controversy arises as to whether any Claim or any Class of Claims or Interests is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Combined Confirmation Hearing.

### F.  Subordination of Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable) reserves the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### G.  Reservation of Rights Regarding Claims

Except as otherwise provided in the Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtors', the Plan Administrator's, the Liquidating Trustee's or the Purchaser's respective rights and defenses, whether legal or equitable, with respect to any Claim, including, without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

### H.  Postpetition Interest on Claims

Except as required by applicable bankruptcy law or otherwise expressly provided in the Plan, postpetition interest, penalties, or other fees will not accrue or be payable on account of any Claim.

### I.  Insurance

Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.  Sources of Consideration for Plan Distributions

Subject in all respects to the provisions of the Plan concerning the Professional Fee Reserve, (i) the Purchaser shall be responsible for payment of all Allowed Claims that constitute Assumed Liabilities, and (b) the Plan Administrator or the Liquidating Trustee (as applicable) shall fund distributions to all other Holders of Allowed Claims under the Plan with Cash on hand on the Effective Date and all other Liquidating Trust Assets.

### B.  Vesting of Assets

On the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, (1) the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in this Plan; and (2) the Plan Administration Assets shall vest in the Post-Effective Date Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in the APA or this Plan.

### C.  Corporate Action

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Plan Administrator or the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, Post-Effective Date Debtors, or any other Entity or Person.  All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates.

33735561.8

### D.    Effectuating Documents; Further Transactions

On and after the Effective Date, the Debtors and the Plan Administrator, on behalf of the Post-Effective Date Debtors, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### E.    Corporate Existence Post-Effective Date

#### 1.    Directors and Officers

Immediately following the occurrence of the Effective Date, (i) the respective boards of directors or managers, as applicable, and the current officers, of each of the Debtors, shall be terminated without cause and such members of the boards of directors or managers, as applicable, and the current officers of the Debtors shall be deemed to have resigned; and (ii) the Plan Administrator shall: (1) be appointed as the sole member of the board of directors or board of managers, as applicable, and the sole officer; (2) succeed as the sole Holder of Interests in each Post-Effective Date Debtor; (3) have the rights and powers of a debtor in possession under Section 1107 of the Bankruptcy Code; (4) be a "representative of the estate" pursuant to Section 1123(b)(3) of the Bankruptcy Code; (5) be vested with the rights, powers, and benefits afforded to a "trustee" under Sections 704 and 1106 of the Bankruptcy Code; and (6) have such other rights, powers, and duties incidental to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary; *provided that* the Plan Administrator will be the sole representative of the Post-Effective Date Debtors with respect to their obligations under the Transition Services Agreement. All certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same without further action by any Entity and without Bankruptcy Court approval.

#### 2.    Organizational Governance Documents

Immediately following the occurrence of the Effective Date, the Post-Effective Date Debtors shall continue to exist in accordance with the laws of their respective states of formation and pursuant to their respective certificates of incorporation, by-laws, articles of formation, operating agreements, and other organizational documents in effect prior to the Effective Date, except to the extent such organizational documents are amended under the Plan, for the limited purposes of liquidating all of the assets of the Estates and making distributions in accordance with the Plan.  The Post-Effective Date Debtors shall exist for the limited purposes of completing the Debtors' obligations under the Transition Services Agreement and fully administering the Estates. Promptly after performing all duties and functions that are consistent with the implementation of the Plan, the Confirmation Order, the Asset Purchase Agreement, and the Plan Administrator Agreement, the Plan Administrator shall be authorized and directed to take all actions to wind down, dissolve, or liquidate the Post-Effective Date Debtors without the necessity for any other or further actions to be taken by or on behalf of such dissolving Post-Effective Date Debtors or any payments to be made in connection therewith, other than the filing of a certificate of dissolution

33735561.8

with the appropriate governmental authorities, pursuant to Section 303 of the Delaware General Corporation Law codified at title 8 of the Delaware Code or other applicable state law.

The certificate and articles of in-corporation and by-laws of each Post-Effective Date Debtor shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, a provision (a) prohibiting the issuance of non-voting equity securities under Section 1123(a)(6) of the Bankruptcy Code and (b) limiting the activities of the Post-Effective Date Debtors to matters authorized under the Plan.

### F.   *Intentionally Omitted*

### G.   **Cancellation of Old Securities and Interests**

Except as otherwise provided in the APA or this Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, including, without limitation, Prepetition Term Loan Claims, shall be deemed canceled and surrendered without any need for further action or approval of the Bankruptcy Court or any Holder or other Entity and the obligations of the Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full with the distributions, if any, provided hereunder, and the Prepetition Term Loan Agent shall be released from all duties thereunder; *provided that* notwithstanding entry of the Confirmation Order or consummation of the Plan, any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of: (a) allowing Holders to receive distributions under the Plan; (b) allowing the Administrative Agent to enforce its rights, claims, and interests vis-à-vis any parties other than the Debtors or the Post-Effective Date Debtors; (c) allowing the Prepetition Term Loan Agent to make the distributions on account of Prepetition Term Loan Claims in accordance with the Plan (if any), as applicable; (d) allowing the Prepetition Term Loan Lenders or the Prepetition Term Loan Agent to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including, but not limited, to enforce the respective obligations owed to such parties under the Plan; and (e) permitting the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders to perform any functions that are necessary to effectuate the foregoing; provided, further, that except as provided herein, the preceding proviso shall not affect the settlement and release of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, as applicable, or result in any expense or liability to the Debtors. Notwithstanding anything to the contrary in the Plan or the Confirmation Order, any Liens and Claims held by the Prepetition Secured Parties on or against the F&B Reserve are hereby expressly preserved.

### H.   **Plan Administrator**

#### 1.   Appointment of the Plan Administrator

From and after the Effective Date, the Plan Administrator shall serve pursuant to the Plan Administrator Agreement and the Plan, until the resignation or discharge of the Plan Administrator and the appointment of a successor Plan Administrator in accordance with the Plan Administrator Agreement and the Plan. The Debtors shall include, in the Plan Supplement, the information set forth in Sections 1129(a)(4) and (5) of the Bankruptcy Code and the identity of Person or Entity

who the Debtors have selected as the Plan Administrator.  The appointment of the Plan Administrator shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date.  The Plan Administrator shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan and the Plan Administrator Agreement.

### 2.   The Plan Administrator Agreement

Prior to or on the Effective Date, the Debtors shall execute a Plan Administrator Agreement in substantially the same form as set forth in the Plan Supplement.  Any nonmaterial modifications to the Plan Administrator Agreement made by the Debtors prior to the Effective Date are hereby ratified.  The Plan Administrator Agreement will contain provisions permitting the amendment or modification of the Plan Administrator Agreement as necessary to implement the provisions of the Plan.

### 3.   Rights, Powers, and Duties of the Debtors and the Plan Administrator

On and after the Effective Date, so long as the Transition Services Agreement has not terminated, the Plan Administrator will act for the Post-Effective Date Debtors in the same capacity as applicable to a board of managers or directors, or to officers, subject to the provisions of the Plan.  All certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same without further action by any Entity and without Bankruptcy Court approval.  From and after the Effective Date, the Plan Administrator will be the sole representative of, and will act for, the Post-Effective Date Debtors. Except as otherwise provided in the Plan, the Confirmation Order, or the Plan Administrator Agreement, the Plan Administrator shall be authorized and directed to take all corporate actions consistent with the Plan, the Confirmation Order, the Asset Purchase Agreement, all other applicable orders of the Bankruptcy Court, and the Plan Administrator Agreement, in each case, that are necessary and/or desirable to effectuate the terms of the Plan on behalf of the Post-Effective Date Debtors and use its reasonable best efforts to assist with or effectuate the transition of the Debtors' business, wind down, dissolution, or liquidation of the Post-Effective Date Debtors and any non-Debtor Affiliates. In taking such actions, the Plan Administrator may control and exercise authority over any Assets, vested in the Post-Effective Date Debtors pursuant to the Plan, over the acquisition, management, and disposition thereof and over the management and conduct of the affairs of the Post-Effective Date Debtors. Such rights, powers and duties, which shall be exercisable by the Plan Administrator on behalf of the Post-Effective Date Debtors pursuant to the Plan and the Plan Administrator Agreement, shall include, among others, (a) in consultation with the Liquidating Trustee and Purchaser, making distributions to Holders of Allowed Claims and Interests as provided for in the Plan (except for Allowed General Unsecured Claims), (b) administering, reconciling and resolving (i) Administrative Claims, Secured Claims, Priority Tax Claims, and Claims or Interests asserted by the TVT Parties and (ii) in consultation with the Liquidating Trustee and Purchaser, Secured Claims and Other Priority Claims, (c) filing tax returns and paying taxes, (d) performing all obligations required of the Post-Effective Date Debtors under the Transition Services Agreement, (e) commencing and pursuing the Retained Causes of Action constituting Plan Administration Assets and managing and administering any proceeds thereof, (f) paying any Statutory Fees, (g) defending the Debtors in any pending or future litigation, (h) selling, abandoning, or otherwise fully administering the Estates, (i) closing the Chapter 11 Cases, (j) dissolving the Post-Effective

Date Debtors, and (k) performing other duties and functions that are consistent with the implementation of the Plan.

In pursuing any Retained Causes of Action transferred to the Plan Administrator, on behalf of the Post-Effective Date Debtors, under this Plan, the Plan Administrator shall be deemed a trustee for all purposes under Section 108 of the Bankruptcy Code, shall be entitled to the tolling provisions provided under Section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the Retained Causes of Action transferred to the Plan Administrator, on behalf of the Post-Effective Date Debtors, may be brought under Section 546 of the Bankruptcy Code.

Notwithstanding anything to the contrary herein, the Plan Administrator shall, following the Effective Date and in consultation with the Liquidating Trustee, liquidate and pay Allowed Administrative Claims, Priority Tax Claims, Secured Claims, or Other Priority Claims for which the Wind-Down Amount was established to address on behalf of the Debtors and Post-Effective Date Debtors (the "Post-Effective Date Claims Reconciliation Process").

4.  Transition Services

On the Effective Date and continuing until the end of the term under the Transition Services Agreement, the Plan Administrator shall serve as an appointed agent of the designated operator or as the operator of the Debtors in accordance with the Plan for the purpose of fulfilling any obligations thereunder.

5.  Compensation of the Plan Administrator

The Plan Administrator shall be compensated by the Prepetition Term Loan Lenders or the Purchaser pursuant to the terms of the Plan Administrator Agreement; *provided that* the Plan Administrator shall be permitted to use the Wind-Down Amount, which has been allocated and approved pursuant to the Approved Budget, to pay the Plan Administrator's fees and expenses as set forth in the Plan Administrator Agreement; *provided further* that the Plan Administrator's fees payable from the Wind-Down Amount shall not exceed $500,000, and any Plan Administrator fees in excess of $500,000 shall be paid by the Purchaser.

6.  Insurance for the Plan Administrator

The Plan Administrator shall be authorized to obtain and pay for out of the Wind-Down Amount all reasonably necessary insurance coverage for itself, its agents, representatives, employees or independent contractors, and the Post-Effective Date Debtors, including, but not limited to, coverage with respect to (a) any property that is or may in the future become the property of the Debtors or their Estates and (b) the liabilities, duties and obligations of the Plan Administrator and its agents, representatives, employees or independent contractors under the Plan Administrator Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may remain in effect for a reasonable period of time as determined by the Plan Administrator after the termination of the Plan Administrator Agreement.

33735561.8

7.   Termination of the Plan Administrator's Responsibilities and Obligations

Upon the conclusion of the Plan Administrator's obligations regarding the Post-Effective Date Claims Reconciliation Process *and* the expiration of the term of the Transition Services Agreement, the Plan Administrator shall (a) remit any remaining balance of the Wind-Down Amount to the Liquidating Trust for distribution pursuant to the terms of this Plan and the Liquidating Trust Agreement, the amount of which shall be netted against the next Future Liquidating Trust Contribution; and (b) remit any funds in the F&B Reserve not used to pay Allowed Claims and Interests of the TVT Parties (if any) to the Purchaser.

Upon the conclusion of the Plan Administrator's obligations under the Post-Effective Date Claims Reconciliation Process and the expiration of the term of the Transition Services Agreement, the Plan Administrator may, upon written notice to the Liquidating Trustee, resign. Upon the Plan Administrator's resignation, the Plan Administrator shall be discharged and all obligations and responsibilities of the Plan Administrator hereunder shall become obligations of the Liquidating Trustee who shall then, for purposes of administering this Plan, be deemed the Plan Administrator; *provided, however* that the Liquidating Trustee's sole source of compensation for its work as Liquidating Trustee and Plan Administrator shall be from the Liquidating Trust Assets, and the Purchaser shall have no further obligation to pay the Plan Administrator's fees and expenses.

**I.**     **Liquidating Trust**

1.   Establishment of the Liquidating Trust

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement, which will be Filed with the Bankruptcy Court as part of the Plan Supplement. Upon establishment of the Liquidating Trust, title to the Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of the Debtors or any managers, employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.

The Liquidating Trust Interests to be distributed to Liquidating Trust Beneficiaries under this Plan shall not constitute "securities" under applicable securities laws and shall represent only the right to receive distributions from the Liquidating Trust in accordance with the Liquidating Trust Agreement. The Liquidating Trust Interests shall be non-transferable, except as required by law or as provided in the Liquidating Trust Agreement.

2.   Transfer of the Liquidating Trust Assets

Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Liquidating Trust shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided for in this Plan. Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust. For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms herein as a transfer to the Liquidating

Trust Beneficiaries, followed by a transfer of such assets by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

### 3. Liquidating Trust Agreement

On the Effective Date, the Debtors shall execute the Liquidating Trust Agreement in substantially the same form as set forth in the Plan Supplement. Any nonmaterial modifications to the Liquidating Trust Agreement made by the Debtors will be ratified. The Liquidating Trust Agreement will contain provisions permitting the amendment or modification of the Liquidating Trust Agreement necessary to implement the provisions of the Plan.

### 4. Purpose of the Liquidating Trust

The Liquidating Trust shall be established for, among other purposes, the purpose of (a) receiving and holding the Liquidating Trust Assets; (b) administering, disputing, objecting to, compromising, or otherwise resolving all Claims and Interests other than (i) Claims and Interests asserted by the TVT Parties, (ii) Administrative Claims, (iii) Secured Claims, or (iv) Priority Tax Claims; (c) making distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement; (d) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries; and (e) commencing and pursuing the Retained Causes of Action constituting Liquidating Trust Assets and managing and administering any proceeds thereof with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).

The Liquidating Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

### 5. Liquidating Trustee

#### (a) *Appointment of the Liquidating Trustee*

Upon the occurrence of the Effective Date, the Liquidating Trustee shall be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trustee, subject to the terms and conditions of the Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and the Liquidating Trust Agreement, as applicable. The Liquidating Trustee shall owe fiduciary duties solely to the Liquidating Trust Beneficiaries and shall act in the best interests of such Liquidating Trust Beneficiaries in connection with the foregoing and the administration, monetization or distribution of any Liquidating Trust Assets.

33735561.8

(b) *Powers of the Liquidating Trustee*

On and after the Effective Date, the powers and duties of the Liquidating Trustee shall include, inter alia, (i) analyzing Retained Causes of Action constituting Liquidating Trust Assets and determining whether to abandon, pursue, litigate, or settle such claims; (ii) retaining and compensating professionals, employees, and consultants to assist with the administration of the Liquidating Trust; (iii) making distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and Liquidating Trust Agreement; (iv) administering, reconciling and resolving Claims and Interests (other than Claims or Interests asserted by the TVT Parties, Priority Tax Claims, Secured Claims, and Administrative Claims); and (v) performing other duties and functions that are consistent with the purpose of the Liquidating Trust.

In pursuing any Retained Causes of Action constituting Liquidating Trust Assets, the Liquidating Trustee shall be deemed a trustee for all purposes under Section 108 of the Bankruptcy Code, shall be entitled to the tolling provisions provided under Section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the Retained Causes of Action constituting Liquidating Trust Assets may be brought under Section 546 of the Bankruptcy Code.

(c) *Compensation of the Liquidating Trustee*

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in this Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement.  The Liquidating Trustee (and any professionals retained by the Liquidating Trustee) shall not be required to File a fee application to receive compensation.

(d) *Retention and Payment of Professionals*

The Liquidating Trustee shall have the right, without Bankruptcy Court approval, to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidating Trustee in the performance of his, her, or its duties, and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement.

6.    Insurance

The Liquidating Trustee shall be authorized to obtain and pay for out of the Liquidating Trust Assets all reasonably necessary insurance coverage for itself, its agents, representatives, employees or independent contractors, including, but not limited to, coverage with respect to (a) any property that is or may in the future become the property of the Debtors or their Estates and (b) the liabilities, duties and obligations of the Liquidating Trustee and its agents, representatives, employees or independent contractors under the Liquidating Trust Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may remain in effect for a reasonable period of time as determined by the Liquidating Trustee after the termination of the Liquidating Trust Agreement.

33735561.8

7.   Termination of the Liquidating Trust

The Liquidating Trust shall be dissolved upon the earlier of (a) the distribution of all of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries and completion of the Wind-Down Process; and (b) the fifth anniversary of the creation of the Liquidating Trust; *provided* that, if warranted by the facts and circumstances involved in resolving or monetizing any Liquidating Trust Assets or the Liquidating Trust is still the holder of the CVR, upon application to, and if approved by, the Bankruptcy Court upon a finding that such extension is necessary or appropriate for purposes of resolving or monetizing such Liquidating Trust Assets and distributing the proceeds to Liquidating Trust Beneficiaries or that the Liquidating Trust is still the holder of the CVR, the term of the Liquidating Trust may be extended by the Liquidating Trustee for a specified term in accordance with applicable tax laws and regulations. This application must be filed with the Bankruptcy Court no earlier than six (6) months before the termination date of the Liquidating Trust.

## J.    U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust

For all U.S. federal and applicable state, local, and non-U.S. income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the Liquidating Trust, other than the Disputed Claims Reserve, as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684 and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust. Moreover, for all U.S. federal and applicable state, local, and non-U.S. income tax purposes, it is intended that, with respect to Liquidating Trust Beneficiaries, (1) such beneficiaries be treated as if they had (i) received a distribution from the Estates of an undivided interest in the applicable trust Assets (to the extent of the value of their respective share in the applicable Assets) and (ii) subsequently contributed such undivided interest to the applicable trust in exchange for an interest in the applicable trust, and (2) the such beneficiaries be treated as the grantors of the applicable and as deemed owners of the applicable and applicable trust Assets. The terms of the Liquidating Trust Agreement shall be consistent with the foregoing tax treatment and no party hereto shall take any position inconsistent herewith.

For all U.S. federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, the Liquidating Trust Beneficiaries, and the Plan Administrator) shall treat any Disputed Claims Reserve as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9.  Following the funding of the Liquidating Trust, the Debtors shall provide a "§ 1.468B-9 Statement" in respect of the Disputed Claims Reserve to the Liquidating Trustee or the Plan Administrator, as applicable, in accordance with Treasury Regulation section 1.468B-9(g).

The Liquidating Trustee shall be responsible for filing all tax returns for the Liquidating Trust, the Liquidating Trust Assets, and the Debtors. The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets. The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all returns filed

for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trust and the Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust and the Plan Administrator (as applicable) shall be subject to any such withholding and reporting requirements. The Liquidating Trustee and the Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the Holder of an Allowed Claim complete and deliver to the Liquidating Trustee or the Plan Administrator, as applicable, the appropriate IRS Form W-8 or IRS Form W-9, as applicable.  Notwithstanding any other provision of the Plan, (i) each Holder of an Allowed Claim that is to receive a distribution from the Liquidating Trust or the Plan Administrator shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such distribution and (ii) no distribution shall be made to or on behalf of such Holder under the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee or the Plan Administrator, as applicable, to allow it to comply with its tax withholding and reporting requirements.  All Holders of Allowed General Unsecured Claims are deemed to have agreed to use the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes.

## K.    Preservation of Causes of Action

Except as otherwise provided in Article IX herein or in any contract, instrument, release, or agreement entered into in connection with the Plan or the Sale (including the Asset Purchase Agreement), in accordance with section 1123(b) of the Bankruptcy Code, (a)(i) all Retained Causes of Action constituting Liquidating Trust Assets are preserved and transferred to the Liquidating Trust on the Effective Date and (ii) all Retained Causes of Action constituting Plan Administration Assets are preserved and transferred to the Post-Effective Date Debtors on the Effective Date, and (b) all Causes of Action constituting Acquired Assets are preserved and transferred to the Purchaser (to the extent not previously transferred).

In pursuing any Causes of Action sold to the Purchaser under the APA, the Purchaser shall be deemed a trustee for all purposes under Section 108 of the Bankruptcy Code, shall be entitled to the tolling provisions provided under Section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the Causes of Action sold to the Purchaser under the APA may be brought under Section 546 of the Bankruptcy Code.

## L.    Corporate Action

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Plan Administrator or the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, Post-Effective Date Debtors, or any other Entity or Person.  All matters

provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates.

### M.    Books and Records

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtors and the Estates that were not sold and transferred in connection with the Sale and that relate to the operation and business of the Liquidating Trust; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or beneficial.

### N.    Plan Transactions

On the Effective Date or as soon reasonably practicable thereafter, the Plan Administrator and the Liquidating Trustee (as applicable) may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including, but not limited to, (1) the execution and delivery of appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of any appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, duty, or obligation on terms consistent with this Plan; (3) the filing of appropriate documents with the appropriate governmental authorities pursuant to applicable law; and (4) any and all other actions that the Plan Administrator or the Liquidating Trustee (as applicable) determine are necessary or appropriate to effectuate the Plan.

### O.    Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Plan Administrator and the Liquidating Trustee (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan.  The Plan Administrator, the Liquidating Trustee, all Holders of Claims receiving distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### P.    Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Section 1129 or Section 1191 of this title, may not be taxed under any law imposing a stamp tax or similar tax.  Such exemption specifically applies, without limitation, to the transfer of the Liquidating Trust Assets to the Liquidating Trust.

### Q.  **Sale Order**

Notwithstanding anything to the contrary herein, nothing in this Plan shall affect, impair or supersede the Sale Order, which remains in full force and effect and governs in the event of any inconsistency with the Plan with respect to the Sale.

### R.  **Authority to Act**

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

### S.  **No Revesting of Liquidating Trust Assets or Plan Administration Assets**

No Liquidating Trust Asset will revest in the Debtors on or after the date such asset is transferred to the Liquidating Trust but will vest upon such transfer in the Liquidating Trust to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement; *provided that* all Plan Administration Assets shall vest with the Post-Effective Date Debtors upon the Effective Date. No Plan Administration Asset will revest in the Debtors on or after the date such asset is transferred to the Post-Effective Date Debtors but will vest upon such transfer to the Post-Effective Date Debtors to be administered by the Plan Administrator in accordance with the Plan and the Plan Administrator Agreement.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES

### A.  **General Treatment**

On the Effective Date, except as otherwise provided herein (which exclusion includes the Insurance Policies) or the APA, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date or identified on the Schedule of Assumed Executory Contracts and Unexpired Leases.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

33735561.8

B. **Rejection Damages Claims**

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Post-Effective Date Debtors, the Liquidating Trustee, the Liquidating Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent within thirty (30) days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable. Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Section III.B.3 herein.

C. **Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, the Post-Effective Date Debtors, or the Liquidating Trustee (as applicable) under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors, the Post-Effective Date Debtors, and the Liquidating Trustee (as applicable) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity or continued maintenance obligations.

D. **Insurance Preservation**

Nothing in the Plan, the Confirmation Order, the Plan Administrator Agreement, or the Liquidating Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder, or the terms and conditions thereof, or diminishes or impairs the enforceability of the Insurance Policies. All of the Debtors' rights and their Estates' rights under any Insurance Policy to which the Debtors and/or the Debtors' Estates may be beneficiaries shall vest with the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries and all of the beneficiaries of such policies.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A. **Distribution Record Date**

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests. The Disbursing Agent shall have no obligation to recognize any

ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Plan Administrator or the Liquidating Trustee (as applicable); *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder and the Debtors, the Plan Administrator, or Liquidating Trustee (as applicable) shall have no obligation to determine alternative or current addresses.

### B. Withholdings

The Liquidating Trustee and/or the Plan Administrator, as applicable, shall (1) withhold, deduct, and pay over to the appropriate governmental authority any amount required to be withheld under tax laws with respect to any distribution pursuant to the Liquidating Trust Agreement or the Plan Administrator Agreement, as applicable; and (2) comply with any reporting requirements imposed by any federal, state, local, or foreign taxing authority. The Liquidating Trustee or the Plan Administrator, as applicable, may withhold all or the appropriate portion of any distribution due to any Liquidating Trust Beneficiary until such time as such Liquidating Trust Beneficiary provides the necessary information (*i.e.*, IRS Forms) to comply with any withholding requirements of any governmental authority. Any tax withheld shall be treated as distributed and received by the applicable beneficiary for all purposes of the Liquidating Trust Agreement and this Plan. If a Liquidating Trust Beneficiary fails to provide the information necessary to comply with any withholding requirements of any governmental authority on or before the day that is six (6) months after the Effective Date of the Plan, then such beneficiary's distribution may be treated as unclaimed property in accordance with the Liquidating Trust Agreement and/or the Plan.

### C. Date of Distributions

Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D. Disbursing Agent

Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent on or after the Effective Date. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties. If the Disbursing Agent

33735561.8

is otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidating Trust or the Post-Effective Date Debtors, as applicable.

### E. Powers of Disbursing Agent

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan; (2) make all distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

### F. Surrender of Instruments

As a condition precedent to receiving any distribution under this Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee. Any holder of such instrument or note that fails to (1) surrender the instrument or note; or (2) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent within six (6) months of being entitled to such distribution shall be deemed to have forfeited all rights and claims and may not participate in any distribution hereunder.

### G. IRS Forms

In connection with the Plan, to the extent applicable, the Plan Administrator and the Liquidating Trustee (as applicable) shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator and the Liquidating Trustee (as applicable) shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and the Liquidating Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

As a condition precedent to receiving any distribution under this Plan, each Holder of an Allowed Claim that is entitled to a distribution under the Plan must provide the Liquidating Trustee or the Plan Administrator, as applicable, an executed IRS Form. An Allowed Claim of a Holder that fails to provide an executed IRS Form or provide any other required information to effectuate a distribution within one hundred and eighty (180) days after service (by first class mail) of a formal request for the same by the Liquidating Trustee or the Plan Administrator (as applicable) shall be deemed disallowed and expunged (or, in the case of a Liquidating Trust Beneficiary, shall be treated as unclaimed property in accordance with the Liquidating Trust Agreement) for purposes of distributions under the Plan. For the avoidance of doubt, the Liquidating Trust or the Plan Administrator (as applicable) is not required to follow up with any Holder of an Allowed Claim if they fail to timely provide an executed IRS Form.

33735561.8

### H. Delivery of Distributions

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, who shall transmit such distributions to the applicable Holders of Allowed Claims or their designees.

If any distribution to a Holder of an Allowed Claim (a) is returned as undeliverable for lack of a current address or otherwise; or (b) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within ninety (90) calendar days after the mailing of such distribution, the Liquidating Trustee or the Plan Administrator, as applicable, shall be authorized to cancel such distribution check.  For the avoidance of doubt, the Liquidating Trustee or the Plan Administrator, as applicable, shall have no obligation to determine the correct current address of such Holder.  Thirty (30) calendar days after the cancellation of a distribution check by the Liquidating Trustee or the Plan Administrator, as applicable, (a) the Holder of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, which will revert to the Liquidating Trust or the Plan Administrator, as applicable, for distribution in accordance with the Plan and the Liquidating Trust Agreement or the Plan Administrator Agreement, as applicable; and (b) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further distributions under the Plan.

### I. Manner of Payment

Any distributions to be made by or on behalf of the Plan Administrator or the Liquidating Trustee (as applicable) pursuant to this Plan shall be made by checks drawn on accounts maintained by the Plan Administrator or the Liquidating Trustee (as applicable), or by wire transfer if circumstances justify, at the option of the Plan Administrator or the Liquidating Trustee (as applicable).

### J. Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* on the Petition Date.

### K. Setoffs and Recoupments

The Plan Administrator or the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy and/or non-bankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) calendar days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off against or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim (before any distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors or their Estates may have against the Holder of such Allowed Claim; *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Administrator or the Liquidating Trustee (as applicable) of any such claim the Debtors or their Estates may have against the Holder of such Claim.  The Plan Administrator or the Liquidating Trustee (as applicable) shall

be required to file such notice on the docket of the Chapter 11 Cases. The Holder of such Allowed Claim shall have thirty (30) days to object to such setoff or recoupment. If a Holder of an Allowed Claim objects to the setoff or recoupment within the thirty (30)-day period, such setoff or recoupment shall not be effectuated absent entry of a Final Order by the Court.

## L. **Minimum Distributions**

No payment of Cash in an amount of less than fifty U.S. dollars ($50.00) shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and the Liquidating Trust Agreement.

If the Cash available for the final distribution is less than the cost to distribute such funds, the Liquidating Trustee may donate such funds to the unaffiliated charity of the Liquidating Trustee's choice.

## M. **Allocation of Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a distribution under this Plan includes both principal and accrued but unpaid prepetition interest, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

## N. **Distributions Free and Clear**

Except as otherwise provided in this Plan, any distribution or transfer made under this Plan shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to this Plan.

## O. **Claims Paid or Payable by Third Parties**

### 1. Claims Paid by Third Parties

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than from the Post-Effective Date Debtors and/or the Liquidating Trust (as applicable) on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Post-Effective Date Debtors and/or the Liquidating Trust (as applicable), then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Plan Administrator or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided, however,* that a notice of satisfaction shall be Filed and served reflecting that a particular Claim has been satisfied. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Post-Effective Date Debtors and/or the Liquidating Trust (as applicable) on account of such Claim, such Holder shall, within fourteen (14) Business Days of receipt thereof, repay or return the distribution to the Post-Effective Date Debtors or Liquidating Trust (as applicable), to the extent the Holder's total

recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

### 2.  Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's payment, the applicable portion of such Claim may be expunged (and the Claims Register adjusted accordingly) without an objection to such Claim having to be Filed and without any further action, order, or approval of the Bankruptcy Court.  The Plan Administrator or the Liquidating Trustee (as applicable) shall provide notice of satisfaction to the Holder of such Claim.

### 3.  Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall take into account payments made in accordance with the provisions of any applicable Insurance Policy.  Except as set forth in Article IX herein, nothing in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including the Liquidating Trust, may hold against any other Person or Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## P.  **F&B Reserve and TVT Claims**

To the extent a Claim held by a TVT Party is an Allowed Secured Claim, including after a determination by a Final Order or by agreement of such TVT Party or TVT Parties and the Plan Administrator (after consultation with the Purchaser), the Holder of such Claim shall be paid a *pro rata* share of the Cash held in the F&B Reserve in accordance with Article III of this Plan.  Upon entry of a Final Order determining that all or any portion of a Claim held by a TVT Party is a General Unsecured Claim or is otherwise disallowed, the portion of the F&B Reserve corresponding to the unsecured or disallowed portion of such Claim shall be released from the F&B Reserve and, on or before the next Distribution Date, distributed to the Purchaser.

To the extent the Bankruptcy Court enters a Final Order determining that any of the Cash held in the F&B Reserve is not property of the Debtors' estates and that beneficial title to such Cash belongs to one or more of the TVT Parties, the Plan Administrator shall pay Cash from the F&B Reserve solely to the extent the Court finds that such Cash is not property of the Debtors' Estates.

Notwithstanding anything set forth in this Plan, the Plan Administrator and a TVT Party are authorized to seek approval of a settlement or compromise of the applicable TVT Cause of Action pursuant to Bankruptcy Rule 9019.  For the avoidance of doubt, the Plan Administrator shall have sole authority to prosecute and resolve the TVT Causes of Action, including any objection to Claims or Interests held by the TVT Parties, and shall not be required to consult with the Liquidating Trustee prior to the resolution of such TVT Causes of Action.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS

### A. Allowance of Claims

After the Effective Date, the Liquidating Trustee and the Plan Administrator, as applicable, shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

### B. Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, (a)(i) the Liquidating Trustee shall have the authority to File, withdraw, or litigate to judgment, objections to Filed General Unsecured Claims; and (ii) the Plan Administrator (and the Purchaser) shall have the authority to File, withdraw, or litigate to judgment objections to all Filed Claims or Interests held by the TVT Parties, Administrative Claims, Priority Tax Claims, Other Priority Claims, Secured Claims and any other Claim that, if Allowed, would constitute an Assumed Liability; provided that the Plan Administrator shall consult with the Liquidating Trustee (and the Purchaser) regarding any objections to Filed Other Priority Claims, Filed Priority Tax Claims, or Secured Claims; (b) the Plan Administrator and the Liquidating Trustee, as applicable, shall have the authority to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; provided that the Plan Administrator shall consult with the Purchaser and the Liquidating Trustee before settling an objection to a Filed Administrative Claim, Filed Other Priority Claim, or Filed Secured Claim; and (c) the Plan Administrator and the Liquidating Trustee, as applicable, shall administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C. Estimation of Claims

Before or after the Effective Date, the Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable) may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Liquidating Trustee (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

33735561.8

### D.  Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or assumed by the Purchaser in the Sale, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed following notice filed on the docket (*i.e.*, a notice of satisfaction of claims) in the Bankruptcy Court of such adjustment or expungement.

### E.  Time to File Objections to Claims

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claims Objection Deadline (as such date may be extended upon entry of an order by the Bankruptcy Court).

### F.  Disallowance of Late Claims

Except as provided in the Plan or otherwise agreed to by the Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable), any Holder of a Claim Filed, via proof of claim, after the Bar Date shall not receive any distributions on account of such Claims to the extent such Claim has been disallowed and expunged upon objection on notice to the affected Claimant.

### G.  Disputed Claims

All Claims held by Persons or Entities against whom or which the Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable) has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan. A Claim deemed Disputed pursuant to this Section VII.G shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable) from such Holder have been paid.

### H.  No Distributions Pending Allowance

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

### I.  Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan; *provided that* payment to Holders of Allowed Secured Claims of the TVT Parties shall be paid from the F&B Reserve, and any other Allowed Claims (if any) of the TVT Parties shall be paid in accordance with the terms of the Plan. As soon as practicable after the date that the order

or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim.  No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.  **Conditions Precedent**

The occurrence of the Effective Date of this Plan is subject to each of the following conditions precedent.

1.  The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.  The Confirmation Order shall have been entered and shall be in full force and effect.

3.  The Global Settlement Approval Order shall have been entered and shall have become a Final Order.

4.  The closing of the Sale shall have occurred.

5.  There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the transactions contemplated by this Plan from being consummated.

6.  The Professional Fee Reserves shall have been fully funded pursuant to the terms of this Plan.

7.  All actions, documents and agreements necessary to implement the Plan shall have been effected, executed and/or tendered for delivery.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

8.  The Plan Administrator Agreement shall have been executed.

9.  The Liquidating Trust Agreement shall have been executed.

10.  The Transition Services Agreement shall have been executed.

11.  The Liquidating Trustee shall have been appointed and assumed its rights and responsibilities under the Plan and the Liquidating Trust Agreement, as applicable.

12.     The Plan Administrator shall have been appointed and assumed its rights and responsibilities under the Plan and the Plan Administrator Agreement, as applicable.

13.     The Contingent Value Right shall have been issued by Purchaser Holdings to the Debtors and the Debtors shall have transferred the Contingent Value Right to the Liquidating Trust.

14.     The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and any transaction contemplated hereby that are required by law, regulation, or order.

15.     The Wind-Down Amount shall have been fully funded pursuant to the terms of this Plan.

## B.  Waiver of Conditions

Unless otherwise specifically provided for in this Plan, the conditions set forth in Section VIII.A may only be waived in whole or in part by the Debtors with the written consent of the Purchaser and the Committee.

## C.  Effect of Vacatur of the Confirmation Order

If the Confirmation Order is vacated: (1) the Plan will be null and void in all respects, including with respect to the release of Claims and distributions for Allowed Claims; and (2) nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights, including any claims or defenses, of any party in interest.

## D.  Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code.

## ARTICLE IX.
## RELEASE, INJUNCTION, AND RELATED PROVISIONS

## A.  Releases by the Debtors

**As of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code and for good and valuable consideration, each Released Party is deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Debtors and their Estates from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their Estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their Estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, or relating to, or in any manner arising from, in whole or in part, the Debtors (including the**

management, ownership, or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sale, the DIP Orders and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided, however*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Order or the APA; (3) any obligations under or in respect of the Global Settlement; or (4) the Retained Causes of Action.

B. **Releases by Holders of Claims**

As of the Effective Date,  except as otherwise provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release each Released Party from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their Estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their Estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sale, or agreement or document created or entered into in connection with the Sale, the DIP Orders and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement,

event, or other occurrence or omission taking place on or before the Effective Date; *provided*, *however*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Order or the APA; or (3) any obligations under or in respect of the Global Settlement.  Notwithstanding anything to the contrary herein, nothing in the Plan shall be construed as authorizing or implementing releases of any Retained Causes of Action or Causes of Action sold to the Purchaser in connection with the Sale.

## C. Exculpation

Except as otherwise specifically provided in the Plan, to the maximum extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim related to any act or omission arising from the Petition Date to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Debtors' in-court restructuring efforts, the Disclosure Statement, documents and pleadings related to the Sale, the DIP Orders and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place between the Petition Date and the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person, but in all respects such Entities shall be entitled to reasonably rely upon the written advice of counsel with respect to their duties and responsibilities pursuant to the Plan to the extent permitted under applicable law.

## D. Injunction

In accordance with Bankruptcy Code Section 1141(d)(3), the Plan does not discharge the Debtors. Bankruptcy Code Section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and interests against the Debtors, and Bankruptcy Code Section 1141(a) provides that the Plan, as confirmed, will be binding to the extent provided therein. As such, no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed

under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, Interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to the Plan; (3) were purchased and released by a purchaser in connection with the Sale; (4) are subject to exculpation pursuant to the Plan; or (5) are otherwise discharged, satisfied, stayed, released, or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding, including on account of any claims, Interests, Causes of Action, or liabilities that have been compromised or settled against the Debtors or any Person or Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to, any discharged, released, settled, compromised, or exculpated claims, Interests, Causes of Action, or liabilities, including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Liquidating Trust, the Released Parties, or Exculpated Parties (as applicable): (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or Interests; (d) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff (*i.e.*, a Proof of Claim or motion asserting such rights), and notwithstanding an indication of a Claim or Interest or otherwise that such Person or Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests released, exculpated, or settled pursuant to the Plan.

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan by the Debtors, the Liquidating Trustee, and their respective affiliates, employees, advisors, officers and directors, or agents.

### E.  Waiver of Statutory Limitations on Releases

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER ARTICLE IX OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST  IN THEIR FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND  TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS  FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY  HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN ARTICLE IX OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

### F.  Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

If any Holder of a Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Liquidating Trustee that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidating Trustee shall be entitled to make any such filings or recordings on such Holder's behalf.

### ARTICLE X.
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases, the Sale, the Confirmation Order, the Plan Supplement, and the Plan

33735561.8

pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction over, among other items, each of the following:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2.      Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

3.      Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan.

4.      Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which one or more Debtors is party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date.

6.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters relating to the Retained Causes of Action.

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Person's or Entity's obligations incurred in connection with the Plan.

10.     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of the Plan.

11.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

33735561.8

12.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13.     Determine any other matters that may arise in connection with or related to the APA or related Sale documents, the Disclosure Statement, the Plan, the Plan Supplement, and the Confirmation Order.

14.     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan.

15.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

16.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

17.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order.

18.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors, the Liquidating Trustee on behalf of the Liquidating Trust, or the Plan Administrator on behalf of the Post-Effective Date Debtors (as applicable) for an expedited determination of tax under section 505(b) of the Bankruptcy Code.

19.     To recover all assets of the Debtors and property of the Estates, wherever located.

20.     To consider requests for extensions of the term of the Liquidating Trust or the Post-Effective Date Debtors as provided herein.

21.     Enter an order or final decree concluding or closing the Chapter 11 Cases.

22.     Enforce all orders previously entered by the Bankruptcy Court.

23.     Hear any other matter over which the Bankruptcy Court has jurisdiction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.  Modification of the Plan

Subject to the limitations contained in the Plan, the Debtors (in consultation with the Committee) reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules (1) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a); and (2) after the entry of the Confirmation Order, the Debtors may, upon order of

the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019(a), or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided that all such modifications and amendments shall be consistent in all material respects with the Global Settlement.

## B. <u>Other Amendments</u>

The Debtors (in consultation with the Committee) may make appropriate non-material, technical adjustments and modifications to this Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

## C. <u>Effect of Confirmation on Modifications</u>

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

## D. <u>Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date</u>

Subject to the conditions to the Effective Date, the Debtors (in consultation with the Committee) reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent plans of reorganization or liquidation. If the Debtors revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan, the Plan Supplement, the Confirmation Order, or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Person or Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

## A. <u>Debtors' Operation from Combined Confirmation Hearing Through Effective Date</u>

During the period from the Combined Confirmation Hearing through and until the Effective Date, the Debtors shall continue to operate as debtors-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

33735561.8

### B.  Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trustee, the Plan Administrator, all Holders of Claims against and Interests in the Debtors (regardless of whether any such Holder has voted or failed to vote to accept or reject this Plan and regardless of whether any such Holder is entitled to receive any distribution under this Plan), all Persons or Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Person or Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest. All parties in interest are bound to comply and not interfere with the performance of the terms and conditions of the Plan and the other Global Settlement Definitive Documents and the Liquidating Trustee shall be entitled to enforce the rights of the Committee under the Global Settlement.

### C.  Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and that are consistent with the Global Settlement in all material respects.  The Debtors, the Liquidating Trustee, the Plan Administrator, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### D.  Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### E.  Reservation of Rights

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### F.  Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Person or Entity.

### G.  Determination of Tax Liabilities

As of the Effective Date, the Liquidating Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Estates, the Liquidating Trust, and the Post-Effective Date Debtors; *provided*, *however*, that the Liquidating Trustee shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtors (which Interests shall be cancelled pursuant to this Plan), but shall provide such Holders with any information reasonably required to prepare such forms.  The Debtors and the Liquidating Trustee (as applicable) shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Estates, the Liquidating Trust, or the Post-Effective Date Debtors for any tax incurred during the administration of the Chapter 11 Cases.

### H.  Dissolution of the Committee

On the Effective Date, the Committee will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases; *provided*, *however*, that, after the Effective Date, the Committee will continue to exist solely with respect to (1) any applications for Professional Fee Claims or expense reimbursements for members of the Committee, including preparing, objecting to, defending, and attending any hearing with respect to the same; (2) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or Confirmation Order; and (3) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way the treatment of the Holders of General Unsecured Claims, including, but not limited to, any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of the Plan, the Plan Supplement, or the Confirmation Order.  The Committee's Retained Professionals shall not be entitled to assert any Professional Fee Claims for services rendered after the Effective Date except in connection with the matters identified in clauses (1) through (3).  Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

### I.  Notices

In order for all notices, requests, and demands to or upon the Debtors, the Liquidating Trustee, or the Plan Administrator, as the case may be, to be effective, such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties and their counsel:

33735561.8

| Debtors | Counsel to the Debtors |
|---|---|
| AGDP Holding Inc. *et al.*<br>140 Stewart Ave<br>Brooklyn, NY 11237<br>Attn.: General Counsel | **Young Conaway Stargatt & Taylor, LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attention: Edmon L. Morton, Esq.; Sean M. Beach, Esq.;<br>and S. Alexander Faris, Esq.<br>Email: emorton@ycst.com; sbeach@ycst.com;<br>afaris@ycst.com |
| **Plan Administrator** | **Counsel to the Plan Administrator** |
| To be included in the Plan Supplement | To be included in the Plan Supplement |
| **Liquidating Trustee** | **Counsel to the Liquidating Trustee** |
| **Dundon Advisers LLC**<br>Ten Bank Street, Suite 1100<br>White Plains, New York 10606<br>Attention: Joshua Nahas; Christopher Podesfinski<br>Email: jn@dundon.com; cp@dundon.com;<br>agdp@dundon.com | **Morris James LLP**<br>Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attention: Eric J. Monzo; Siena B. Cerra<br>Email: emonzo@morrisjames.com;<br>scerra@morrisjames.com<br><br>-and-<br><br>**Orrick, Herrington & Sutcliffe LLP**<br>51 West 52nd Street<br>New York, NY 10019<br>Attention: Mark Franke; Brandon Batzel<br>Email:   mfranke@orrick.com; bbatzel@orrick.com |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Persons or Entities that Filed such renewed requests.

## J.    Term of Injunctions or Stays

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-Confirmation jurisdiction to modify the injunctions and stays under this Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Estates; and (2) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (b) the date that the Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

### K.  **Entire Agreement**

On the Effective Date, except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### L.  **Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents shall be made available upon written request to Debtors' counsel, the Liquidating Trustee's counsel, or the Plan Administrator's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website.

Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.  The documents in the Plan Supplement are considered an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

### M. **Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

### N.  **Non-Severability of Plan Provision Upon Confirmation**

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, the Liquidating Trustee, or the Plan Administrator  (as applicable) in accordance with the terms hereof; and (3) non-severable and mutually dependent.

## O.  **Closing of the Chapter 11 Cases**

After the full administration of the Chapter 11 Cases, the Liquidating Trustee shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

Dated: January 15, 2026

Respectfully submitted,

By: Gary Richards
Chief Executive Officer
AGDP Holding Inc. *et al.*

**Exhibit B**

**Blackline**

*Solicitation Version*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGDP HOLDING INC., *et al.*,[1] | Case No. 25-11446 (MFW) |
| Debtors. | (Jointly Administered) |

## AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR AGDP HOLDING INC. AND ITS AFFILIATED DEBTORS

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Edmon L. Morton (No. 3856)
Sean M. Beach (No. 4070)
Kenneth J. Enos (No. 4544)
S. Alexander Faris (No. 6278)
Sarah Gawrysiak (No. 7403)
Evan S. Saruk (No. 7452)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801

Date:   ~~November 5~~January 15, ~~2025~~2026
        Wilmington, Delaware

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are AGDP Holding Inc. (6504); Avant Gardner, LLC (6504); AG Management Pool LLC (9962); EZ Festivals LLC (8854); Made Event LLC (6272); and Reynard Productions, LLC (5431). The Debtors' service address is 140 Stewart Ave, Brooklyn, NY 11237, Attn: General Counsel.



32211662.8



# TABLE OF CONTENTS

ARTICLE I.   DEFINED TERMS AND RULES OF INTERPRETATION ................................. 1

   A.      Definitions ................................................................................................................ 1

   B.      Rules of Interpretation ............................................................................................ 15

   C.      Computation of Time ......................................................................................... ~~15~~16

   D.      Controlling Document ........................................................................................ ~~15~~16

ARTICLE II.   ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY
FEES ........................................................................................................................................ 16

   A.      Administrative Claims ............................................................................................ 16

   B.      Professional Fee Claims and Administrative Claims of OCPs ................................ 17

     1.    Final Fee Applications ............................................................................................ 17

     2.    Administrative Claims of OCPs ......................................................................... ~~17~~18

     3.    Post-Effective Date Fees and Expenses ............................................................. ~~17~~18

     4.    Professional Fee Reserve Amount ........................................................................... 18

     5.    Professional Fee Reserves .................................................................................. ~~18~~19

   C.      Priority Tax Claims ................................................................................................ 19

   D.      U.S. Trustee Statutory Fees ............................................................................... ~~19~~20

ARTICLE III.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........ 20

   A.      Classification of Claims and Interests .................................................................... 20

   B.      Treatment of Claims and Interests ......................................................................... 21

     1.    Class 1 – Secured Claims ........................................................................................ 21

     2.    Class 2 – Other Priority Claims ......................................................................... ~~21~~22

     3.    Class 3 – Prepetition Deficiency Claims ................................................................ 22

     4.    Class 4 – General Unsecured Claims ...................................................................... 22

     5.    Class 5 – Subordinated Claims .......................................................................... ~~22~~23

     6.    Class 6 – Intercompany Claims .............................................................................. 23

     7.    Class 7 – Interests .................................................................................................... 23

   C.      Special Provisions Governing Unimpaired Claims ........................................... ~~23~~24

   D.      Elimination of Vacant Classes ........................................................................... ~~23~~24

   E.      Controversy Concerning Impairment ..................................................................... 24

   F.      Subordination of Claims ......................................................................................... 24

   G.      Reservation of Rights Regarding Claims ................................................................ 24

   H.      Postpetition Interest on Claims .......................................................................... ~~24~~25



**TABLE OF CONTENTS**
(continued)

| | | | |
|---|---|---|---|
| I. | Insurance | | 2425 |
| ARTICLE IV. | MEANS FOR IMPLEMENTATION OF THE PLAN | | 2425 |
| A. | Sources of Consideration for Plan Distributions | | 2425 |
| B. | Vesting of Assets | | 25 |
| C. | Corporate Action | | 25 |
| D. | Effectuating Documents; Further Transactions | | 2526 |
| E. | Corporate Existence Post-Effective Date | | 2526 |
| 1. | Directors and Officers | | 2526 |
| 2. | Organizational Governance Documents | | 26 |
| F. | Settlement of Claims and Interests | 26 | **Error! Bookmark not defined.** |
| G. | Cancellation of Old Securities and Interests | | 2627 |
| H. | Plan Administrator | | 27 |
| 1. | Appointment of the Plan Administrator | | 27 |
| 2. | The Plan Administrator Agreement | | 2728 |
| 3. | Rights, Powers, and Duties of the Debtors and the Plan Administrator | | 2728 |
| 4. | Transition Services | | 2829 |
| 5. | Compensation of the Plan Administrator | | 2829 |
| 6. | Insurance for the Plan Administrator | | 29 |
| 7. | Termination of the Plan Administrator's Responsibilities and Obligations | | 2930 |
| I. | Liquidating Trust | | 2930 |
| 1. | Establishment of the Liquidating Trust | | 2930 |
| 2. | Transfer of the Liquidating Trust Assets | | 30 |
| 3. | Liquidating Trust Agreement | | 3031 |
| 4. | Purpose of the Liquidating Trust | | 3031 |
| 5. | Liquidating Trustee | | 31 |
| 6. | Insurance | | 32 |
| 7. | Termination of the Liquidating Trust | | 3233 |
| J. | U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust | | 3233 |
| K. | Preservation of Causes of Action | | 3334 |
| L. | Corporate Action | | 34 |
| M. | Books and Records | | 3435 |



**TABLE OF CONTENTS**
(continued)

| | | |
|---|---|---|
| N. | Plan Transactions | 3435 |
| O. | Effectuating Documents and Further Transactions | 35 |
| P. | Section 1146 Exemption from Certain Taxes and Fees | 35 |
| Q. | Sale Order | 3536 |
| R. | Authority to Act | 3536 |
| S. | No Revesting of Liquidating Trust Assets or Plan Administration Assets | 3536 |

ARTICLE V.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
AND INSURANCE POLICIES ..... 36

| | | |
|---|---|---|
| A. | General Treatment | 36 |
| B. | Rejection Damages Claims | 3637 |
| C. | Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases 3637 | |
| D. | Insurance Preservation | 37 |

ARTICLE VI.   PROVISIONS GOVERNING DISTRIBUTIONS ..... 37

| | | |
|---|---|---|
| A. | Distribution Record Date | 37 |
| B. | Withholdings | 3738 |
| C. | Date of Distributions | 38 |
| D. | Disbursing Agent | 38 |
| E. | Powers of Disbursing Agent | 3839 |
| F. | Surrender of Instruments | 3839 |
| G. | IRS Forms | 3839 |
| H. | Delivery of Distributions | 3940 |
| I. | Manner of Payment | 3940 |
| J. | Foreign Currency Exchange Rate | 40 |
| K. | Setoffs and Recoupments | 40 |
| L. | Minimum Distributions | 4041 |
| M. | Allocation of Distributions Between Principal and Interest | 4041 |
| N. | Distributions Free and Clear | 4041 |
| O. | Claims Paid or Payable by Third Parties | 41 |
| 1. | Claims Paid by Third Parties | 41 |
| 2. | Claims Payable by Third Parties | 4142 |
| 3. | Applicability of Insurance Policies | 4142 |



**TABLE OF CONTENTS**
(continued)

P.    F&B Reserve and TVT Claims .................................................... 4142

ARTICLE VII.   PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED
CLAIMS .................................................................................................. 4243

A.    Allowance of Claims ........................................................... 4243

B.    Claims Administration Responsibilities ............................. 4243

C.    Estimation of Claims ........................................................... 43

D.    Adjustment to Claims Without Objection ........................... 4344

E.    Time to File Objections to Claims ...................................... 4344

F.    Disallowance of Late Claims .............................................. 4344

G.    Disputed Claims .................................................................. 4344

H.    No Distributions Pending Allowance .................................. 44

I.    Distributions After Allowance ............................................ 44

ARTICLE VIII.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ............... 4445

A.    Conditions Precedent .......................................................... 4445

B.    Waiver of Conditions .......................................................... 4546

C.    Effect of Vacatur of the Confirmation Order ..................... 4546

D.    Votes Solicited in Good Faith ............................................. 46

ARTICLE IX.   RELEASE, INJUNCTION, AND RELATED PROVISIONS ................ 46

A.    Releases by the Debtors ...................................................... 46

B.    Releases by Holders of Claims ........................................... 4647

C.    Exculpation ......................................................................... 4748

D.    Injunction ............................................................................ 48

E.    Waiver of Statutory Limitations on Releases ..................... 4950

F.    Release of Liens .................................................................. 4950

ARTICLE X.   RETENTION OF JURISDICTION ................................................... 50

ARTICLE XI.   MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ... 52

A.    Modification of the Plan ..................................................... 52

B.    Other Amendments .............................................................. 5253

C.    Effect of Confirmation on Modifications ........................... 5253

D.    Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date .......
5253



**TABLE OF CONTENTS**
(continued)

ARTICLE XII.   MISCELLANEOUS PROVISIONS ........................................................... 53

    A.    Debtors' Operation from Combined Confirmation Hearing Through Effective Date ... 53

    B.    Immediate Binding Effect ........................................................... ~~53~~54

    C.    Additional Documents ........................................................... ~~53~~54

    D.    Substantial Consummation ........................................................... ~~53~~54

    E.    Reservation of Rights ........................................................... ~~53~~54

    F.    Successors and Assigns ........................................................... 54

    G.    Determination of Tax Liabilities ........................................................... ~~54~~55

    H.    Dissolution of the Committee ........................................................... ~~54~~55

    I.    Notices ........................................................... ~~54~~55

    J.    Term of Injunctions or Stays ........................................................... ~~55~~56

    K.    Entire Agreement ........................................................... ~~56~~57

    L.    Plan Supplement Exhibits ........................................................... ~~56~~57

    M.    Governing Law ........................................................... ~~56~~57

    N.    Non-Severability of Plan Provision Upon Confirmation ........................................................... ~~56~~57

    O.    Closing of the Chapter 11 Cases ........................................................... ~~57~~58


~~33735561.1~~
33735561.8

## INTRODUCTION

AGDP Holding Inc. and its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, propose this joint chapter 11 plan (this "Plan") under section 1121 of the Bankruptcy Code. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Supplemental agreements and documents referenced in this Plan and the Disclosure Statement are available for review on both the Bankruptcy Court's docket and on the Debtors' case information website: https://veritaglobal.net/agdp/.

Reference is made to the Disclosure Statement filed contemporaneously with the Plan for a discussion of the Debtors' history, business, historical financial information, and liquidation analysis, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN**.

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Definitions

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1.    "1042 Withholding Tax Claims" means the withholding tax Claims reportable by the Debtors on Forms 1042, 1042-S, and 1042-T and asserted by the Internal Revenue Service, which are entitled to priority under section 507(a)(8)(C) of the Bankruptcy Code, and the liability for which either (i) has been assumed by the Purchaser pursuant to the APA or (ii) will be paid pursuant to the treatment identified in Section II.C hereof.

2.    "Administrative Claim(s)" means a Claim entitled to priority under section 503(b) or 507(a)(2) of the Bankruptcy Code, including (a) actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and the ongoing liquidation of the Debtors, (b) Professional Fee Claims (to the extent Allowed by the Bankruptcy Court), and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

3.    "Administrative Claims Bar Date" means the deadline for Filing all requests for allowance and payment of Administrative Claims (other than requests for payment of Professional Fee Claims by Retained Professionals or requests for payment of claims pursuant to section 503(b)(9) of the Bankruptcy Code), which shall be thirty (30) days after the Effective Date.



4.      "Admin Claims Reserve" means the escrow established by Purchaser pursuant to the Sale, funded in ~~the~~an amount not to exceed $100,000, which shall be used to pay any Allowed Administrative Claims that are not yet known at the closing of the Sale.

5.      "Affiliate" means any "affiliate," as defined in section 101(2) of the Bankruptcy Code.

6.      "Allowed" means, with respect to any Claim, except as otherwise provided in the Plan:  (a) a Claim that is evidenced by a Filed Proof of Claim (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been Filed in an amount different than the amount listed on such Schedules; (c) a Claim Allowed pursuant to the Bankruptcy Code, the Plan, or a Final Order of the Bankruptcy Court; or (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority of the Liquidating Trustee or the Plan Administrator, as applicable; *provided* that with respect to a Claim described in clause (a) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such Claim, no objection to the allowance thereof has been Filed by the Liquidating Trustee, the Plan Administrator, or any other party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection was so Filed and the Claim shall have been Allowed by a Final Order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtors to the Liquidating Trust or the Plan Administrator, as applicable.  "Allow" and "Allowing" shall have correlative meanings.

7.      "APA" or "Asset Purchase Agreement" means that certain Amended and Restated Asset Purchase Agreement between the Debtors, as Sellers, and AG Acquisition 1 LLC, as Purchaser, dated October __, 2025, ~~or such other asset purchase agreement approved by the Court as representing the highest and best offer for the Debtors' assets~~(as amended, modified or supplemented prior to the Effective Date), and which shall be consistent in all material respects with the Global Settlement.

8.      "Avoidance Actions" means any and all avoidance or equitable subordination or recovery actions under sections 105(a), 502(d), 510, 542 through 551 and 553 of, and otherwise under, the Bankruptcy Code or any similar federal, state or common law Causes of Action that the Debtors, the Estates, or other appropriate parties in interest have asserted or may assert; *provided*, *however*, any and all such actions against parties whom the Debtors and/or the Purchaser have waived such actions (including pursuant to the Global Settlement) shall not constitute "Avoidance Actions" for purposes hereof.

9.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

10.     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.



11.    "Bankruptcy Rule(s)" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code.

12.    "Bar Date" means, as applicable, the Administrative Claims Bar Date, and any other date or dates established by an order of the Bankruptcy Court by which Proofs of Claim must be Filed, including the general bar date and bar date for Governmental Units, each as set forth in the *Order (I) Establishing Bar Dates for Filing Proofs of Prepetition Claims, Including Section 503(b)(9) Claims; (II) Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* [D.I. 131]. Notwithstanding the foregoing, the Professional Fee Claims shall be Filed in accordance with Section II.B herein and shall not otherwise be subject to the Bar Date.

13.    "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

14.    "Carve-Out Accounts" has the meaning set forth in the DIP Orders.

15.    "Cash" means cash and cash equivalents in legal tender of the United States of America.

16.    "Causes of Action" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws). For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Action or state law fraudulent transfer claim.

17.    "Chapter 11 Cases" means the chapter 11 cases Filed by the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

18.    "Claim(s)" means any "claim", as defined in section 101(5) of the Bankruptcy Code, against the Debtors or the Estates.

19.    "Claims Objection Deadline" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other deadline as may be fixed by an order of the Bankruptcy Court for objecting to such Claims.



20.    "Claims Register" means the official register of Claims against and Interests in the Debtors maintained by the Notice and Claims Agent.

21.    "Class" means a category of Claims or Interests as established by and set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

22.    "Combined Confirmation Hearing" means the hearing(s) conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to (a) consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code and (b) final approval of the adequacy of the disclosures contained in the Disclosure Statement, as such hearing(s) may be adjourned or continued from time to time.

23.    "Committee" means the Official Committee of Unsecured Creditors, appointed by the U.S. Trustee in the Chapter 11 Cases on August 21, 2025 [D.I. 77], as it may be reconstituted from time to time.

24.    "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court.

25.    "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

26.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27.    "Contingent Value Right" or "CVR" means the ~~Class B Units~~contingent value rights to be issued by Holdings to the Debtors at the closing of the Sale pursuant to the Contingent Value Rights Agreement and the Global Settlement for transfer to the Liquidating Trust upon the Effective Date of the Plan. ~~The rights attendant to the Contingent Value Right shall be as set for in that certain Amended and Restated Limited Liability Agreement of AG Holdings LLC, a Delaware limited liability company, dated _____, 2025.~~

28.    "Contingent Value Rights Agreement" means the Contingent Value Rights Agreement between Holdings and the Debtors dated _____, 2026, which shall be consistent with the Global Settlement in all material respects.

29.    ~~28.~~"Cure" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed or assumed and assigned by the Debtors.

30.    ~~29.~~"D&O Policies" means, collectively, the Debtors' director and officer liability insurance policies along with any other applicable directors and officers liability insurance policies, including primary insurance, excess insurance, or tail insurance policies.

31.    ~~30.~~"Debtors" means AGDP Holding Inc. and each of its affiliates in the Chapter 11 Cases as debtors and debtors-in-possession.



32.    31. "Debtor Releases" means the releases set forth in Section IX.A herein.

33.    32. "DIP Agent" means Alter Domus (US) LLC, as administrative agent and collateral agent under the DIP Loan Documents.

34.    33. "DIP Facility" means the senior secured super-priority term loan facility approved by the DIP Orders.

35.    34. "DIP Lenders" means the lenders party to the DIP Term Loan Note.

36.    35. "DIP Loan Documents" means the DIP Term Loan Note and any other related agreements, documents, guarantees, security agreements, or pledge agreements, including the DIP Orders, by and among the Debtors, the DIP Agent, and the DIP Lenders.

36. "DIP Term Loan Note" means that certain *Debtor in Possession Term Promissory Note* by and among AGDP Holding Inc. and Avant Gardner, LLC, as the lead borrowers, each of the other Debtors party thereto as a borrower and/or a guarantor, as applicable, the DIP Agent, and the DIP Lenders.

37.    "DIP Orders" means, collectively, (a)(i) the *Interim Order Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [D.I. 46], (ii) the *Second Interim Order Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [D.I. 128]; (iii) the *Third Interim Order Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [D.I. 176]; and (iv) the *Fourth Interim Order Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [D.I. 259] and (b) the *Final Order Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; and (IV) Granting Related Relief* [D.I. 370].



38.    "DIP Term Loan Note" means that certain *Debtor in Possession Term Promissory Note* by and among AGDP Holding Inc. and Avant Gardner, LLC, as the lead borrowers, each of the other Debtors party thereto as a borrower and/or a guarantor, as applicable, the DIP Agent, and the DIP Lenders (as amended, modified or supplemented prior to the Effective Date).

39.    38. "Disbursing Agent" means (a) prior to the Effective Date, the Debtors and (b) on and after the Effective Date, the Liquidating Trustee, the Plan Administrator, or the Entity(ies) selected by the Liquidating Trustee or Plan Administrator, which Entity(ies) may include the Notice and Claims Agent, as applicable, to make or to facilitate distributions pursuant to the Plan.

40.    39. "Disclosure Statement" means the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation for AGDP Holding Inc. and Its Affiliated Debtors*, dated October 15, 2025 (as such may be amended, supplemented, or modified from time to time), including all exhibits and schedules thereto and references therein that relate to this Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

41.    40. "Disclosure Statement Order" means any order entered by the Bankruptcy Court approving the Disclosure Statement (which may be on an interim basis).

42.    41. "Disputed" means, with respect to any Claim, except as otherwise provided herein, a Claim that is not Allowed and not disallowed under the Plan, the Bankruptcy Code, or a Final Order.

43.    42. "Disputed Claims Reserve" means any portion of the Liquidating Trust Assets that is reserved for Disputed Claims.

44.    43. "Distribution Record Date" means the date for determining which Holders of Claims are eligible to receive distributions under the Plan, which date shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

45.    44. "Effective Date" means the date that is the first Business Day after the entry of the Confirmation Order on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent to the occurrence of the Effective Date, as set forth in Section VIII.A herein, have been satisfied or waived in accordance with the Plan; and (c) the Debtors declare the Plan effective by filing a notice on the docket in these Chapter 11 Cases.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

46.    45. "Entity" means any "entity," as defined in section 101(15) of the Bankruptcy Code.

47.    46. "Estates" mean the bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

48.    47. "Exculpated Party" or "Exculpated Parties" means, in each case in its capacity as such, (a) the Debtors; (b) the Estates; (c) the Committee and its members, in their capacity as such; (d) the Retained Professionals; and (e) each of the preceding parties' respective Related



~~Parties, in each case,~~the Debtors' current and former directors, managers, and officers who served as a fiduciary of the Debtors' Estates at any time between the Petition Date and the Effective Date of this Plan.

49. ~~48.~~ "Executory Contract(s)" means a contract to which one or more Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

50. ~~49.~~ "F&B Reserve" means the segregated bank account created in accordance with the Final Cash Management Order to hold funds in which the TVT Parties assert an interest. Those funds include: (i) the Debtors' Cash in their bank accounts as of the Petition Date that was segregated and restricted pursuant to the Cash Management Order; and (ii) the food and beverage sales received from the Debtors' third-party payment processor, Billfold, during these Chapter 11 Cases and prior to the closing of the Sale.

51. ~~50.~~ "File" or "Filed" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or in the case of a Proof of Claim, the Notice and Claims Agent.

52. ~~51.~~ "Final Cash Management Order" means that certain *Final Order (I) Authorizing and Directing the Banks and Payment Processors to Cease Any Holds on, or Redirection of, Cash or Receivables of the Debtors, (II) Authorizing the Debtors to (a) Continue Use of Their Existing Cash Management System, Bank Accounts, and Business Forms,(b) Continue Intercompany Transactions, (c) Pay Related Obligations, and (D) Pay and Honor Processing Obligations, (III) Waiving Certain Investment and Deposit Guidelines, and (IV) Granting Related Relief* [D.I. 124].

53. ~~52.~~ "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

54. ~~53.~~ "Future Liquidating Trust Contributions" means payments from the Purchaser, pursuant to the Global Settlement, each in the amount of $750,000, which amounts shall be paid on each anniversary of the closing of the Sale beginning on the first anniversary of the closing and ending on the third anniversary of the closing of such Sale except to the extent

that such amounts are required to be paid earlier pursuant to the Global Settlement; provided that to the extent a Disputed Administrative Claim is disallowed in whole or in part, the corresponding amount deposited in the Admin Claims Reserve shall be released to the Liquidating Trust and  netted against the next Future Liquidating Trust Contribution pursuant to Section VII.H hereof.

55. 54. "General Unsecured Claim(s)" means any unsecured, non-priority Claim against the Debtors or the Estates.

56. 55. "Global Settlement" means the global settlement by and among (i) the Debtors, (ii) the Committee, and (iii) Axar Capital Management LP (on behalf of itself and its affiliates), which settlement was approved by the Court pursuant to the Global Settlement Approval Order.

57. 56. "Global Settlement Approval Order" means the order of the Court dated October 24, 2025 [D.I. 372] approving the Global Settlement.

58. 57. "Global Settlement Definitive Documents" shall mean, (a) this Plan, (b) the Disclosure Statement, (c) the Global Settlement Approval Order, (d) the Liquidating Trust Agreement, (e) the APA, (f) the Contingent Value Rights Agreement, (g) the limited liability company agreements and any other organizational documents of Holdings and the Purchaser and Holdings, (gh) the Transition Services Agreement, (hi) the Plan Administrator Agreement, and (ij) such other documents related to, or necessary or appropriate to enter into in connection with, the Global Settlement, in each case, as they may be validly amended, supplemented or modified from time to time, and which documents shall be consistent in all respects with the Global Settlement and in form and substance acceptable to the Global Settlement Parties.

59. 58. "Global Settlement Parties" means the parties to the Global Settlement: (i) the Debtors, (ii) the Committee, and (iii) Axar Capital Management LP (on behalf of itself and its affiliates, including the Purchaser and Holdings).

60. 59. "Governmental Unit(s)" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

61. 60. "Holder(s)" means a Person or Entity, as applicable, holding a Claim against, or an Interest in, the Debtors, as the context requires.

62. 61. "Holdings" means AG Acquisition Holdings LLC.

63. 62. "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

64. 63. "Initial Liquidating Trust Contribution" means $1,050,000 funded by the Purchaser to the Debtors upon the closing of the Sale pursuant to the Global Settlement, which amount shall be held in trust by the Debtors pursuant to the APA pending the occurrence of the Effective Date, at which time the Initial Liquidating Trust Contribution shall be transferred to the Liquidating Trust.



65. 64. "Insurance Policies" means all insurance policies that have been issued at any time to or provide coverage to the Debtors and all agreements, documents, or instruments relating thereto, including the D&O Policies.

66. 65. "Intercompany Claims" means a Claim held by a Debtor against another Debtor.

67. 66. "Interest(s)" means any equity securities (as defined in section 101(16) of the Bankruptcy Code) of any Debtor, including all classes of shares, common stock, preferred stock, partnership interests, membership interests and any other equity or ownership interests, as well as redemption rights, earn-out rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, including arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor, or any other instrument evidencing any direct or indirect fixed or contingent ownership interest in any Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in any Debtor, whether vested or unvested, including without limitation, equity or equity-based incentives, grants, or other instruments issued, granted, or promised to be granted to current or former employees, directors, officers, or contractors of any Debtor, to acquire any such interest in any Debtor, in each case outstanding as of the Petition Date.

68. 67. "Interim Compensation Order" means that certain order of the Bankruptcy Court entered on September 2, 2025 [D.I. 132].

69. 68. "IRS Form" means IRS Form W-9, W-8BEN, any acceptable substitute, or any other tax information form that the Disbursing Agent may require from a Holder of a Claim for a distribution under the Plan.

70. 69. "Law" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

71. 70. "Leased Premises" means the non-residential real property lease by the Debtors in connection with their business operations.

72. 71. "Lien" means a "lien," as defined in section 101(37) of the Bankruptcy Code.

73. 72. "Liquidating Trust" means the liquidating trust established on the Effective Date pursuant to Article IV herein and the Liquidating Trust Agreement.

74. 73. "Liquidating Trust Agreement" means the agreement, filed with the Plan Supplement and executed as of the Effective Date, that establishes and governs the Liquidating Trust, and which shall be consistent in all material respects with the Global Settlement.

75. 74. "Liquidating Trust Assets" means (a) the Initial Liquidating Trust Contribution; (b) the CVR; (c) the Future Liquidating Trust Contributions; (d) the Retained Causes of Action designated as Liquidating Trust Assets in the Plan Supplement; (e) the balance



of the Wind-Down Amount after the conclusion of the Wind-Down Process; (f) any unused portion of the Admin Claims Reserve; (g) any Cash remaining in the Professional Fee Reserve on account of Committee's Retained Professionals after payment in full of all Allowed Professional Fee Claims of the Committee's Retained Professionals; and (h) all of the Debtors' other tangible and intangible assets not sold to the Purchaser in connection with the Sale or not otherwise included in the Plan Administration Assets.

76. 75. "Liquidating Trust Beneficiaries" means all Holders of Liquidating Trust Interests.

77. 76. "Liquidating Trust Distributable Proceeds" means the Liquidating Trust Assets or the Cash proceeds thereof; *minus* Liquidating Trust Expenses.

78. 77. "Liquidating Trust Expenses" means any fees and expenses incurred by the Liquidating Trustee (including, but not limited to, the compensation of the Liquidating Trustee and the reasonable fees and expenses of professionals or other persons retained by the Liquidating Trustee) in connection with the administration of the Liquidating Trust.

79. 78. "Liquidating Trust Interests" means all of the interests in the Liquidating Trust allocable to applicable Holders of Allowed Claims (in accordance with the Plan and the Liquidating Trust Agreement, which shall not include Allowed Secured Claims or Interests (if any) held by any Party). For the avoidance of doubt, the Liquidating Trust Interests shall represent only the right to receive distributions from the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement and shall not be deemed "securities" or "equity interests" in any Debtor or in any successor entity, and shall not grant any ownership, control or governance rights in the Liquidating Trust or in any entity whose assets are held by the Liquidating Trust.

80. 79. "Liquidating Trustee" means Dundon Advisers LLC, solely in its capacity as the trustee of, and to administer, the Liquidating Trust, and take such other actions as may be authorized under the Liquidating Trust Agreement, along with any successor thereto duly appointed under the Liquidating Trust Agreement.

81. 80. "New York State Sales Tax Claims" means the sales tax Claims asserted by the State of New York, which are entitled to priority under section 507(a)(8)(C) of the Bankruptcy Code, and the liability for which either (i) has been assumed by the Purchaser pursuant to the APA or (ii) will be paid pursuant to the treatment identified in Section II.C hereof.

82. 81. "Notice and Claims Agent" means Kurtzman Carson Consultants, LLC d/b/a Verita Global in its capacity as noticing, claims, and solicitation agent for the Debtors.

83. 82. "OCP" means an ordinary course professional whose retention and compensation has been authorized by the Bankruptcy Court in accordance with the OCP Order.

84. 83. "OCP Claim" means the Claim of any OCP for payment of professional fees and expenses in accordance with the OCP Order and the Approved Budget.



85.    84. "OCP Order" means the *Order (I) Authorizing the Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business Effective as of the Petition Date, (II) Waiving Certain Information Requirements of Local Rule 2016-1, and (III) Granting Related Relief* [D.I. 133] entered on September 2, 2025.

86.    85. "Other Priority Claim(s)" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

87.    86. "Person" means a "person," as defined in section 101(41) of the Bankruptcy Code.

88.    87. "Petition Date" means August 4, 2025, which is the date on which each Debtor Filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Cases.

89.    88. "Plan" means this plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

90.    89. "Plan Administrator" means the Person or Persons identified in the Plan Supplement (as determined by the Debtors, and who shall be acceptable to the Purchaser) and appointed on the Effective Date, who will serve as the administrator for the Post-Effective Date Debtors, on and after the Effective Date in accordance with the Plan.

91.    90. "Plan Administrator Agreement" means the agreement between the Debtors and the Plan Administrator specifying the rights, duties and responsibilities of the Plan Administrator under the Plan and providing for the Plan Administrator's retention of the Plan Administrator's professionals, a form of which shall be filed with the Plan Supplement (and which shall be in form and substance acceptable to the Purchaser).

92.    91. "Plan Administration Assets" means (i) the balance of the Wind-Down Amount as of the Effective Date,; (ii) the Admin Claims Reserve, and; (iii) any portion of the F&B Reserve that is not needed to satisfy Allowed Claims or Interests (if any) held by the TVT Parties; and (iv) any Retained Causes of Action designated as Plan Administration Assets in the Plan Supplement.

93.    92. "Plan Supplement" means a supplemental appendix to the Plan consisting of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the terms thereof, the Plan, the Bankruptcy Code and the Bankruptcy Rules), which shall be Filed by the Debtors no later than seven (7) days before the Voting Deadline to accept or reject the Plan or such later date that may be approved by the Bankruptcy Court on notice to parties in interest.  The Plan Supplement shall include, among other things, (a) the identity and compensation of the Liquidating Trustee; (b) the Liquidating Trust Agreement; (c) the identity and compensation of the Plan Administrator; (d) the Plan Administrator Agreement; (e) to the extent known, the



identity of any insider that will be employed or retained by the Liquidating Trustee or the Post-Effective Date Debtors (or Plan Administrator), and the nature of any compensation for such insider; (f) the Schedule of Assumed Executory Contracts and Unexpired Leases; (g) the Transition Services Agreement; (h) the schedule of Retained Causes of Action; and (i) other documentation necessary to effectuate the Plan or that is contemplated by the Plan.  For the avoidance of doubt, the Debtors shall have the right (in consultation with the Committee) to amend, supplement, or modify the Plan Supplement through the Effective Date in accordance with this Plan, the Bankruptcy Code, and the Bankruptcy Rules.

94.   93.  "Post-Effective Date Debtors" means the Debtors as of and following the Effective Date of this Plan.

95.   "Postpetition Tax Claims" means Administrative Claims and other Claims by a Governmental Unit for taxes against any of the Debtors (and for interest and/or penalties related to such taxes) for any tax year or period, which Claims first arose after the Petition Date through and including the Effective Date.

96.   94.  "Prepetition Deficiency Claims" means unsecured Claims held by the Prepetition Term Loan Lenders pursuant to the Prepetition Term Loan Documents.

97.   95.  "Prepetition LiveStyle Note" means that certain Promissory Note, dated as of July 16, 2024 (as amended, restated, supplemented, or otherwise modified from time to time) in the original principal amount of $10,816,000.00.

98.   96.  "Prepetition LiveStyle Secured Parties" means LiveStyle Holdings, Inc., NYC Festivals LLC, NYC Club Event LLC, and SFXE IP LLC and any other lenders under the Prepetition LiveStyle Note.

99.   97.   "Prepetition Term Loan Agent" means Alter Domus (US) LLC, as administrative agent and collateral agent for the Prepetition Term Loan Lenders under the Prepetition Term Loan Facility.

100.   98.  "Prepetition Term Loan Claim" means the Claims held by the Prepetition Term Loan Lenders that were not satisfied pursuant to the Sale.

101.   99.  "Prepetition Term Loan Financing Agreement" means that certain Amended and Restated Financing Agreement, dated as of July 1, 2024, by and among AGDP Holding Inc. and Avant Gardner, LLC, as borrowers; EZ Festivals, LLC, Made Event LLC, and Reynard Productions LLC as guarantors; the Prepetition Term Loan Agent; and the Prepetition Term Loan Lenders (as the same may have been amended, modified or supplemented).

102.   100.  "Prepetition Term Loan Documents" means the Prepetition Term Loan Financing Agreement and all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Term Loan Lenders and the Prepetition Term Loan Agent, including, without limitation, all security agreements, deposit account control agreements (including, without limitation, the Control Agreements (as defined in the DIP Orders)), control agreements, notes, guarantees, mortgages, Uniform Commercial Code



financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto.

103. ~~101.~~ "Prepetition Term Loan Lenders" means the lenders party to the Prepetition Term Loan Financing Agreement.

104. ~~102.~~ "Priority Tax Claim(s)" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

105. ~~103.~~ "Professional Fee Claim(s)" means a Claim by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the ~~Effective~~Confirmation Date under sections 328, 330, 331, or 503(b)(2) of the Bankruptcy Code, as applicable, excluding OCP Claims.

106. ~~104.~~ "Professional Fee Reserves" means the reserves established and funded by the Debtors prior to the Effective Date to satisfy the unpaid Professional Fee Claims of the Retained Professionals, and consistent in all respects with the Global Settlement and as-capped by the Approved Budget.

107. ~~105.~~ "Professional Fee Reserve Amount" has the meaning set forth in Section II.B.4 herein and as capped by the Approved Budget.

108. ~~106.~~ "Proof of Claim" means a proof of Claim Filed against a Debtor in the Chapter 11 Cases.

109. ~~107.~~ "Purchaser" means AG Acquisition 1, LLC.

110. ~~108.~~ "Related Party" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

111. ~~109.~~ "Released Party" means each of, and in each case in its capacity as such: (a) the Debtors' and the Committee's Related Parties solely in their capacity as such; (b) the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders; (c) the DIP Agent and the DIP Lenders; (d) the Related Parties of each of the parties identified in clause (b)-(c) of this definition ~~(but excluding the Prepetition LiveStyle Secured Parties)~~; (e) the members of the Restructuring Committee of the Board of AGDP Holding Inc., Pamela Corrie, Hooman Yazhari, and Vikram Jindal; and (f) Gary Richards and Alec Ifshin; *provided*, *however*, that, except as to those specifically referenced in this definition of "Released Parties," the Debtors' other current


~~33735561.1~~
33735561.8

or former directors and officers shall not be Released Parties with respect to the Retained Causes of Action listed in the Plan Supplement, which the Liquidating Trustee shall be entitled to pursue solely to the extent of any available insurance coverage for such Retained Causes of Action.

112.    110. "Releasing Parties" means, in their capacities as such: (a) the Committee and its members; (b) all Holders of Claims in Class 3; (c) all Holders of Claims in Class 4 who vote to accept the Plan, vote to reject the Plan, or abstain from voting on the Plan and, in each case, "opt in" to the releases set forth in Article IX of the Plan, (d) all Holders of Claims or Interests that (i) are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code, and (ii) after receiving notice, "opt in" to the releases set forth in Article IX of the Plan; (e) all Holders of Claims or Interests that (i) are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code and, (ii) after receiving notice, "opt in" to the releases set forth in Article IX of the Plan; and (f) each Related Party of each Entity in clause (a) through (e), solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (e).

113.    111. "Retained Causes of Action" means the Causes of Action to be retained by the Debtors Plan Administrator or the Liquidating Trust, as applicable and as set forth in the Plan Supplement, and not released pursuant to Section IX.A herein, which Causes of Action shall be identified on a schedule to be filed with the Plan Supplement.

114.    112. "Retained Professional(s)" means a Person or Entity employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code, excluding OCPs.

115.    113. "Sale" means the sale of substantially all the Debtors' assets to the Purchaser.

116.    114. "Sale Order" means the order entered by the Bankruptcy Court authorizing the sale of substantially all the Debtors' assets to the Purchaser pursuant to sections 363 and 365 of the Bankruptcy Code and in accordance with the APA [D.I. 371], and which shall be consistent in all material respects with the Global Settlement.

117.    115. "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors from time to time (with the consent of the Purchaser and in consultation with the Committee) in accordance with the Plan.

118.    116. "Schedules" means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the Bankruptcy Rules, and the official bankruptcy forms, as the same may be amended, modified, or supplemented from time to time.

119.    117. "Secured Claim(s)" means any Claim against a Debtor where, pursuant to section 506 of the Bankruptcy Code, the Claim is secured by a valid, perfected, and enforceable



Lien that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title, or interest of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the relevant determination date. The term "Secured Claim" includes any Claim that is (a) subject to an offset right under applicable law as of the Petition Date; and (b) secured against the Debtors pursuant to sections 506(a) and 553 of the Bankruptcy Code.

120.    118. "Statutory Fees" means all fees due and payable pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code, to the extent applicable.

121.    119. "Subordinated Claim(s)" means any Claim that is subject to subordination in accordance with sections 510(b)-(c) of the Bankruptcy Code or otherwise.

122.    120. "Transition Services Agreement" means the Transition Services Agreement among the Purchaser and Debtors, as the same may be modified or amended by the parties thereto as provided therein, and which shall be filed with the Plan Supplement, and which shall be consistent in all material respects with the Global Settlement.

123.    121. "TVT Causes of Action" means the Causes of Action asserted or assertable against the TVT Defendants in the adversary proceeding styled *AGDP Holding Inc. v. TVT Capital Source LLC*, Adv. P. No. 25-51803 (MFW).

124.    122. "TVT Parties" means, collectively, (i) TVT Capital Source LLC; (ii) White Star Funding Inc. d/b/a TVT Cap; (iii) Insta Funding LLC; and (iv) Pinnacle Business Funding LLC.

125.    123. "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

126.    124. "Unexpired Lease(s)" means a lease to which a Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

127.    125. "Unimpaired" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

128.    126. "Voting Deadline" means the date and time by which all ballots to accept or reject the Plan must be received to be counted.

129.    127. "Wind-Down Amount" means $3,250,000 (less any portion of the Wind Down Amount funded prior to the closing date pursuant to the Final DIP Order and Approved Budget, as agreed between the Debtors, the Committee, and the Purchaser) to be funded by the Purchaser to the Debtors in Cash on the closing date of the Sale.

130.    128. "Wind-Down Process" means the process by which the Plan Administrator or the Liquidating Trustee, as applicable, shall wind down, dissolve, and/or liquidate the Post-Effective Date Debtors.



### B.    Rules of Interpretation

For the purposes of the Plan, and except as otherwise provided herein, the following rules of interpretation shall apply:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan or Confirmation Order; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in the Plan to "Articles" and "Exhibits" are references to the articles and exhibits of or to the Plan unless otherwise noted; (6) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) the words "includes" or "including" are not limiting; (8) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified, references in the Plan to "Docket No." refer to entries on the Chapter 11 Cases' docket; (10) subject to the provisions of any contract, certificate of incorporation, by-laws, or similar constituent document, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules, and, to the extent applicable, the laws of the State of Delaware; (11) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (12) all references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

### C.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.  Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

### D.    Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan ~~and the Plan Supplement, the terms of the Plan Supplement shall control.  In the event of an inconsistency between the Plan~~ or the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III herein.



### A. **Administrative Claims**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Plan Administrator (after consultation with the Purchaser and the Liquidating Trustee), each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for Statutory Fees) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which (i) an order allowing such Administrative Claim becomes a Final Order or (ii) the Plan Administrator (after consultation with the Purchaser), on the one hand, and the Holder of the Administrative Claim, on the other hand, consensually agree to the Allowed amount of such claim, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court. For the avoidance of doubt, Holders of Allowed Administrative Claims (other than Professional Fee Claims of the Committee in excess of the Professional Fee Reserve on account of the Committee's Retained Professionals) will be paid either from the Wind-Down Amount, the Admin Claims Reserve, or otherwise by the Purchaser pursuant to the APA and will have no recourse against the Liquidating Trust Assets.

Except for Professional Fee Claims and Postpetition Tax Claims, all applications seeking allowance and payment of Administrative Claims must be Filed and served on the Debtors, the Liquidating Trustee, the Plan Administrator, and the Purchaser, and the U.S. Trustee, and each of their respective counsel, no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date. The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim. For the avoidance of doubt, Holders of Postpetition Tax Claims are not required to File an application seeking allowance and payment of such Postpetition Tax Claims, as such Postpetition Tax Claims shall be paid in the ordinary course of business.

Objection to such applications must be Filed and served on the requesting party by the Claims Objection Deadline. After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

**Except as otherwise provided in Sections II.B or II.D herein, Holders of Administrative Claims that do not File and serve an application for payment of administrative expense requesting the allowance of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, the Estates, the Liquidating Trustee, the Plan Administrator, the Purchaser or their respective assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date, without further order of this Court, unless otherwise ordered by the Court.**

The Debtors or the Plan Administrator (on behalf of the Post-Effective Date Debtors), as applicable, in consultation with the Purchaser and the Liquidating Trustee, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court


33735561.1
33735561.8

approval.  The Debtors or the Plan Administrator, in consultation with the Purchaser and the Liquidating Trustee, may also choose to object to any Administrative Claim no later than the Claims Objection Deadline, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.  Unless the Debtors or the Plan Administrator object to a timely filed and properly served Administrative Claim, such Administrative Claim shall be deemed Allowed in the amount requested.  In the event that the Debtors or the Plan Administrator (or any other party with standing) objects to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Claim should be allowed and, if so, in what amount; *provided that* the Plan Administrator shall not settle or otherwise resolve any Administrative Claim for an amount exceeding $100,000 absent consent from the Liquidating Trustee or order from the Bankruptcy Court.

## B.  Professional Fee Claims and Administrative Claims of OCPs

### 1.  Final Fee Applications

All requests for payment of Professional Fee Claims by Retained Professionals for services rendered and reimbursement of expenses incurred prior to the ~~Effective~~Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Retained Professionals after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  Unless otherwise agreed to by the Debtors and the Retained Professional, the Liquidating Trustee shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the applicable Professional Fee Reserve within five (5) Business Days of the entry of such Final Order.

### 2.  Administrative Claims of OCPs

All requests for payment of OCP Claims shall be made pursuant to the OCP Order.  To the extent any OCP Claims have not been paid pursuant to the OCP Order on or before the Effective Date, the amount of OCP Claims shall be paid in Cash from the Wind-Down Amount to such OCPs by the Debtors or the Plan Administrator (as applicable) as soon as reasonably practicable after such OCP Claim is authorized in accordance with the OCP Order.

### 3.  Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Plan Administrator or the Liquidating Trustee, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the Chapter 11 Cases that are incurred after the Effective Date; provided that the Purchaser shall pay for all fees and expenses of the Plan Administrator and its professionals pursuant to the terms of the Plan Administrator Agreement and the Transition Services Agreement (subject to Section IV.H.5 hereof) and the Liquidating Trustee's sole source of Cash



for the payment of the fees and expenses of the Liquidating Trustee and its professionals shall be the Liquidating Trust Assets.  Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 of the Bankruptcy Code or that OCPs comply with the OCP Order in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trustee or Plan Administrator (as applicable) may employ and pay any retained professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

4.    Professional Fee Reserve Amount

Unless otherwise agreed to prior to the Effective Date by the Debtors and the Retained Professional, to receive payment for (a) unbilled fees and expenses incurred through the Effective Date and (b) unbilled fees and expenses anticipated to be incurred post-Effective Date in connection with the preparation of the Retained Professionals' Professional Fee Claims, the Retained Professionals shall estimate such amounts and shall deliver such estimates to the Debtors and their counsel no later than three (3) Business Days prior to the Effective Date; *provided* that such estimates shall not be binding with respect to the fees and expenses of such Retained Professional.  If a Retained Professional does not provide an estimate of its unbilled fees and expenses, the Debtors may estimate such unbilled fees and expenses of the Retained Professional.  The total amount so estimated hereunder as of the Effective Date shall comprise the "Professional Fee Reserve Amount," which shall be consistent in all respects with the Global Settlement and capped as set forth in the Approved Budget.  The Retained Professionals may submit invoices for their post-Effective Date services, including with respect to the preparation of Professional Fee Claims, to the Plan Administrator or the Liquidating Trustee, as applicable, in the ordinary course of business; *provided, however, that any such invoices related to Professional Fee Claims shall be submitted to the Liquidating Trustee (with respect to the Committee's Retained Professionals) or the Plan Administrator (with respect to the Debtors' Retained Professionals) no later than thirty (30) calendar days following entry of a Final Order Allowing such Professional Fee Claims.*.

5.    Professional Fee Reserves

On or before the Effective Date, the Debtors shall fund the Professional Fee Reserves with proceeds from loans made under the DIP Facility, Cash from the Carve-Out Accounts and Cash on hand equal to the Professional Fee Reserves Amount, which may be held in trust accounts maintained at Verita Global LLC.  Separate Professional Fee Reserves shall be established to reserve funds for Professional Fee Claims held by the Debtors' Retained Professionals and Professional Fee Claims held by the Committee's Retained Professionals. Following the Effective Date, the Liquidating Trustee is charged with administering the Professional Fee Reserve as to the Retained Professionals of the Committee and the Plan Administrator is charged with administering the Professional Fee Reserve as to the Retained Professionals of the Debtors.  The Liquidating Trustee or the Plan Administrator, as applicable, shall open a new and segregated account at an FDIC-insured institution to effectuate this purpose.  The Debtors' obligations with respect to Professional Fee Claims shall not be limited by, nor deemed limited to the balance of funds held in, the applicable Professional Fee Reserves.



The Professional Fee Reserves and amounts funded therein are, and shall continue to be, maintained in trust solely for each Retained Professional separately on a per-Retained Professional basis. Amounts funded to the Professional Fee Reserves shall be capped as set forth in the Approved Budget; provided that nothing set forth herein shall impose a cap on any Retained Professional's ability to assert a Professional Fee Claim. Such funds shall not be considered property of the Debtors, their Estates, the Post-Effective Date Debtors, or the Liquidating Trust (as applicable); provided, however, that the Purchaser shall have a reversionary interest in any Cash remaining in the Professional Fee Reserve on behalf of the Debtors' Retained Professionals after payment in full of all Allowed Professional Fee Claims of the Debtors' Retained Professionals without any further notice, action, or order of the Bankruptcy Court, and the Plan Administrator shall promptly transfer such remaining Cash to the Purchaser after payment in full of all Allowed Professional Fee Claims; provided further that any Cash remaining in the Professional Fee Reserve on account of Committee Retained Professionals after payment in full of all Allowed Professional Fee Claims of the Committee's Retained Professionals shall be transferred to the Liquidating Trust.

### C.  Priority Tax Claims

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim, on the one hand, and the Debtors or the Plan Administrator (after consultation with the Purchaser), on the other hand, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

To the extent the 1042 Withholding Tax Claims and/or the New York State Sales Tax Claims have not been assumed by the Purchaser pursuant to the terms of the APA, such Claims shall receive regular monthly installment payments, commencing on the first day of the month following the Effective Date of the Plan, (i) having a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim; (ii) over a period ending not later than five (5) years after the Petition Date; and (iii) in a manner that is not less favorable than the most favored non-priority unsecured claim provided for by this Plan. The Purchaser shall make such installment payments to the Holder of such Claims as and when required by the Plan.

### D.  U.S. Trustee Statutory Fees

All Statutory Fees that are due and owing as of the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Post-Effective Date Debtors and the Liquidating Trustee, as applicable, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. After the Effective Date, the Post-Effective Date Debtors and the Liquidating Trustee, as applicable, shall pay any and all applicable Statutory Fees in full in Cash when due and payable. The Post-Effective Date Debtors and the Liquidating Trustee, as applicable, shall remain obligated to pay any applicable Statutory Fees until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be treated as providing any release under the Plan. Statutory Fees are Allowed. The U.S.



Trustee shall not be required to file any proof of claim or any request for administrative expense for Statutory Fees. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. Classification of Claims and Interests

The Plan constitutes a separate chapter 11 plan for each Debtor. Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims and Interests are placed in Classes for each of the applicable Debtors. Unless otherwise specified, the Plan consolidates Claims against all Debtors solely for purposes of voting, Confirmation, and distribution but not for any other purpose. The Debtors reserve the right to seek (in consultation with the Committee) substantive consolidation of the Debtors in connection with Confirmation, but substantive consolidation shall not affect the legal and organizational structure of the Post-Effective Date Debtors or their separate corporate existences and will not change the distributions to Holders of Claims compared to what is proposed in the Plan.

Except for the Claims addressed in Article II herein, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Prepetition Deficiency Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 7 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |



B.  **Treatment of Claims and Interests**

    1.  <u>Class 1 – Secured Claims</u>

        (a)  *Classification*:  Class 1 consists of all Secured Claims against the Debtors.

        (b)  *Treatment:*  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Secured Claim and the Debtors (with the consent of the Committee to the extent a resolved Claim exceeds $100,000.00) or the Plan Administrator (with the consent of (y) the Purchaser and (z) the Liquidating Trustee to the extent a resolved Claim exceeds $100,000.00) agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Secured Claim, each Holder thereof will receive:  (i) payment in full in Cash; *provided* that to the extent any Claim asserted by a TVT Party is determined to be an Allowed Secured Claim, such TVT Party shall only be entitled to recover its *pro rata* share of the F&B Reserve; (ii) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Claim; or (iv) such other treatment rendering such Claim Unimpaired.  For the avoidance of doubt, any portion of the F&B Reserve that is not needed to satisfy Allowed Claims or Interests (if any) held by the TVT Parties shall be considered an asset purchased by the Purchaser pursuant to the Sale.

        (c)  *Voting*:  Class 1 is Unimpaired, and Holders of Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Secured Claims are not entitled to vote to accept or reject the Plan.

    2.  <u>Class 2 – Other Priority Claims</u>

        (a)  *Classification*:  Class 2 consists of all Other Priority Claims against the Debtors.

        (b)  *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors (with the consent of the Committee to the extent a resolved Claim exceeds $100,000.00) or the Plan Administrator (with the consent of the Liquidating Trustee to the extent a resolved Claim exceeds $100,000.00), agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Priority Claim, each Holder thereof will receive: (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired.

        (c)  *Voting*:  Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.



    3.   <u>Class 3 – Prepetition Deficiency Claims</u>

    (a)   *Classification*:  Class 3 consists of all Prepetition Deficiency Claims against the Debtors.

    (b)   *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Prepetition Deficiency Claim and the Debtors (with the consent of the Committee) or the Plan Administrator (with the consent of the Liquidating Trustee), as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Prepetition Deficiency Claim, each Holder thereof will be treated as follows:

    a.   to the extent an Allowed Prepetition Deficiency Claim arises from the Prepetition Term Loan Financing Agreement, the Holder of such Prepetition Deficiency Claim shall waive any right to distribution on account of such Claim on the Effective Date, *provided that* any waiver of a Holder's right to payment on account of a Prepetition Deficiency Claim shall not impair such Holder's ability to exercise any rights in connection with these Chapter 11 Cases as an interested party~~; and~~.

    (c)   *Voting*:  Class 3 is Impaired, and Holders of the Prepetition Deficiency Claims are entitled to vote to accept or reject the Plan.

    4.   <u>Class 4 – General Unsecured Claims</u>

    (a)   *Classification*: Class 4 consists of all General Unsecured Claims against the Debtors, including any Claim of the Prepetition LiveStyle Secured Parties pursuant to the Prepetition LiveStyle Note.

    (b)   *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors (with the consent of the Committee to the extent a resolved Claim exceeds $100,000.00) or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed General Unsecured Claim, each Holder thereof will receive its *pro rata* share of the Liquidating Trust Distributable Proceeds.

    (c)   *Voting*: Class 4 is Impaired, and Holders of the General Unsecured Claims are entitled to vote to accept or reject the Plan

    5.   <u>Class 5 – Subordinated Claims</u>

    (a)   *Classification*:  Class 5 consists of all Subordinated Claims against the Debtors.



(b)      *Treatment*:  On the Effective Date, all Subordinated Claims shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Claims shall not receive any distributions under the Plan on account of such Claim.

(c)      *Voting*:  Class 5 is Impaired, and Holders of Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 5 Subordinated Claims are not entitled to vote to accept or reject the Plan.

6.    Class 6 – Intercompany Claims

(a)      *Classification*:  Class 6 consists of all Intercompany Claims.

(b)      *Treatment:*  On the Effective Date, all Intercompany Claims shall in the Debtors' (with the consent of the Committee) or the Liquidating Trustee's sole discretion be: (1) reinstated; (2) canceled, released, waived, and discharged; or (3) otherwise settled.

(c)      *Voting*:  Class 6 consists of Intercompany Claims that are reinstated are conclusively presumed to accept the Plan pursuant to Section 1126(f) and Holders of Intercompany Claims that are canceled, released and discharged under the Plan without any distribution are deemed to reject pursuant to Section 1126(g) of the Bankruptcy Code, respectively. Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Intercompany Claims.

7.    Class 7 – Interests

(a) *Classification*:  Class 7 consists of all Interests in the Debtors.

(b)      *Treatment*:  On the Effective Date, all Interests shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Interests shall not receive any distributions under the Plan on account of such Interest.

(c)      *Voting*:  Class 7 is Impaired, and Holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 Interests are not entitled to vote to accept or reject the Plan.

## C.  **Special Provisions Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors', the Plan Administrator's, or the Liquidating Trustee's rights with respect to any Claims, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

## D.  **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the



date of the Combined Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### E. Controversy Concerning Impairment

If a controversy arises as to whether any Claim or any Class of Claims or Interests is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Combined Confirmation Hearing.

### F. Subordination of Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable) reserves the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### G. Reservation of Rights Regarding Claims

Except as otherwise provided in the Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtors', the Plan Administrator's, the Liquidating Trustee's or the Purchaser's respective rights and defenses, whether legal or equitable, with respect to any Claim, including, without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

### H. Postpetition Interest on Claims

Except as required by applicable bankruptcy law or otherwise expressly provided in the Plan, postpetition interest, penalties, or other fees will not accrue or be payable on account of any Claim.

### I. Insurance

Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.



# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Sources of Consideration for Plan Distributions

Subject in all respects to the provisions of the Plan concerning the Professional Fee Reserve, (i) the Purchaser shall be responsible for payment of all Allowed Claims that constitute Assumed Liabilities, and (b) the Plan Administrator or the Liquidating Trustee (as applicable) shall fund distributions to all other Holders of Allowed Claims under the Plan with Cash on hand on the Effective Date and all other Liquidating Trust Assets.

### B.    Vesting of Assets

On the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, (1) the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in this Plan; and (2) the Plan Administration Assets shall vest in the Post-Effective Date Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in the APA or this Plan.

### C.    Corporate Action

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Plan Administrator or the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, Post-Effective Date Debtors, or any other Entity or Person.  All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates.

### D.    Effectuating Documents; Further Transactions

On and after the Effective Date, the Debtors and the Plan Administrator, on behalf of the Post-Effective Date Debtors, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### E.    Corporate Existence Post-Effective Date

#### 1.    Directors and Officers

Immediately following the occurrence of the Effective Date, (i) the respective boards of directors or managers, as applicable, and the current officers, of each of the Debtors, shall be terminated without cause and such members of the boards of directors or managers, as applicable, and the current officers of the Debtors shall be deemed to have resigned; and (ii) the



Plan Administrator shall: (1) be appointed as the sole member of the board of directors or board of managers, as applicable, and the sole officer; (2) succeed as the sole Holder of Interests in each Post-Effective Date Debtor; (3) have the rights and powers of a debtor in possession under Section 1107 of the Bankruptcy Code; (4) be a "representative of the estate" pursuant to Section 1123(b)(3) of the Bankruptcy Code; (5) be vested with the rights, powers, and benefits afforded to a "trustee" under Sections 704 and 1106 of the Bankruptcy Code; and (6) have such other rights, powers, and duties incidental to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary; *provided that* the Plan Administrator will be the sole representative of the Post-Effective Date Debtors with respect to their obligations under the Transition Services Agreement. All certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same without further action by any Entity and without Bankruptcy Court approval.

2.    Organizational Governance Documents

Immediately following the occurrence of the Effective Date, the Post-Effective Date Debtors shall continue to exist in accordance with the laws of their respective states of formation and pursuant to their respective certificates of incorporation, by-laws, articles of formation, operating agreements, and other organizational documents in effect prior to the Effective Date, except to the extent such organizational documents are amended under the Plan, for the limited purposes of liquidating all of the assets of the Estates and making distributions in accordance with the Plan.   The Post-Effective Date Debtors shall exist for the limited purposes of completing the Debtors' obligations under the Transition Services Agreement and fully administering the Estates.  Promptly after performing all duties and functions that are consistent with the implementation of the Plan, the Confirmation Order, the Asset Purchase Agreement, and the Plan Administrator Agreement, the Plan Administrator shall be authorized and directed to take all actions to wind down, dissolve, or liquidate the Post-Effective Date Debtors without the necessity for any other or further actions to be taken by or on behalf of such dissolving Post-Effective Date Debtors or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities, pursuant to Section 303 of the Delaware General Corporation Law codified at title 8 of the Delaware Code or other applicable state law.

The certificate and articles of in-corporation and by-laws of each Post-Effective Date Debtor shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, a provision (a) prohibiting the issuance of non-voting equity securities under Section 1123(a)(6) of the Bankruptcy Code and (b) limiting the activities of the Post-Effective Date Debtors to matters authorized under the Plan.

*F.*    ~~Settlement of Claims and Interests~~*Intentionally Omitted*

~~Pursuant to Section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests or Causes of Action that (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to Section IX.A of the Plan; (c) have been released pursuant to Section IX.B of the Plan; (d) are subject to the exculpation pursuant to~~



Section IX.C of the Plan; or (e) are otherwise stayed or terminated pursuant to the terms of the Plan.

### G.    Cancellation of Old Securities and Interests

Except as otherwise provided in the APA or this Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, including, without limitation, Prepetition Term Loan Claims, shall be deemed canceled and surrendered without any need for further action or approval of the Bankruptcy Court or any Holder or other Entity and the obligations of the Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full with the distributions, if any, provided hereunder, and the Prepetition Term Loan Agent shall be released from all duties thereunder; *provided that* notwithstanding entry of the Confirmation Order or consummation of the Plan, any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of: (a) allowing Holders to receive distributions under the Plan; (b) allowing the Administrative Agent to enforce its rights, claims, and interests vis-à-vis any parties other than the Debtors or the Post-Effective Date Debtors; (c) allowing the Prepetition Term Loan Agent to make the distributions on account of Prepetition Term Loan Claims in accordance with the Plan (if any), as applicable; (d) allowing the Prepetition Term Loan Lenders or the Prepetition Term Loan Agent to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including, but not limited, to enforce the respective obligations owed to such parties under the Plan; and (e) permitting the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders to perform any functions that are necessary to effectuate the foregoing; provided, further, that except as provided herein, the preceding proviso shall not affect the settlement and release of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, as applicable, or result in any expense or liability to the Debtors.  Notwithstanding anything to the contrary in the Plan or the Confirmation Order, any Liens and Claims held by the Prepetition Secured Parties on or against the F&B Reserve are hereby expressly preserved.

### H.    Plan Administrator

#### 1.    Appointment of the Plan Administrator

From and after the Effective Date, the Plan Administrator shall serve pursuant to the Plan Administrator Agreement and the Plan, until the resignation or discharge of the Plan Administrator and the appointment of a successor Plan Administrator in accordance with the Plan Administrator Agreement and the Plan.  The Debtors shall include, in the Plan Supplement, the information set forth in Sections 1129(a)(4) and (5) of the Bankruptcy Code and the identity of Person or Entity who the Debtors have selected as the Plan Administrator.  The appointment of the Plan Administrator shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date.  The Plan Administrator shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan and the Plan Administrator Agreement.


33735561.1
33735561.8

2.   The Plan Administrator Agreement

Prior to or on the Effective Date, the Debtors shall execute a Plan Administrator Agreement in substantially the same form as set forth in the Plan Supplement.  Any nonmaterial modifications to the Plan Administrator Agreement made by the Debtors prior to the Effective Date are hereby ratified.  The Plan Administrator Agreement will contain provisions permitting the amendment or modification of the Plan Administrator Agreement as necessary to implement the provisions of the Plan.

3.   Rights, Powers, and Duties of the Debtors and the Plan Administrator

On and after the Effective Date, so long as the Transition Services Agreement has not terminated, the Plan Administrator will act for the Post-Effective Date Debtors in the same capacity as applicable to a board of managers or directors, or to officers, subject to the provisions of the Plan.  All certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same without further action by any Entity and without Bankruptcy Court approval.  From and after the Effective Date, the Plan Administrator will be the sole representative of, and will act for, the Post-Effective Date Debtors. Except as otherwise provided in the Plan, the Confirmation Order, or the Plan Administrator Agreement, the Plan Administrator shall be authorized and directed to take all corporate actions consistent with the Plan, the Confirmation Order, the Asset Purchase Agreement, all other applicable orders of the Bankruptcy Court, and the Plan Administrator Agreement, in each case, that are necessary and/or desirable to effectuate the terms of the Plan on behalf of the Post-Effective Date Debtors and use its reasonable best efforts to assist with or effectuate the transition of the Debtors' business, wind down, dissolution, or liquidation of the Post-Effective Date Debtors and any non-Debtor Affiliates.  In taking such actions, the Plan Administrator may control and exercise authority over any Assets, vested in the Post-Effective Date Debtors pursuant to the Plan, over the acquisition, management, and disposition thereof and over the management and conduct of the affairs of the Post-Effective Date Debtors.  Such rights, powers and duties, which shall be exercisable by the Plan Administrator on behalf of the Post-Effective Date Debtors pursuant to the Plan and the Plan Administrator Agreement, shall include, among others, (a) in consultation with the Liquidating Trustee and Purchaser, making distributions to Holders of Allowed Claims and Interests as provided for in the Plan (except for Allowed General Unsecured Claims), (b) administering, reconciling and resolving (i) Administrative Claims, Secured Claims, Priority Tax Claims, and Claims or Interests asserted by the TVT Parties and (ii) in consultation with the Liquidating Trustee and Purchaser, Secured Claims and Other Priority Claims, (c) filing tax returns and paying taxes, (d) performing all obligations required of the Post-Effective Date Debtors under the Transition Services Agreement, (e) commencing and pursuing the Retained Causes of Action constituting Plan Administration Assets and managing and administering any proceeds thereof, (f) paying any Statutory Fees, (g) defending the Debtors in any pending or future litigation, (h) selling, abandoning, or otherwise fully administering the Estates, (i) closing the Chapter 11 Cases, (j) dissolving the Post-Effective Date Debtors, and (k) performing other duties and functions that are consistent with the implementation of the Plan.

In pursuing any Retained Causes of Action transferred to the Plan Administrator, on behalf of the Post-Effective Date Debtors, under this Plan, the Plan Administrator shall be



deemed a trustee for all purposes under Section 108 of the Bankruptcy Code, shall be entitled to the tolling provisions provided under Section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the Retained Causes of Action transferred to the Plan Administrator, on behalf of the Post-Effective Date Debtors, may be brought under Section 546 of the Bankruptcy Code.

Notwithstanding anything to the contrary herein, the Plan Administrator shall, following the Effective Date and in consultation with the Liquidating Trustee, liquidate and pay Allowed Administrative Claims, Priority Tax Claims, Secured Claims, or Other Priority Claims for which the Wind-Down Amount was established to address on behalf of the Debtors and Post-Effective Date Debtors (the "Post-Effective Date Claims Reconciliation Process").

4.    Transition Services

On the Effective Date and continuing until the end of the term under the Transition Services Agreement, the Plan Administrator shall serve as an appointed agent of the designated operator or as the operator of the Debtors in accordance with the Plan for the purpose of fulfilling any obligations thereunder.

5.    Compensation of the Plan Administrator

The Plan Administrator shall be compensated by the Prepetition Term Loan Lenders or the Purchaser pursuant to the terms of the Plan Administrator Agreement; *provided that* the Plan Administrator shall be permitted to use up to $500,000 of the Wind-Down Amount, which has been allocated and approved pursuant to the Approved Budget, to pay the Plan Administrator's fees and expenses, as set forth in the Plan Administrator Agreement; *provided further* that the Plan Administrator's fees payable from the Wind-Down Amount shall not exceed $500,000, and any Plan Administrator fees in excess of $500,000 shall be paid by the Purchaser.

6.    Insurance for the Plan Administrator

The Plan Administrator shall be authorized to obtain and pay for out of the Wind-Down Amount all reasonably necessary insurance coverage for itself, its agents, representatives, employees or independent contractors, and the Post-Effective Date Debtors, including, but not limited to, coverage with respect to (a) any property that is or may in the future become the property of the Debtors or their Estates and (b) the liabilities, duties and obligations of the Plan Administrator and its agents, representatives, employees or independent contractors under the Plan Administrator Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may remain in effect for a reasonable period of time as determined by the Plan Administrator after the termination of the Plan Administrator Agreement.

7.    Termination of the Plan Administrator's Responsibilities and Obligations

Upon the conclusion of the Plan Administrator's obligations regarding the Post-Effective Date Claims Reconciliation Process *and* the expiration of the term of the Transition Services Agreement, the Plan Administrator shall (a) remit any remaining balance of the Wind-Down Amount to the Liquidating Trust for distribution pursuant to the terms of this Plan and the Liquidating Trust Agreement, the amount of which shall be netted against the next Future



Liquidating Trust Contribution; and (b) remit any funds in the F&B Reserve not used to pay Allowed Claims and Interests of the TVT Parties (if any) to the Purchaser.

Upon the conclusion of the Plan Administrator's obligations under the Post-Effective Date Claims Reconciliation Process and the expiration of the term of the Transition Services Agreement, the Plan Administrator may, upon written notice to the Liquidating Trustee, resign. Upon the Plan Administrator's resignation, the Plan Administrator shall be discharged and all obligations and responsibilities of the Plan Administrator hereunder shall become obligations of the Liquidating Trustee who shall then, for purposes of administering this Plan, be deemed the Plan Administrator; *provided, however* that the Liquidating Trustee's sole source of compensation for its work as Liquidating Trustee and Plan Administrator shall be from the Liquidating Trust Assets, and the Purchaser shall have no further obligation to pay the Plan Administrator's fees and expenses.

## I.    **Liquidating Trust**[2]

### 1.  Establishment of the Liquidating Trust

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement, which will be Filed with the Bankruptcy Court as part of the Plan Supplement.  Upon establishment of the Liquidating Trust, title to the Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of the Debtors or any managers, employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.

The Liquidating Trust Interests to be distributed to Liquidating Trust Beneficiaries under this Plan shall not constitute "securities" under applicable securities laws and shall represent only the right to receive distributions from the Liquidating Trust in accordance with the Liquidating Trust Agreement. The Liquidating Trust Interests shall be non-transferable, except as required by law or as provided in the Liquidating Trust Agreement.

### 2.  Transfer of the Liquidating Trust Assets

Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Liquidating Trust shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided for in this Plan.  Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust.  For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms herein as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer of such assets by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

---

[2] Subject to review by tax professionals.



3.   Liquidating Trust Agreement

On the Effective Date, the Debtors shall execute the Liquidating Trust Agreement in substantially the same form as set forth in the Plan Supplement.  Any nonmaterial modifications to the Liquidating Trust Agreement made by the Debtors will be ratified.  The Liquidating Trust Agreement will contain provisions permitting the amendment or modification of the Liquidating Trust Agreement necessary to implement the provisions of the Plan.

4.   Purpose of the Liquidating Trust

The Liquidating Trust shall be established for, among other purposes, the purpose of (a) receiving and holding the Liquidating Trust Assets; (b) administering, disputing, objecting to, compromising, or otherwise resolving all Claims and Interests other than (i) Claims and Interests asserted by the TVT Parties, (ii) Administrative Claims, (iii) Secured Claims, or (iv) Priority Tax Claims; (c) making distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement; (d) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries; and (e) commencing and pursuing the Retained Causes of Action constituting Liquidating Trust Assets and managing and administering any proceeds thereof with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).

The Liquidating Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust.  To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

5.   Liquidating Trustee

(a)   *Appointment of the Liquidating Trustee*

Upon the occurrence of the Effective Date, the Liquidating Trustee shall be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee, subject to the terms and conditions of the Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and the Liquidating Trust Agreement, as applicable. The Liquidating Trustee shall owe fiduciary duties solely to the Liquidating Trust Beneficiaries and shall act in the best interests of such Liquidating Trust Beneficiaries in connection with the foregoing and the administration, monetization or distribution of any Liquidating Trust Assets.



(b) *Powers of the Liquidating Trustee*

On and after the Effective Date, the powers and duties of the Liquidating Trustee shall include, inter alia, (i) analyzing Retained Causes of Action constituting Liquidating Trust Assets and determining whether to abandon, pursue, litigate, or settle such claims; (ii) retaining and compensating professionals, employees, and consultants to assist with the administration of the Liquidating Trust; (iii) making distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and Liquidating Trust Agreement; (iv) administering, reconciling and resolving Claims and Interests (other than Claims or Interests asserted by the TVT Parties, Priority Tax Claims, Secured Claims, and Administrative Claims); and (v) performing other duties and functions that are consistent with the purpose of the Liquidating Trust.

In pursuing any Retained Causes of Action constituting Liquidating Trust Assets, the Liquidating Trustee shall be deemed a trustee for all purposes under Section 108 of the Bankruptcy Code, shall be entitled to the tolling provisions provided under Section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the Retained Causes of Action constituting Liquidating Trust Assets may be brought under Section 546 of the Bankruptcy Code.

(c) *Compensation of the Liquidating Trustee*

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in this Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement. The Liquidating Trustee (and any professionals retained by the Liquidating Trustee) shall not be required to File a fee application to receive compensation.

(d) *Retention and Payment of Professionals*

The Liquidating Trustee shall have the right, without Bankruptcy Court approval, to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidating Trustee in the performance of his, her, or its duties, and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement.

6.    <u>Insurance</u>

The Liquidating Trustee shall be authorized to obtain and pay for out of the Liquidating Trust Assets all reasonably necessary insurance coverage for itself, its agents, representatives, employees or independent contractors, including, but not limited to, coverage with respect to (a) any property that is or may in the future become the property of the Debtors or their Estates and (b) the liabilities, duties and obligations of the Liquidating Trustee and its agents, representatives, employees or independent contractors under the Liquidating Trust Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may remain in effect for a reasonable period of time as determined by the Liquidating Trustee after the termination of the Liquidating Trust Agreement.



7.   Termination of the Liquidating Trust

The Liquidating Trust shall be dissolved upon the earlier of (a) the distribution of all of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries and completion of the Wind-Down Process; and (b) the fifth anniversary of the creation of the Liquidating Trust; *provided* that, if warranted by the facts and circumstances involved in resolving or monetizing any Liquidating Trust Assets or the Liquidating Trust is still the holder of the CVR, upon application to, and if approved by, the Bankruptcy Court upon a finding that such extension is necessary or appropriate for purposes of resolving or monetizing such Liquidating Trust Assets and distributing the proceeds to Liquidating Trust Beneficiaries or that the Liquidating Trust is still the holder of the CVR, the term of the Liquidating Trust may be extended by the Liquidating Trustee for a specified term in accordance with applicable tax laws and regulations. This application must be filed with the Bankruptcy Court no earlier than six (6) months before the termination date of the Liquidating Trust.

**J.**   **U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust**

For all U.S. federal and applicable state, local, and non-U.S. income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the Liquidating Trust, other than the Disputed Claims Reserve, as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684 and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust. Moreover, for all U.S. federal and applicable state, local, and non-U.S. income tax purposes, it is intended that, with respect to Liquidating Trust Beneficiaries, (1) such beneficiaries be treated as if they had (i) received a distribution from the Estates of an undivided interest in the applicable trust Assets (to the extent of the value of their respective share in the applicable Assets) and (ii) subsequently contributed such undivided interest to the applicable trust in exchange for an interest in the applicable trust, and (2) the such beneficiaries be treated as the grantors of the applicable and as deemed owners of the applicable and applicable trust Assets. The terms of the Liquidating Trust Agreement shall be consistent with the foregoing tax treatment and no party hereto shall take any position inconsistent herewith.

For all U.S. federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, the Liquidating Trust Beneficiaries, and the Plan Administrator) shall treat any Disputed Claims Reserve as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9. Following the funding of the Liquidating Trust, the Debtors shall provide a "§ 1.468B-9 Statement" in respect of the Disputed Claims Reserve to the Liquidating Trustee or the Plan Administrator, as applicable, in accordance with Treasury Regulation section 1.468B-9(g).

The Liquidating Trustee shall be responsible for filing all tax returns for the Liquidating Trust, the Liquidating Trust Assets, and the Debtors. The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets. The Liquidating Trustee may request an



expedited determination of taxes of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trust and the Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust and the Plan Administrator (as applicable) shall be subject to any such withholding and reporting requirements. The Liquidating Trustee and the Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the Holder of an Allowed Claim complete and deliver to the Liquidating Trustee or the Plan Administrator, as applicable, the appropriate IRS Form W-8 or IRS Form W-9, as applicable.  Notwithstanding any other provision of the Plan, (i) each Holder of an Allowed Claim that is to receive a distribution from the Liquidating Trust or the Plan Administrator shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such distribution and (ii) no distribution shall be made to or on behalf of such Holder under the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee or the Plan Administrator, as applicable, to allow it to comply with its tax withholding and reporting requirements.  All Holders of Allowed General Unsecured Claims are deemed to have agreed to use the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes.

### K.    Preservation of Causes of Action

Except as otherwise provided in Article IX herein or in any contract, instrument, release, or agreement entered into in connection with the Plan or the Sale (including the Asset Purchase Agreement), in accordance with section 1123(b) of the Bankruptcy Code, (a)(i) all Retained Causes of Action constituting Liquidating Trust Assets are preserved and transferred to the Liquidating Trust on the Effective Date, and (ii) all Retained Causes of Action constituting Plan Administration Assets are preserved and transferred to the Post-Effective Date Debtors on the Effective Date, and (b) all Causes of Action constituting Acquired Assets are preserved and transferred to the Purchaser (to the extent not previously transferred).

In pursuing any Causes of Action sold to the Purchaser under the APA, the Purchaser shall be deemed a trustee for all purposes under Section 108 of the Bankruptcy Code, shall be entitled to the tolling provisions provided under Section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the Causes of Action sold to the Purchaser under the APA may be brought under Section 546 of the Bankruptcy Code.

### L.    Corporate Action

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Plan Administrator or the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or


33735561.1
33735561.8

Interests, the Debtors, Post-Effective Date Debtors, or any other Entity or Person. All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates.

## M.    Books and Records

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtors and the Estates that were not sold and transferred in connection with the Sale and that relate to the operation and business of the Liquidating Trust; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or beneficial.

## N.    Plan Transactions

On the Effective Date or as soon reasonably practicable thereafter, the Plan Administrator and the Liquidating Trustee (as applicable) may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including, but not limited to, (1) the execution and delivery of appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of any appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, duty, or obligation on terms consistent with this Plan; (3) the filing of appropriate documents with the appropriate governmental authorities pursuant to applicable law; and (4) any and all other actions that the Plan Administrator or the Liquidating Trustee (as applicable) determine are necessary or appropriate to effectuate the Plan.

## O.    Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Plan Administrator and the Liquidating Trustee (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan. The Plan Administrator, the Liquidating Trustee, all Holders of Claims receiving distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

## P.    Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, ~~any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order,~~



~~the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment~~<span style="color:blue">the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Section 1129 or Section 1191 of this title, may not be taxed under any law imposing a stamp tax or similar tax</span>. Such exemption specifically applies, without limitation, to the transfer of the Liquidating Trust Assets to the Liquidating Trust.

### Q.    Sale Order

Notwithstanding anything to the contrary herein, nothing in this Plan shall affect, impair or supersede the Sale Order, which remains in full force and effect and governs in the event of any inconsistency with the Plan with respect to the Sale.

### R.    Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

### S.    No Revesting of Liquidating Trust Assets or Plan Administration Assets

No Liquidating Trust Asset will revest in the Debtors on or after the date such asset is transferred to the Liquidating Trust but will vest upon such transfer in the Liquidating Trust to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement; *provided that* all Plan Administration Assets shall vest with the Post-Effective Date Debtors upon the Effective Date.  No Plan Administration Asset will revest in the Debtors on or after the date such asset is transferred to the Post-Effective Date Debtors but will vest upon such transfer to the Post-Effective Date Debtors to be administered by the Plan Administrator in accordance with the Plan and the Plan Administrator Agreement.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES

### A.    General Treatment

On the Effective Date, except as otherwise provided herein (which exclusion includes the Insurance Policies)<span style="color:blue"> or the APA</span>, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are



the subject of a motion to assume that is pending on the Confirmation Date or identified on the Schedule of Assumed Executory Contracts and Unexpired Leases.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

## B.  Rejection Damages Claims

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Post-Effective Date Debtors, the Liquidating Trustee, the Liquidating Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent within thirty (30) days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable.  Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Section III.B.3 herein.

## C.  Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, the Post-Effective Date Debtors, or the Liquidating Trustee (as applicable) under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors, the Post-Effective Date Debtors, and the Liquidating Trustee (as applicable) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity or continued maintenance obligations.

## D.  Insurance Preservation

Nothing in the Plan, the Confirmation Order, the Plan Administrator Agreement, or the Liquidating Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder, or the terms and conditions thereof, or diminishes or impairs the enforceability of the Insurance Policies.  All of the Debtors' rights and their Estates' rights under any Insurance Policy to which the Debtors and/or the Debtors' Estates



may be beneficiaries shall vest with the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries and all of the beneficiaries of such policies.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.  Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Disbursing Agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Plan Administrator or the Liquidating Trustee (as applicable); *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder and the Debtors, the Plan Administrator, or Liquidating Trustee (as applicable) shall have no obligation to determine alternative or current addresses.

### B.  Withholdings

The Liquidating Trustee and/or the Plan Administrator, as applicable, shall (1) withhold, deduct, and pay over to the appropriate governmental authority any amount required to be withheld under tax laws with respect to any distribution pursuant to the Liquidating Trust Agreement or the Plan Administrator Agreement, as applicable; and (2) comply with any reporting requirements imposed by any federal, state, local, or foreign taxing authority.  The Liquidating Trustee or the Plan Administrator, as applicable, may withhold all or the appropriate portion of any distribution due to any Liquidating Trust Beneficiary until such time as such Liquidating Trust Beneficiary provides the necessary information (*i.e.*, IRS Forms) to comply with any withholding requirements of any governmental authority.  Any tax withheld shall be treated as distributed and received by the applicable beneficiary for all purposes of the Liquidating Trust Agreement and this Plan.  If a Liquidating Trust Beneficiary fails to provide the information necessary to comply with any withholding requirements of any governmental authority on or before the day that is six (6) months after the Effective Date of the Plan, then such beneficiary's distribution may be treated as unclaimed property in accordance with the Liquidating Trust Agreement and/or the Plan.

### C.  Date of Distributions

Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with



39

respect to such Claims or any distribution related thereto. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D. **Disbursing Agent**

Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent on or after the Effective Date. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties. If the Disbursing Agent is otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidating Trust or the Post-Effective Date Debtors, as applicable.

### E. **Powers of Disbursing Agent**

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan; (2) make all distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

### F. **Surrender of Instruments**

As a condition precedent to receiving any distribution under this Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee. Any holder of such instrument or note that fails to (1) surrender the instrument or note; or (2) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent within six (6) months of being entitled to such distribution shall be deemed to have forfeited all rights and claims and may not participate in any distribution hereunder.

### G. **IRS Forms**

In connection with the Plan, to the extent applicable, the Plan Administrator and the Liquidating Trustee (as applicable) shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator and the Liquidating Trustee (as applicable) shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and the Liquidating Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.



As a condition precedent to receiving any distribution under this Plan, each Holder of an Allowed Claim that is entitled to a distribution under the Plan must provide the Liquidating Trustee or the Plan Administrator, as applicable, an executed IRS Form.  An Allowed Claim of a Holder that fails to provide an executed IRS Form or provide any other required information to effectuate a distribution within ~~sixty~~one hundred and eighty (~~60~~180) days after service (by first class mail) of a formal request for the same by the Liquidating Trustee or the Plan Administrator (as applicable) shall be deemed disallowed and expunged (or, in the case of a Liquidating Trust Beneficiary, shall be treated as unclaimed property in accordance with the Liquidating Trust Agreement) for purposes of distributions under the Plan.  For the avoidance of doubt, the Liquidating Trust or the Plan Administrator (as applicable) is not required to follow up with any Holder of an Allowed Claim if they fail to timely provide an executed IRS Form.

### H.  Delivery of Distributions

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, who shall transmit such distributions to the applicable Holders of Allowed Claims or their designees.

If any distribution to a Holder of an Allowed Claim (a) is returned as undeliverable for lack of a current address or otherwise; or (b) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within ~~sixty~~ninety (~~60~~90) calendar days after the mailing of such distribution, the Liquidating Trustee or the Plan Administrator, as applicable, shall be authorized to cancel such distribution check.  For the avoidance of doubt, the Liquidating Trustee or the Plan Administrator, as applicable, shall have no obligation to determine the correct current address of such Holder.  Thirty (30) calendar days after the cancellation of a distribution check by the Liquidating Trustee or the Plan Administrator, as applicable, (a) the Holder of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, which will revert to the Liquidating Trust or the Plan Administrator, as applicable, for distribution in accordance with the Plan and the Liquidating Trust Agreement or the Plan Administrator Agreement, as applicable; and (b) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further distributions under the Plan.

### I.  Manner of Payment

Any distributions to be made by or on behalf of the Plan Administrator or the Liquidating Trustee (as applicable) pursuant to this Plan shall be made by checks drawn on accounts maintained by the Plan Administrator or the Liquidating Trustee (as applicable), or by wire transfer if circumstances justify, at the option of the Plan Administrator or the Liquidating Trustee (as applicable).

### J.  Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* on the Petition Date.



### K.  Setoffs and Recoupments

The Plan Administrator or the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy and/or non-bankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) calendar days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off against or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim (before any distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors or their Estates may have against the Holder of such Allowed Claim; *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Administrator or the Liquidating Trustee (as applicable) of any such claim the Debtors or their Estates may have against the Holder of such Claim.  The Plan Administrator or the Liquidating Trustee (as applicable) shall be required to file such notice on the docket of the Chapter 11 Cases.  The Holder of such Allowed Claim shall have thirty (30) days to object to such setoff or recoupment.  If a Holder of an Allowed Claim objects to the setoff or recoupment within the thirty (30)-day period, such setoff or recoupment shall not be effectuated absent entry of a Final Order by the Court.

### L.  Minimum Distributions

No payment of Cash in an amount of less than fifty U.S. dollars ($50.00) shall be required to be made on account of any Allowed Claim.  Such undistributed amount may instead be used in accordance with the Plan and the Liquidating Trust Agreement.

If the Cash available for the final distribution is less than the cost to distribute such funds, the Liquidating Trustee may donate such funds to the unaffiliated charity of the Liquidating Trustee's choice.

### M.  Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under this Plan includes both principal and accrued but unpaid prepetition interest, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

### N.  Distributions Free and Clear

Except as otherwise provided in this Plan, any distribution or transfer made under this Plan shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to this Plan.



### O. **Claims Paid or Payable by Third Parties**

#### 1. Claims Paid by Third Parties

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than from the Post-Effective Date Debtors and/or the Liquidating Trust (as applicable) on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Post-Effective Date Debtors and/or the Liquidating Trust (as applicable), then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Plan Administrator or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided, however,* that a notice of satisfaction shall be Filed and served reflecting that a particular Claim has been satisfied. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Post-Effective Date Debtors and/or the Liquidating Trust (as applicable) on account of such Claim, such Holder shall, within fourteen (14) Business Days of receipt thereof, repay or return the distribution to the Post-Effective Date Debtors or Liquidating Trust (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

#### 2. Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's ~~agreement~~payment, the applicable portion of such Claim may be expunged (and the Claims Register adjusted accordingly) without an objection to such Claim having to be Filed and without any further ~~notice to or~~action, order, or approval of the Bankruptcy Court. The Plan Administrator or the Liquidating Trustee (as applicable) shall provide notice of satisfaction to the Holder of such Claim.

#### 3. Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall take into account payments made in accordance with the provisions of any applicable Insurance Policy. Except as set forth in Article IX herein, nothing in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including the Liquidating Trust, may hold against any other Person or Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.



P.    **F&B Reserve and TVT Claims**

To the extent a Claim held by a TVT Party is an Allowed Secured Claim, including after a determination by a Final Order or by agreement of such TVT Party or TVT Parties and the Plan Administrator (after consultation with the Purchaser), the Holder of such Claim shall be paid a *pro rata* share of the Cash held in the F&B Reserve in accordance with Article III of this Plan. Upon entry of a Final Order determining that all or any portion of a Claim held by a TVT Party is a General Unsecured Claim or is otherwise disallowed, the portion of the F&B Reserve corresponding to the unsecured or disallowed portion of such Claim shall be released from the F&B Reserve and, on or before the next Distribution Date, distributed to the Purchaser.

To the extent the Bankruptcy Court enters a Final Order determining that any of the Cash held in the F&B Reserve is not property of the Debtors' estates and that beneficial title to such Cash belongs to one or more of the TVT Parties, the Plan Administrator shall pay Cash from the F&B Reserve solely to the extent the Court finds that such Cash is not property of the Debtors' Estates.

Notwithstanding anything set forth in this Plan, the Plan Administrator and a TVT Party are authorized to seek approval of a settlement or compromise of the applicable TVT Cause of Action pursuant to Bankruptcy Rule 9019. For the avoidance of doubt, the Plan Administrator shall have sole authority to prosecute and resolve the TVT Causes of Action, including any objection to Claims or Interests held by the TVT Parties, and shall not be required to consult with the Liquidating Trustee prior to the resolution of such TVT Causes of Action.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS

A.    **Allowance of Claims**

After the Effective Date, the Liquidating Trustee and the Plan Administrator, as applicable, shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

B.    **Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Effective Date, (a)(i) the Liquidating Trustee shall have the authority to File, withdraw, or litigate to judgment, objections to Filed General Unsecured Claims; and (ii) the Plan Administrator (and the Purchaser) shall have the authority to File, withdraw, or litigate to judgment objections to all Filed Claims or Interests held by the TVT Parties, Administrative Claims, Priority Tax Claims, Other Priority Claims, Secured Claims and any other Claim that, if Allowed, would constitute an Assumed Liability; provided that the Plan Administrator shall consult with the Liquidating Trustee (and the Purchaser) regarding any objections to Filed Other Priority Claims, Filed Priority Tax Claims, or Secured Claims; (b) the Plan Administrator and the Liquidating Trustee, as applicable, shall have the authority to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; provided that the Plan Administrator shall consult with the Purchaser and the Liquidating Trustee before settling an objection to a Filed Administrative Claim, Filed Other Priority Claim, or Filed Secured Claim;


33735561.1
33735561.8

and (c) the Plan Administrator and the Liquidating Trustee, as applicable, shall administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C. Estimation of Claims

Before or after the Effective Date, the Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable) may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Liquidating Trustee (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D. Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or assumed by the Purchaser in the Sale, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed following notice filed on the docket (*i.e.*, a notice of satisfaction of claims) in the Bankruptcy Court of such adjustment or expungement.

### E. Time to File Objections to Claims

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claims Objection Deadline (as such date may be extended upon entry of an order by the Bankruptcy Court).

### F. Disallowance of Late Claims

Except as provided in the Plan or otherwise agreed to by the Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable), any Holder of a Claim Filed, via proof of claim, after the Bar Date shall not receive any distributions on account of such Claims to the extent such Claim has been disallowed and expunged upon objection on notice to the affected Claimant.



### G.  Disputed Claims

All Claims held by Persons or Entities against whom or which the Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable) has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan.  A Claim deemed Disputed pursuant to this Section VII.G shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable) from such Holder have been paid.

### H.  No Distributions Pending Allowance

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

### I.  Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan; *provided that* payment to Holders of Allowed Secured Claims of the TVT Parties shall be paid solely from the F&B Reserve, and any other Allowed Claims (if any) of the TVT Parties shall be paid in accordance with the terms of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim.  No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.  Conditions Precedent

The occurrence of the Effective Date of this Plan is subject to each of the following conditions precedent.

1.    The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.    The Confirmation Order shall have been entered and shall be in full force and effect.



3.      The Global Settlement Approval Order shall have been entered and shall have become a Final Order.

4.      The closing of the Sale shall have occurred.

5.      There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the transactions contemplated by this Plan from being consummated.

6.      The Professional Fee Reserves shall have been fully funded pursuant to the terms of this Plan.

7.      All actions, documents and agreements necessary to implement the Plan shall have been effected, executed and/or tendered for delivery.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

8.      The Plan Administrator Agreement shall have been executed.

9.      The Liquidating Trust Agreement shall have been executed.

10.     The Transition Services Agreement shall have been executed.

11.     The Liquidating Trustee shall have been appointed and assumed its rights and responsibilities under the Plan and the Liquidating Trust Agreement, as applicable.

12.     The Plan Administrator shall have been appointed and assumed its rights and responsibilities under the Plan and the Plan Administrator Agreement, as applicable.

13.     The Contingent Value Right shall have been issued by Purchaser Holdings to the Debtors and the Debtors shall have transferred the Contingent Value Right to the Liquidating Trust.

14.     The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and any transaction contemplated hereby that are required by law, regulation, or order.

15.     The Wind-Down Amount shall have been fully funded pursuant to the terms of this Plan.

**B.  <u>Waiver of Conditions</u>**

Unless otherwise specifically provided for in this Plan, the conditions set forth in Section VIII.A may only be waived in whole or in part by the Debtors with the written consent of the Purchaser and the Committee.



**C.  Effect of Vacatur of the Confirmation Order**

If the Confirmation Order is vacated: (1) the Plan will be null and void in all respects, including with respect to the release of Claims and distributions for Allowed Claims; and (2) nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights, including any claims or defenses, of any party in interest.

**D.  Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code.

**ARTICLE IX.**
**RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**A.  Releases by the Debtors**

**As of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code and for good and valuable consideration, each Released Party is deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Debtors and their Estates from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their Estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their Estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sale, the DIP Orders and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, *however*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Plan or**



any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Order or the APA; (3) any obligations under or in respect of the Global Settlement; or (4) the Retained Causes of Action.

### B. Releases by Holders of Claims

As of the Effective Date,  except as otherwise provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release each Released Party from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their Estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their Estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sale, or agreement or document created or entered into in connection with the Sale, the DIP Orders and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, *however*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Order or the APA; or (3) any obligations under or in respect of the Global Settlement. Notwithstanding anything to the contrary herein, nothing in the Plan shall be construed as authorizing or implementing releases of any Retained Causes of Action or Causes of Action sold to the Purchaser in connection with the Sale.

### C. Exculpation

Except as otherwise specifically provided in the Plan, to the maximum extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each



Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim related to any act or omission arising from the Petition Date to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Debtors' in-court restructuring efforts, the Disclosure Statement, documents and pleadings related to the Sale, the DIP Orders and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place between the Petition Date and the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person, but in all respects such Entities shall be entitled to reasonably rely upon the written advice of counsel with respect to their duties and responsibilities pursuant to the Plan to the extent permitted under applicable law.

### D.  Injunction

In accordance with Bankruptcy Code Section 1141(d)(3), the Plan does not discharge the Debtors. Bankruptcy Code Section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and interests against the Debtors, and Bankruptcy Code Section 1141(a) provides that the Plan, as confirmed, will be binding to the extent provided therein. As such, no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, Interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to the Plan; (3) were purchased and released by a purchaser in connection with the Sale; (4) are subject to exculpation pursuant to the Plan; or (5) are otherwise discharged, satisfied, stayed, released, or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding, including on account of any claims, Interests, Causes of Action, or liabilities that have been compromised or settled against the Debtors or any Person or Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to, any discharged,



**released, settled, compromised, or exculpated claims, Interests, Causes of Action, or liabilities, including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Liquidating Trust, the Released Parties, or Exculpated Parties (as applicable): (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or Interests; (d) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff (*i.e.*, a Proof of Claim or motion asserting such rights), and notwithstanding an indication of a Claim or Interest or otherwise that such Person or Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests released, exculpated, or settled pursuant to the Plan.**

**Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan by the Debtors, the Liquidating Trustee, and their respective affiliates, employees, advisors, officers and directors, or agents.**

### E. Waiver of Statutory Limitations on Releases

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER ARTICLE IX OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST  IN THEIR FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND  TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS  FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY  HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES



CONTAINED IN ARTICLE IX OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

### F.  **Release of Liens**

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

If any Holder of a Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Liquidating Trustee that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidating Trustee shall be entitled to make any such filings or recordings on such Holder's behalf.

### ARTICLE X.
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases, the Sale, the Confirmation Order, the Plan Supplement, and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction over, among other items, each of the following:

1.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2.    Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

3.    Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan.

4.    Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which one or more Debtors is party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate,



any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date.

6.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters relating to the Retained Causes of Action.

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Person's or Entity's obligations incurred in connection with the Plan.

10.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of the Plan.

11.      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

12.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13.      Determine any other matters that may arise in connection with or related to the APA or related Sale documents, the Disclosure Statement, the Plan, the Plan Supplement, and the Confirmation Order.

14.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan.

15.      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

16.      Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.



17.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order.

18.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors, the Liquidating Trustee on behalf of the Liquidating Trust, or the Plan Administrator on behalf of the Post-Effective Date Debtors (as applicable) for an expedited determination of tax under section 505(b) of the Bankruptcy Code.

19.     To recover all assets of the Debtors and property of the Estates, wherever located.

20.     To consider requests for extensions of the term of the Liquidating Trust or the Post-Effective Date Debtors as provided herein.

21.     Enter an order or final decree concluding or closing the Chapter 11 Cases.

22.     Enforce all orders previously entered by the Bankruptcy Court.

23.     Hear any other matter over which the Bankruptcy Court has jurisdiction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.  Modification of the Plan

Subject to the limitations contained in the Plan, the Debtors (in consultation with the Committee) reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules (1) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a); and (2) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019(a), or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided that all such modifications and amendments shall be consistent in all material respects with the Global Settlement.

### B.  Other Amendments

The Debtors (in consultation with the Committee) may make appropriate non-material, technical adjustments and modifications to this Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### C.  Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.



### D. **Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date**

Subject to the conditions to the Effective Date, the Debtors (in consultation with the Committee) reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent plans of reorganization or liquidation. If the Debtors revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan, the Plan Supplement, the Confirmation Order, or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Person or Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

### ARTICLE XII.
### MISCELLANEOUS PROVISIONS

### A. **Debtors' Operation from Combined Confirmation Hearing Through Effective Date**

During the period from the Combined Confirmation Hearing through and until the Effective Date, the Debtors shall continue to operate as debtors-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

### B. **Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trustee, the Plan Administrator, all Holders of Claims against and Interests in the Debtors (regardless of whether any such Holder has voted or failed to vote to accept or reject this Plan and regardless of whether any such Holder is entitled to receive any distribution under this Plan), all Persons or Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Person or Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest. All parties in interest are bound to comply and not interfere with the performance of the terms and conditions of the Plan and the other Global Settlement Definitive Documents and the Liquidating Trustee shall be entitled to enforce the rights of the Committee under the Global Settlement.

### C. **Additional Documents**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and that are consistent with the Global Settlement



in all material respects.  The Debtors, the Liquidating Trustee, the Plan Administrator, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### D.  Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### E.  Reservation of Rights

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### F.  Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Person or Entity.

### G.  Determination of Tax Liabilities

As of the Effective Date, the Liquidating Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Estates, the Liquidating Trust, and the Post-Effective Date Debtors; *provided*, *however*, that the Liquidating Trustee shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtors (which Interests shall be cancelled pursuant to this Plan), but shall provide such Holders with any information reasonably required to prepare such forms.  The Debtors and the Liquidating Trustee (as applicable) shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Estates, the Liquidating Trust, or the Post-Effective Date Debtors for any tax incurred during the administration of the Chapter 11 Cases.

### H.  Dissolution of the Committee

On the Effective Date, the Committee will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases; *provided*, *however*, that, after the Effective Date, the Committee will continue to exist solely with respect to (1) any applications for Professional Fee Claims or expense reimbursements for members of the Committee, including preparing, objecting to, defending, and attending any hearing with respect to the same; (2) any motions or other actions seeking



enforcement or implementation of the provisions of the Plan or Confirmation Order; and (3) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way the treatment of the Holders of General Unsecured Claims, including, but not limited to, any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of the Plan, the Plan Supplement, or the Confirmation Order.  The Committee's Retained Professionals shall not be entitled to assert any Professional Fee Claims for services rendered after the Effective Date except in connection with the matters identified in clauses (1) through (3).  Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

### I.   Notices

In order for all notices, requests, and demands to or upon the Debtors, the Liquidating Trustee, or the Plan Administrator, as the case may be, to be effective, such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties and their counsel:

| Debtors | Counsel to the Debtors |
|---|---|
| AGDP Holding Inc. *et al.*<br>140 Stewart Ave<br>Brooklyn, NY 11237<br>Attn.: General Counsel | **Young Conaway Stargatt & Taylor, LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attention: Edmon L. Morton, Esq.; Sean M. Beach, Esq.; and S. Alexander Faris, Esq.<br>Email: emorton@ycst.com; sbeach@ycst.com; afaris@ycst.com |
| **Plan Administrator** | **Counsel to the Plan Administrator** |
| To be included in the Plan Supplement | To be included in the Plan Supplement |
| **Liquidating Trustee** | **Counsel to the Liquidating Trustee** |
| **Dundon Advisers LLC**<br>Ten Bank Street, Suite 1100<br>White Plains, New York 10606<br>Attention: Joshua Nahas; Christopher Podesfinski<br>Email: jn@dundon.com; cp@dundon.com; agdp@dundon.com | **Morris James LLP**<br>Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attention: Eric J. Monzo; Siena B. Cerra<br>Email: emonzo@morrisjames.com; scerra@morrisjames.com<br><br>-and-<br><br>**Orrick, Herrington & Sutcliffe LLP**<br>51 West 52nd Street<br>New York, NY 10019<br>Attention: Mark Franke; Brandon Batzel<br>Email:   mfranke@orrick.com; bbatzel@orrick.com |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to



Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Persons or Entities that Filed such renewed requests.

### J.  Term of Injunctions or Stays

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-Confirmation jurisdiction to modify the injunctions and stays under this Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Estates; and (2) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (b) the date that the Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

### K.  Entire Agreement

On the Effective Date, except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### L.  Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents shall be made available upon written request to Debtors' counsel, the Liquidating Trustee's counsel, or the Plan Administrator's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website.

Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.  The documents in the Plan Supplement are considered an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

### M.  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents,


33735561.1
33735561.8

instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

### N. Non-Severability of Plan Provision Upon Confirmation

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, the Liquidating Trustee, or the Plan Administrator  (as applicable) in accordance with the terms hereof; and (3) non-severable and mutually dependent.

### O. Closing of the Chapter 11 Cases

After the full administration of the Chapter 11 Cases, the Liquidating Trustee shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

Dated: ~~November 5~~January 15, ~~2025~~2026

Respectfully submitted,

~~/s/ Gary Richards~~ _____

By: Gary Richards
Chief Executive Officer
AGDP Holding Inc. *et al.*



~~33735561.1~~
33735561.8